# EXHIBIT D

## EMPLOYMENT CONTRACT,
## NONQUALIFIED DEFERRED COMPENSATION AGREEMENT
## AND AGREEMENT NOT TO COMPETE

This Employment Contract, Deferred Compensation Agreement and Agreement Not to Compete ("Agreement") is entered into on this __3__ day of __July__, 2000, by and between:
<span style="font-size:smaller">(Date Signed)</span>

    **Red Simpson, Inc.,** a Louisiana corporation, authorized to do and doing business in the State of Louisiana, with its principal office located in Pineville, Louisiana ("Red Simpson"), represented herein by its duly authorized representative; and

    **Chuck T. Chaddrick,** an individual of the full age of majority, whose mailing address is P.O. Box 344, Turkey Creek, LA 70585 ("Employee").

WHEREAS, Employee has rendered or is expected to render to Red Simpson valuable service and it is the desire of Red Simpson to have the benefit of Employee's continuing loyalty, service and counsel, and also to assist Employee in providing for the contingencies of disability, death and old age retirement, it is hereby agreed:

## ARTICLE I.
## EMPLOYMENT CONTRACT

    **1.01    Employment.** Red Simpson (sometimes "Employer") employs Employee and Employee accepts employment from Employer upon the terms and conditions of this Agreement.

    **1.02    Term.** The term of employment pursuant to this contract shall begin on __Jan. 1__, __2000__ and terminate as set forth in Section 1.08.

    **1.03    Duties.** As an employee of Employer, Employee shall supervise, direct and ensure the timely completion of all operations in the performance of contracts and shall perform such additional and different duties as Red Simpson, from time to time, may require. The Board of Directors of Red Simpson or its authorized officers may, from time to time, extend or curtail Employee's precise duties. As a representative of Red Simpson, Employee shall provide Red Simpson on demand assistance and advice, and perform such additional and different duties as Red Simpson's Board of Directors or authorized officers may, from time to time, require. If Employee is elected or appointed a director or officer of Red Simpson, Employee shall serve in such capacity or capacities without further compensation.

    **1.04    Extent of Service.** Employee shall exert his best efforts and devote substantially all his time, attention and energies to Employer's business. Except as otherwise provided in this Agreement, during the term of employment with Employer, Employee shall not carry on or engage in any other business activity, regardless of whether it is pursued for gain, profit or charity. As a limited exception to the foregoing, however, Employee may engage in other business activity

if the business activity is not similar to that of the business of Red Simpson and/or Subsidiaries and if Employee's engaging in the other business activity will not interfere with his employment duties or obligations to Employer.

     **1.05    Disclosure of Information.**  Employee acknowledges that the business methods, confidential information, and trade secrets of Red Simpson and/or Subsidiaries (collectively, "Business Information") and the list of Red Simpson's and/or Subsidiaries' customers as may be determined from time to time (collectively, "Customer Lists") are valuable, special and unique assets of Red Simpson's and Subsidiaries' business. Employee shall not, during and after the term of his employment with Red Simpson, disclose all or any part of the Business Information or Customer Lists to any person, firm, corporation, association or other entity for any reason or purpose. In the event of Employee's breach or threatened breach of this paragraph, Red Simpson and Subsidiaries reserve the right to terminate Employee's employment and shall be entitled to a preliminary restraining order and injunction restraining and enjoining Employee from disclosing all or any part of the Business Information or Customer Lists and from rendering any services to any person, firm, corporation, association, or other entity to whom all or any part of the Business Information or Customer Lists have been or have been threatened to be, disclosed. In addition to or in lieu of the above, Red Simpson or Subsidiaries may pursue all other remedies available at law for such breach or threatened breach, including recovery against Employee's stock or equity in any Corporation of which Red Simpson is majority shareholder, amounts in Employee's deferred compensation plan account, if any, and specifically are entitled to recover attorney's fees for such breach or threatened breach.

     **1.06    Compensation.** Employer shall pay Employee for all services rendered a collective and total rate of compensation of $_____ per hour. Salary payment shall be subject to withholding and other applicable taxes. Employer may modify the rate of compensation from time to time as appropriate.

     **1.07    Use of Name.** Red Simpson now has, and shall continue to have, the sole right to use the name "Red Simpson, Inc." as the corporate name and title. This right shall not be affected by the termination of Employee's employment with Red Simpson, nor by any other cause.

     **1.08    Termination.** Red Simpson may, at any time, with or without cause, terminate Employee's employment with Red Simpson. These remedies are in addition to those set forth in Paragraph 1.05 above.

**ARTICLE II.**
**NONQUALIFIED DEFERRED COMPENSATION AGREEMENT**

     **2.01    Termination Benefits.**  Should the Employee's employment be terminated for disability, death or retirement, or for any reason other than a violation of paragraph 1.05 above or Article III below, Red Simpson will commence payments to Employee or Employee's designated Beneficiary (or in the absence of such written designation, to his estate or successor or successors in interest) pursuant to this agreement.

**2.02    Disability.**  As used herein, Disability means bodily injury or disease which prevents Employee from engaging for remuneration or profit in any and every occupation or business for which he is reasonably suited by education, training or experience.  The total and irrevocable loss of sight of both eyes, or the use of both hands, both feet, or one hand and one foot, will be regarded as total disability in any event.  In the event of death of an Employee while receiving payments pursuant to this agreement because of a disability, the unpaid balances in Employee's deferred compensation plan account will continue to be paid by Red Simpson to Employee's designated beneficiaries or his estate or successor or successors in interest as provided in paragraphs 2.01 and 2.03.

**2.03    Death.**  Employee's Beneficiary may be designated in writing to Red Simpson and may be changed at any time by Employee with the agreement of Red Simpson, by written amendment.

**2.04    Retirement or Other Termination.**  In the event of death of Employee while receiving payments pursuant to this agreement because of Employee's retirement or termination for any reason other than a violation of paragraph 1.05 above or Article III below, the unpaid balances in Employee's deferred compensation plan account will continue to be paid by Red Simpson to Employee's designated Beneficiaries or his estate or successor or successors in interest as provided in paragraphs 2.01 and 2.03.

**2.05    Conditions for Payment.**  The provisions for payments under this agreement are conditioned upon the continuous employment of the Employee by Red Simpson up to the date of Disability, Death or Retirement or termination for any reason other than a violation of paragraph 1.05 above or Article III below and subject to the provisions of paragraph 2.06 below and are further conditioned as set forth below in the Employee's agreement not to compete in Article III below and in paragraph 1.05 above.

**2.06    Leave of Absence.**  Red Simpson may, in its sole discretion, permit the Employee to take a leave of absence without pay or other compensation other than the benefits provided under this nonqualified deferred compensation agreement for a period not to exceed one (1) year.  During this time the Employee will be considered to be still in the employ of Red Simpson for purposes of this Agreement.

**2.07    Time of Payment.**  In the absence of accelerating under paragraph 2.08, Red Simpson will commence payments pursuant to this agreement specifically pursuant to paragraph 2.10.

**2.08    Acceleration of Benefit Payments.**  After payments have commenced, Red Simpson hereby reserves the right to accelerate the payment of any of those sums specified in paragraphs 2.01, 2.02, 2.03 or 2.04 above including the right to make a lump sum payment of the whole at any time after termination without the consent of the Employee, his estate, beneficiaries or any other person claiming through or under him, but Employee shall have no right to compel any accelerated payment.

**2.09 Consideration and Computation of Benefit Payment.** Any payments made pursuant to this Agreement shall be computed in accordance with the following formula:

a.  Determine the amount of the net earnings (or loss) of Red Simpson allocable to the Employee's Department or Working Entity for the year on a calendar year basis, beginning _____, _____ for each year of Employee's participation in the Deferred Compensation Plan. In the year of termination, the amount of net earnings (or loss) of Red Simpson allocable to the Employee's Department or Working Entity for the year shall be calculated from January 1 to the date of termination.

b.  Net earnings (or loss) of Red Simpson allocable to the Employee's Department or Working Entity for the year shall be defined as follows: The net book accrual income (loss) of Red Simpson allocable to the Employee's Department or Working Entity for the calendar year, before tax. The net book accrual income (loss) of Red Simpson allocable to the Employee's Department or Working Entity for the year shall then be reduced by an amount that would equal the federal and state income tax liabilities on the net book accrual income (loss) of Red Simpson allocable to the Employee's Department or Working Entity for the year, current and deferred, as if the Employee's Department or Working Entity were subject to these taxes, employing the maximum C corporation income tax rate regardless of the amount of net book accrual income (loss) of Red Simpson allocable to the Employee's Department or Working Entity for the year. This calculation is subject to adjustment including, but not limited to, adjustment by final audit.

c.  Multiply the amount of the net earnings (or loss) of Red Simpson allocable to the Employee's Department or Working Entity for the year by a percentage representing the Participant's Interest Percentage assigned to the Employee in the Employee's Department or Working Entity for that respective year. Repeat this calculation for each year of Employee's participation in the Deferred Compensation Plan.

d.  The product is the amount which will accrue to the Employee's plan account for the year subject to final audit and adjustment. The total of the annual accruals is the deferred compensation benefit payable pursuant to this Agreement, subject to final audit and adjustment.

e.  The amount which will accrue annually to Employee's plan account shall be calculated based upon the final audit of the corporate books of Red Simpson and Subsidiaries for the year during which the Termination date occurs ("Final Audit") and shall reflect estimated exposure of Red Simpson and Subsidiaries for any potential claims or liabilities attributable to Pre-Termination Date events, occurrences or happenings allocable to Employee's Department or Working Entity. The amount which will accrue annually to Employee's plan account may be modified, from time to time, as necessary to reflect changes in the total net earnings (or loss) due to Pre-Termination Date events, occurrences or happenings. However, the amount which

will accrue annually to Employee's plan account may not be modified after the issue date of the Final Audit unless within one hundred eighty (180) days of the issue date of the Final Audit, Red Simpson provides Employee with a list of potential claims or liabilities attributable to Pre-Termination Date events, occurrences or happenings which, in the best judgment of Red Simpson, would be chargeable against the amount which will accrue annually to Employee's plan account. The amount which will accrue annually to Employee's plan account shall be determined by the independent Certified Public Accountant then regularly employed by Red Simpson and said independent Certified Public Accountant's determination of the amount to be accrued annually to Employee's plan account shall be binding and conclusive on all parties. If the amount of the deferred compensation benefit payable pursuant to this Agreement at the date of termination, subject to final audit and adjustment, computed by said independent Certified Public Accountant, is Zero Dollars ($0.00) or less than Zero Dollars ($0.00), as reflected in the final audit, then employee's benefit payment will be Zero Dollars ($0.00).

f.    Employee's plan account will not be considered a funded account and Employee shall have no right to require Red Simpson to fund such account, Employee's only rights herein being that Employee shall receive the computed benefits after Employee's Termination Date and based upon the amount to be accrued to Employee's plan account throughout the period of Employee's employment with Red Simpson.

**2.10    Payment of Proceeds from Plan.** Upon termination, Employee's benefit payment will be computed as follows:

The amounts in Employee's Plan Account, (or "Adjusted Plan Account," if appropriate, as hereinafter defined) shall be paid in five annual installments. The first installment shall be due ninety (90) days after the termination due to disability, death or retirement, or for any reason other than a violation of paragraph 1.05 above or Article III below. The amount of the first installment shall equal twenty percent (20%) of the Plan Account Amount (or Adjusted Account Amount, if appropriate) as estimated by the independent Certified Public Accountant then regularly employed by Red Simpson. The independent Certified Public Accountant's estimate of the Plan Account Amount (or Adjusted Plan Account Amount, if appropriate) shall be binding and conclusive on all parties.

The second installment shall be due one year after the due date of the first installment (regardless of when the first installment is actually paid). Prior to the due date of the second installment, the Final Audit of Red Simpson shall be completed by the independent Certified Public Accountant then regularly employed by Red Simpson, which audit shall conclusively determine the Plan Account Amount (or Adjusted Plan Account Amount, if appropriate). The Plan Account Amount may be modified, from time to time thereafter, as necessary, to reflect changes due to pre-Termination Date events, occurrences or happenings. The amount of the second installment shall be such amount that when added to the amount of the first installment, the sum of the first and

second installments equal forty percent (40%) of the Plan Account Amount (or Adjusted Plan Account Amount, if appropriate).

The third installment shall be due two years after the due date of the first installment. The amount of the third installment shall equal twenty percent (20%) of the Plan Account Amount (or Adjusted Plan Account Amount, if appropriate).

The fourth installment shall be due three years after the due date of the first installment. The amount of the fourth installment shall equal twenty percent (20%) of the Plan Account Amount (or Adjusted Plan Account Amount, if appropriate).

The fifth and final installment shall be due four years after the due date of the first installment. The amount of the fifth installment shall equal twenty percent (20%) of the Plan Account Amount (or Adjusted Plan Account Amount, if appropriate).

The amount of any modification of the Plan Account Amount (or Adjusted Plan Account Amount, if appropriate) due to pre-Termination Date events, occurrences or happenings shall be deducted pro rata from any and all remaining unpaid payments due by Red Simpson to Employee pursuant to the Plan. Red Simpson will pay interest at the rate of five percent (5%) per annum (simple interest) on any amounts which are withheld pursuant to this paragraph and which are subsequently paid. Interest will apply beginning on the day after such payment was due and was withheld until the withheld amount is paid.

In addition to the amount of the installment payment computed above, Red Simpson shall pay to Employee an amount sufficient to reimburse Employee for any taxes paid on any installment payment by Employee pursuant to the Federal Insurance Contributions Act (FICA).

### 2.11    Adjustments to Plan Account Amount.

a.      If Employee's employment with Red Simpson is terminated for cause, or if Employee resigns or terminates his employment with Red Simpson at a time when Red Simpson could terminate Employee for cause, then the Plan Account Amount (as modified, if appropriate) shall be reduced to the Adjusted Plan Account Amount. The Adjusted Plan Account Amount shall be the Plan Account Amount (as modified, if appropriate) reduced by (i) an amount equal to the monetary value of damages suffered by Red Simpson or Subsidiaries as a result of Employee's action or inaction which constitutes cause for termination of Employee's employment with Red Simpson; and/or (ii) an amount equal to the monetary value of damages suffered by Red Simpson or Subsidiaries as a result of Employee's action or inaction listed herein in Section 2.11b(1) through (4). For purposes of this Agreement, "cause" shall include, but not be limited to, the following:

1.      any action or inaction by Employee which results in a conviction of, or a plea of guilty or nolo contendere by Employee to any felony, a misdemeanor including fraud, embezzlement, theft or dishonesty, or any criminal conduct

against Red Simpson or Subsidiaries, or any officer, director or shareholder of Red Simpson or Subsidiaries;

2.     any action or inaction by Employee (but not including actions or inactions by Employee which constitute simple negligence in the course and scope of employment) which is not authorized by Red Simpson which results in the imposition (whether by judgment, settlement or otherwise) of civil and/or criminal penalties and/or liabilities upon Red Simpson or Subsidiaries, or any officer, director, or shareholder of Red Simpson or Subsidiaries;

3.     failure by Employee of Employee's to perform assigned or required duties as an employee, officer or director of Red Simpson or failure by Employee to perform or observe any obligation of being an employee, officer or director of Red Simpson; or

4.     any breach by Employee of any term, condition, obligation, representation or warranty of this Agreement.

b.     If subsequent to Employee's termination of employment with Red Simpson:

1.     Employee is convicted of or pleads guilty or nolo contendere to any felony, a misdemeanor including fraud, embezzlement, theft or dishonesty, or any criminal conduct against Red Simpson, Subsidiaries or any officer, director or shareholder of Red Simpson or Subsidiaries;

2.     Civil and/or criminal penalties and/or liabilities are imposed (whether by judgment, settlement or otherwise) upon Red Simpson or Subsidiaries or any officer, director or shareholder of Red Simpson or Subsidiaries as a result of conduct of Employee (other than actions or inactions of Employee which constitute simple negligence in the course and scope of employment) which was not authorized by Red Simpson.

3.     Employee fails to perform assigned or required duties as an officer, director or employee of Red Simpson, or Employee fails to perform or observe any obligation of being an officer, director or employee of Red Simpson; or

4.     Employee breaches any term, condition, obligation, representation or warranty of this Agreement,

then the Plan Account Amount shall be reduced to the Adjusted Plan Account Amount.

c.     The amount of any such reduction in the Plan Account Amount (as modified, if appropriate) to the Adjusted Plan Account Amount shall be deducted pro rata from

any and all remaining unpaid payments due by Red Simpson to Employee pursuant to Section 2.10.

**2.12    Release of Claims and Indemnification.** On or before the ninetieth (90th) day after termination due to disability, death or retirement or for any reason other than a violation of paragraph 1.05 above or Article III below, Employee (or his estate or successor or successors in interest) shall (unless prohibited by law) deliver to Red Simpson a complete and general release, in a form satisfactory to Red Simpson's counsel, of any and all claims or causes of action by Employee against Red Simpson and Subsidiaries and the officers, directors and stockholders of Red Simpson and Subsidiaries.

Employee (or his estate or successors or successors in interest) agrees to indemnify, hold harmless, reimburse and defend Red Simpson and Subsidiaries and the officers, directors or shareholders of Red Simpson and Subsidiaries from and against any and all liability, obligations, losses, claims, damages, costs and expenses (including attorney's fees) arising under or in any way connected with Employee's employment with Red Simpson (except for actions or inactions by Employee which constitute simple negligence in the course and scope of employment), Employee's ownership of shares of stock in Red Simpson or Subsidiaries, or Employee's position as an officer or director of Red Simpson or Subsidiaries. The Employee's obligation to indemnify, hold harmless, reimburse and defend is specifically applicable to intentional or grossly negligent damage to the property or equipment of Red Simpson or Subsidiaries.

**2.13    Termination.** Any payments due under Article II of this Agreement shall terminate upon the occurrence of any of the following events:

a.    bankruptcy, insolvency, receivership or dissolution due to insolvency of Red Simpson;

b.    the voluntary agreement of the parties hereto;

c.    cessation of Red Simpson's business. However, this subsection (c) shall not apply in the event Red Simpson's business ceases as a result of its merger with or acquisition by any other entity.

### ARTICLE III.
### AGREEMENT NOT TO COMPETE

Because Employee may from time to time have access to and may actually be aware of Red Simpson's and Subsidiaries' business methods, confidential information, trade secrets and customer lists and because substantial harm could result to Red Simpson and Subsidiaries if Employee were to compete with Red Simpson or Subsidiaries after Employee's employment relationship with Red Simpson terminates or during any period of Employee's retirement, for and in consideration of the future compensation to be paid pursuant to the above Nonqualified Deferred Compensation Agreement in Article II, (and the retention of that certain stock purchase obligation set forth in Employee's previous employment contract dated _____) said agreement for payment

by Red Simpson representing a balancing of Employee's interest in personal financial benefit and Red Simpson's interest in protecting its own operations and the operations of Subsidiaries, the following is agreed:

    **3.01    Restriction.** Employee agrees that for a period of two years from termination or cessation of employment for any reason with Red Simpson, Employee will:

        a.    Refrain from carrying on or engaging in a business similar to that of Red Simpson or Subsidiaries within the geographical area of those parishes in the State of Louisiana and those counties in the states of Texas, Mississippi, Arkansas, Oklahoma, Alabama, Florida and/or Georgia specified in Exhibit "B" attached hereto. The terms "carrying on or engaging in a business" shall include, but not be limited to: (1) directly or indirectly owning, managing, operating, controlling or participating in the business of power line (distribution or transmission) or substation construction, service or maintenance; (2) directly or indirectly becoming interested in or being connected with, as an employee, partner, officer, director, stockholder or investor in the business of power line (distribution or transmission) or substation construction, service or maintenance; (3) lending of credit or money for the purpose of establishing or operating any business of power line (distribution or transmission) or substation construction, service or maintenance; or (4) furnishing consultation or advice to any business of power line (distribution or transmission) or substation construction, service or maintenance. Notwithstanding the foregoing, Employee shall not be precluded from working for a competitor or a company which is a customer of Red Simpson where Employee's position is salaried as a Class A lineman or groundman, provided that Employee shall not utilize such position in any way to act personally or through others in solicitation of business otherwise prohibited herein. For the purposes of this Agreement, and particularly this paragraph 3.01, the term "business" shall include the operation of power line systems by municipalities, counties, parishes, other public or quasi-public entities as well as privately owned or investor owned utilities.

        b.    Refrain from soliciting customers or employees of Red Simpson or Subsidiaries for business or work within the described geographical area of those parishes in the State of Louisiana and the counties in the states of Texas, Mississippi, Arkansas, Oklahoma, Alabama, Florida and/or Georgia specified in Exhibit "B". This restriction applies to any solicitation of customers or employees of Red Simpson and Subsidiaries who do business or work in the described geographical areas, and this restriction applies also to such customers or employees whether (regarding business or work in the described geographical areas) or not either is domiciled in or has an office in the geographical areas set forth in Exhibit "B".

    **3.02    Reasonableness of Limitations.** Employee understands that the provisions hereof may limit his ability to earn a livelihood in a business similar to the business of Red Simpson or Subsidiaries in the specified jurisdictions, but nevertheless agrees and hereby acknowledges that:

a.   Such provisions do not impose a greater restraint than is necessary to protect the good will of the business interests of Red Simpson or Subsidiaries;

b.   Such provisions contain reasonable limitations as to time, geographic area and the scope of activity to be restrained. In consideration of the foregoing and in light of Employee's education, skills and abilities, Employee agrees that he will not assert, and it should not be considered, that any provisions hereof prevent him from earning a living or are otherwise void, voidable, or unenforceable. To the maximum extent allowed by law this provision shall estop Employee from bringing such action.

**3.03    Remedies.** Employee understands that this agreement not to compete is an obligation not to do, and failure of Employee to perform will entitle Red Simpson and Subsidiaries to recover damages for the loss sustained and the profit of which Red Simpson and Subsidiaries have been deprived. In addition, upon proof of the Employee's failure to perform the obligations contained in this agreement not to compete, Employee understands that Employers may obtain injunctive relief from a court of competent jurisdiction enforcing the terms of this agreement not to compete, without the necessity of Employers proving irreparable injury. Red Simpson and Subsidiaries may also avail itself of the additional remedies available in paragraph 1.05 of Employee's employment agreement in the event of Employee's violation of this agreement not to compete.

**3.04    Effective Date.** This agreement not to compete supercedes any prior agreement by Employee not to compete, as of the date of its execution. However, the terms of any prior agreement shall remain viable and effective from the original date of execution of any prior agreement until execution of this agreement.

## ARTICLE IV.
## MISCELLANEOUS

**4.01    Notices.** All notices, demands or other writings required or allowed by this Agreement shall be deemed given, made or sent when made in writing and deposited in the United States Mail, certified or registered, with postage prepaid, and addressed as follows:

TO RED SIMPSON:               John C. Simpson
                              4615 Parliament Drive, Suite 200
                              P.O. Box 12120
                              Alexandria, LA 71315

TO EMPLOYEE:                  Chuck T. Chaddrick
                              P.O. Box 344
                              Turkey Creek, LA 70585

The address of any party as above provided may be changed by written notice given to the other party as provided above.

**4.02    Severability.** In case any provision or any portion of this Agreement (including any part or portion of Articles I, II or III) shall be invalid, illegal or unenforceable under the laws of

Louisiana or Federal Law, including but not limited to La. R.S. 23:921 *et seq.*, or of any other state or other jurisdiction where Employee, Red Simpson, or Subsidiaries operate, including but not limited to Section 15.50 of the Texas Business and Commercial Code, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby. If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render the provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**4.03    Amendment.** Any terms of this Agreement may be amended and the observance of any term hereof may be waived only by the written consent of the parties.

**4.04    Successors and Assigns.** All covenants and agreements herein contained by or on behalf of or for the benefit of any party shall bind and inure to the benefit of his or its successors and assigns. Employee acknowledges that his services as an employee of Red Simpson are unique and personal, and therefore, Employee shall not assign his rights or delegate his duties or obligations as an employee of Red Simpson. Further, no assignment, pledge, collateralization or attachment of any kind of any benefits under this Agreement shall be valid or recognized by Red Simpson.

**4.05    Law Governing.** This Agreement shall be governed by and construed in accordance with the laws of the state of Louisiana without regard to the conflict of law provisions of Louisiana or any other state, except that Article III of this Agreement shall be governed by and construed in accordance with the laws of the state in which Employee violates or is alleged by Red Simpson or Subsidiaries to violate the terms of Article III.

**4.06    Entire Agreement.** This Agreement embodies the entire agreement and understanding of the parties and supersedes as of the effective date, all prior agreements and understandings, written or oral, relating to the subject matter hereof. However, nothing in this agreement shall affect the obligation of Red Simpson to purchase stock in accordance with any prior agreement between Employee and Red Simpson, et al, except that Red Simpson shall not be required to further contribute any additional amounts to the Consideration set out in such agreement. It is the intention of the parties that the Nonqualified Deferred Compensation Plan in Article II is and shall be in lieu of any further contribution to the said Consideration, effective with the calendar year 1997.

**4.07    Employment Rights.** This Agreement creates no right in the Employee to continue in Red Simpson's employ for any specific length of time, nor does it create any other rights in the Employee or obligations on the part of Red Simpson, except those set forth in this Agreement. Nothing in this agreement shall prevent Red Simpson from providing any other benefit to its employees, in its discretion.

**4.08    Attorney's Fees.** Should either party incur expense, including reasonable attorney's fees and costs, because of the breach of this Agreement by the other party, the prevailing party in any subsequent dispute shall be entitled to recover from the other all such costs and expenses including attorney's fees as may have been incurred.

**4.09    Captioned Headings.** Captioned headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**4.10    Judicial Proceedings.** The parties agree as follows:

a.    Any legal action or proceeding relating to this Agreement, shall be instituted in the Ninth Judicial District, Rapides Parish, Louisiana or the United States District Court for the Western District of Louisiana, Alexandria Division.

b.    Any objection to the venue of any such action or proceeding in any such court that such action or proceeding was brought in an inconvenient court is waived.

**4.11    Employee's Performance of Agreement.** Employee warrants and represents that he has the ability to enter into this Agreement and perform all obligations hereunder, and that there are no restrictions or obligations to third parties which would in any way detract from, limit, or affect Employee's performance hereunder.

**4.12    Survival of Certain Provisions.** Any termination or expiration of this Agreement or termination of Employee's employment by Red Simpson notwithstanding, the provisions of this Agreement which are intended to continue and survive shall so continue and survive, including, but not limited to, the provisions of Sections 1.05, 1.07, 3.01, 3.02 and 3.03.

**4.13    Non-waiver.** No delay or failure by Red Simpson or Subsidiaries to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right.

**4.14    Additional Remedies.** Any provision in this Agreement (including Articles I, II, and III) that enumerates the remedies available to Red Simpson and Subsidiaries against Employee, including but not limited to paragraphs 1.05, 2.11, 2.12 and 3.03, shall not operate as an exclusion or waiver of other remedies available at law or in equity against Employee by Red Simpson, Subsidiaries, any officer, director or shareholder of Red Simpson or Subsidiaries, any bonding company, any insurance company, or any other person or entity.

## ARTICLE V.
## SPOUSAL CONSENT

And now comes the spouse of Employee who joins herein for the purpose of declaring his or her consent to and approval of this Agreement. However, by requiring said spouse to sign, Red Simpson does not intend to create, change, alter or convert the classification of any right or benefit created herein to community property or separate property, as the case may be at law.

THUS DONE AND SIGNED at Alexandria, Louisiana, before me, notary, and the undersigned competent witnesses, this _3_ day of _July_, 2000.

WITNESSES:                                RED SIMPSON, INC.

*Brandy Guillory*

*Dawn Strothe*                            By: _____
                                          John C. Simpson, President or
                                          Simeon A. Thibeaux, Jr.,
                                          Chief Financial Officer

                        _Mary Anita Boddie_
                        NOTARY PUBLIC

THUS DONE AND SIGNED at _Alexandria, La._, before me, notary, and the undersigned competent witnesses, this _3_ day of _July_, 2000.

WITNESSES:

*Brandy Guillory*                         *Chuck T. Chaddrick*
                                          Chuck T. Chaddrick, Individually
*Dawn Strothe*

                        _Mary Anita Boddie_
                        NOTARY PUBLIC
                        My commission expires _Death_

(SEAL)

THUS DONE AND SIGNED at _Alexandria, La._, before me, notary, and the undersigned competent witnesses, this _3_ day of _July_, 2000.

WITNESSES:

*Brandy Guillory*                         *Shelly Chaddrick*
                                          Shelly Chaddrick, Spouse
*Dawn Strothe*

                        _Mary Anita Boddie_
                        NOTARY PUBLIC
                        My commission expires _Death_

(SEAL)

**EXHIBIT A**
**Subsidiary Corporations of Red Simpson, Inc.**
["C" Corporations inactive as of December 31, 1996]

Gerald Bourgeois, Inc.
Lawrence Deshotel, Inc.
Tony Whaley, Inc.
Scott Suba, Inc.
Blaine Broussard, Inc.
Bo Stewart, Inc.
William Gill, Inc.
Carl Prevost, Inc.
Howard Orton, Inc.
Bo McManus, Inc
Ronald Cox, Inc.
Jeff Erwin, Inc.
Donald Lemay, Inc.
Travis Murray, Jr., Inc.
David Graham, Inc.
James Johnson, Inc.
Victor Rivera, Inc.
Sammy Christian, Inc.
Irby Hazelton, Inc.
Joe Rosenbaum, Inc.
Jamie Hart, Inc.
Richard Bradford, Inc.
Denny Ard, Inc.
Rick Westbrook, Inc.
Mike Boyd, Inc.
Red Simpson, Inc.
Mick Dubea, Inc.
Lucas Messer, Inc.
Richie Cook, Inc.
Shane Falcon, Inc.
Jack Jefferson, Inc.
Ralph Thomas, Inc.
Leo Stephens, Inc.
Kemp M. Dubea, Inc.
James Gilcrease, Inc.
Don Lawyer, Inc.
Manuel Navarro, Inc.
John Russell Croft, Inc.
Keith Smith, Inc.
Ronnie Tullos, Inc.
Alex Graham, Inc.
Bobby Cox, Inc.
Universal Electric Construction Co., Inc.
Industrial Electric Corporation of Texas
Tulsa Electrical Contractors, Inc.

# EXHIBIT B

## ALL Counties of Alabama

## Counties of Arkansas

| | | |
|---|---|---|
| Benton | Little River | Pulaski |
| Carroll | Madison | Saline |
| Clark | Miller | Washington |
| Hempstead | Perry | White |

## Counties of Florida

| | | | | |
|---|---|---|---|---|
| Bay | Columbia | Hendry | Martin | St. John's |
| Alachua | Dade | Holmes | Monroe | St. Lucie |
| Baker | DeSoto | Indian River | Nassau | Suwannee |
| Bradford | Duval | Jackson | Okaloosa | Taylor |
| Brevard | Escambia | Jefferson | Okeechobee | Union |
| Broward | Flagler | Lee | Palm Beach | Volusia |
| Calhoun | Franklin | Leon | Putnam | Wakulla |
| Charlotte | Gadsden | Liberty | Santa Rosa | Walton |
| Clay | Glades | Madison | Sarasota | Washington |
| Collier | Gulf | Manatee | Seminole | |

## Parishes of Louisiana

| | | | | |
|---|---|---|---|---|
| Acadia | Claiborne | Jefferson | Red River | Terrebonne |
| Allen | Concordia | La Fourche | Richland | Union |
| Ascension | DeSoto | La Salle | Sabine | Vermilion |
| Assumption | East Baton Rouge | Lafayette | St. Bernard | Vernon |
| Avoyelles | East Carroll | Lincoln | St. Charles | Washington |
| Beauregard | East Feliciana | Livingston | St. Helena | Webster |
| Bienville | Evangeline | Morehouse | St. James | West Baton Rouge |
| Bossier | Franklin | Natchitoches | St. John the Baptist | West Carroll |
| Caddo | Grant | Orleans | St. Landry | West Feliciana |
| Calcasieu | Iberia | Ouachita | St. Martin | Winn |
| Caldwell | Iberville | Plaquemines | St. Mary | |
| Cameron | Jackson | Pointe Coupee | St. Tammany | |
| Catahoula | Jefferson Davis | Rapides | Tangipahoa | |

## Counties of Mississippi

| | | | | |
|---|---|---|---|---|
| Adams | Franklin | Jones | Neshoba | Stone |
| Amite | George | Kemper | Newton | Sunflower |
| Attala | Greene | Lafayette | Noxubee | Tallahatchie |
| Bolivar | Grenada | Lamar | Oktibbeha | Tate |
| Calhoun | Hancock | Lauderdale | Panola | Tunica |
| Carroll | Harrison | Lawrence | Pearl River | Walthall |
| Choctaw | Hinds | Leake | Perry | Warren |
| Claiborne | Holmes | Leflore | Pike | Washington |
| Clarke | Humphreys | Lincoln | Quitman | Wayne |
| Coahoma | Issaquena | Lowndes | Rankin | Webster |
| Copiah | Jackson | Madison | Scott | Wilkinson |
| Covington | Jasper | Marion | Sharkey | Winston |
| DeSoto | Jefferson | Marshall | Simpson | Yalobusha |
| Forrest | Jefferson Davis | Montgomery | Smith | Yazoo |

## Counties of Oklahoma

| | | | | |
|---|---|---|---|---|
| Choctaw | Hughes | Muskogee | Pittsburg | Tulsa |
| Craig | Mayes | Okmulgee | Pushmataha | Wagoner |
| Creek | McIntosh | Osage | Rogers | Washington |

## Counties of Texas

| | | | | | |
|---|---|---|---|---|---|
| Anderson | Coleman | Freestone | Jones | Newton | Stephens |
| Andrews | Collin | Frio | Karnes | Nolan | Stonewall |
| Angelina | Colorado | Gaines | Kaufman | Nueces | Sutton |
| Archer | Comal | Galveston | Kenedy | Orange | Tarrant |
| Aransas | Comanche | Glasscock | Kimble | Palo Pinto | Taylor |
| Atascosa | Concho | Goliad | Kinney | Panola | Terrell |
| Austin | Cooke | Gonzales | King | Parker | Throckmorton |
| Bandera | Coryell | Grayson | Kleberg | Pecos | Titus |
| Bastrop | Cottle | Gregg | Knox | Polk | Tom Green |
| Baylor | Crane | Grimes | Lamar | Presidio | Travis |
| Bee | Crockett | Guadelupe | Lampasas | Rains | Trinity |
| Bell | Culberson | Hamilton | LaSalle | Real | Tyler |
| Bexar | Dallas | Hardeman | Lavaca | Red River | Upshur |
| Borden | Dawson | Hardin | Lee | Reeves | Upton |
| Bosque | Delta | Harris | Leon | Refugio | Uvalde |
| Bowie | Denton | Harrison | Liberty | Robertson | Val Verde |
| Brazoria | DeWitt | Haskell | Limestone | Rockwall | Van Zandt |
| Brazos | Dimmit | Henderson | Live Oak | Runnels | Victoria |
| Brewster | Duval | Hidalgo | Loving | Rusk | Walker |
| Brooks | Eastland | Hill | Madison | Sabine | Waller |
| Brown | Ector | Hood | Marion | San Augustine | Ward |
| Burleson | Edwards | Hopkins | Martin | San Jacinto | Washington |
| Burnet | El Paso | Houston | Matagorda | San Saba | Webb |
| Callahan | Ellis | Howard | Maverick | San Patricio | Wharton |
| Caldwell | Erath | Hunt | McCulloch | Schliecher | Wichita |
| Calhoun | Falls | Irion | McLennan | Scurry | Wilbarger |
| Cameron | Fannin | Jack | McMullen | Shackelford | Willacy |
| Camp | Fayette | Jackson | Medina | Shelby | Williamson |
| Cass | Fisher | Jasper | Menard | Smith | Wilson |
| Chambers | Foard | Jefferson | Midland | Somervell | Winkler |
| Cherokee | Fort Bend | Im Hogg | Milam | Starr | Wise |
| Childress | Franklin | Jim Wells | Mills | | Wood |
| Clay | | Johnson | Mitchell | | Young |
| Coke | | | Montague | | Zapata |
| | | | Montgomery | | Zavala |
| | | | Morris | | |
| | | | Nacogdoches | | |
| | | | Navarro | | |

# EXHIBIT E

> **This is an important document affecting your legal rights, including the timing and amount of your deferred compensation payments. If you have any questions regarding this document or if you need a copy of your employment agreements, please contact Simeon Thibeaux at RSI. RSI urges you to review this document carefully before signing it.**

AMENDMENT AGREEMENT ("Agreement") dated as of May 6, 2004, between Red Simpson, Inc. ("RSI"), a Louisiana corporation, and the individual whose name is set forth on Schedule 1 hereto ("Employee").

WHEREAS Employee is party to (a) an Employment Contract, Nonqualified Deferred Compensation Agreement and Agreement Not to Compete and/or (b) an Employment Contract, Agreement to Buy and Sell and Agreement Not to Compete, in each case with RSI (each, an "Employment Agreement");

WHEREAS the Employment Agreements give Employee the right to receive payments from RSI after the termination of Employee's employment with RSI, subject to certain conditions, based on (a) the net book accrual income or loss of Employee's department or working entity (a "Deferred Compensation Interest") and/or (b) the net annual accumulated earnings of a subsidiary of RSI of which Employee is a minority shareholder (a "Minority Interest");

WHEREAS RSI has entered into a Stock Purchase Agreement, dated as of May 4, 2004, among RSI, Pike Electric, Inc. ("Pike"), and certain other parties (the "Stock Purchase Agreement"), pursuant to which, among other things, Pike will purchase all the outstanding stock of RSI (the "Transaction");

WHEREAS RSI desires to amend the Employment Agreements to terminate Employee's Deferred Compensation Interest and/or to acquire and terminate Employee's Minority Interest, as the case may be, as of the closing of the Transaction (the "Closing Date"), and for Employee to waive and release RSI from any claims Employee may have in respect of those Interests; and

WHEREAS, in consideration of Employee's agreement to the amendment and waiver and release (which are contained in Articles III and IV of this Agreement), RSI desires (a) to accelerate the payment of certain amounts that would not be paid to Employee until the termination of Employee's employment and (b) to pay certain amounts to Employee that Employee would not otherwise receive, which amounts will be paid under RSI's newly adopted bonus plan (the "RSI 2004 Bonus Plan") (in the case of clauses (a) and (b), as described in Article I of this Agreement);

NOW, THEREFORE, in consideration of the mutual agreements, provisions and covenants contained herein, and intending to be legally bound hereby, Employee and RSI agree as follows:

# ARTICLE I

## Payments to Employee

SECTION 1.01. Payment of Base Amount. (a) RSI shall pay to Employee an amount equal to the total value of Employee's Deferred Compensation Interest and/or Minority Interest, as determined under the Employment Agreements, as of the close of business on the day immediately preceding the Closing Date (the "Base Amount"), in the manner and at the times provided in Sections 1.01(b) and (c) below. The Base Amount at December 31, 2003 is set forth in Schedule 1 hereto, and the actual Base Amount will be that amount at December 31, 2003 plus or minus Employee's interest percentage multiplied by the net book accrual income or loss of Employee's department or working entity, for the period from and including January 1, 2004, to the close of business on the day immediately preceding the Closing Date; such net book accrual income or loss shall be reduced by an amount that would equal the federal and state income tax liabilities on the net book accrual income (loss) of RSI allocable to Employee's department or working entity for the year, current and deferred, as if the Employee's department or working entity were subject to these taxes, employing the maximum C corporation income tax rate regardless of the amount of net book accrual income (loss) of RSI allocable to the Employee's department or working entity for the applicable period: provided, however, that the total amount payable pursuant to this Section 1.01(a) shall not be less than $5,000.

(b) RSI shall pay to Employee (i) an amount equal to 50% of the Base Amount not more than 75 days after the Closing (the "Initial Payment Date") and (ii) an amount equal to 50% of the Base Amount on the first anniversary of the Initial Payment Date. The payment of the Base Amount shall not be subject to any restriction or condition of any kind whether in this or any other document and will not be subject to forfeiture for any reason.

(c) Employee acknowledges and agrees that RSI's payment of the Base Amount as described above represents payment in full for Employee's Deferred Compensation Interest and/or for the acquisition and cancellation of Employee's Minority Interest.

SECTION 1.02. Payment of Bonus Amount. (a) Subject to the conditions provided in Section 1.02(b), RSI shall pay to Employee an additional amount equal to the Base Amount, as determined under Section 1.01(a) above (the "Bonus Amount"), pursuant to the RSI 2004 Bonus Plan as described in the following sentence. RSI shall pay to Employee an amount equal to 40% of the Bonus Amount on the second anniversary of the Initial Payment Date, an amount equal to 20% of the Bonus Amount on the third anniversary of the Initial Payment Date and an amount equal to 40% of the Bonus Amount on the fourth anniversary of the Initial Payment Date; provided, however, that the Bonus Amount payments are subject to forfeiture as described in Section 1.02(b).

(b) In the event of Employee's death, "disability" (as defined below) or retirement in accordance with Section 1.02(e) of this Agreement or the termination of Employee's employment by RSI other than for "cause" (as defined below), RSI shall continue to pay to Employee the then remaining unpaid Bonus Amount at the times and in the amounts provided under Section 1.02(a); provided that Employee does not violate Section 1.05 (entitled "Disclosure of Information") or Article III (entitled "Agreement Not to Compete") of the

**Employment Agreement. In the event that Employee's employment terminates for any other reason, including Employee's voluntary termination of employment (other than as a result of retirement in accordance with Section 1.02(e) of this Agreement), or RSI's termination of Employee's employment for "cause", RSI shall not pay to Employee any portion of the then remaining unpaid Bonus Amount. Therefore, in such a case, Employee will forfeit all remaining Bonus Amounts. In addition, in the event that Employee's employment terminates under any of the circumstances set forth in the first sentence of this Section 1.02(b), Employee will forfeit all unpaid portions of the Bonus Amount if Employee violates Section 1.05 or Article III of the Employment Agreement.**

(c) Employee acknowledges and agrees that the Employment Agreements do not give Employee any right to the Bonus Amount and that the Bonus Amount is being made available to Employee as consideration for Employee's entering into this Agreement.

(d) As used in this Agreement and the RSI 2004 Bonus Plan, the term "disability" shall mean bodily injury or disease which prevents Employee from engaging for remuneration or profit in any and every occupation or business for which he is reasonably suited by education, training or experience. The total irrevocable loss of sight of both eyes, or the use of both hands, both feet, or one hand and one foot, will be regarded as total disability in any event.

(e) In order to be eligible to retire and continue to receive any unpaid Bonus Amount payments set forth in Section 1.02(a) of this Agreement at the times and in the amounts set forth therein, Employee must attain the age set forth on Schedule 1; provided, however, that, regardless of Employee's age, Employee may not voluntarily terminate employment and continue to receive any unpaid Bonus Amount payments until a date that is on or after the first anniversary of the Closing Date.

(f) As used in this Agreement and the RSI 2004 Bonus Plan, the term "cause" shall mean (i) receipt by Employee of three or more notices from RSI of Employee's deficient work performance in any period of 24 consecutive months, (ii) any use or possession of alcoholic beverages or any controlled substance during work hours or while on RSI or customer property or working while under the influence of alcoholic beverages or controlled substances, other than possession of any controlled substance for which Employee has a valid prescription from a physician, (iii) any arrest, or commencement of any other criminal proceeding, relating to (A) any act of dishonesty, fraud, theft or other loss against RSI or its officers, employees, customers or suppliers or (B) the possession, sale or use of alcohol or any controlled substance, (iv) conviction of, or plea of guilty or nolo contendere to, any felony, (v) the receipt of three or more notices from RSI of Employee's failure to comply with the health and safety standards of RSI previously communicated to Employee, (vi) to the extent Employee's position requires the possession of any driver's license or other government permit, the loss of such license or permit as a result of any negligence or misconduct of Employee or (vii) any breach of any provision of the Employment Agreements (after giving effect to Section 3.01 of this Agreement) or any provision of this Agreement.

SECTION 1.03. Acceleration of Benefit Payments. RSI reserves the right to accelerate the payment of any amounts set forth in Article I of this Agreement at any time

without the consent of Employee, his estate, beneficiaries or any other person claiming through or under him but Employee shall have no right to compel any accelerated payment.

   SECTION 1.04. <u>Death Benefit.</u> In the event of Employee's death prior to receiving any payment of the Base Amount and/or Bonus Amount that Employee would otherwise be entitled to receive pursuant to this Agreement, such amounts shall be paid under the timeframes set forth in Sections 1.01(b) and 1.02(a) to Employee's designated beneficiary, which beneficiary may be designated to RSI in writing.

   SECTION 1.05. <u>Withholding Taxes.</u> RSI shall withhold from any amounts payable under this Agreement, including the Base Amount and Bonus Amount, such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

ARTICLE II

<u>General</u>

   SECTION 2.01. <u>Consideration.</u> (a) Employee acknowledges and agrees that, in the absence of this Agreement; (i) Employee is not entitled to receive any amount pursuant to Article II of any Employment Agreement (Article II is entitled "Nonqualified Deferred Compensation Agreement" in an Employment Agreement that contains a Deferred Compensation Interest and is entitled "Agreement to Buy and Sell Stock" in an Employment Agreement that contains a Minority Interest), or otherwise in respect of any Deferred Compensation Interest or Minority Interest, unless and until Employee's employment with RSI is terminated, (ii) the Deferred Compensation Interest payable to Employee under the Employment Agreements is subject to reduction during the term of Employee's employment to the extent that Employee's department or working entity experience a loss, (iii) the amounts payable to Employee under the Employment Agreements upon the termination of Employee's employment with RSI are subject to partial or complete forfeiture in the event that Employee is terminated for "cause" (as defined in the Employment Agreements) or upon the breach of certain agreements contained in the Employment Agreements and (iv) Employee would not be entitled to participate in the RSI 2004 Bonus Plan or to receive any portion of the Bonus Amount.

   (b) Employee acknowledges and agrees that, in the absence of the agreements of Employee contained in Articles III (entitled "Amendment of Employment Agreements") and IV (entitled "Waiver and Release") of this Agreement, RSI would not agree to pay Employee (i) any portion of the Base Amount prior to the termination of Employee's employment with RSI or (ii) any portion of the Bonus Amount at any time whatsoever.

   (c) Employee agrees that, in consideration of RSI's entering into this Agreement and its obligation to make the payments described in Article I of this Agreement and other good and valuable consideration the receipt of which is hereby acknowledged, Employee shall be bound by, and agrees to honor and comply with, the agreements contained in Articles III and IV of this Agreement, and further agrees that the payments to be made by RSI to Employee pursuant to Article I of this Agreement represent fair and adequate compensation for Employee's agreement to be bound by Articles III and IV of this Agreement.

SECTION 2.02. <u>Confidentiality.</u> Employee shall not discuss or disclose the existence or contents of this Agreement or the RSI 2004 Bonus Plan to any person other than Employee's immediate family and legal and financial advisors. Employee shall instruct Employee's family and legal and financial advisors to comply with the previous sentence.

## ARTICLE III

### Amendment of Employment Agreements

SECTION 3.01. <u>Amendment.</u> Employee and RSI agree that as of the Closing Date each Employment Agreement shall be amended to delete Article II of such Employment Agreement in its entirety and to delete any other provision of the Employment Agreements relating to Employee's Deferred Compensation Interest and/or Minority Interest. Employee and RSI acknowledge and agree that such amendment constitutes the voluntary agreement of Employee and RSI and satisfies the requirements of each Employment Agreement for a valid amendment or modification.

SECTION 3.02. <u>No Further Liability.</u> As of the Closing Date, RSI shall have terminated Employee's Deferred Compensation Interests and shall have acquired and terminated Employee's Minority Interests and shall have no further obligation or liability to pay any amounts to, or credit any amounts to the account of, Employee pursuant to Article II of any Employment Agreement or otherwise in respect of any Deferred Compensation Interest or Minority Interest, except for RSI's obligation to make certain payments described in Article I above.

SECTION 3.03. <u>Effect on Employment Agreements.</u> Employee and RSI agree that, except as provided in Section 3.01 above and Section 5.07 below, the Employment Agreements shall continue in full force and effect on and after the Closing Date pursuant to the terms thereof. **Without limiting the generality of the foregoing, Employee acknowledges and agrees that on and after the Closing Date Employee shall continue to be bound by and subject to the provisions of Section 1.05 (entitled "Disclosure of Information") and Article III (entitled "Agreement Not to Compete") of each Employment Agreement.**

## ARTICLE IV

### Waiver and Release

SECTION 4.01. <u>Waiver and Release.</u> Employee, on behalf of Employee and Employee's spouse, heirs, dependents, representatives, executors, administrators and successors and assigns (the "<u>Releasing Parties</u>"), waives, releases and forever discharges RSI, its subsidiaries and affiliated companies and each of their former, current and future shareholders, owners, directors, officers, employees, agents, and each of the respective predecessors, successors and assigns, of each of the foregoing (the "<u>Released Parties</u>"), from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, liabilities, obligations, agreements, judgments, charges, claims (including any claim for attorneys' fees), rights and demands whatsoever which Employee and the Releasing Parties have, had or may hereafter have against the Released Parties or any of them relating to, arising out of

or by reason of (a) the provisions of Article II of any Employment Agreement, (b) any Deferred Compensation Interest or Minority Interest, including the termination of such Interests pursuant to this Agreement, (c) the amendment of any Employment Agreement pursuant to Article III of this Agreement or (d) any provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), that relate to the matters described in clauses (a), (b) or (c) above or this Agreement, including any and all such matters arising under any Federal, state or local statute, rule or regulation, or principle of common, tort or contract law; provided, however, that nothing herein shall release RSI from any claims or damages based on any right or claim Employee may have to enforce this Agreement or the Employment Agreements after giving effect to Article III of this Agreement. It is understood that nothing in this Section 4.01 is to be construed as an admission on behalf of the Released Parties of any wrongdoing and any such wrongdoing is expressly denied.

SECTION 4.02. Employee's Representations and Warranties. Employee represents and warrants to RSI that Employee fully understands the terms of the waiver and release contained in this Article IV and that Employee knowingly and voluntarily, of Employee's own free will, without any duress, being fully informed, and after due deliberation of up to 10 days, accepts its terms and signs below as Employee's own free act. Employee understands that, as a result of executing this Agreement, Employee will not have the right to assert that RSI or any other of the Released Parties unlawfully or improperly violated any of Employee's rights under Article II of any Employment Agreement, with respect to any Deferred Compensation Interest or Minority Interest or under ERISA. Employee further represents and warrants that Employee has not filed, and will not initiate, or cause to be initiated on Employee's behalf, any complaint, charge, claim or proceeding against any of the Released Parties before any Federal, state or local agency, court or other body relating to Article II of any Employment Agreement, with respect to any Deferred Compensation Interest or Minority Interest or under ERISA, and will not voluntarily participate in any such proceeding.

ARTICLE V

Miscellaneous

SECTION 5.01. Assignment. (a) This Agreement is personal to Employee and shall not be assignable by Employee under any circumstances, and any attempt by Employee to assign Employee's rights under this Agreement shall be null and void. RSI may assign this Agreement and its rights and obligations hereunder to any person or entity that is a shareholder, affiliate or subsidiary of RSI. Upon such assignment, the rights and obligations of RSI hereunder shall become the rights and obligations of such shareholder, affiliate or subsidiary.

(b) Notwithstanding Section 5.01(a) of this Agreement, if Employee should become divorced, a portion of his Base Amount and/or Bonus Amount may be assigned to his former spouse by order of the court having jurisdiction over the divorce. Upon receipt of a certified copy of such an order, and upon determining that the order assigns a determinable amount or percentage of Employee's Base Amount and/or Bonus Amount to the former spouse, RSI shall give effect to the order, so that when a benefit with respect to Employee becomes payable, the former spouse will receive the specified amount or percentage (as stated in the order) of Employee's Base Amount and/or Bonus Amount.

SECTION 5.02. Successors. This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of RSI and the personal and legal representatives, executors, administrators, successors, distributees, devisees and legatees of Employee. Employee acknowledges and agrees that all his or her covenants and obligations to RSI, as well as the rights of RSI under this Agreement, shall run in favor of and will be enforceable by RSI and its successors and assigns.

SECTION 5.03. Entire Agreement. Subject to Section 3.03 of this Agreement, this Agreement contains the entire understanding of the parties with respect to the subject matter hereof, and all oral or written agreements or representations, express or implied, with respect to the subject matter hereof are set forth in this Agreement.

SECTION 5.04. Amendment. This Agreement may not be altered, modified or amended except by written instrument signed by both parties hereto.

SECTION 5.05. Communications. Any communication made by Employee to RSI regarding the subject matter of this Agreement shall be made in writing and delivered to Simmy Thibeaux, Red Simpson, Inc., 4615 Parliament Drive, Alexandria, LA 71303, or to such other address as RSI shall specify to Employee in writing. Any communication made by RSI to Employee regarding the subject matter of this Agreement shall be made in writing and delivered to the address set forth on Schedule 1 hereto. Employee shall promptly notify RSI as described above in the event that Employee's current address is not as set forth on Schedule 1 hereto.

SECTION 5.06. Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of the State of Louisiana applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

SECTION 5.07. Judicial Proceedings.

(a) Any legal action or proceeding relating to this Agreement or the Employment Agreement shall be instituted in the Ninth Judicial District, Rapides Parish, Louisiana or the United States District Court of the Western District of Louisiana, Alexandria Division.

(b) Any objection to the venue of any such action or proceeding brought in such courts is hereby waived.

(c) Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or the Employment Agreement or any transaction contemplated hereby or thereby. Each party (i) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other parties hereto have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 5.07.

SECTION 5.08. Severability. If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, illegal, void or

unenforceable in any jurisdiction, then such provision, covenant or condition shall, as to such jurisdiction, be modified or restricted to the extent necessary to make such provision valid, binding and enforceable, or, if such provision cannot be modified or restricted, then such provision shall, as to such jurisdiction, be deemed to be excised from this Agreement and any such invalidity, illegality or unenforceability with respect to such provision shall not invalidate or render unenforceable such provision in any other jurisdiction, and the remainder of the provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

SECTION 5.09.  No Waiver.  The failure of a party to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver of such party's rights or deprive such party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

SECTION 5.10.  Counterparts.  This Agreement may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

SECTION 5.11.  Construction.  (a) The headings in this Agreement are for convenience only, are not a part of this Agreement and shall not affect the construction of the provisions of this Agreement.

(b) The word "including" shall mean "including, without limitation".

SECTION 5.12.  Effectiveness.  This Agreement shall become effective as of the Closing Date.  This Agreement shall be null and void and of no further force and effect if the Closing Date does not occur or the Stock Purchase Agreement is terminated prior to the Closing Date.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first written above.

RED SIMPSON, INC.,

By: _____

Simeon A. Thibeaux, Jr.
Secretary/Treasurer

Schedule 1

| Name: | Chuck T. Chaddrick |
|---|---|
| Title: | Foreman |
| Address: | P. O. Box 344, Turkey Creek, LA  70585 |
| Telephone: | *Octc* 337-461-2926 |
| SSN: | 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 |
| | |
| Retirement Age[1]: | 60 |
| | |
| Address: | |
| Telephone: | |
| | |
| Base Amount as of December 31, 2003: | $112,754 |
| | |
| Estimated Bonus Amount (based on December 31, 2003 Base Amount): | $112,754 |

Acknowledged by Employee:

*Chuck T. Chaddrick*
Chuck T. Chaddrick
P. O. Box 344
Turkey Creek, LA  70585

---

[1] "Retirement Age" is (i) 60 for foremen, (ii) 62 for general foremen and superintendents and (iii) 65 for other employees who are being asked to sign an Amendment Agreement.