# EXHIBIT H

> **This is an important document affecting your legal rights, including the timing and amount of your deferred compensation payments. If you have any questions regarding this document or if you need a copy of your employment agreements, please contact Simeon Thibeaux at RSI. RSI urges you to review this document carefully before signing it.**

AMENDMENT AGREEMENT ("Agreement") dated as of May 6, 2004, between Red Simpson, Inc. ("RSI"), a Louisiana corporation, and the individual whose name is set forth on Schedule 1 hereto ("Employee").

WHEREAS Employee is party to (a) an Employment Contract, Nonqualified Deferred Compensation Agreement and Agreement Not to Compete and/or (b) an Employment Contract, Agreement to Buy and Sell and Agreement Not to Compete, in each case with RSI (each, an "Employment Agreement");

WHEREAS the Employment Agreements give Employee the right to receive payments from RSI after the termination of Employee's employment with RSI, subject to certain conditions, based on (a) the net book accrual income or loss of Employee's department or working entity (a "Deferred Compensation Interest") and/or (b) the net annual accumulated earnings of a subsidiary of RSI of which Employee is a minority shareholder (a "Minority Interest");

WHEREAS RSI has entered into a Stock Purchase Agreement, dated as of May 4, 2004, among RSI, Pike Electric, Inc. ("Pike"), and certain other parties (the "Stock Purchase Agreement"), pursuant to which, among other things, Pike will purchase all the outstanding stock of RSI (the "Transaction");

WHEREAS RSI desires to amend the Employment Agreements to terminate Employee's Deferred Compensation Interest and/or to acquire and terminate Employee's Minority Interest, as the case may be, as of the closing of the Transaction (the "Closing Date"), and for Employee to waive and release RSI from any claims Employee may have in respect of those Interests; and

WHEREAS, in consideration of Employee's agreement to the amendment and waiver and release (which are contained in Articles III and IV of this Agreement), RSI desires (a) to accelerate the payment of certain amounts that would not be paid to Employee until the termination of Employee's employment and (b) to pay certain amounts to Employee that Employee would not otherwise receive, which amounts will be paid under RSI's newly adopted bonus plan (the "RSI 2004 Bonus Plan") (in the case of clauses (a) and (b), as described in Article I of this Agreement);

NOW, THEREFORE, in consideration of the mutual agreements, provisions and covenants contained herein, and intending to be legally bound hereby, Employee and RSI agree as follows:

{N1136968.1}

ARTICLE I

Payments to Employee

SECTION 1.01. Payment of Base Amount. (a) RSI shall pay to Employee an amount equal to the total value of Employee's Deferred Compensation Interest and/or Minority Interest, as determined under the Employment Agreements, as of the close of business on the day immediately preceding the Closing Date (the "Base Amount"), in the manner and at the times provided in Sections 1.01(b) and (c) below. The Base Amount at December 31, 2003 is set forth in Schedule 1 hereto, and the actual Base Amount will be that amount at December 31, 2003 plus or minus Employee's interest percentage multiplied by the net book accrual income or loss of Employee's department or working entity, for the period from and including January 1, 2004, to the close of business on the day immediately preceding the Closing Date; such net book accrual income or loss shall be reduced by an amount that would equal the federal and state income tax liabilities on the net book accrual income (loss) of RSI allocable to Employee's department or working entity for the year, current and deferred, as if the Employee's department or working entity were subject to these taxes, employing the maximum C corporation income tax rate regardless of the amount of net book accrual income (loss) of RSI allocable to the Employee's department or working entity for the applicable period: provided, however, that the total amount payable pursuant to this Section 1.01(a) shall not be less than $5,000.

(b) RSI shall pay to Employee (i) an amount equal to 50% of the Base Amount not more than 75 days after the Closing (the "Initial Payment Date") and (ii) an amount equal to 50% of the Base Amount on the first anniversary of the Initial Payment Date. The payment of the Base Amount shall not be subject to any restriction or condition of any kind whether in this or any other document and will not be subject to forfeiture for any reason.

(c) Employee acknowledges and agrees that RSI's payment of the Base Amount as described above represents payment in full for Employee's Deferred Compensation Interest and/or for the acquisition and cancellation of Employee's Minority Interest.

SECTION 1.02. Payment of Bonus Amount. (a) Subject to the conditions provided in Section 1.02(b), RSI shall pay to Employee an additional amount equal to the Base Amount, as determined under Section 1.01(a) above (the "Bonus Amount"), pursuant to the RSI 2004 Bonus Plan as described in the following sentence. RSI shall pay to Employee an amount equal to 40% of the Bonus Amount on the second anniversary of the Initial Payment Date, an amount equal to 20% of the Bonus Amount on the third anniversary of the Initial Payment Date and an amount equal to 40% of the Bonus Amount on the fourth anniversary of the Initial Payment Date; provided, however, that the Bonus Amount payments are subject to forfeiture as described in Section 1.02(b).

(b) In the event of Employee's death, "disability" (as defined below) or retirement in accordance with Section 1.02(e) of this Agreement or the termination of Employee's employment by RSI other than for "cause" (as defined below), RSI shall continue to pay to Employee the then remaining unpaid Bonus Amount at the times and in the amounts provided under Section 1.02(a); provided that Employee does not violate Section 1.05 (entitled "Disclosure of Information") or Article III (entitled "Agreement Not to Compete") of the

Employment Agreement. **In the event that Employee's employment terminates for any other reason, including Employee's voluntary termination of employment (other than as a result of retirement in accordance with Section 1.02(e) of this Agreement), or RSI's termination of Employee's employment for "cause", RSI shall not pay to Employee any portion of the then remaining unpaid Bonus Amount. Therefore, in such a case, Employee will forfeit all remaining Bonus Amounts. In addition, in the event that Employee's employment terminates under any of the circumstances set forth in the first sentence of this Section 1.02(b), Employee will forfeit all unpaid portions of the Bonus Amount if Employee violates Section 1.05 or Article III of the Employment Agreement.**

(c) Employee acknowledges and agrees that the Employment Agreements do not give Employee any right to the Bonus Amount and that the Bonus Amount is being made available to Employee as consideration for Employee's entering into this Agreement.

(d) As used in this Agreement and the RSI 2004 Bonus Plan, the term "disability" shall mean bodily injury or disease which prevents Employee from engaging for remuneration or profit in any and every occupation or business for which he is reasonably suited by education, training or experience. The total irrevocable loss of sight of both eyes, or the use of both hands, both feet, or one hand and one foot, will be regarded as total disability in any event.

(e) In order to be eligible to retire and continue to receive any unpaid Bonus Amount payments set forth in Section 1.02(a) of this Agreement at the times and in the amounts set forth therein, Employee must attain the age set forth on Schedule 1; provided, however, that, regardless of Employee's age, Employee may not voluntarily terminate employment and continue to receive any unpaid Bonus Amount payments until a date that is on or after the first anniversary of the Closing Date.

(f) As used in this Agreement and the RSI 2004 Bonus Plan, the term "cause" shall mean (i) receipt by Employee of three or more notices from RSI of Employee's deficient work performance in any period of 24 consecutive months, (ii) any use or possession of alcoholic beverages or any controlled substance during work hours or while on RSI or customer property or working while under the influence of alcoholic beverages or controlled substances, other than possession of any controlled substance for which Employee has a valid prescription from a physician, (iii) any arrest, or commencement of any other criminal proceeding, relating to (A) any act of dishonesty, fraud, theft or other loss against RSI or its officers, employees, customers or suppliers or (B) the possession, sale or use of alcohol or any controlled substance, (iv) conviction of, or plea of guilty or nolo contendere to, any felony, (v) the receipt of three or more notices from RSI of Employee's failure to comply with the health and safety standards of RSI previously communicated to Employee, (vi) to the extent Employee's position requires the possession of any driver's license or other government permit, the loss of such license or permit as a result of any negligence or misconduct of Employee or (vii) any breach of any provision of the Employment Agreements (after giving effect to Section 3.01 of this Agreement) or any provision of this Agreement.

SECTION 1.03. Acceleration of Benefit Payments. RSI reserves the right to accelerate the payment of any amounts set forth in Article I of this Agreement at any time

without the consent of Employee, his estate, beneficiaries or any other person claiming through or under him but Employee shall have no right to compel any accelerated payment.

SECTION 1.04. Death Benefit. In the event of Employee's death prior to receiving any payment of the Base Amount and/or Bonus Amount that Employee would otherwise be entitled to receive pursuant to this Agreement, such amounts shall be paid under the timeframes set forth in Sections 1.01(b) and 1.02(a) to Employee's designated beneficiary, which beneficiary may be designated to RSI in writing.

SECTION 1.05. Withholding Taxes. RSI shall withhold from any amounts payable under this Agreement, including the Base Amount and Bonus Amount, such Federal, state and local taxes as may be required to be withheld pursuant to any applicable law or regulation.

ARTICLE II

General

SECTION 2.01. Consideration. (a) Employee acknowledges and agrees that, in the absence of this Agreement; (i) Employee is not entitled to receive any amount pursuant to Article II of any Employment Agreement (Article II is entitled "Nonqualified Deferred Compensation Agreement" in an Employment Agreement that contains a Deferred Compensation Interest and is entitled "Agreement to Buy and Sell Stock" in an Employment Agreement that contains a Minority Interest), or otherwise in respect of any Deferred Compensation Interest or Minority Interest, unless and until Employee's employment with RSI is terminated, (ii) the Deferred Compensation Interest payable to Employee under the Employment Agreements is subject to reduction during the term of Employee's employment to the extent that Employee's department or working entity experience a loss, (iii) the amounts payable to Employee under the Employment Agreements upon the termination of Employee's employment with RSI are subject to partial or complete forfeiture in the event that Employee is terminated for "cause" (as defined in the Employment Agreements) or upon the breach of certain agreements contained in the Employment Agreements and (iv) Employee would not be entitled to participate in the RSI 2004 Bonus Plan or to receive any portion of the Bonus Amount.

(b) Employee acknowledges and agrees that, in the absence of the agreements of Employee contained in Articles III (entitled "Amendment of Employment Agreements") and IV (entitled "Waiver and Release") of this Agreement, RSI would not agree to pay Employee (i) any portion of the Base Amount prior to the termination of Employee's employment with RSI or (ii) any portion of the Bonus Amount at any time whatsoever.

(c) Employee agrees that, in consideration of RSI's entering into this Agreement and its obligation to make the payments described in Article I of this Agreement and other good and valuable consideration the receipt of which is hereby acknowledged, Employee shall be bound by, and agrees to honor and comply with, the agreements contained in Articles III and IV of this Agreement, and further agrees that the payments to be made by RSI to Employee pursuant to Article I of this Agreement represent fair and adequate compensation for Employee's agreement to be bound by Articles III and IV of this Agreement.

{N1136968.1}  4

SECTION 2.02. <u>Confidentiality.</u> Employee shall not discuss or disclose the existence or contents of this Agreement or the RSI 2004 Bonus Plan to any person other than Employee's immediate family and legal and financial advisors. Employee shall instruct Employee's family and legal and financial advisors to comply with the previous sentence.

ARTICLE III

Amendment of Employment Agreements

SECTION 3.01. <u>Amendment.</u> Employee and RSI agree that as of the Closing Date each Employment Agreement shall be amended to delete Article II of such Employment Agreement in its entirety and to delete any other provision of the Employment Agreements relating to Employee's Deferred Compensation Interest and/or Minority Interest. Employee and RSI acknowledge and agree that such amendment constitutes the voluntary agreement of Employee and RSI and satisfies the requirements of each Employment Agreement for a valid amendment or modification.

SECTION 3.02. <u>No Further Liability.</u> As of the Closing Date, RSI shall have terminated Employee's Deferred Compensation Interests and shall have acquired and terminated Employee's Minority Interests and shall have no further obligation or liability to pay any amounts to, or credit any amounts to the account of, Employee pursuant to Article II of any Employment Agreement or otherwise in respect of any Deferred Compensation Interest or Minority Interest, except for RSI's obligation to make certain payments described in Article I above.

SECTION 3.03. <u>Effect on Employment Agreements.</u> Employee and RSI agree that, except as provided in Section 3.01 above and Section 5.07 below, the Employment Agreements shall continue in full force and effect on and after the Closing Date pursuant to the terms thereof. **Without limiting the generality of the foregoing, Employee acknowledges and agrees that on and after the Closing Date Employee shall continue to be bound by and subject to the provisions of Section 1.05 (entitled "Disclosure of Information") and Article III (entitled "Agreement Not to Compete") of each Employment Agreement.**

ARTICLE IV

Waiver and Release

SECTION 4.01. <u>Waiver and Release.</u> Employee, on behalf of Employee and Employee's spouse, heirs, dependents, representatives, executors, administrators and successors and assigns (the "<u>Releasing Parties</u>"), waives, releases and forever discharges RSI, its subsidiaries and affiliated companies and each of their former, current and future shareholders, owners, directors, officers, employees, agents, and each of the respective predecessors, successors and assigns, of each of the foregoing (the "<u>Released Parties</u>"), from any and all manner of actions and causes of action, suits, debts, dues, accounts, bonds, covenants, contracts, liabilities, obligations, agreements, judgments, charges, claims (including any claim for attorneys' fees), rights and demands whatsoever which Employee and the Releasing Parties have, had or may hereafter have against the Released Parties or any of them relating to, arising out of

or by reason of (a) the provisions of Article II of any Employment Agreement, (b) any Deferred Compensation Interest or Minority Interest, including the termination of such Interests pursuant to this Agreement, (c) the amendment of any Employment Agreement pursuant to Article III of this Agreement or (d) any provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), that relate to the matters described in clauses (a), (b) or (c) above or this Agreement, including any and all such matters arising under any Federal, state or local statute, rule or regulation, or principle of common, tort or contract law; provided, however, that nothing herein shall release RSI from any claims or damages based on any right or claim Employee may have to enforce this Agreement or the Employment Agreements after giving effect to Article III of this Agreement. It is understood that nothing in this Section 4.01 is to be construed as an admission on behalf of the Released Parties of any wrongdoing and any such wrongdoing is expressly denied.

SECTION 4.02. Employee's Representations and Warranties. Employee represents and warrants to RSI that Employee fully understands the terms of the waiver and release contained in this Article IV and that Employee knowingly and voluntarily, of Employee's own free will, without any duress, being fully informed, and after due deliberation of up to 10 days, accepts its terms and signs below as Employee's own free act. Employee understands that, as a result of executing this Agreement, Employee will not have the right to assert that RSI or any other of the Released Parties unlawfully or improperly violated any of Employee's rights under Article II of any Employment Agreement, with respect to any Deferred Compensation Interest or Minority Interest or under ERISA. Employee further represents and warrants that Employee has not filed, and will not initiate, or cause to be initiated on Employee's behalf, any complaint, charge, claim or proceeding against any of the Released Parties before any Federal, state or local agency, court or other body relating to Article II of any Employment Agreement, with respect to any Deferred Compensation Interest or Minority Interest or under ERISA, and will not voluntarily participate in any such proceeding.

ARTICLE V

Miscellaneous

SECTION 5.01. Assignment. (a) This Agreement is personal to Employee and shall not be assignable by Employee under any circumstances, and any attempt by Employee to assign Employee's rights under this Agreement shall be null and void. RSI may assign this Agreement and its rights and obligations hereunder to any person or entity that is a shareholder, affiliate or subsidiary of RSI. Upon such assignment, the rights and obligations of RSI hereunder shall become the rights and obligations of such shareholder, affiliate or subsidiary.

(b) Notwithstanding Section 5.01(a) of this Agreement, if Employee should become divorced, a portion of his Base Amount and/or Bonus Amount may be assigned to his former spouse by order of the court having jurisdiction over the divorce. Upon receipt of a certified copy of such an order, and upon determining that the order assigns a determinable amount or percentage of Employee's Base Amount and/or Bonus Amount to the former spouse, RSI shall give effect to the order, so that when a benefit with respect to Employee becomes payable, the former spouse will receive the specified amount or percentage (as stated in the order) of Employee's Base Amount and/or Bonus Amount.

SECTION 5.02. <u>Successors.</u> This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of RSI and the personal and legal representatives, executors, administrators, successors, distributees, devisees and legatees of Employee. Employee acknowledges and agrees that all his or her covenants and obligations to RSI, as well as the rights of RSI under this Agreement, shall run in favor of and will be enforceable by RSI and its successors and assigns.

SECTION 5.03. <u>Entire Agreement.</u> Subject to Section 3.03 of this Agreement, this Agreement contains the entire understanding of the parties with respect to the subject matter hereof, and all oral or written agreements or representations, express or implied, with respect to the subject matter hereof are set forth in this Agreement.

SECTION 5.04. <u>Amendment.</u> This Agreement may not be altered, modified or amended except by written instrument signed by both parties hereto.

SECTION 5.05. <u>Communications.</u> Any communication made by Employee to RSI regarding the subject matter of this Agreement shall be made in writing and delivered to Simmy Thibeaux, Red Simpson, Inc., 4615 Parliament Drive, Alexandria, LA 71303, or to such other address as RSI shall specify to Employee in writing. Any communication made by RSI to Employee regarding the subject matter of this Agreement shall be made in writing and delivered to the address set forth on Schedule 1 hereto. Employee shall promptly notify RSI as described above in the event that Employee's current address is not as set forth on Schedule 1 hereto.

SECTION 5.06. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the internal laws of the State of Louisiana applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

SECTION 5.07. <u>Judicial Proceedings.</u>

(a) Any legal action or proceeding relating to this Agreement or the Employment Agreement shall be instituted in the Ninth Judicial District, Rapides Parish, Louisiana or the United States District Court of the Western District of Louisiana, Alexandria Division.

(b) Any objection to the venue of any such action or proceeding brought in such courts is hereby waived.

(c) Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or the Employment Agreement or any transaction contemplated hereby or thereby. Each party (i) certifies that no representative, agent or attorney of any other party has represented, expressly or otherwise, that such other party would not, in the event of litigation, seek to enforce the foregoing waiver and (ii) acknowledges that it and the other parties hereto have been induced to enter into this Agreement by, among other things, the mutual waivers and certifications in this Section 5.07.

SECTION 5.08. <u>Severability.</u> If any term, provision, covenant or condition of this Agreement is held by a court of competent jurisdiction to be invalid, illegal, void or

{N1136968.1}                                    7

unenforceable in any jurisdiction, then such provision, covenant or condition shall, as to such jurisdiction, be modified or restricted to the extent necessary to make such provision valid, binding and enforceable, or, if such provision cannot be modified or restricted, then such provision shall, as to such jurisdiction, be deemed to be excised from this Agreement and any such invalidity, illegality or unenforceability with respect to such provision shall not invalidate or render unenforceable such provision in any other jurisdiction, and the remainder of the provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

SECTION 5.09. No Waiver. The failure of a party to insist upon strict adherence to any term of this Agreement on any occasion shall not be considered a waiver of such party's rights or deprive such party of the right thereafter to insist upon strict adherence to that term or any other term of this Agreement.

SECTION 5.10. Counterparts. This Agreement may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

SECTION 5.11. Construction. (a) The headings in this Agreement are for convenience only, are not a part of this Agreement and shall not affect the construction of the provisions of this Agreement.

(b) The word "including" shall mean "including, without limitation".

SECTION 5.12. Effectiveness. This Agreement shall become effective as of the Closing Date. This Agreement shall be null and void and of no further force and effect if the Closing Date does not occur or the Stock Purchase Agreement is terminated prior to the Closing Date.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first written above.

                       RED SIMPSON, INC.,

By: _____
                      Simeon A. Thibeaux, Jr.
                      Secretary/Treasurer

{N1136968.1}

## ACKNOWLEDGEMENT

In signing this Agreement, I acknowledge and agree, as more fully described in this Agreement, that:

(1)  I am giving up my rights under my Employment Agreements to earn additional amounts through a Deferred Compensation Interest and/or a Minority Interest and I am giving up my rights to delay receiving payment for those Interests until after I retire or my employment ends; and

(2)  I am waiving all rights or claims arising under the Employee Retirement Income Security Act of 1974, as amended, regarding my Deferred Compensation Interest and/or Minority Interest; and

(3)  In exchange for giving up and waiving these rights, I am receiving, now and over the next four years, other rights and additional cash payments that I would not otherwise receive; and

(4)  I have been given up to 10 days to decide whether to sign this Agreement; and

(5)  If the Closing Date does not occur or if the Stock Purchase Agreement is terminated prior to the Closing Date, this Agreement will not become effective and will have no legal effect.

DATED: 5-6, 2004

EMPLOYEE:

_____
Timothy Dreddy

{N1136968.1}

## Schedule 1

| Name: | Timothy Droddy |
|---|---|
| Title: | General Foreman |
| Address: | 3518 Hwy. 327, Silsbee, TX 77656 |
| Telephone: | 409-386-0505 |
| SSN: | 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 |
| | |
| Retirement Age[1]: | 62 |
| | |
| Address: | |
| Telephone: | |
| | |
| Base Amount as of December 31, 2003: | $183,575 |
| | |
| Estimated Bonus Amount (based on December 31, 2003 Base Amount): | $183,575 |

Acknowledged by Employee:

*Timothy Droddy* (signature)

Timothy Droddy
3518 Hwy. 327
Silsbee, TX 77656

---

[1] "Retirement Age" is (i) 60 for foremen, (ii) 62 for general foremen and superintendents and (iii) 65 for other employees who are being asked to sign an Amendment Agreement.

{N1136968.1}

# EXHIBIT I

SECOND AMENDMENT AGREEMENT (this "Agreement") dated as of May 31, 2005, between Red Simpson, Inc., a Louisiana corporation ("RSI"), and the individual whose name is set forth on the signature page attached hereto ("Employee").

WHEREAS Employee is party to (a) an Employment Contract, Nonqualified Deferred Compensation Agreement and Agreement Not to Compete and/or (b) an Employment Contract, Agreement to Buy and Sell and Agreement Not to Compete, in each case with RSI (each, an "Employment Agreement");

WHEREAS on July 1, 2004, Pike Electric, Inc. ("Pike") purchased all the outstanding stock of RSI (the "Acquisition"), and as a result RSI became a wholly owned subsidiary of Pike;

WHEREAS, in connection with the Acquisition, RSI and Employee amended the Employment Agreements pursuant to the Amendment Agreement dated May, 2004, between RSI and Employee (the "First Amendment"), and pursuant thereto Employee became entitled to receive the Bonus Amount (capitalized terms used but not defined herein have the meanings assigned thereto in the First Amendment) under the RSI 2004 Bonus Plan, subject to the terms and conditions set forth therein;

WHEREAS paragraphs (a) and (b) of Section 1.02 of the First Amendment currently provide that:

"(a) Subject to the conditions provided in Section 1.02(b), RSI shall pay to Employee an additional amount equal to the Base Amount, as determined under Section 1.01(a) above (the "Bonus Amount"), pursuant to the RSI 2004 Bonus Plan as described in the following sentence. RSI shall pay to Employee an amount equal to 40% of the Bonus Amount on the second anniversary of the Initial Payment Date, an amount equal to 20% of the Bonus Amount on the third anniversary of the Initial Payment Date and an amount equal to 40% of the Bonus Amount on the fourth anniversary of the Initial Payment Date; provided, however, that the Bonus Amount payments are subject to forfeiture as described in Section 1.02(b).

(b) In the event of Employee's death, "disability" (as defined below) or retirement in accordance with Section 1.02(e) of this Agreement or the termination of Employee's employment by RSI other than for "cause" (as defined below), RSI shall continue to pay to Employee the then remaining unpaid Bonus Amount at the times and in the amounts provided under Section 1.02(a); provided that Employee does not violate Section 1.05 (entitled "Disclosure of Information") or Article III (entitled "Agreement Not to Compete") of the Employment Agreement. **In the event that Employee's employment terminates for any other reason, including Employee's voluntary termination of employment (other than as a result of retirement in accordance with Section 1.02(e) of this Agreement), or RSI's termination of Employee's employment for "cause", RSI shall not pay to Employee any portion of the**

then remaining unpaid Bonus Amount. Therefore, in such a case, Employee will forfeit all remaining Bonus Amounts. In addition, in the event that Employee's employment terminates under any of the circumstances set forth in the first sentence of this Section 1.02(b), Employee will forfeit all unpaid portions of the Bonus Amount if Employee violates Section 1.05 or Article III of the Employment Agreement."; and

WHEREAS RSI and Employee desire to amend the First Amendment to prevent, in certain circumstances, the forfeiture of the Bonus Amount pursuant to paragraphs (a) and (b) of Section 1.02 of the First Amendment;

NOW, THEREFORE, in consideration of the mutual agreements, provisions and covenants contained herein, and intending to be legally bound hereby, Employee and RSI agree as follows:

SECTION 1.01. Effectiveness. This Agreement shall be effective as of March 31, 2005.

SECTION 1.02. Amendment. Paragraphs (a) and (b) of Section 1.02 of the First Amendment are hereby deleted in their entirety and the following is substituted therefor:

"(a) Subject to Section 1.02(b), RSI shall pay to Employee an additional amount equal to the Base Amount, as determined under Section 1.01(a) (the "Bonus Amount"), pursuant to the RSI 2004 Bonus Plan as described in the following sentence. RSI shall pay to Employee an amount equal to 40% of the Bonus Amount on the second anniversary of the Initial Payment Date, an amount equal to 20% of the Bonus Amount on the third anniversary of the Initial Payment Date and an amount equal to 40% of the Bonus Amount on the fourth anniversary of the Initial Payment Date; provided, however, that the payment of the Bonus Amount is subject to deferral or forfeiture as provided in Section 1.02(b).

(b) In the event of (i) Employee's death, "disability" (as defined below) or retirement in accordance with Section 1.02(e) or (ii) the termination of Employee's employment by RSI other than for "cause" or "specified cause" (each as defined below), RSI shall continue to pay to Employee the then remaining unpaid Bonus Amount at the times and in the amounts provided under Section 1.02(a), conditioned upon Employee's continuing compliance with Section 1.05 (entitled "Disclosure of Information") and Article III (entitled "Agreement Not to Compete") of the Employment Agreement. In the event that (i) Employee's employment terminates as a result of Employee's voluntary termination (other than as a result of retirement in accordance with Section 1.02(e)) or RSI's termination of Employee's employment for "cause" (other than for any "specified cause" or any violation of Section 1.05 of the Employment Agreement) or (ii) Employee violates Article III of the Employment Agreement (whether before or after the termination of Employee's employment), each then remaining unpaid Bonus Amount payment shall be paid instead on the fifteenth (15th) anniversary of the Initial Payment Date

and, in such event, interest shall accrue annually on the amount of each such payment at the Specified Rate (as defined below) commencing on the date such payment would otherwise have been payable under Section 1.02(a). In the event that (i) Employee's employment terminates as a result of RSI's termination of Employee's employment for any "specified cause" or (ii) Employee violates Section 1.05 of the Employment Agreement (whether before or after the termination of Employee's employment), RSI shall not pay to Employee, and Employee shall forfeit, any then remaining unpaid Bonus Amount payments. For purposes of this Agreement, "specified cause" shall mean any event described in (1) clause (ii) or (iv) of Section 1.02(f), (2) clause (iii) of Section 1.02(f), but only to the extent Employee is convicted of, or pleads guilty or nolo contendere to, such charge or allegation or (3) clause (v) of Section 1.02(f), but only to the extent any such failure to comply with health and safety standards results or could result in serious injury to Employee or any other person or any material harm to Employer or its affiliates. For purposes of this Agreement, "Specified Rate" shall mean, with respect to each remaining unpaid Bonus Amount payment, on annual interest rate equal to the sum of (i) the interpolated yield on a 15-year Treasury security as of the date on which such payment would otherwise have been payable under Section 1.02(a), (ii) the Applicable Margin for Eurodollar Rate Tranche B Term Loans (within the meaning of the Amended and Restated Credit Agreement among Pike, Barclays Bank PLC, as Administrative Agent, and the other parties thereto dated as of July 1, 2004) as of such date and (iii) 0.75%."

SECTION 1.03. No Pledge. Employee shall not assign, pledge, hypothecate, encumber or otherwise transfer all or any portion of Employee's right to receive the Bonus Amount, and any attempt by Employee to do so shall be null and void.

SECTION 1.04. Assignment; Successors. This Agreement is personal to Employee and shall not be assignable, in whole or in part, by Employee under any circumstances, and any attempt by Employee to assign all or any portion of Employee's rights under this Agreement shall be null and void. RSI may assign this Agreement and its rights and obligations hereunder to any person or entity that is a shareholder, affiliate or subsidiary of RSI. Upon such assignment, the rights and obligations of RSI hereunder shall become the rights and obligations of such shareholder, affiliate or subsidiary. This Agreement shall be binding upon and shall inure to the benefit of the successors and assigns of RSI and the personal and legal representatives, executors, administrators, successors, distributees, devisees and legatees of Employee. Employee acknowledges and agrees that all Employee's covenants and obligations to Employer, as well as the rights of Employer under this Agreement, shall run in favor of and shall be enforceable by Employer, Pike, their respective affiliates and their respective successors and assigns.

SECTION 1.05. Entire Agreement. This Agreement contains the entire understanding of the parties with respect to the subject matter hereof, and all oral or written agreements or representations, express or implied, with respect to the subject matter hereof are set forth herein.

SECTION 1.06. <u>Amendment.</u> This Agreement may not be altered, modified or amended except by written instrument signed by both parties hereto.

SECTION 1.07. <u>Governing Law.</u> This Agreement shall be governed by and construed in accordance with the internal laws of the State of Louisiana applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.

SECTION 1.08. <u>Judicial Proceedings.</u> Any legal action or proceeding relating to this Agreement shall be instituted in the Ninth Judicial District, Rapides Parish, Louisiana or the United States District Court of the Western District of Louisiana, Alexandria Division. Any objection to the venue of any such action or proceeding brought in such courts is hereby waived. Each party hereby waives, to the fullest extent permitted by applicable law, any right it may have to a trial by jury in respect to any litigation directly or indirectly arising out of, under or in connection with this Agreement or any transaction contemplated hereby.

SECTION 1.09. <u>Counterparts.</u> This Agreement may be signed in counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the date first written above.

RED SIMPSON, INC., a subsidiary of PIKE ELECTRIC, INC.

By: _____
Name: J. Eric Pike
Title: President and CEO

EMPLOYEE,

_____
Name: Droddy, Tim

Please sign and date the acknowledgment statement below and return this page to me to signify your receipt of this Memorandum and the attached Amendment Agreement. By signing this acknowledgement, you will not be accepting RSI's offer to accelerate your deferred compensation benefit or acquire your minority interest. To accept RSI's offer, you must still sign and return the Amendment Agreement, including the attached Assignment of Minority Interest in Stock if you have a minority interest benefit. If you hold minority interests, please also return your Stock Certificates. Your acceptance or non-acceptance of this offer will not affect your employment status.

### EMPLOYEE'S ACKNOWLEDGEMENT OF RECEIPT:

I acknowledge that I received this Memorandum and the attached Amendment Agreement. I understand that in order to accept the Company's offer to receive a distribution of my deferred compensation and to acquire my minority interest at this time and to be eligible to receive the Bonus Amount, I must sign and return the Amendment Agreement within ten calendar days after the date indicated by my signature below.

*Timothy Dodd*
[EMPLOYEE'S NAME--PLEASE PRINT]

*Timothy Dodd*
[SIGNATURE]

Date: 5-6-04