IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION and
PIKE ELECTRIC, INC.,

                              Plaintiffs,

             vs.

MICK DUBEA,

                              Defendant.

Civil Action No. 05-879 (SLR)

**REDACTED - PUBLIC VERSION**

**OPENING BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER
REJECTING DEFENDANT'S CLAIMS OF PRIVILEGE AND FOR DISCOVERY
SANCTIONS DUE TO SPOLIATION OF EVIDENCE**

OF COUNSEL:
Michael A. Paskin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

April 27, 2006

William J. Wade (#704)
wade@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

Attorneys for Plaintiffs Pike Electric
Corporation and Pike Electric, Inc.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................... iii

NATURE AND STAGE OF PROCEEDINGS ............................................................ 1

SUMMARY OF ARGUMENT ................................................................................... 2

STATEMENT OF FACTS ......................................................................................... 3

    A.   Pike Acquires RSI in Reliance on Dubea's Promise to Abide by the Non-
        Compete and Non-Disclosure Provisions of his Employment Agreement ............ 3

    B.   Dubea Breaches the Employment Agreement .................................................. 4

    C.   Dubea Competes With Pike. ............................................................................. 4

    D.   Dubea Destroys Evidence Integral to the Case. ............................................... 5

ARGUMENT ............................................................................................................. 6

I.    THE DISCARDED DOCUMENTS ARE NOT PRIVILEGED. ........................... 6

II.   DUBEA SHOULD BE SANCTIONED FOR SPOLIATION OF EVIDENCE. ........ 12

    A.   Dubea's Intentional Destruction of Obviously Relevant Evidence
        Demonstrates a High Degree of Fault. ............................................................ 12

    B.   Dubea's Willful Destruction of Evidence Integral to Pike's Case Caused
        Pike to Suffer Undue Prejudice. ...................................................................... 13

    C.   Because Pike's Intentional Misconduct Caused Pike to Suffer Undue
        Prejudice, Remedial and Punitive Sanctions Are Warranted .......................... 14

           1.   The Court should make a finding of fact that, while still
              employed by Pike, Dubea planned with others to form a
              competing business in violation of the non-compete
              provision of his Employment Agreement and he intended to
              solicit Pike's employees and customers in furtherance of
              those efforts, including by using his knowledge regarding
              confidential Pike information. ......................................................... 14

           2.   The Court should shift the burden of proof to Dubea to
              demonstrate that he in fact did not breach the non-compete
              and non-disclosure provisions of his Employment
              Agreement, that he in fact did not tortiously interfere with

Pike's business relations and employee agreements and that
he in fact did not misappropriate Pike trade secrets. ......................16

3.    Alternatively, Dubea's destruction of evidence should
result in adoption of an adverse inference against him..................17

4.    Dubea's destruction of evidence entitles Pike to full access
to Dubea's computers in order to conduct forensic analyses.........19

5.    Dubea's destruction of evidence entitles Pike to monetary
sanctions...............................................................................................19

CONCLUSION.......................................................................................................20

RLF1-3007984-1

## TABLE OF AUTHORITIES

Page

**Cases**

*Applied Telematics, Inc. v. Sprint Commc'ns Co., L.P.,*
    1996 WL 33405972 (E.D. Pa. Sept. 17, 1996) ......................................................... 19

*Baliotis v. McNeil,*
    870 F. Supp.1285 (M.D. Pa. 1994) ............................................................................. 17

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.,*
    651 F.2d 877 (3d Cir. 1981).................................................................................... 14, 15

*Curtis T. Bedwell & Sons Inc. v. Int'l Fidelity Ins. Co.,*
    843 F.2d 683 (3d Cir. 1988)........................................................................................ 15

*Donato v. Fitzgibbons,*
    172 F.R.D. 75 (S.D.N.Y.) ............................................................................................ 19

*Estate of Spear v. Comm'r of IRS,*
    41 F.3d 103 (3d Cir. 1994)..................................................................................... 14, 16

*In re Grand Jury (Impounded),*
    138 F.3d 978 (3d Cir. 1998)..................................................................................... 8, 11

*In Re Grand Jury Investigation,*
    599 F.2d 1224 (3d Cir. 1979)....................................................................................... 8

*In Re Grand Jury Matter*, Misc. No. 97-20-SLR, Memorandum Opinion to Order
    Denying Motion to Compel the Government to Return Certain Document in Its
    Possession, June 27, 1997 (D. Del. 1997)......................................................... 9, 10, 11

*In re Impounded,*
    241 F.3d 308 (3d Cir. 2001)...................................................................................... 8, 9

*In re Wechsler,*
    121 F. Supp. 2d 404 (D. Del. 2000) ...................................................................... passim

*Leonen v. Johns-Manville,*
    135 F.R.D. 94 (D.N.J. 1990)......................................................................................... 9

*McCafferty's, Inc. v. The Bank of Glen Burnie,*
    179 F.R.D. 163 (1998) ................................................................................................ 10

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*,
   348 F. Supp. 2d 332 (D.N.J. 2004) .................................................................. 17

*Paramount Pictures Corp. v. Davis*,
   234 F.R.D. 102 (E.D. Pa. 2005) ....................................................................... 17

*Parkinson v. Guidant Corp.*,
   315 F. Supp. 2d 760 (W.D. Pa. 2004) .............................................................. 12

*Positran Mfg., Inc. v. Diebold, Inc.*,
   2003 WL 21104954 (D. Del. May 15, 2003) ..................................................... 17

*Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.*,
   91 F.R.D. 254 (N.D. Ill. (1981) ........................................................................ 10

*United States v. Ernstoff*,
   183 F.R.D. 148 (D.N.J. 1998) ........................................................................... 9

*White v. Office of the Public Defender*,
   170 F.R.D. 138 (D. Md. 1997) ................................................................... 14, 15

*WIT Equip. Co. v. Director, V.I. Bureau of Internal Revenue*,
   85 F. Supp. 2d 500 (D.V.I. 2001) .................................................................... 16

RLF1-3007984-1

Plaintiffs Pike Electric Corporation and Pike Electric, Inc. (collectively "Pike") hereby submit their Opening Brief in Support of Plaintiffs' Motion for Order Rejecting Defendant's Claims of Privilege and for Discovery Sanctions Due to Spoliation of Evidence against Defendant Mick Dubea ("Dubea").

## NATURE AND STAGE OF PROCEEDINGS

On December 20, 2005, Pike sued Dubea, the former Vice President of Pike's Western Region, for breach of contract, tortious interference with contract, tortious interference with business relations and misappropriation of trade secrets. Dubea was served with the Complaint on December 29, 2005. (Declaration of Sarah Paul, dated April 27, 2006 ("Paul Decl.") ¶ 5.) In early January 2006, Dubea was advised by his lawyers to preserve all documents potentially relevant to the present litigation. (*See* Letter from Naylor to Paul (Apr. 3, 2006) (Paul Decl. Exh. A).) In mid-January 2006, Dubea ignored his counsel's instructions and discarded various documents that conclusively demonstrate his plans to compete with Pike. Fortunately, Pike (through its private investigator) gained possession of at least some discarded documents before they were able to be destroyed and lost forever. However, Pike cannot possibly know how many relevant documents Dubea succeeded in destroying without Pike's intervention.

After learning through the discovery process that Pike had obtained some of the documents that Dubea had attempted to destroy, Dubea again tried to sabotage Pike's ability to use the documents by asserting what Pike believes to be improper privilege claims with respect to certain of the documents. As demonstrated herein, Third Circuit law not only prohibits such conduct, it also establishes that sanctions are appropriate.

relevant evidence that Dubea has succeeded in destroying, and sanctions are thus the only means of remedying the prejudice suffered by Pike for having been denied its right effectively to prepare its case.

## STATEMENT OF FACTS

**A.    Pike Acquires RSI in Reliance on Dubea's Promise to Abide by the Non-Compete and Non-Disclosure Provisions of his Employment Agreement.**

As alleged in Pike's Verified Complaint ("Cplt."), on July 1, 2004, Pike acquired all the outstanding shares of the common stock of a privately-held company called Red Simpson Inc. ("RSI"), pursuant to a Stock Purchase Agreement ("SPA"). (Cplt. ¶¶ 14, 17.) At the time of the acquisition, Dubea was RSI's President for its Western Region, which covered nearly two-thirds of the total RSI workforce and accounted for a majority of the company's earnings. (*Id.* ¶ 16.) The parties to the SPA recognized Dubea's integral role with RSI, and understood that his participation in the combined Pike-RSI enterprise would be critical to its success. (*Id.* ¶ 18.)

Consequently, the parties agreed in writing that Pike's purchase of RSI would be expressly conditioned upon the execution and delivery of an employment agreement containing non-compete and non-disclosure provisions between Dubea and Pike prior to the closing. (*Id.* ¶¶ 20, 26.) On July 1, 2004, Dubea agreed to a written employment agreement containing those provisions with Pike (the "Employment Agreement"). (Paul Decl. Exh. D.) Under the terms of the Employment Agreement, Dubea agreed not to compete with Pike and to protect Pike's confidential information, including the confidential information Pike acquired from RSI. (*Id.* §§ 5.03, 5.07.) In return for those promises, Dubea was set to receive over $20 million in connection with the SPA and his subsequent employment with Pike, so long as he did not breach the promises he made in the Employment Agreement. (Cplt. ¶ 23.)

**B.    Dubea Breaches the Employment Agreement.**

Roughly one year after the acquisition of RSI, Pike began to hear rumors that Dubea was planning to leave Pike to form a competing business. In addition, Dubea's performance began to deteriorate and he seemed to lose enthusiasm for, and even began to undermine, Pike's efforts to integrate former RSI employees into the new company. Thus, in August 2005, Dubea stopped working for Pike, and on September 22, 2005, Pike officially terminated Dubea without cause. (*Id.* ¶ 32.) Because Dubea was terminated without cause, he remained eligible to receive substantial payment under the terms set out in his Employment Agreement, so long as he did not breach the restrictive covenants found therein.

**C.    Dubea Competes With Pike.**

On October 5, 2005, Chad Dubea ("Chad"), Dubea's son and a then-current Pike employee, formed T&D Solutions Ltd. ("T&D") in Harlingen, Texas. Another then-current Pike employee, Cory Close, was named T&D's CFO. Shortly thereafter, more than 60 former RSI employees left Pike to join T&D, including several employees who were parties to employment agreements containing non-compete provisions, including Chuck Chaddrick, Tim Droddy, Clifton Droddy, Sammy Christian and Alex Graham. (*Id.* ¶ 35.) In sum, T&D was the creation of former RSI employees and was designed to compete with Pike in RSI's former Western Region--the region once headed by Dubea. The effect of this wrongful competition on Pike's business was immediate and substantial, and the formation of T&D so near in time to Pike's termination of Dubea confirmed Pike's earlier suspicions about Dubea's ulterior motives.

Thereafter, Pike began to investigate whether it had meritorious claims against Dubea, Chad or any of the other former RSI employees who had left Pike to join T&D in apparent breach of their employment agreements. (Paul Decl. ¶ 3.) In late October 2005, Pike's attorneys engaged Kimmons Security Services ("Kimmons"), a private investigation firm located

attached as Exhibit A to Kimmons Decl.)



(*See* Kimmons Decl. Exh. A, at PIKE 00016833.001-16834.)[3]

In response to Dubea's document requests, Pike produced copies of the Discarded

Documents collected by Kimmons to Dubea on April 12, 2006.  On April 21, 2006, Dubea's

lawyers informed Pike that a portion of the Discarded Documents were "protected by attorney-

client and/or work-product privileges" and requested "the immediate return of all original and

duplicate copies of those documents".  (Letter from Lazarus to Paul (Apr. 21, 2006) (Paul Decl.

Exh. C).)  Given the contents of some of those documents, Pike believes Dubea's claim of

privilege is a disingenuous ruse to prevent Pike from using the documents at trial.

## ARGUMENT

### I.    THE DISCARDED DOCUMENTS ARE NOT PRIVILEGED.

On January 17, 2006, an investigator from Kimmons Security Services recovered

numerous documents from the garbage located on a public street outside of Dubea's home.  (*See*

Kimmons Decl. Exh. A (containing all of the documents found on January 17, 2006).)  Dubea

claimed attorney-client privilege and/or work product protection with respect to six of those

documents, and also with respect to one document that was recovered by Kimmons on January

10, 2006 (Kimmons Decl. Exh. B):

---

[3] Kimmons also found one document in Dubea's garbage that on its face appeared to contain legal advice from one of Dubea's lawyers relating to issues unrelated to the present litigation. While Pike believes that Dubea waived any privilege that might once have attached to that document, it nevertheless returned the document to Dubea pursuant to Rule 4.4 of the Delaware Rules of Professional Conduct.  *See* Letter from Paskin to Lazarus (Feb. 22, 2006) (Paul Decl. Exh. B).)  Because the other documents found by Kimmons did not appear to contain privileged communications, Pike did not return those documents to Dubea.

1.                                    (Exhibit B to Kimmons
    Declaration);

2.                  REDACTED

                                     (Exhibit C to Kimmons
    Declaration);

3.              Exhibit D to Kimmons Declaration);

4.                      (Exhibit E to Kimmons Declaration);

5.
    (Exhibit F to Kimmons Declaration);

6.                                    (Exhibit G to Kimmons Declaration);
        and

7.                             (Exhibit H to Kimmons Declaration)[4].

Pike believes that those documents were never privileged, and, even if some of them once were

privileged, Dubea waived that privilege by throwing the documents in the garbage.

Nevertheless, at a meet and confer conducted by the parties on April 26 and 27, 2006, the parties

agreed that Pike would not contest Dubea's privilege claims on the documents found in Exhibits

A-G (because Pike does not believe those documents are substantively important to the action),

but that Pike would only contest Dubea's privilege claim with respect to the third page of the

hand written notes contained in Exhibit H, bates stamped PIKE 00016834. Pike does not

concede that the other documents are privileged, or that any privilege was not waived when

Dubea abandoned the documents in the garbage on the street outside of his home. Thus, the

---

[4] One page of those notes was found with other notes on the same type paper dated July 8.
Dubea has only claimed privilege over the one page of those notes in Kimmons Decl. Exh. H.
Both pages of the notes are attached to the Kimmons declaration as Exhibit I.

discussion that follows deals exclusively with Dubea's handwritten notes bates stamped PIKE 00016834, found in Exhibit H.[5]

To successfully assert attorney-client privilege over that document, Dubea has the burden of establishing that: (1) he sought legal advice (2) from a professional legal advisor in his capacity as such (3) the document related to that purpose (4) was made in confidence (5) by the client (6) is at his insistence permanently protected (7) from disclosure by himself or by the legal advisor (8) and that the protection was not waived. *See In re Impounded*, 241 F.3d 308, 316 n.6 (3d Cir. 2001). Because the attorney-client privilege necessarily obstructs the search for truth, it is narrowly construed. *See, e.g., In Re Grand Jury Investigation*, 599 F.2d 1224, 1235 (3d Cir. 1979). To successfully claim protection under the work-product doctrine, Dubea has the burden of demonstrating that he was acting pursuant to his attorneys' direction, in anticipation of litigation, when he created the material. *See In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998). It does not appear from the face of the document that Dubea can satisfy either burden.

*First*, nothing about the handwritten notes indicates that they record or reflect advice from an attorney. REDACTED While those may have been issues with respect to which Dubea intended to seek legal advice, it is clear that the notes themselves were never sent to Dubea's attorneys (because they were discarded in the trash), and from the face of the

---

[5] While Pike considers only that one document among the ones subject to Dubea's privilege claims to be relevant to the merits of the case, other documents discarded by Dubea, with respect to which no privilege claim has been made, are highly relevant. Dubea's improper attempt to destroy those documents is the subject of Pike's request for discovery sanctions, discussed in Section II *infra*.

documents it appears clear that the notes themselves reflect neither the communication of a request for legal advice from Dubea to his attorney nor legal advice that was received by Dubea from his attorney. *See In re Impounded*, 241 F.3d at 316 n.6; *In re Grand Jury Matter*, Misc. No. 97-20-SLR, Memorandum Opinion to Order Denying Motion to Compel the Government to Return Certain Documents in Its Possession, at 10 (D. Del. June 27, 1997) (attached hereto as Exh. E to Paul Decl.) ("Since these documents were never conveyed to movant's attorneys, however, they are not 'communications' and, therefore, are not protected by the attorney-client privilege."). Accordingly, the attorney-client privilege never attached to the handwritten notes.

   *Second*, Dubea cannot reasonably contend that the notes were prepared at the direction of his counsel "in anticipation of litigation". The notes at issue were found together with other notes dated "7/8". (*See* Kimmons Decl. ¶ 14; Kimmons Decl. Exh. 1.) In July 2005, Mick was still employed by Pike, and would remain so employed for over a month after that date. The notion that Dubea would have "anticipated litigation" with his employer at that time strains credulity, *Leonen v. Johns-Manville*, 135 F.R.D. 94, 97 (D.N.J. 1990) (a party must show that there existed "an identifiable specific claim or impending litigation when the materials were prepared" in order to claim work-product privilege); *United States v. Ernstoff*, 183 F.R.D. 148, 155 (D.N.J. 1998) ("[T]he mere fact that litigation did in fact occur, that a party [had] consulted or retained an attorney, that a party [had] undertaken investigation or engaged in negotiations over the claim, is not enough to establish a reasonable anticipation of litigation under rule 26(b)(3)." (citations omitted)). Indeed, if it is Dubea's contention that the notes were prepared in "anticipation of litigation", that would effectively concede that as of July 2005 he was already formulating a plan to enter into competition with Pike in violation of the non-compete provisions in his Employment Agreement. And even if Dubea does admit that fact, it

still appears highly unlikely that his handwritten notes were prepared at the direction of his

counsel in order to assist his counsel in anticipated litigation. Indeed, if the notes were prepared

in order to assist counsel, one must question why, instead of sending those notes to his counsel,

Dubea threw them in the garbage shortly after he was sued by Pike. *See In Re Grand Jury*

*Matter*, Misc. No. 97-20-SLR, Memorandum Opinion to Order Denying Motion to Compel the

Government to Return Certain Documents in Its Possession, at 10 (D. Del. June 27, 1997) (Paul

Decl. Exh. E) ("Since these documents were never conveyed to movant's attorneys, however,

they are not 'communications' and, therefore, are not protected by the attorney-client

privilege.").

   *Third*, any privilege or work-product protection that may have once applied to the

document has plainly been waived. The attorney-client privilege "is not easily invoked [but] is

easily destroyed". *Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.*, 91 F.R.D. 254, 258

(N.D. Ill. 1981). When parties to confidential communications "do not take reasonable steps to

insure and maintain [their] confidentiality, the privilege does not apply or is vitiated". *Id.* at 259.

Thus, courts have held that when an otherwise privileged document is thrown into the trash

without first being destroyed, the privilege is waived. *Id.* at 260-61. That is, of course, precisely

the situation here. Without first destroying the document, Dubea placed it in trash cans located

on a public street outside his house. Such documents are "considered abandoned", and thus

Dubea "no longer retain[ed] 'a reasonable expectation of privacy'" in the discarded document.

*Id.* at 256. Had Dubea wished to maintain the confidentiality of the document, it was his

obligation to take further steps to prevent its discovery, such as, for example, tearing it into 16

pieces. *Cf. McCafferty's, Inc. v. The Bank of Glen Burnie*, 179 F.R.D. 163, 169 (D. Md. 1998).

By not taking reasonable steps to prevent disclosure, Dubea waived any privilege or confidential

protections associated with the document.

Similarly, Dubea waived any work product protection that may have once applied

to the document. In *In re Grand Jury (Impounded)*, 138 F.3d 978 (3d Cir. 1998), the Third

Circuit explained the District Court's ruling that the defendant (who was an attorney) waived

work-product protection because he disregarded the risk that "an adversary might obtain the file"

from an "unlocked and easily accessible" law office next to his own. 138 F.3d at 980.[6] The

defendant in that case had been instructed by his lawyers to write a timeline of events

surrounding his actions on the date of a kidnapping, and because he was concerned that the FBI

or the media would search his own office, he tried to hide the protected materials in the office of

his law partner. *Id.* at 979. The District Court found those steps insufficient to preserve the work

product protection. *Id.* at 980; *In Re Grand Jury Matter*, Misc. No. 97-20-SLR, Memorandum

Opinion to Order Denying Motion to Compel the Government to Return Certain Documents in

Its Possession, at 10 (D. Del. June 27, 1997) (Paul Decl. Exh. E) ("In the present case, movant

placed the documents on a shelf in his law partner's office for nearly four months. During this

time, movant made no attempt to protect the documents from disclosure. . . . Given these

circumstances, the court holds that movant consciously disregarded the possibility that an

adversary might obtain them.").

If anything, the instant case presents an even clearer waiver because, by throwing

the document in the trash on a public street, Dubea acted far more carelessly than did the

defendant in *In Re Grand Jury (Impounded)*, who attempted to give documents to a trusted law

---

[6] The Court of Appeals did not reach the question of whether this Court's ruling was correct, and instead held that the work-product privilege had been waived by defendant's failure to seek prompt return of the document. *Id.* at 981-82.

-11-

partner for safekeeping. It is clear that Dubea waived any work product privilege associated with the document by failing to take reasonable measures to keep it confidential.

Accordingly, the handwritten notes are not privileged, and to the extent any privilege previously attached it has been waived. Pike therefore requests that the Court rule that Pike can make use of the document for any purpose in the litigation.

## II.    DUBEA SHOULD BE SANCTIONED FOR SPOLIATION OF EVIDENCE.

Federal Courts have inherent authority "to sanction a party who destroys or alters relevant evidence, with sanctions ranging from summary judgment and/or outright dismissal of claims to the exclusion of countervailing evidence to a jury instruction on the spoliation inference". *Parkinson v. Guidant Corp.*, 315 F. Supp. 2d 760, 762 (W.D. Pa. 2004). In considering whether to exercise their inherent power to impose sanctions for spoliation of evidence, courts analyze three factors: "(1) the degree of fault and personal responsibility of the party who destroyed the evidence; (2) the degree of prejudice suffered by the other party; and (3) the availability of lesser sanctions which avoid any unfairness to the innocent party, while, at the same time, serving as a sufficient penalty to deter the same type of conduct in the future". *In re Wechsler*, 121 F. Supp. 2d 404, 415 (D. Del. 2000).[7]

### A.    Dubea's Intentional Destruction of Obviously Relevant Evidence Demonstrates a High Degree of Fault.

In determining the degree of fault of a party who has destroyed (or attempted to destroy) evidence, courts consider whether the party "intended to impair the ability of the other

---

[7] Even if the Court finds that some of the handwritten notes discarded by Dubea are privileged, that does not relieve Dubea of his duty to preserve those notes, and it certainly does not give him license to throw the notes away. Instead, the notes should have been turned over to his lawyers and placed on a privilege log so that Pike could challenge whether the notes are in fact privileged. Moreover, Dubea has not claimed privilege over some of the notes he threw away, including the first page of the notes dated "7/8" which are attached to the Kimmons Declaration as Exhibit I.

-12-

side to effectively litigate its case". *Wechsler*, 121 F. Supp. 2d at 415. Evidence that a party

explicitly ignored a request to preserve evidence conclusively demonstrates the party's fault and

personal responsibility for the destruction. *See id.* at 419.

Here, it is undisputed that Dubea was advised of his duty to preserve documents

relevant to this litigation. Further, he unambiguously breached that duty when he threw key

evidence in the trash. Moreover, the documents support the very heart of Pike's case by

demonstrating Dubea's intent to:



(Kimmons Decl. Exh.

I.) The conclusion that Dubea's destruction of evidence was intentional is inescapable.

**B.    Dubea's Willful Destruction of Evidence Integral to Pike's Case Caused Pike
to Suffer Undue Prejudice.**

In order to demonstrate the degree of prejudice suffered, a party "need not

conclusively demonstrate that the evidence would have established liability on the part of the

spoliator". *Wechsler*, 121 F. Supp. 2d at 423. Rather, the party must show that the destruction

of evidence resulted in "the lost opportunity to reach a more definitive conclusion" concerning

an integral issue of the case. *Id.*

Pike has suffered prejudice by not having access to the full breadth of documents

relevant to this litigation. While Pike discovered some documents Dubea attempted to destroy

from one location, Pike has no way of knowing how many other documents from other locations

-13-

were destroyed without Pike's knowledge, nor can Pike know what those documents may have shown. Because Pike had no meaningful opportunity to inspect Dubea's documents before he began his campaign to suppress evidence, Pike never will know what destroyed evidence it was denied access to. "[T]he prejudice suffered in this case would seem to be the lost opportunity to reach a more definite conclusion concerning [what really happened]." *Wechsler*, 121 F. Supp. 2d at 423. Principles of equity militate against allowing such behavior to go unchecked; "the firmest of responses to the misconduct practiced here is necessary to serve fundamental policies of the legal system--truthseeking, fairness, and the integrity of the judicial process". *White v. Office of Public Defender*, 170 F.R.D. 138, 152 (D. Md. 1997).

### C.   Because Pike's Intentional Misconduct Caused Pike to Suffer Undue Prejudice, Remedial and Punitive Sanctions Are Warranted.

For the reasons stated above, sanctions are the only means of remedying the prejudice suffered by Pike after having been denied its right effectively to prepare its case.

> **1.   The Court should make a finding of fact that, while still employed by Pike, Dubea planned with others to form a competing business in violation of the non-compete provision of his Employment Agreement and he intended to solicit Pike's employees and customers in furtherance of those efforts, including by using his knowledge regarding confidential Pike information.**

Courts may deem certain facts to be true in favor of the non-spoliating party as a spoliation sanction. *Estate of Spear v. Comm'r of IRS*, 41 F.3d 103, 112 (3d. Cir. 1994) ("When the sanction of deeming facts to be true is not the equivalent of dismissal, wilfulness and bad faith are not prerequisites for imposing that sanction"); *see also Weschler*, 121 F. Supp. at 427; *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 885 (3d Cir. 1981) (taking as established for purposes of the action the fact that court had personal jurisdiction over

-14-

defendants as a sanction against defendants for failing to comply with discovery orders).[8]
Evidence that a party explicitly ignored a request to preserve evidence conclusively demonstrates
willfulness and bad faith and thus warrants a finding of fact in favor of the innocent party and a
shifting of the burden of proof against the spoliating party. *See Compaigne des Bauxites de
Guinea*, 651 F.2d at 885 (concerning refusal to produce evidence); *see also Curtis T. Bedwell &
Sons Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 697 (3d Cir. 1988) (denying defendants right to
proffer evidence regarding the issues he had previously "obstructed and stonewalled" discovery
on).

      Dubea was fully aware that he had been sued by Pike and was given an
unequivocal instruction by his counsel to retain all evidence relevant to this litigation.
Nevertheless, Dubea attempted to, and likely did, destroy evidence that Pike could have relied on
to prove its case. The Court should make a finding of fact that, while still employed by Pike,
Dubea planned with others to form a competing business in violation of the non-compete
provision of his Employment Agreement and he intended to solicit Pike's employees and
customers in furtherance of those efforts, including by using his knowledge regarding
confidential Pike information.

---

    [8] While various cases cited involve the application of sanctions under Federal Rule of Civil
Procedure 37(b)(2), which addresses a party's failure to comply with a court order, "in the
context of destruction of evidence . . . the elements determinative of whether a sanction should
be imposed based on the Court's inherent authority are identical to those applicable under Fed.
R. Civ. 37(b)(2)". *White*, 170 F.R.D. at 147.

RLF1-3007984-1

2. **The Court should shift the burden of proof to Dubea to demonstrate that he in fact did not breach the non-compete and non-disclosure provisions of his Employment Agreement, that he in fact did not tortiously interfere with Pike's business relations and employee agreements and that he in fact did not misappropriate Pike trade secrets.**

"When a party does not provide information to another party to which that party is entitled, a court is certainly permitted to 'even out' the proceedings by shifting the burden of proof in a fair way even in the absence of bad faith. . . . nonetheless . . . bad faith certainly enhances the case for sanctions." *Estate of Spear*, 41 F.3d at 112. Thus, when the destruction of evidence is in bad faith or done with the purpose of preventing the other side from examining the evidence, courts may exercise their discretion to shift the burden of proof to the spoliating party. *Weschler*, 121 F. Supp. at 428-30 (entering interlocutory finding of liability against defendant spoliator because it served the same purpose as shifting the burden of proof to defendant); *see also WIT Equip. Co. v. Director, V.I. Bureau of Internal Revenue*, 185 F. Supp. 2d 500, 516 n.19 (D.V.I. 2001) ("Notwithstanding the finding that the Government bears the burden of proof at trial, the Court is cognizant that WIT's failure to cooperate with discovery requests should be taken into consideration.").

It is clear that Dubea, in bad faith, failed to give relevant documents to Pike. In fact, he took affirmative steps to prevent Pike from obtaining relevant, and damaging, discovery materials. As a penalty for such reprehensible conduct, the Court should make Dubea bear the burden of proof for the remainder of this litigation. The very fact that these documents exist and were withheld from Dubea's production suggests that there are other pieces of evidence helpful to Pike's case that it will never see. The fact that Pike eventually got access to some of the discarded evidence is irrelevant because sanctions for spoliation are intended to serve a prophylactic purpose; the public should be aware that destruction of evidence will not go

-16-

unpunished regardless of its impact. Moreover, Pike is entitled to a sanction that will level the

playing field by denying Dubea the benefit of his unlawful conduct. "Imposing a . . . sanction

for this type of conduct punishes the wrongdoer for the severity of its culpable conduct, and

serves to put the public on notice that this type of behavior will be punished severely."

*Wechsler*, 121 F. Supp. 2d at 429.

### 3.    Alternatively, Dubea's destruction of evidence should result in adoption of an adverse inference against him.

If the Court decides not to shift the burden of proof to Dubea, the Court should

sanction Dubea by adopting an adverse "spoliation inference". Third Circuit courts seeking to

restore the prejudiced party to the position it would have been in had the spoliation never

occurred often adopt the spoliation inference, which is "an adverse inference that permits a jury

to infer that destroyed evidence might or would have been unfavorable to the position of the

offending party" (internal quotation marks omitted). *Mosaid Techs. Inc. v. Samsung Elecs. Co.*,

348 F. Supp. 2d 332, 336 (D.N.J. 2004). The spoliation inference is a fairly standard sanction,

which does not require parties to demonstrate a high degree of fault by the spoliator. *Id.* at 338

("negligent destruction of relevant evidence can be sufficient to give rise to the spoliation

inference"); *see also Baliotis v. McNeil*, 870 F. Supp. 1285, 1291 (M.D. Pa. 1994).[9] In order for

the spoliation inference to apply, a party must demonstrate that: (1) the evidence was within the

spoliating party's control; (2) there has been actual suppression or withholding of the evidence;

---

[9] Because this case is scheduled for a bench trial, the spoliation inference should be adopted by the Court. *Positran Mfg., Inc. v. Diebold, Inc.*, 2003 WL 21104954, at \*4 (D. Del. May 15, 2003) (The spoliation inference "will allow the trier of fact, in this case, the court, to assume the destroyed evidence would have been unfavorable to the offending party"); *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 113 (E.D. Pa. 2005) (holding that because Court was acting as fact finder it would make sure to take notice at trial of defendants' willful destruction of evidence).

(3) the evidence withheld was relevant to claims or defenses; and (4) it reasonably was foreseeable that the evidence would be discoverable. *Id.*

This standard plainly is met here. *First*, Dubea's handwritten notes clearly were within his control since they were found in a garbage can outside his home.[10] *Second*, neither the notes themselves nor any documents containing similar information were part of Dubea's production; the evidence plainly was withheld, including handwritten notes over which Dubea does not claim any privilege. *Third*, the notes are extremely relevant to each and every count of the Pike's Complaint.

(Kimmons Decl. Exh. I.)

(*Id.* at PIKE

00016833.001-16834)            REDACTED

(*Id.*)

(*Id.*)

(*Id.*) Thus, at a minimum, the Court should apply a spoliation inference against Dubea.

---

[10] Indeed, Dubea has claimed privilege over several of those documents.

-18-

    **4.**    **Dubea's destruction of evidence entitles Pike to full access to Dubea's computers in order to conduct forensic analyses.**

A court may employ its discretion to enter a wide range of sanctions for the spoliation of evidence, depending on the severity of the circumstances. *Weschler*, 121 F. Supp. at 427 (citing *Donato v. Fitzgibbons*, 172 F.R.D. 75, 81 (S.D.N.Y. 1997) ("The decision to impose sanctions, as well as the appropriate sanction to be fashioned, lie within the sound discretion of the trial court.")).

Dubea's destruction of relevant evidence entitles Pike to full access to Dubea's computers so that Pike can conduct a forensic analysis of those machines to help determine whether Dubea's scheme to destroy evidence reached even further than what Pike already has seen. Indeed, Pike has learned from a review of Dubea's document production that he maintained a personal email account with AT&T that he used for business purposes, even while he was employed by Pike. AT&T cannot produce archives of deleted emails in response to Pike's subpoena because it does not maintain an archive of its customers' emails. (Paul Decl. ¶ 6.) Thus, Pike cannot know what emails Dubea may have deleted. While review of Dubea's computers never can serve as a substitute for Dubea's production of all relevant evidence, it may help Pike identify whether Dubea has improperly deleted any emails or electronic files.

    **5.**    **Dubea's destruction of evidence entitles Pike to monetary sanctions.**

Monetary sanctions often are awarded to compensate a party aggrieved by spoliation of evidence. "An award of costs serves both punitive and remedial purposes: it deters spoliation and compensates the aggrieved party for additional costs incurred because of the spoliation. Such compensable costs may arise either from the discovery necessary to identify alternative sources of the information, or from the investigation and litigation of the spoliation itself." *Applied Telematics, Inc. v. Sprint Commc'ns Co., L.P.*, 1996 WL 33405972, at *4 (E.D.

Pa. Sept. 17, 1996) (citations omitted) (awarding monetary sanctions and granting a spoliation

inference even though aggrieved party could have had access to the destroyed documents

through third-party discovery).  Thus, at the very least, Pike should be compensated for having to

expend additional time and energy to uncover Dubea's destruction of evidence and for any fees

and expenses incurred relating to this discovery dispute.

## CONCLUSION

For the foregoing reasons, Pike respectfully requests that this Court enter an

Order granting Pike's Motion as set forth in the attached Proposed Order.

William J. Wade (#704)
wade@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

Attorneys for Plaintiffs Pike Electric
Corporation and Pike Electric, Inc.

OF COUNSEL:
Michael A. Paskin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

April 27, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 27, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF, and have also served the document as noted:

### BY HAND DELIVERY

Lewis H. Lazarus, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

Alyssa M. Schwartz (#4351)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 4, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF, and have also served the document as noted:

### BY HAND DELIVERY

Lewis H. Lazarus, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE  19899

Alyssa M. Schwartz (#4351)

RLF1-2997741-1