IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION and
PIKE ELECTRIC, INC.,

                              Plaintiffs,

            vs.

MICK DUBEA,

                              Defendant.

Civil Action No. 05-879 (SLR)

## OPPOSITION MEMORANDUM TO DEFENDANT MICK DUBEA'S MOTION FOR AMENDMENT OF SCHEDULING ORDER

Plaintiffs Pike Electric Corporation and Pike Electric, Inc. (collectively "Pike")
hereby oppose Defendant Mick Dubea's ("Dubea") Motion for Amendment of Scheduling
Order.

### INTRODUCTION

At the outset of this case, the parties agreed to an expedited schedule that called
for a trial beginning in the late Summer or early Fall of 2006. In reliance on that expedited
schedule, and in exchange for a Status Quo Order preventing Dubea from breaching the terms of
his Employment Agreement with Pike, Pike agreed to drop its meritorious motion for
preliminary injunctive relief that it had filed against Dubea simultaneously with the Complaint.
Now that the parties are months into discovery and Pike has foregone its preliminary injunction
motion, Dubea seeks to delay the start of trial by over four months. While Pike would be
amenable to some moderate extensions (e.g., 30 days or less) of the deadlines to complete fact
and expert discovery, a continuance of the September 18, 2006 trial date is both unwarranted and
would greatly prejudice Pike by taking away the very basis on which it agreed to forego its

request from preliminary injunctive relief. Moreover, Dubea's agreement to the Status Quo Order was a hollow promise, as Dubea has been in breach of the "status quo" since the day that Order was signed. Dubea's tactics are improper, and are designed to prevent Pike from obtaining the timely trial to which the Court previously agreed it is entitled. Accordingly, the Court should deny Dubea's motion.

## BACKGROUND

On December 20, 2005, Pike sued Dubea for assisting Pike's competitor, T&D Solutions, Ltd. ("T&D"), in breach of his Employment Agreement (and in tort) by, inter alia, providing financial support for T&D's business, soliciting Pike's employees to join T&D, soliciting Pike's customers to assign work to T&D, and sharing Pike's confidential information and trade secrets with T&D. Pike moved for a preliminary injunction on an expedited basis at the same time it filed the Complaint in an attempt to stop, as soon as possible, the irreparable harm that it was suffering due to Dubea's unlawful conduct as a facilitator of T&D's competition.

In January 2006, Pike agreed to withdraw its motion for preliminary injunctive relief on two conditions, namely: (1) that Dubea agree to expedited discovery culminating in a trial on the merits no later than the late summer or early fall of 2006; and (2) that Dubea enter into a Status Quo Order preventing him from breaching his Employment Agreement with Pike pending completion of trial. Dubea not only agreed with those conditions, but stated that he too was eager to have a quick resolution of this case on its merits. Pike would not have agreed to withdraw its preliminary injunction motion without Dubea's consent to both of those conditions.

The original schedule agreed upon by the parties and entered by the Court called for fact discovery to close on May 12, 2006, and for a bench trial to commence on September 18, 2006. (See 3/13/2006 Scheduling Order attached hereto as Exhibit A.) In mid-April 2006, the

parties informally agreed to extend fact discovery by a few weeks to accommodate an agreed upon deposition schedule. (See First Proposed Amended Scheduling Order, attached hereto as Exhibit B.) Under the new schedule, the parties agreed that fact discovery would close on June 2, 2006, and expert discovery would close by July 14, but that the September 18 trial date would not move. (Id. at 4.) Pike made clear at the time that it was unwilling to do anything to jeopardize the September 18 trial date, and it would not have agreed to any changes in the schedule if it would have delayed the trial of the action.

Thereafter, the parties agreed to the exact times, dates and locations for the depositions that had already been noticed consistent with the new discovery schedule. (A list of the current deposition schedule is attached hereto as Exhibit C.) Under that schedule, the first Pike fact witness is set to be deposed by Dubea on May 24, 2006 (more than 3 weeks from today). Dubea was apparently completely satisfied with that schedule, and even circulated it for Pike's approval, on April 18, 2006. (See 4/18/2006 Email from Lazarus to Paul and Earnhardt, attached hereto as Exhibit D.)

Exactly three days later, on April 21, 2006, Dubea suddenly did an about-face and stated that he could not be ready for trial at all in 2006, let alone by September, and that he hoped to move the start of trial to the first quarter of 2007. Dubea's position came as a total surprise to Pike, and is completely unacceptable. As stated earlier, Pike has sought expedited treatment of this case since the day the Complaint was filed. Until late-April, Dubea was in total agreement with the speed at which the case was progressing, and Pike relied upon Dubea's representation that that pace would continue when it gave up its meritorious motion for preliminary injunctive relief.

To exacerbate matters, T&D's unlawful competition with Pike has intensified in 2006. To date, over 60 Pike employees have left Pike to join T&D, and at least five of Pike's major customers are presently giving work to T&D that would otherwise be given to Pike. Moreover, contrary to Dubea's claims that he has nothing to do with T&D, the limited discovery conducted to date conclusively establishes that, at a minimum, Dubea provided financial backing to his son Chad to help start T&D, and that T&D is currently using that financial backing to run its operations and steal business from Pike on an ongoing basis. Those facts alone establish a blatant violation of Dubea's Employment Agreement and are in conflict with the Status Quo Order agreed to by the parties in January 2006. Pike requires resolution of the merits of this case as quickly as possible in order to stem the irreparable harm Pike continues to suffer due to Dubea's unlawful conduct.[1]

## ARGUMENT

I.    **A MODEST EXTENSION OF THE DISCOVERY SCHEDULE WILL PROVIDE BOTH PARTIES WITH ADEQUATE TIME TO PREPARE FOR THE SEPTEMBER 18, 2006 TRIAL.**

The crux of Dubea's motion is that because "discovery has not proceeded smoothly", he cannot be ready for a trial by September 2006. Dubea's claim rings hollow.

<u>First</u>, Dubea's assertion that "Pike has not yet produced all of the documents it has indicated it intends to produce" is misleading. In fact, Pike's document production has been

---

[1] While Pike strongly opposes any attempt to delay the start of trial, Pike remains flexible on other aspects of discovery, and, if Dubea wants to extend fact or expert discovery by a few weeks, Pike would be amenable to those changes. Indeed, Pike believes the close of fact discovery could easily be extended to June 30, 2006, and the close of expert discovery extended to August 14, without requiring any continuation of the September 18 trial date. Pike has attached as Exhibit E hereto a [Proposed] Amended Scheduling Order consistent with those dates. Likewise, Pike consents to Dubea's request to allow each party to take 12 depositions in this case, as opposed to the originally agreed upon 10--so long as Dubea does not use that amendment as an excuse to delay the start of trial. Notably, Dubea never even suggested that a simple extension of the discovery schedule could accomplish his stated goal of giving him additional time to prepare his defense, making plain that his real objective is to postpone the trial and the anticipated adverse judgment that will result from it.

thorough, on time, and was substantially complete on April 12, 2006--the date on which Pike's responses and objections to Dubea's document requests were due. Moreover, in the week since Dubea filed this motion, Pike has completed its document production, subject of course to its obligation to supplement its production to the extent it finds additional responsive and relevant materials.[2]

Specifically, Dubea served Pike with his first set of document requests and interrogatories on March 13, 2006. On April 12, 2006, the date that Pike's objections and responses to those discovery requests were due under the Federal Rules of Civil Procedure, Pike produced over 72,000 pages of documents to Dubea. Since April 12, Pike has produced an additional 13,000 pages of documents. In addition, on April 12, Dubea received over 23,000 pages of documents from Pike's largest shareholder, Lindsey Goldberg & Bessemer ("LGB"), pursuant to a third-party subpoena. LGB completed its production to Dubea on April 21.[3] In total, Pike and LGB have produced over 105,000 pages of documents to Dubea. As discussed below, Dubea has had plenty of time to prepare for the upcoming depositions, and there is certainly no basis to delay the trial by over four months based on purported inadequacies in Pike's document discovery.

---

[2] Pike is mindful of its obligation to supplement its production if new responsive documents are found, and is thus hesitant to say that its production is fully complete. For example, the harm Pike is suffering from T&D's unlawful competition continues to grow. If Pike generates documents in the ordinary course of business that are relevant to the damages caused by that competition, Pike will (and, indeed, expects to) supplement its production with those documents. Moreover, Pike is currently conducting a second review of the materials listed on its privilege log. Should Pike determine that any of those documents are not in fact privileged, Pike will supplement its production accordingly. Finally, Dubea served additional document requests on Pike on May 1, 2006. While the bulk of those requests appear to call for documents that have already been produced by Pike in response to prior requests, a supplemental production may be required, and Pike will respond to those document requests in accordance with its obligations under the Federal Rules of Civil Procedure.

[3] LGB's production is complete, with the exception of certain documents that either needed to be redacted, or were removed from LGB's privilege log after a second review.

In contrast to Pike's timely production, Dubea was late with his document production, despite the fact that he only had to search for responsive materials from a single custodian (himself). Pike served its first set of document requests and interrogatories on Dubea on March 10, 2006. Dubea produced no documents on the date his objections and responses were due. Instead, Dubea produced responsive documents on April 20, 2006, which was 10 days later than Pike had expected to receive those documents and after Pike and LGB had already produced over 95,000 pages to Dubea. Nevertheless, Pike recognizes that minor delays in discovery should not be allowed dramatically to alter the discovery schedule or trial date, and, instead of filing a motion to extend time, Pike promptly reviewed those documents and began to prepare for depositions.

Second, deposition dates have been set (and confirmed with witnesses for both parties) for dates that allow Dubea ample time to prepare. Under the deposition schedule agreed to by the parties, the first deposition on the merits is not scheduled to take place until May 11, and the first deposition of a Pike employee related to the merits is not scheduled until May 24. (See Exh. C.) That means Dubea will have had 6 weeks from the time he first received Pike's documents to the date of the first Pike deposition--any claim of prejudice based on a lack of time to prepare would thus be incredible. Indeed, Dubea points to no legitimate reason why he cannot be ready for the start of depositions in mid-May, and why he cannot thereafter comply with the other discovery deadlines that had been agreed upon by the parties. And he can justify even less why he cannot comply with a more extended discovery schedule that still allows for a September 18, 2006 trial, such as in the proposed amended schedule attached hereto as Exhibit E.

Third, Dubea's claim that the schedule does not allow him time to file a motion to compel is nonsensical--had he filed a motion to compel instead of a motion to extend time, Pike

-6-

would have already responded to that motion, and the Court presently would be addressing that motion instead of this one.

Dubea's choice--to ask for more time and not more documents--is telling. Pike believes its responses to Dubea's discovery requests have been thorough. Indeed, Dubea points to only one "deficiency" in Pike's production: Pike's "refusal" to provide information on "how Pike has construed and/or attempted to enforce the non-compete and non-disclosure provisions of its other employees' contracts". (D. Br. at 3.) Not only was that document request overly broad as written (it required Pike to produce all documents that referred to or reflected all employment agreements in existence for each of Pike's over 6,000 employees), but to the extent it requested information on how Pike "construed" or "attempted to enforce" those agreements, the request plainly called for the production of privileged materials. Dubea can point to no legitimate insufficiency in Pike's production that would justify a delay of the start of trial.

Fourth, as stated above, Pike is not opposed to changes to the discovery schedule that do not delay the start of trial. Despite Dubea's claims to the contrary, Pike did not "refuse [his] request" to allow each side a total of 12 depositions. Instead, Pike simply inquired why that change was necessary given the fact that, at that time, Dubea had not yet noticed the 10 depositions he was originally allotted or informed Pike regarding what additional depositions he might wish to take. Pike hereby agrees to increase the number of depositions allowed by each party to 12, so long as the additional depositions are not used as an excuse by Dubea to delay the start of trial. And, as discussed above (at 4 n.1 and in Exhibit E), Pike is amenable to any reasonable changes to the pretrial schedule that would not alter the September 18 trial date.

Finally, Dubea's claim that he cannot adequately prepare for a trial beginning on September 18 cannot be taken seriously considering the number of lawyers currently working on

his case. It is apparent that at least three attorneys from Morris, James, Hitchen & Williams LLP are representing Dubea on this matter (Lewis Lazarus, Matthew Litner, and Joseph Naylor), not counting any number of attorneys working behind the scenes. Moreover, it is apparent that the Delaware lawyers are coordinating their efforts with the Texas law firm of Rodriguez, Colvin, Chaney & Saenz, LLP, who are representing Chad, Cory Close, and T&D in the Texas action. At least three additional lawyers from that firm are working on these matters (Teri Danish, Sarah Nicolas, and RosaMaria Villagomez). With at least six lawyers, and two large law firms, working on his case, Dubea should be able to prepare for a five day trial that is still four and a half months away.

## II. THE SEPTEMBER 18, 2006 TRIAL DATE SHOULD NOT BE DELAYED BECAUSE THE STATUS QUO ORDER CONTEMPLATED EXPEDITED PROCEEDINGS, DOES NOT FULLY PROTECT OR COMPENSATE PIKE, AND IS CURRENTLY BEING VIOLATED BY DUBEA.

Dubea's attempt to rely on the Status Quo Order as a basis for seeking a delay of several months to the trial date is misguided. First, Pike agreed to the Status Quo Order, and thereby gave up its meritorious claim for preliminary injunctive relief, based on the fact that the parties agreed to expedited proceedings. Had Pike known in January 2006 that Dubea intended to delay the trial of this action for over a year, Pike would have refused to enter into the Status Quo Order and would have insisted on pushing forward with its motion for a preliminary injunction.

Second, the Status Quo Order does not fully protect Pike's interests, nor does it compensate Pike for the continuing harm being caused by Dubea's unlawful conduct. Contrary to Dubea's assertion, Pike believes that the resolution of its suit against Dubea will in fact protect Pike from T&D's unlawful competition. Without Dubea, T&D would lose its primary source of funding, and its primary contact and credibility with Pike's customers and employees. In short,

without Dubea's backing Pike is confident T&D will falter.   In any event, Dubea should compensate Pike for the damage he personally caused by his unlawful compeition and disclosure of trade secrets.

> Third, Dubea's assertion that "Pike could make no showing that Mr. Dubea has in any fashion assisted his son's business in violation of that Order" (D. Br. 4 (emphasis added)) is incredible.  Among other things, the Status Quo Order forbids Dubea from "[a]ssisting T&D in any way in its business activities, including, without limitation, by providing financial support of any kind to T&D or advising T&D or its directors, officers or employees in any way regarding T&D's business".  (1/18/2006 Status Quo Order, attached hereto as Exhibit F.)  In response to Pike's interrogatories in the related Texas litigation against Chad, Cory Close and T&D (and in which discovery is proceeding on a coordinated basis with discovery in this action), T&D admits that Dubea assisted with the financing of T&D:

> "Chad Dubea decided to form his own company, inasmuch as he had a great deal of experience in the industry, and his father had given him a substantial sum of money in the form of a grantor retained annuity trust which could be used for the initial capitalization of the business." (T&D's Responses to Pike's Combined First Set of Request for Production of Documents and Interrogatories, Answer to Interrogatory No. 1 at 8 (emphasis added) (attached hereto as Exhibit G).)

> Moreover, T&D admits that Dubea gave advice to Chad about the timing of when to start T&D--which, tellingly, was virtually contemporaneous with Pike's termination of Dubea. (Id. ("Chad Dubea does recall a specific conversation with his father, Mick Dubea in September 2005 during Hurricane Rita that Mick did agree with Chad's opinion that now was a good time to begin a new transmission and distribution business due to Hurricane Rita.").) Thus, T&D has already admitted that Dubea assisted Chad with the funding of and decision to start T&D.

> While the Status Quo Order was admittedly entered after the date of those particular breaches by Dubea, he cannot credibly maintain that the Status Quo Order agreed to by

the parties was meant to maintain a situation in which an illegally formed competitor is allowed to continue to use the money provided by Dubea to continue to compete with Pike. That is not status quo at all, as the harm to Pike continues to grow each day as T&D successfully steals Pike's customers and employees by using Dubea's money and advice. The only way that Pike can obtain adequate redress for Dubea's unlawful conduct is to have a trial on the merits as soon as practicable. The Court has already set aside the week of September 18, 2006 for that trial, and Pike would be severely prejudiced if its ability to receive judicial resolution of its claims is not addressed on that schedule.[4]

## CONCLUSION

For the foregoing reasons, Pike respectfully requests that this Court deny Dubea's Motion for Amendment of the Scheduling Order.

William J. Wade (#704)
wade@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

OF COUNSEL:
Michael A. Paskin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

May 4, 2006

Attorneys for Plaintiffs Pike Electric Corporation and Pike Electric, Inc.

---

[4] The fact that "Dubea is an individual and is paying for his defense of this claim out of his own funds" is beside the point. As an initial matter, Dubea has substantial personal wealth, and the costs of litigation do not pose an undue burden on Dubea. Through limited document discovery, Pike has learned that Dubea has his own private jet, that he was paid well over $1 million a year since at least 2001, and that he received over $6 million from the acquisition of RSI. More importantly, Pike should not be denied its right to quick relief just because Dubea happens to be an individual and not a corporation. Finally, Dubea does not even attempt to explain his vague statement that "various activities [might] be structured more efficiently if there were more time to do so". (D. Br. at 3.) In fact, the sooner the case is resolved, the sooner Dubea can stop paying legal fees. Thus, it would be in Dubea's best financial interest to proceed to trial as quickly as possible--leaving aside, of course, the financial impact that will result from an unfavorable outcome at such trial.

RLF1-3010703-1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 4, 2006, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF, and have also served the document as noted:

### BY HAND DELIVERY

Lewis H. Lazarus, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

I HEREBY CERTIFY that on May 4, 2006, I have caused the foregoing to be sent by

Federal Express to the following non-registered participant:

Teri L. Danish, Esquire
Rodriquez, Colvin, Chaney & Saenz, LLP
1201 E. Van Buren
P.O. Box 2155
Brownsville, TX 78522

Alyssa M. Schwartz (#4351)