# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION &
PIKE ELECTRIC, INC.,

|  |  |
|---|---|
| Plaintiffs, | Civil Action No. 05-879 (SLR) |
| vs. | |
| MICK DUBEA, | |
| Defendant. | |

## PROPOSED STIPULATED SCHEDULING ORDER

At Wilmington this __13th__ day of __March__ 2006, the parties having satisfied their obligations under Fed. R. Civ. P. 26(f), and the court having conducted a pretrial scheduling conference on __1/18__ 2006 pursuant to Fed. R. Civ. P. 16 and D. Del. L.R. 16.2(a)and (b)

IT IS ORDERED that:

1.    **Pre-Discovery Disclosures.** The parties will exchange the information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2 by **February 24, 2006**

2    **Discovery**

(a)    All fact discovery shall be completed by **May 12, 2006**, with depositions beginning on or after **April 3, 2006**. There shall be no more than ten depositions noticed by each party, with each deposition taking no more than seven hours

(b)    Reports from retained experts under Fed. R. Civ. P. 26(a)(2) on issues for which any party has the burden of proof are due by **May 15, 2006.** Rebuttal expert reports are due by **June 5, 2006**

(c)    Expert depositions shall be completed by **June 19, 2006.**

(d)    Any discovery dispute shall be submitted to the Court pursuant to Fed. R. Civ. P. 37. During the course of discovery, each party is limited to **two (2)** Rule 37 motions. The Court shall make itself available, however, to resolve through a telephone conference, disputes that arise during the course of a deposition and disputes related to entry of a protective order

3    **Joinder of other Parties, Amendment of Pleadings and Counterclaims** All motions to join other parties, amend the pleadings and assert counterclaims shall be filed on or before **May 31, 2006**

4    **Settlement Conference.** Pursuant to 28 U S C § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR

5.    **Applications by Motion.** Any application to the Court shall be by written motion filed with the clerk. Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to chambers **Any nondispositive motion shall contain the statement required by D. Del. LR 7.1.1.**

6.    **Motions in Limine** All motions in limine shall be filed on or before **July 10, 2006** All responses to said motions shall be filed on or before **July 17, 2006**

7    **Witnesses, Exhibits and Deposition Designations**

(a)    By June 29, 2006, each party shall serve:

        (i)    A list of fact witness previously disclosed during discovery and intended to be called at trial;

        (ii)    A list of intended trial exhibits;

        (iii)    Deposition designations for use at trial.

    (b)    By July 7, 2006, each party shall serve:

        (i)    A list of rebuttal fact witnesses;

        (ii)    Any objections to lists of fact witnesses, intended trial exhibits, and deposition designations;

        (iii)    Counter deposition designations.

    (c)    By July 11, 2006, each party shall serve any objections to counter deposition designations

    (d)    By July 18, 2006, depositions must be taken of fact witnesses not previously deposed and intended to be called at trial

    8      **Joint Pretrial Order.** The parties will file a joint pretrial order, pursuant to D. Del. L.R. 16.4, by **July 25, 2006**

    9      **Pretrial Conference.** A pretrial conference will be held on _September 7_, 2006 at _4:30 p._ m. in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

    10.      **Trial.** This matter is scheduled for a **5-day bench trial** commencing on _September 18, 2006_ in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases

IT IS SO ORDERED

Dated: __3/13/06__

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION &amp;    )
PIKE ELECTRIC, INC.,    )
    )
                Plaintiffs,    )
    )
       v.    )      C.A. No. 05-879 (SLR)
    )
MICK DUBEA,    )
    )
                Defendant.    )

## PROPOSED AMENDED STIPULATED SCHEDULING ORDER

WHEREAS, the parties, having satisfied their obligations under Fed. R. Civ. P.
26(f), and the Court having conducted a pretrial scheduling conference on January 18,
2006 pursuant to Fed. R. Civ. P. 16 and D. Del. L.R. 16.2(a) and (b), and having entered
a Proposed Stipulated Scheduling Order on March 13, 2006; and

WHEREAS the parties having subsequently requested consolidation of the
discovery of this action with a related action pending in Texas, <u>Pike Electric Corporation,
et al. v. T&amp;D Solutions Ltd, et al.</u>, and having determined that minor adjustments to the
initial schedule would best effectuate the consolidation of that discovery;

IT IS ORDERED that:

1.      **Pre-Discovery Disclosures**. The parties will exchange the information
required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2 by **February 24, 2006**.

1378901/1

2.    **Discovery.**

(a)    All fact discovery shall be completed by **June 2, 2006,** with depositions beginning on or after **April 3, 2006.** There shall be no more than twelve depositions noticed by each party, with each deposition taking no more than seven hours.

(b)    Reports from retained experts under Fed. R. Civ. P. 26(a)(2) on issues for which any party has the burden of proof are due by **June 5, 2006.** Rebuttal expert reports are due by **June 30, 2006.**

(c)    Expert depositions shall be completed by **July 14, 2006.**

(d)    Any discovery dispute shall be submitted to the Court pursuant to Fed. R. Civ. P. 37. During the course of discovery, each party is limited to **two (2)** Rule 37 motions. The Court shall make itself available, however, to resolve through a telephone conference, disputes that arise during the course of a deposition and disputes related to entry of a protective order.

3.    **Joinder of other Parties, Amendment of Pleadings and Counterclaims.** All motions to join other parties, amend the pleadings and assert counterclaims shall be filed on or before **June 16, 2006.**

4.    **Settlement Conference.** Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

5.    **Applications by Motion.** Any application to the Court shall be by written motion filed with the clerk. Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to chambers. **Any nondispositive motion shall contain the statement required by D. Del. LR 7.1.1.**

6.    **Motions in Limine**. All motions <u>in</u> <u>limine</u> shall be filed on or before **July 28, 2006**. All responses to said motions shall be filed on or before **August 4, 2006**.

7.    **Witnesses, Exhibits and Deposition Designations**

    (a)    By **July 17, 2006**, each party shall serve:

        (i)    A list of fact witness previously disclosed during discovery and intended to be called at trial;

        (ii)    A list of intended trial exhibits;

        (iii)    Deposition designations for use at trial.

    (b)    By **July 24, 2006**, each party shall serve:

        (i)    A list of rebuttal fact witnesses;

        (ii)    Any objections to lists of fact witnesses, intended trial exhibits, and deposition designations;

        (iii)    Counter deposition designations.

    (c)    By **July 28, 2006**, each party shall serve any objections to counter deposition designations.

    (d)    By **August 4, 2006**, depositions must be taken of fact witnesses not previously deposed and intended to be called at trial

8.    **Joint Pretrial Order**. The parties will file a joint pretrial order, pursuant to D. Del. L.R. 16.4, by **August 11, 2006**.

9.    **Pretrial Conference**. A pretrial conference will be held on September 7, 2006 at 4:30 p.m. in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

10.    **Trial**. This matter is scheduled for a **5-day bench trial** commencing on September 18, 2006 in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan on being allocated a total number of hours in which to present their respective cases.

IT IS SO ORDERED

_____
UNITED STATES DISTRICT JUDGE

Dated: _____

1378901/1

# EXHIBIT C

**CURRENT DEPOSITION SCHEDULE FOR PIKE V. DUBEA**

1.  April 28:  Rob Kimmons in Houston, Texas (completed)

2.  May 3:  30(b)(6) for Pike on discovery matters in North Carolina (completed)

3.  May 8:  30(b)(6) of LGB in New York, NY (postponed by Dubea on May 2)

4.  May 10:  Altec in Birmingham, Al

5.  May 11:  Alex Graham in Houston, TX

6.  May 15:  Sammy Christian in Houston, TX

7.  May 16:  Bob Strother in Houston, TX

8.  May 18:  Simmy Thibeaux in North Carolina

9.  May 19:  AEP in Houston, TX

10.  May 24:  Eric Pike in Houston, TX

11.  May 25:  Chad Dubea in Houston, TX

12.  May 26:  Cory Close (and T&D 30(b)(6)) in Houston, TX

13.  May 30:  Jeff Collins in Delaware

14.  May 31:  Frank Brinkley in Delaware

15.  June 1:  Mick Dubea in Delaware

# EXHIBIT D



"Lazarus, Lewis"
<LLazarus@morrisjames.com>

04/18/2006 04:59 PM

To   "Sarah Paul" <SPaul@cravath.com>, "Wes Earnhardt"
     <WEarnhardt@cravath.com>

cc   "Lintner, Matthew F." <MLintner@morrisjames.com>,
     "Naylor, Joseph S." <JNaylor@morrisjames.com>, "Godwin,
     Sheila M." <SGodwin@morrisjames.com>,
     tl.danish@rcclaw.com

bcc

Subject   Pike v. dubea

History:          ↪ This message has been forwarded.

Sarah and Wes:

Attached as Sarah requested earlier today is a proposed stipulation for consolidation. Also attached is
a revised schedule in the Delaware action reflecting the dates we discussed with Wes and Teri. The
only other change to the schedule is that I have changed from ten to twelve the number of fact
depositions each party might notice. I think we should submit both to the court at the same time. Let
us know if you have any comments or suggestions.

---

**MorrisJames**
**DELAWARE**

**Lewis H. Lazarus, Esq.**
Morris. James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306
(For courier deliveries, the zip code is 19801)
llazarus@morrisjames.com
302 888 6970 Direct Dial
302 571 1750 Fax
www.morrisjames.com

---

This communication may be subject to the attorney-client privilege or the attorney work product
privilege or may be otherwise confidential.  Any dissemination, copying or use of this communication
by or to anyone other than the designated and intended recipient(s) is unauthorized   If you are not the
intended recipient, please delete or destroy this communication immediately.

---

To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that
any U.S. federal tax advice contained in this communication (including any attachments) is not
intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the
Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction
or matter addressed herein.

                    

Amended Scehduling Stipulation.pdf   Dubea_ Final Stip for Consolidation and Amendment of Schedule.pdf

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION &      )
PIKE ELECTRIC, INC.,             )
                                 )
       Plaintiffs,             )
   v.                            )
                                 )    C.A. No. 05-879 (SLR)
MICK DUBEA,                      )
                                 )
Defendant.                       )

### PROPOSED AMENDED SCHEDULING ORDER

WHEREAS, the parties, having satisfied their obligations under Fed. R. Civ.

P. 26(f), and the Court having conducted a pretrial scheduling conference on

January 18, 2006 pursuant to Fed. R. Civ. P. 16 and D. Del. L.R. 16.2(a) and (b), and

having entered a Proposed Stipulated Scheduling Order on March 13, 2006;

IT IS ORDERED that:

1.    **Pre-Discovery Disclosures**. The parties will exchange the

information required by Fed. R. Civ. P. 26(a)(1) and D. Del. LR 16.2 by

**February 24, 2006.**

2.    **Discovery**.

(a)    All fact discovery shall be completed by **June 30, 2006,**

with depositions beginning on or after **April 3, 2006.** There shall be no

more than twelve depositions noticed by each party, with each deposition

taking no more than seven hours.

(b)    Reports from retained experts under Fed. R. Civ. P.

26(a)(2) on issues for which any party has the burden of proof are due by

1

July 7, 2006. Rebuttal expert reports are due by July 31, 2006.

(c)     Expert depositions shall be completed by August 14, 2006.

(d)     Any discovery dispute shall be submitted to the Court pursuant to Fed. R. Civ. P. 37. During the course of discovery, each party is limited to two (2) Rule 37 motions. The Court shall make itself available, however, to resolve through a telephone conference, disputes that arise during the course of a deposition and disputes related to entry of a protective order.

3.     Joinder of other Parties, Amendment of Pleadings and Counterclaims. All motions to join other parties, amend the pleadings and assert counterclaims shall be filed on or before July 17, 2006.

4.     Settlement Conference. Pursuant to 28 U.S.C. § 636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

5.     Applications by Motion. Any application to the Court shall be by written motion filed with the clerk. Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to chambers. Any nondispositive motion shall contain the statement required by D. Del. LR 7.1.1.

6.     Motions in Limine. All motions in limine shall be filed on or before August 18, 2006. All responses to said motions shall be filed on or before August 25, 2006.

2

7.    **Witnesses, Exhibits and Deposition Designations**

(a)    By **August 7, 2006**, each party shall serve:

(i)    A list of fact witness previously disclosed during discovery and intended to be called at trial;

(ii)    A list of intended trial exhibits;

(iii)    Deposition designations for use at trial.

(b)    By **August 14, 2006**, each party shall serve:

(i)    A list of rebuttal fact witnesses;

(ii)    Any objections to lists of fact witnesses, intended trial exhibits, and deposition designations;

(iii)    Counter deposition designations.

(c)    By **August 18, 2006**, each party shall serve any objections to counter deposition designations.

(d)    By **August 25, 2006**, depositions must be taken of fact witnesses not previously deposed and intended to be called at trial

8.    **Joint Pretrial Order**. The parties will file a joint pretrial order, pursuant to D. Del. L.R. 16.4, by **August 31, 2006**.

9.    **Pretrial Conference**. A pretrial conference will be held on September 7, 2006 at 4:30 p.m. in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington, Delaware. The Federal Rules of Civil Procedure and D. Del. LR 16.4 shall govern the pretrial conference.

3

10.   **Trial**.  This matter is scheduled for a **5-day bench trial**
commencing on September 18, 2006 in courtroom 6B, sixth floor Federal
Building, 844 King Street, Wilmington, Delaware.  For purposes of completing
pretrial preparations, the parties should plan on being allocated a total number of
hours in which to present their respective cases.

IT IS SO ORDERED

_____
UNITED STATES DISTRICT JUDGE

Dated: _____

# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION and )
PIKE ELECTRIC, INC., )
)
            Plaintiffs, )   C.A. No. 05-879 SLR
)
    v. )
)
MICK DUBEA, )
)
         Defendant. )

STATUS QUO ORDER

WHEREAS, Pike Electric Corporation and Pike Electric, Inc. (collectively,

"Plaintiffs" or "Pike") have moved for a preliminary injunction and expedited

proceedings in connection with defendant Mick Dubea's ("Dubea" or "Defendant")

alleged violation of an employment contract with Pike after Pike terminated him without

cause effective August 22, 2005;

WHEREAS, while Dubea denies the allegations, he nonetheless is willing to stipulate

to a status quo order pending a final hearing;

NOW THEREFORE, this 18th day of January, 2006, the parties hereby stipulate and

agree, subject to the approval of the Court, as follows:

1. Pending a final hearing,

A. Defendant shall not, and Defendant shall not cause his representatives, agents
and affiliates to:

1. Violate Dubea's July 1, 2004 employment agreement, as amended May 5,
2005 (the "Employment Agreement"), by *inter alia*, competing against Pike and
soliciting Pike's customers and employees in violation of Section 5.07 of the
Employment Agreement, and disclosing Pike's confidential information in violation of
Section 5.03 of the Employment Agreement;

133717376

2. Use any of Pike's trade secrets to further the business of T & D Solutions, Ltd. ("T & D"); or

3. Assist T & D in any way in its business activities, including, without limitation, by providing financial support of any kind to T & D or advising T & D or its directors, officers or employees in any way regarding T & D's business.

II.  The entry into this status quo order:

A. Cannot be used as evidence in this or any other proceeding that Defendant has violated or is violating any aspect of his Employment Agreement or any other duty owed Pike;

B. Is without prejudice to Pike and Dubea's ability to raise any and all claims and defenses in this action, including to the enforceability of the Employment Agreement; and

C. Does not affect in any way the parties' rights or obligations under the Employment Agreement

RICHARDS, LAYTON & FINGER

/s/ William J. Wade
William J. Wade (#704)
Wade@rlf.com
Alyssa M. Schwartz (#4351)
Schwartz@rlf.com
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700
Attorneys for Plaintiffs, Pike Electric Corporation
and Pike Electric, Inc.

133717315

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

/s/ Lewis H. Lazarus
Lewis H. Lazarus (#2374)
llazarus@morrisjames.com
Matthew F. Lintner (#4371)
mlintner@morrisjames.com
Thomas E. Hanson, Jr. (#4102)
thanson@morrisjames.com
(302) 888-6800
Attorneys for Defendant Mick Dubea

Dated: January 18, 2006

IT IS SO ORDERED this _____ day of _____, 2006.

_____
United States District Judge

133717346

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

PIKE ELECTRIC CORPORATION &
PIKE ELECTRIC, INC.,

**Plaintiffs**

v.

T & D SOLUTIONS, LTD., T& D SOLUTION
MANAGERS, L.L.C., CORY CLOSE &
CHAD DUBEA,

**Defendants**

Civil Action No. M-05-410
Jury Demanded

## DEFENDANT'S RESPONSE TO PLAINTIFFS' COMBINED FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

**NOW INTO COURT**, through undersigned counsel, comes T & D SOLUTIONS, LTD.,

T& D SOLUTION MANAGERS, L.L.C., CORY CLOSE & CHAD DUBEA, made defendants

herein, and who, in response to *Plaintiffs' Combined First Set of Request for Production of*

*Documents and Interrogatories* follows respectfully answers as follows

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:

All documents and communications concerning the decision to form T&D, including all documents

discussing the risks, feasibility, funding requirements, employee requirements, or any other risks,

requirements or benefits associated with T&D' s formation.

## ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:

*Please see attached:*

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**

All documents and communications concerning the formation, financing and corporate structure of

T&D, including but not limited to any bank records, loan agreements, trust agreements, guarantee

agreements, liens, plans, schematics, hand- written notes, contracts and/or leases.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2:**

*Please see attached.*


**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:**

All documents and communications concerning T&D's operations including where it conducts

business, its customers, its employees, the type of work it performs, it's management structure, its

corporate structure any related or affiliated entities, any funding or financial backing it has received,

and the source of that funding or financial backing.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 3:**

*Please see attached.*


**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:**

All documents and communications concerning the marketing of T&D's business and/or the methods

by which T&D conducts that marketing, including but not limited to any materials from meetings,

training sessions, seminars or conferences, and any manuals, instructions, guides or writings.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4:**

*Please see attached, as well as the website http://www.tdsolutions1.com.*


**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:**

All documents and communications concerning any advertising done by T&D, or by any other persons on behalf of T&D.

## ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 5:

*Please see attached, including the business plan which was used to encourage bank and other financing for T & D Solutions, as well as the above mentioned website.*

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:

All documents and communications concerning T&D's customer lists, pricing lists, vendor lists and employee compensation.

## ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6:

*Please see attached.*

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7:

All documents and communications between Defendants and any former or current employee of Pike; or between Defendants and any former or current employee of RSI, concerning T&D or any aspect of T&D's business, including any documents related to the employment of those individuals by T&D.

## ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 7:

*Please see attached. The defendants are in the process of obtaining e-mails from Cory Close and Chad Dubea's computers, and will provide these once they have been isolated and removed.*

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:

All documents and communications between Defendants and any former or current customer of Pike, or between Defendants and any former or current customer of RSI, concerning T&D or any aspect of T&D' s business.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 8:**

*Please see attached.*

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9:**

All documents and communications received or made by Defendants concerning non-compete clauses, contracts, covenants or agreements.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 9:**

*Please see attached.*

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 10:**

All documents and communications reflecting contracts between T&D and any former or current customer of Pike or RSI, along with any documents or communications concerning the reasons or circumstances of that customer's contracting with T&D.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 10:**

*Please see attached.*

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 11:**

All documents and tangible things obtained by the individual Defendants in their capacity as employees of Pike and/or RSI, including but not limited to any documents formed on the Pike work computer possessed by Cory Close, as well as the computer itself, or access thereto.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 11:**

*Please see enclosed compact disks containing computer data.*

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 12:**

All documents and communications concerning nonpublic information about Pike's business, and all documents and communications concerning the use of that information in T&D's business.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 12:**

*Please see the attached profit and loss projection created by Cory Close and which utilized certain information from Clifton Drotty's crew profit and loss statements from the year 2004. Please see attached.*

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 13:**

Documents sufficient to show all phone numbers, addresses, email accounts, and bank accounts maintained by Defendants during the last two years.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 13:**

*Upon information and belief, these documents have already been requested by subpoena, and the undersigned counsel wishes to discuss with counsel to the plaintiffs regarding the need to duplicate this production of documents. (The response to this is incomplete and the undersigned counsel is awaiting copies of utility bills and bank statements from the defendants.)*

Page 5

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 14:**

All documents and communications discussing Pike's business in any way, including all documents and communications concerning T&D's competition with Pike.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 14:**

*No such documents exist.*

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 15:**

All documents upon which Defendants relied in answering the interrogatories set forth below.

**ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 15:**

*Please see attached.*

## INTERROGATORIES

### INTERROGATORY NO. 1:

Describe all circumstances pertaining to the financing and formation of T&D, including but not limited to any financial backing and/or advice provided by Mick Dubea or other former Pike employees.

### ANSWER TO INTERROGATORY NO. 1:

*As far as advice and/or financial backing provided by Mick Dubea, Defendants would respond that Mick Dubea advised Chad Dubea that the formation of this new business would be a hard road and that Pike wouldn't just let this new business happen. Mick Dubea provided no direct financial backing to the formation of T & D Solutions, Ltd.; Chad Dubea did use funds that had been placed in a grantor-retained annuity trust for his benefit in the start-up of T & D Solutions, Ltd. and T & D Solution Managers, LLC (hereinafter referred to collectively as "T & D").*

*In September of 2004, Sammy Christian and Alex Graham approached Chad Dubea about the possibility of starting a new electrical transmission and distribution construction and maintenance company. These discussions happened on the occasion of Pike cutting bonuses to employees. For example, Alex Graham's pay was cut by approximately $100,000.00 per year. Thereafter, the discussions of starting a new company ended and did not resume until May or June of 2005, with the integration of Red Simpson, Inc.'s Western Division with Pike. Previously, employees in the old Red Simpson Western Division had heard horror stories of the integration of Red Simpson's operations in the East, including the taking of tools and equipment from crews, making it more difficult for crews to do their various jobs. When the integration of Red Simpson,*

Page 7

*Inc.'s Western operations began, Pike took away credit cards and petty cash funds that were given to crew foremen to facilitate operations. Further, Pike disallowed all reimbursement for receipts of goods purchased at Wal-Mart which were necessary for continued operations by the various crews. The proverbial straw that broke the camel's back was when Pike discontinued a policy whereby Red Simpson, Inc. had purchased Gatorade for consumption by its working crews. Further, the crews were prohibited from carrying ice chests with Gatorade with them. These events generally occurred in the summer of 2005.*

*In September of 2005, Chad Dubea decided to form his own company, inasmuch as he had a great deal of experience in the industry, and his father had given him a substantial sum of money in the form of a grantor retained annuity trust which could be used for the initial capitalization of the business. The original plan was to begin operations in 2006. However, the advent of Hurricane Rita in Western Louisiana and East Texas made the prospects of going into business sooner much more feasible and desirable due to the increased amount of available work in the industry for this particular region.*

*Chad Dubea does recall a specific conversation with his father, Mick Dubea in September 2005 during Hurricane Rita that Mick did agree with Chad's opinion that now was a good time to begin a new transmission and distribution contracting business due to Hurricane Rita.*

*The defendants would additionally point out that Pike's policies regarding the use of work vehicles, specifically pick-up trucks, by Pike employees on the weekends was changed so to deprive employees of their company vehicles during the weekends. This factor also probably*

Page 8

*contributed to Pike employees leaving Pike for other employment with electrical contractors, including, but not limited to, T & D.*

*In late September, Chad Dubea met with Cory Close regarding the formation of the company. Chad had spoken with Cory on earlier occasions about the possibility of forming a company, but operations were stepped up in order to obtain work created by Hurricane Rita.*

*Cory Close had used a profit and loss statement that belonged to Timothy Drotty's crew while working for Red Simpson, but prior to Pike's purchase of Red Simpson. He extracted some of the crew costs from this profit and loss statement. This was incorporated in the initial profit and loss which is provided to plaintiffs in this production of documents. This profit and loss was printed from RSI's server. However, this profit and loss statement was available from Tim Drotty, as well as any other RSI crew foreman having the same profit and loss data for their particular crew. The cost data extracted generally related to miscellaneous items such as non-inventory type supplies (Gatorade, motor oil, etc.) and the general costs of running equipment. However, this prospective profit and loss for T & D was then dramatically changed by costs of insurance, the costs purchasing new equipment, and other factors.*

*T & D approached various insurance companies regarding its insurance companies regarding its coverage, and ultimately elected agent Dwayne Moore with Bancorp South for its insurance coverage.*

*Mr. Close's business banker, Robert Alexander, was at Red River Bank, but had recently moved to Southern Heritage Bank. Mr. Close called Mr. Alexander and ultimately met with him and Randy Welch, the president of Southern Heritage Bank, and presented him a copy of the business plan which is provided in the attached production of documents. This same business plan and proposal for financing was also taken to Blake Chatelain and Brian Salazar at Red River Bank. However, Red River Bank was concerned about violating John Simpson's non-competition agreement with Pike and Simpson's membership on Red River Bank's board, and therefore, did not provide the loan. This request to both banks was made on October 17, 2005, approximately one week before T & D planned to begin business. In short, Cory Close and Chad Dubea requested $5,000,000.00 from Southern Heritage Bank in four days for equipment and operating. The operating instruments made to Southern Heritage Bank are enclosed in the attached production of documents.*

*On Friday of that week, Southern Heritage Bank approved the loan. That weekend, Chad Dubea and Cory Close procured the necessary equipment for its first few crews to begin operations on Monday. T & D began operations on October 24, 2005.*

*To further explain the financing of T & D, a copy of the grantor retained annuity trust of which Chad Dubea was the beneficiary, is attached in the production of documents. Prior to T & D beginning business, Mick Dubea had resigned as Trustee of the grantor retained annuity trust due to a timber deal and some litigation regarding the purchase of timber. In short, Mick was advised by his attorneys to resign. Further, Pat Dubea, Chad's mother, also resigned as the successor-trustee of the trust. At the time, of T & D's start-up, Dubea Investments, Ltd., a limited*

Page 10

*partnership owned by Mick Dubea, had borrowed $4,250,000.00 from the grantor retained annuity trust. However, the trust owed Mick Dubea $2.5 million as far as the return of his initial capital contribution. On or about November 25, 2005, Chad Dubea was due to be able to spend, as trustee, some $2,000,000.00 from the trust. The $1.09 million from the GRAT is currently in a certificate of deposit at Southern Heritage Bank and is pledged to secure an operating line of credit in that same amount. Initially, before the funds were returned to the trust by Dubea Investments, Ltd., the $4,250,000.00-note from Dubea Investments, Ltd. was pledged to Southern Heritage Bank as collateral for the operating line of credit.   Upon information and belief, there is approximately another $600,000.00 at Red River Bank that is part of the Trust.*

*Southern Heritage Bank further agreed to loan T & D Solutions $2.75 million for purchases of equipment. Initially, the bank had requested that Chad Dubea grant a mortgage on his home in Texas to secure this line. However, the bank determined it would be too difficult to obtain a valid and first mortgage on the property under Texas law. Cory Close pledged a $100,000.00 CD of his to initially secure the line of credit. However, due to payments made and the company's finances, this certificate of deposit has been released. Upon information and belief, the initial line of credit for equipment was in the amount of $1,000,000.00, but was increased to $2.75 million some time in January, 2006.*

*The debtor has also financed a good amount of its equipment with Altec and copies of those documents are attached hereto in the production of documents, or will be provided when they are available. Altec has made a general oral commitment to lease-purchase whatever equipment T & D needs. T & D has also been in discussions with Terex-Telelect  regarding equipment*

Page 11

*financing. While no agreement has been reached, Terex-Telelect has made an unofficial commitment of up to $2,000,000.00 for equipment financing. The debtor also financed three pick-up trucks with Ford Motor Credit.*

## INTERROGATORY NO. 2:

Describe the nature of T&D's operations, including where it conducts business, the type of work it performs, its management structure, its corporate structure. Describe any related or affiliated entities, any funding or financial backing t has received. and the source of that funding or financial backing and identify all of T&D's customers and employees to date.

## ANSWER TO INTERROGATORY NO. 2:

*T & D is a contractor in the electrical transmission and distribution industry, including maintenance and construction aspects of this business. T & D is also involved in the construction and maintenance of underground lines as a part of its business. T & D is not engaged with any other businesses.*

*T & D does business in most of Texas, primarily in the eastern and southern regions of the state. T & D also does business in the western part of Louisiana. T & D Solutions, Ltd. is a Texas limited partnership, of which T & D Solution Managers, LLC is the general partner, and Chad Dubea is the limited partner. It is anticipated in the near future that Cory Close, Robert Strother, and Rick Cook will be added as limited partners. Other persons may be made limited partners in the future as well. T & D Solution Managers, LLC is a Texas limited liability company of which Chad Dubea is the sole member and manager. As far as T & D's management structure, Chad*

Page 12

*Dubea is the chief executive officer of T & D, while Cory Close serves as the Chief Financial Officer and Bob Strother serves as the Safety Director. Rick Cook and Alex Graham currently serve as general foreman. Below these general foremen are various crews, which are each headed by a foreman. A complete list of all of T & D's employees and their rates of compensation is provided in the attached production of documents. T & D's customers include at this time: Sharyland Utilities, American Electric Power (AEP), Entergy, Beauregard Electric, Valley Electric, the City of Garland (Texas), Sam Houston Electric, TXU, Perdinales Electric, and CLECO. T & D is currently soliciting more customers and this listing will be updated prior to trial.*

## INTERROGATORY NO. 3:

Identify and describe any marketing and/or advertising done by T&D or by my other person on T&D's behalf and describe the methods by which such marketing and/or advertising has been conducted.

## ANSWER TO INTERROGATORY NO. 3:

*The primary marketing and advertising done by T & D is through face-to-face meetings. Further, the company has adopted a logo which is placed on trucks, business cards, and letterheads. Samples of these are enclosed in the attached production of documents and can be viewed at the website: http://www.tdsolutions1.com.*

Page 13

**INTERROGATORY NO. 4:**

Identify the job titles of T&D's employees and desciihe the nature of each employee's work for T&D.

**ANSWER TO INTERROGATORY NO. 4:**

*A list of T & D's employees and their job titles is provided in the attached production of documents.*

**INTERROGATORY NO. 5:**

Identify any and all former or current employees of Pike, and any and all former or current employees of RSI, with whom Defendants have been in contact since October 5, 2005, and describe the nature and content of each of Defendants' communications with each of those persons face to face meeting, telephone calls, e-mail, etc).

**ANSWER TO INTERROGATORY NO. 5:**

*Defendants object to this interrogatory as overbroad, and nearly impossible to answer, inasmuch as there is continual and almost day-to-day contact among employees of T & D Solutions, Ltd., many or all of whom are former employees of both Pike and Red Simpson, Inc. Notwithstanding this objection, Chad Dubea approached Anesta Rocha and Jessie Acosta regarding coming to work for T & D Solutions, Ltd. due to their connections with Sharyland Utilities. No other employee of Pike was approached by T & D, Chad Dubea, or Cory Close regarding coming to work for T & D Solutions. Rather, these employees always contacted Chad Dubea by telephone conference. Chad would request information from the employee, including how much they were paid by Pike Electric prior to making them an offer to come to work for T & D Solutions, Ltd.*

## INTERROGATORY NO. 6:

Identify any and all former and current customers of Pike and any and all former or current customers of RSI, with whom Defendants have been in contact since October 5, 2005, and describe the nature and content of each of Defendants' communications with each of those persons (eg,. face to face meeting, telephone call, mail, etc.)

## ANSWER TO INTERROGATORY NO. 6:

*The defendants would answer as follows:*

- *Sharyland Utilities was contacted via face-to-face meeting by Chad Dubea.*

- *American Electric Power (AEP) was contacted by Chad Dubea and Robert Strother by a face-to-face meeting.*

- *Entergy was contacted by Bob Strother via a face-to-face meeting.*

- *Beauregard Electric was contacted by Cory Close by telephone.*

- *Valley Electric in Natchitoches, Louisiana, was contacted by telephone solely relating to storm work. No other work since the work resulting from Hurricane Rita has been forthcoming.*

- *The City of Garland, Texas, was contacted by Chad Dubea initially by telephone and later followed up with a face-to-face meeting. This work is currently subcontracted to planetary utilities.*

Page 15

- *Sam Houston Electric was contacted by Bob Strother in a face-to-face meeting.*

- *TXU was contacted by Chad Dubea and Bob Strother via face-to-face meeting.*

- *Perdinales Electric was contacted by Chad via telephone. No work has been forthcoming from this customer contact.*

- *As to CLECO, Bob Strother, Rick Cook, and Chad Dubea, had a face-to-face meeting with Steve Gauthier; there have been numerous face-to-face meetings and telephone calls since that date.*

## INTERROGATORY NO. 7:

Identify and describe any and all confidential information of Pike and/or RSI acquired by the Individual Defendants in their capacity as employees of Pike and/or RSI, including but nor limited to any and all information about Pike's business that is not generally known to the public.

## ANSWER TO INTERROGATORY NO. 7:

*The defendants deny that any of Pike's information that was, in fact, confidential was acquired by the individual defendants in their capacity as employees of Pike and/or Red Simpson, Inc. As far as information about Pike's business that is generally not known to the public, the defendants had knowledge of the general pricing structures of Red Simpson, Inc., the costs to operate a crew, and salary information. However, this information, while not generally known to the public, was available to any current or former Red Simpson employee during the time they were working for Pike or Red Simpson, and this information was often freely shared when requested by T & D of*

*the former employees. CLECO provided it's price list for work it contracted, which is also probably not generally known to the public.*

## INTERROGATORY NO. 8:

Identify and describe all instances in which T&D has learned of or acquired any confidential information related to Pike and/or RSI, including but not limited to any and all information about Pike's business that is not generally known to the public.

## ANSWER TO INTERROGATORY NO. 8:

*T & D has not learned of nor acquired any confidential information related to Pike or Red Simpson, Inc., other than in the normal course of business, such as asking a new employee how much they previously made prior to hiring that employee in order to make an appropriate financial offer regarding employment.*

## INTERROGATORY NO. 9:

Identify and describe all instances since September 2005 in which information has been deleted or removed from the work computer possessed by Cory Close, and describe the nature of that information and by whom it was deleted, erased or removed.

## ANSWER TO INTERROGATORY NO. 9:

*After September 2005, the work computer possessed by Cory Close had a hard drive which began to fail, meaning that the operating system, Windows, would no longer boot up. Mr. Close cut and removed the documents from the "My Documents" folder of the computer and placed same on a new hard drive. This folder is reproduced on one of the enclosed CD's as part of the document production herein. The complete contents of the hard drive, other than the "My Documents" folder, is also enclosed on CD's which were created by Turning Point Solutions in Pineville, Louisiana, by extracting the data that was available on the failed hard drive. The failed hard drive*

Page 17

*is still in the possession of the undersigned counsel, and will be made available to any experts desired by Pike upon request. Based on information received from Turning Point Solutions, no other data can be extracted from the hard drive by usual methods, and a clean room and highly skilled personnel would be needed to attempt to extract the information that was not retrievable on the hard drive. Based on what Turning Point Solutions has represented to the undersigned counsel, the only thing that was not able to be retrieved from the hard drive were certain internet cookies, which would be of no relevance to these proceedings.*

*In any event, if any information was deleted, erased or removed, it would have been deleted, erased, or removed by Cory Close.*

*Defendants would further point out that, as a general rule, employees of Red Simpson, Inc. saved their work on servers, rather than on the individual hard drives of their work computers. Spreadsheets and other documents on which Mr. Close worked for Red Simpson, Inc. and Pike would be located on that server or those servers.*

**INTERROGATORY NO. 10:**

Identify all phone numbers, addresses, e-mail accounts, and bank accounts maintained by Defendants during the last two years, and identify the bank personnel with whom Defendants have been in contact regarding their accounts.

**ANSWER TO INTERROGATORY NO. 10:**

*The defendants object to this interrogatory as overbroad and not likely to lead to discoverable information. Notwithstanding the objection, bank statements from T & D Solutions, Ltd.'s bank*

Page 18

*accounts at Southern Heritage Bank are being produced with this discovery response as part of the document production. As to Chad Dubea, he has an account at Red River Bank, and his primary banking contact at that bank is Bryon Salazar. Chad Dubea also maintains a checking account at Bank of America, which was set up in Harlingen, Texas. Mr. Dubea does not recall the banker assigned to this account, and he continues to utilize this account in Beaumont.*

*Cory Close has a private banker at Red River Bank by the name of Candace Bain. He further works with Diane Pennington, or Bryon Salazar at Red River Bank regarding his business banking needs for his CPA practice and for other business banking. Cory Close also has a $10,000 CD at the Union Bank in Alexandria, Louisiana, a money market investment account at Edward Jones in Alexandria, Louisiana, and the business accounts for a mobile home rental business, Triple C Properties, which he owns with his father and brother-in-law, and which is also located at the Union Bank. Mr. Close also maintains an account at the Alexandria USDA Federal Credit Union with a couple of thousand dollars in it, largely because his wife, Melissa, has a vehicle financed through the Credit Union.*

*Cory Close has resided at 6806 Bayou Rapides Road, Alexandria, LA 71303, since September of 2002. He has had the following e-mail addresses during the last two years: harlencclose@tdsolutions1.com , Cory@Coryclosecpa.com, cclose@pike.com, and cclose@redsimpson.com. Mr. Close has the following telephone numbers: home - 318 442-5501; T & D Solutions - 318 442-8138; T & D fax - 318 342-8174; and his cell phone - 318 308-6510;*

Page 19

*Cory Close may have other cell phones in his name that are used by his wife and/or other employees of T & D Solutions, but they are not his personal numbers, nor can he be contacted at same.*

*Chad Dubea has resided at 4780 Elmhurst, Beaumont, Texas 77706 since December, 2005. Prior to that he resided at 2626 Harlingen, Texas 78552. His home number in Harlingen, Texas was 956-440-0926, while his cell phone was 956-535-0664. Currently, his home number is 409-898-4644, and his cell phone is 409-767-3987. Chad Dubea may be the "name"assigned to certain other cell phones which are used by either members of his family or employees of T & D Solutions, Ltd. During the last two years, Chad Dubea has had the following e-mail addresses: cdubea@tdsolutions1.com; cdubea@pike.com; and cdubea@redsimpson.com.*

## INTERROGATORY NO. 11:

Identify each individual who supplied information for and/or participated in the preparation of Defendants' answers to these interrogatories.

## ANSWER TO INTERROGATORY NO. 11:

*Chad Dubea and Cory Close conferred with the undersigned counsel in the preparation of the defendant's answers to the interrogatories and request for production of documents.*

Page 20

Respectfully submitted by:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

Bradley L. Drell (Bar Roll #24387)
Attorney at Law
P. O. Box 6118
Alexandria, LA   71307-6118
Telephone (318) 445-6471
Fax: (318) 445-6476
e-mail: bdrell@goldweems.com

### ATTORNEYS FOR DEFENDANTS

### CERTIFICATE OF SERVICE

This will certify that a true and correct copy of *Answers to Plaintiffs' Combined First Sets*

*of Requests for the Production of Documents and Interrogatories to Defendants T&D Solutions, Ltd*

*T&D Solution Managers, LLC; Cory Close and Chad Dubea* was served on all counsel of record

on the 10th day of April, 2006 by depositing a copy of same in the United State Mail, properly

addressed, with pre-paid postage affixed, as indicated below:

Teri Danish, Esq.
Eduardo Roberto Rodriguez
Norton A. Colvin, Jr.
**RODRIGUEZ, COLVIN, CHANEY & SAWNZ, LLP**
P. O. Box 2155
Brownsville, TX 78522

Michael K Paskin , Esq.
**CRAVATH, SWAINE & MOORE, LLP**
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475

Page 21

Veronica Gonzales, Esq.
**KITTLEMAN, THOMAS & GONZALES, LLP**
4900-B North 10th Street
McAllen, TX 78504

Sofia A. Ramon, Esq. (without enclosures)
**ATLAS & HALL, LLP**
818 Pecan
McAllen, TX 78501.

The documents were produced solely to Michael K. Paskin and the law firm of Cravath,

Swaine & More, LLP.

Alexandria, Louisiana, this date: April 10, 2006.

Respectfully submitted:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By:

Bradley L. Drell  (Bar Roll #24387)
P. O. Box 6118
Alexandria, LA  71307-6118
Telephone: (318) 445-6471
Facsimile:  (318) 445-6476
e-mail: bdrell@goldweems.com

**ATTORNEYS FOR DEFENDANTS**

Page 22