IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PIKE ELECTRIC CORPORATION and | ) |
| PIKE ELECTRIC, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 05-879-SLR |
| | ) |
| MICK DUBEA, | ) **REDACTED -** |
| | ) **PUBLIC VERSION** |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT MICK DUBEA'S REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR AMENDMENT OF SCHEDULING ORDER**

Lewis H. Lazarus (#2374)
Matthew F. Lintner (#4371)
Joseph S. Naylor (#3886)
**MORRIS, JAMES, HITCHENS & WILLIAMS LLP**
222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801
(302) 888-6800
llazarus@morrisjames.com
mlintner@morrisjames.com
jnaylor@morrisjames.com

Dated: May 15, 2006          **Attorneys for Defendant Mick Dubea**

Plaintiffs' Opposition makes several factual assertions that require correction. Moreover, events since the filing of the motion have only amplified Mr. Dubea's concerns that the current schedule will deprive him of a fair opportunity to present his claims and defenses. It particular, Mr. Dubea has recently learned that Pike has failed to preserve and produce responsive documents, either for lack of effort or because they are lost. Whether they are irretrievably lost and, if so, the consequences, are issues that remain to be explored. It is not surprising that as a tactical matter Pike wishes to insist that Mr. Dubea go to trial with incomplete information and without time to sort out the truth regarding what Pike documents have been destroyed, and what have been improperly withheld. But the schedule to which Mr. Dubea originally agreed assumed that Pike, with a strong interest in prompt resolution, would do its part. Because Pike has failed to do so, fairness requires that the schedule be modified.

Plaintiffs Pike Electric Corporation and Pike Electric, Inc.'s (collectively "Pike") Opposition Memorandum to Defendant Mick Dubea's Motion for Amendment of Scheduling Order ("Opposition") trumpeting the extent of their compliance with their discovery obligations is telling for its omissions. Specifically, Plaintiffs' Opposition omits that:

- Approximately five weeks ago, shortly after Mr. Dubea agreed to the scheduling order, Pike's counsel advised that Pike still had not sent a litigation-hold letter, despite the fact that Pike has admitted it reasonably anticipated this litigation by October 2005;

- Promptly thereafter, Mr. Dubea sent out a 30(b)(6) notice seeking to understand immediately the implications of that failure (*See* Ex. A- Mr. Dubea's 30(b)(6) notice to Pike for April 13, 2006);

- Pike refused to produce a witness until May 3, 2006 (*See* Exs. B & C—re-notices of deposition for April 25 and May 3, 2006), and then only if the deposition were held in Mt. Airy, North Carolina;

- At the deposition, Pike's 30(b)(6) designee was uniformed and unprepared on significant relevant topics but did confirm that (1) Pike failed to take any steps to preserve key relevant documents as Mr. Dubea assumed when the parties first agreed upon a schedule; (2) the belated and limited efforts that Pike began taking approximately five weeks ago to preserve such documents were wholly inadequate and in several respects may have contributed to the deletion of relevant electronic documents; and (3) as of last week, Pike is still allowing potentially relevant electronic documents to be deleted pursuant to what Pike has described as a 180-day-auto-deletion policy;

- The documents produced thus far reflect that emails that are plainly responsive and have been produced to Mr. Dubea by a third party to and from the email address of Pike's Chief Executive officer, Eric Pike, were not produced by Pike; and

- Despite requests to do so, Pike has refused to search the email boxes of two Pike officers, Barny Ratliff, Pike's Chief Administrative Officer, and Reg Banner, Pike's former Chief Financial Officer, who are copyees on numerous documents that have been produced.

- 2 –

The Federal Rules of Civil Procedure are designed to prevent surprise at trial. Discovery is designed to enable the parties to establish the relevant facts through the exchange of documents. Pike has not permitted Mr. Dubea to do this. It failed to take steps to preserve documents, delayed the production of a witness who might explain the implications of its failure to do so, provided a witness for deposition whose lack of knowlege which will necessitate a second deposition, and failed to search for responsive documents. The schedule to which Mr. Dubea initially agreed contemplated that Pike would preserve, search for, and produce responsive documents on a timely basis. It has not done so. Fairness thus requires that the schedule be adjusted to permit Mr. Dubea a fair opportunity to obtain and review relevant documents and then to complete deposition discovery.

### 1.    Plaintiffs' Opposition Makes Several Factual Assertions That Require Correction

As a preliminary matter, Plaintiffs' Opposition makes several factual assertions that require correction. On December 21, 2005, Pike filed this action in Delaware claiming that Mr. Dubea had violated his employment agreement by, among other things, helping to run the day to day operations of T&D Solutions, Ltd. ("T&D"). T&D was formed by Mr. Dubea's son, Chad. Chad had worked for RSI/Pike for 12 years prior to the formation of T&D. He was not subject to a covenant not to compete with Pike. To finance the venture, Chad utilized funds from a grantor retained annuity trust established by Mick Dubea *in December of 2003 with Chad as the sole beneficiary* (other than two annuity payments to Mr. Dubea). Pike therefore overreaches in contending that Chad's use of funds from the GRAT constitutes a violation of Mick Dubea's employment

agreement. That is an issue for this Court to determine when it has a full picture of the creation of the GRAT and Chad's use of the funds donated for his benefit before Pike even acquired RSI.

On January 18, 2006, the parties entered into a status quo order. In that order, Mr. Dubea agreed that pending a final hearing, he would not compete against Pike or disclose any of Pike's confidential information in violation of his Employment Agreement. Although Pike asserts that he has violated the status quo order, it presents no evidence to support its allegation. In other words, despite having employed the services of an investigator who, unbeknownst to Mr. Dubea, has been surveilling him and rummaging through his trash, Pike has not a scintilla of evidence that Mr. Dubea has violated the status quo order entered on January 18, 2006.

### 2. Pike Fails To Preserve Documents, Delays A Deposition On That Topic, And Then Fails To Provide A Knowledgeable Witness

At last week's long-delayed 30(b)6 deposition regarding Pike's document retention and retrieval in this action, Pike's designee confirmed that Pike failed to take any steps to preserve key relevant documents until five weeks ago – at least five months after Pike itself admits that it reasonably anticipated litigation with Mr. Dubea. Pike's designee further confirmed that the document retention orders given by Pike's CEO, Eric Pike, were factually inaccurate and could offer no assurance that those improper instructions did not contribute to the deletion of relevant electronic documents. He also testified that, to his knowledge, Pike is still allowing potentially relevant electronic documents to be deleted pursuant to what he described as a 180-day-auto-deletion policy, even though Pike could easily disable that process.

- 4 -

Moreover, that Pike's 30(b)(6) designee was unprepared and unable to provide full and complete answers to many of our follow-up questions only exacerbated Pike's above-described failures, because Mr. Dubea still does not have all of the information that Pike possesses regarding its document retention and retrieval.

3.    **Pike Withholds From Production Plainly Responsive Documents**

Documents supplied thus far reveal emails from Eric Pike's address that Pike should have produced but did not.  For example,

# REDACTED

It is beyond the scope of this memo to discuss the implications of this email for Mr. Dubea's claims and defenses; suffice it to say that the email is plainly responsive to Mr. Dubea's document requests,[1] and yet it was not

---

[1] Moreover, in responding to Mr. Dubea's first request for documents, Pike specifically agreed to "conduct a reasonable search for documents and [] produce non-privileged documents evidencing communications with any LGB officers, partners or general partner about the decision and grounds to terminate Dubea . . . to the extent those documents exist." (*See* Ex. E, Pike's Resp. to Mick Dubea's First Req. for Prod. at pp. 9-

- 5 –

produced.  Our review of documents produced thus far by Pike and LGB indicates that

the above email is one of no fewer than 77 emails in LGB's production that were sent to

or from Eric Pike and yet Pike did not produce (and Pike did not identify on its privilege

log of May 5, 2006).  These emails, which are identified in Exhibit F, either (1) were sent

to or from Mr. Pike's email address or (2) evidence a prior responsive email being sent to

or from Mr. Pike's email address.  None of them, though, were produced by Pike.

      Either Pike failed to undertake an adequate search for these emails or the emails

no longer exist.[2]  And if this is the case for Mr. Pike, whom plaintiffs readily

acknowledge is a person likely to have responsive documents,[3] Mr. Dubea is concerned

that Pike did not properly search the files of other Pike officers and employees.

---

10).  Of the recipients of the email noted above, Alan Goldberg is a co-managing partner
of LGB, Robert Lindsay is a co-managing partner of LGB, Adam Godfrey is a partner of
LGB, and J. Russell Triedman is a partner of LGB.

[2] Pike's obligation to adequately search for responsive emails and documents is in no way
limited to or lessened by whatever search terms the parties discussed.  First, Pike
explicitly agreed that "[t]o the extent that a custodian's potentially relevant documents
are not retrievable via a term search, we will conduct an additional, reasonable search for
those documents." (*See* Ex. G 3/31/06 Ltr. fr. S. Paul to J. Naylor).  Second, Pike cannot
reasonably rely on a limited number of search terms to argue that it reasonably searched
for an email between its CEO, nearly its whole board of directors, and a number of its
officers, which was sent around an important date for this litigation and which discussed
Mr. Dubea's termination.  Third, Pike is in the best position to know which searches will
or will not turn up relevant documents.  For example, only after reviewing documents
could Mr. Dubea's counsel learn that Pike and LGB used the term *Redocted* to refer to RSI
when talking about the acquisition.

[3] For example, following a meet and confer concerning Pike's inadequate response to Mr.
Dubea interrogatory nos. 14 and 15 asking Pike to identify all instances where Pike
discussed or communicated the possibility of terminating Mr. Dubea and all persons who
participated in the decision to terminate him, Pike directed Mr. Dubea "emails sent and
received by Eric Pike in the months preceding Mr. Dubea's termination." *See* Ex. H,
Letter from Sarah Paul to Joseph Naylor dated April 21, 2006 at 2.

- 6 –

That concern has been borne out. Pike refused to search the emails and files of, among others, Barny Ratliff and Reg Banner, and Pike acknowledged that a litigation hold letter had not been sent to these individuals, "who Pike believes had no involvement in the matters at issue here." (*See* Ex. I, Letter from Sarah E. Paul to Joseph S. Naylor of April 5, 2006). However, both Pike's production and LGB's production indicate otherwise. Pike has already produced 81 documents that contain Reg Banner's email address, LGB has produced 141 such documents (the emails are identified at Exhibit J), and Pike lists him on 31 of the documents on its privilege log of May 5, 2006. Similarly, Pike has already produced 58 documents that contain Barny Ratliff's email address, LGB has produced 14 such documents (the emails are identified at Exhibit K), and Pike listed 17 documents on its privilege log on which Mr. Ratliff was an addressee. Thus, Pike's assertion that these individuals "had no involvement in the matters at issue" and that Pike need not search their files or send them a litigation hold is belied by the record.

### 4.    Pike Still Has Failed To Produce The Cell Phone Records It Maintained Of Mr. Dubea And Apparently Did Not Tell Its Counsel That It Had Them

As of April 28, 2006, Pike's counsel expressed surprise that Pike maintained Mick Dubea's cell phone records prior to August 25, 2005. (*See* Ex. L, Transcript of teleconference with Court on April 28, 2006 at 115-116). Pike maintained those cell phone records, they were asked for in Mr. Dubea's initial document requests served on March 13, 2006, and they have yet to be produced despite repeated requests.

The above events since the filing of the motion are consistent with the pattern that Mr. Dubea observed in discussions with Pike concerning its discovery responses and production prior to April 26. For example, Document Request No. 37 of Mr. Dubea's First Set of Document Requests served on March 13, 2006, asked for the cell phone records of Mr. Dubea and others from January 1, 2005 to the present. As Mr. Dubea's cell phone was paid for by Pike prior to August 25, 2005, those records should have been in Pike's possession through that date. In its responses to the document requests on April 12, 2006, Pike did not agree to produce these documents. (*See* Ex. E, Pike's Resp. to Mick Dubea's First Req. for Prod. No. 37). By letter dated April 15, 2006, Mr. Dubea requested that Pike reconsider its position and confirm that it neither had nor has such documents. If it could not so confirm, Mr. Dubea asked that the documents be produced promptly. *(See* Ex. M, 4/15/06 Ltr. fr. J. Naylor to S. Paul). In response, Pike committed only to produce such documents from third parties. (*See* Ex. H, 4/21/06 Ltr. fr. S. Paul to J. Naylor). As noted above, in the teleconference with the Court on April 28, 2006, counsel for Pike stated that it was not aware that Pike had such records. (*See* Ex. L Tr. at 115-16). Thus, Pike has failed even to determine whether it has documents responsive to the request more than six weeks after the request was served.

### 5.     Pike Has Refused to Produce Plainly Responsive Documents

Mr. Dubea has asserted as a defense to Pike's claims that the Employment Agreement is unenforceable. Mr. Dubea's Document Request No. 22 asks for documents reflecting judicial or other proceedings challenging employment agreements between Pike and former RSI employees. Pike refused to produce any such documents. In a

conversation with counsel for Pike on April 19,[4] Pike refused to reconsider its position and so confirmed in a letter dated April 21, 2006. Pike also refused to produce employment agreements including those with non-compete provisions for any other employees other than the former RSI employees. Although it now contends that this would be burdensome since Pike employs over 6,000 people (*See* Pl. Opp. at 7), Mr. Dubea understands that the universe of employees with employment agreements is small. Pike has never asserted otherwise. For example, Pike never entered into an employment agreement or covenant not to compete with Chad Dubea.

### 6.    Pike Did Not Make A Complete Production On April 12, 2006

When Pike first produced documents it did so under cover of a letter indicating that it was producing documents on a rolling basis. *See* Ex. N, Letter from Wes Earnhardt dated April 12, 2006. Nor would it commit to a date when its production would be complete. It nonetheless asserts in its opposition that its production on April 12, 2006 was substantially complete. Yet on Saturday, April 29, 2006, Pike produced 10,000 more pages of documents.

In negotiating a schedule the parties always have agreed that document discovery should occur first. In the face of Pike's failure to take steps to preserve documents, failure to provide documents that are plainly relevant, unduly narrow searches for relevant documents, delay in the production of a witness to address its document

---

[4] It was Pike's refusal in the evening of April 19 to commit to a date when its document production would be complete or its privilege log would be produced, or to back off its refusal to provide responsive documents that led Mr. Dubea to reconsider the schedule the parties were discussing. *See* Ex. O, email from Lewis Lazarus to Sarah Paul dated April 20, 2006.

retention and retrieval in this action, and failure to produce a knowledgeable witness for a deposition on those topics on May 3, 2006, the interests of justice are ill-served by requiring him to go forward on the present schedule. It is plain that substantial time will have to be spent in the next several weeks sorting out what documents have not been produced and ensuring that Mr. Dubea obtains the document discovery to which he is entitled.[5] Thereafter, documents will have to be produced and reviewed. Thus, it is reasonable to anticipate that full document production will not be completed until mid-June at best.

### 7.     Mr. Dubea Has Not Violated the Status Quo Order

Perhaps due to overestimating its capacity to search for and produce responsive documents, Pike has not been able to meet its discovery obligations in timely manner. In attempting to shift responsibility to Mr. Dubea, Pike overreaches by contending that Mr. Dubea has violated the January 18 order. He has not. Pike has no evidence to the contrary.

Nor do the discovery responses of T&D establish any violation prior to that date. As noted above, the GRAT was established in December of 2003. Further, Chad Dubea's recollection that his father offered warm-hearted agreement with his opinion that with a lot of hurricane activity, it was a good time to start a business for power line repair and maintenance, hardly reflects the type of activity from which Pike bargained to

---

[5] Pike's claim that Mr. Dubea should have filed a motion to compel instead of this motion lacks merit. Mr. Dubea is limited to two such motions. Rather than proceed piecemeal as Pike apparently suggests, he intended to bring such a motion addressing all outstanding issues after the 30(b)(6) deposition of Pike which Pike did not permit until May 3, 2006.

prevent Mr. Dubea from engaging. Indeed, Pike ignores that Chad also recalls his father discouraging him from starting by telling him it would be "a hard road" and "Pike wouldn't just let this new business happen." (*See* Ex. P, T&D Defendants' Response to Interrogatory No. 1 at p. 7). Notably absent from Pike's assertions in the Opposition is any claim that he solicited a single customer, a single Pike employee, or participated in the day to day operations of T&D, either before or after January 18. Its conclusory comment that without Dubea, "T&D would lose its primary contact and credibility with Pike's customers and employees" is false and unsupported by any fact offered by Pike. Equally unsupported is its conclusory statement that Mr. Dubea disclosed trade secrets. Finally, even if the father/son communication discussed above might be construed to violate a provision of his employment agreement, Pike is a long way from establishing that T&D is an illegal competitor or overcoming Mr. Dubea's defenses to liability, damages or equitable relief.

For purposes of the pending motion, the key point is that, as Pike admits, the status quo order was entered into at a time when the parties did not know when the trial might occur and when Pike believed that Mr. Dubea had improperly assisted his son and funded T&D. As to Pike's claim that they are irreparably harmed by a change in the schedule, it is a change brought about by Pike's own conduct. Indeed, it was Mr. Dubea's agreement to forego a jury trial and/or to move to have the action transferred to Texas that enabled the parties to present the Court with the current schedule.

Mr. Dubea would have preferred the current schedule. But that preference was based on his assumption that Pike had saved and would fully and timely produce responsive documents. He regrets that that has not occurred. But under the

– 11 –

circumstances he respectfully requests that the Court grant the motion to amend the schedule and set a new trial date.

## **CONCLUSION**

For the foregoing reasons, and those set forth in Mr. Dubea's motion to amend the schedule, Mr. Dubea respectfully requests that this Court grant the motion to amend the schedule.


*/s/ Lewis H. Lazarus*

Dated:  May 15, 2006        By: _____
                            Lewis H. Lazarus (#2374)
                            Matthew F. Lintner (#4371)
                            Joseph S. Naylor (#3886)
                            MORRIS, JAMES, HITCHENS & WILLIAMS LLP
                            222 Delaware Avenue, 10th Floor
                            Wilmington, Delaware  19801
                            (302) 888-6800
                            llazarus@morrisjames.com
                            mlintner@morrisjames.com
                            jnaylor@morrisjames.com

                            Attorneys for Defendant Mick Dubea

- 12 –

## CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2006, I electronically filed a **REDACTED-PUBLIC VERSION OF DEFENDANT MICK DUBEA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR AMENDMENT OF SCHEDULING ORDER** with the Clerk of Court using CM/ECF which will send notification of such filing(s) to the following:

Alyssa M. Schwartz, Esquire       Michael Paskin, Esquire
Richards, Layton & Finger          Sarah E. Paul, Esquire
One Rodney Square                Cravath, Swaine & Moore LLP
P.O. Box 551                        Worldwide Plaza, 825 Eighth Avenue
Wilmington, DE  19899          New York, NY  10019

I hereby certify that on May 15, 2006, I have mailed by United States Postal Service, the document(s) to the following non-registered participants:

Teri L. Danish, Esquire
Rodriguez Colvin Chaney
1201 E. Van Buren
Brownsville, TX  78522

/s/ Lewis H. Lazarus
Lewis H. Lazarus (#2374)
**MORRIS, JAMES, HITCHENS & WILLIAMS LLP**
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899-2306
(302) 888-6800
llazarus@morrisjames.com