# EXHIBITS F-P

# EXHIBIT F

**REDACTED**

# EXHIBIT G

# CRAVATH, SWAINE & MOORE LLP

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1674

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

March 31, 2006

Pike v. Dubea

Dear Joe:

I write in response to your letter of March 28, 2006. As to the various issues that you raised:

Litigation-hold letter. A litigation hold letter has been sent to the current Pike employees who Pike reasonably believes may be custodians of relevant materials. Please confirm that a litigation hold letter has also been sent to Mick Dubea ("Dubea").

Computers and e-mail accounts at Pike to be searched for responsive electronic documents. As you know, we expect to search the e-mail accounts of the present and former Pike employees listed in Pike's Rule 26(a) disclosures, including: Eric Pike, Dubea, Chad Dubea, Cory Close, Chuck Chaddrick, Tim Droddy, Clifton Droddy, Alex Graham, Rickie Cook and Robert Strother. Because many of those individuals are former Pike employees, however, we will only search their personal computers to the extent that those computers still exist. We will also, as you have requested, endeavor to search the computers and e-mail accounts of the following persons: Jeff Collins, Audie Simmons, Mark Castaneda and Frank Brinkley. Moreover, we will fulfill our obligation to conduct a reasonable search, which may include searching the computers and/or e-mail accounts of additional custodians, if we believe that additional custodians may possess relevant documents. We object to your request to search the computers and e-mail accounts of the other individuals you specified, as those individuals were not listed in Dubea's Rule 26(a) initial disclosures and Pike has no reason to believe that they possess relevant materials.

Responsive documents on personal e-mail accounts. Pike has no knowledge of any of the relevant Pike employees, with the exception of Dubea, transmitting or receiving responsive e-mails via a personal e-mail account. During our telephone conversation on Monday, you stated that to the extent that Dubea transmitted

or received such e-mails, Pike could expect to receive those e-mails in Dubea's production.

Search terms. We plan to search Pike's electronic systems for responsive e-mails and other electronic documents maintained by the custodians named above. Further, we plan to employ the following search terms to capture the potentially relevant documents: "Mick"; "Dubea"; "Cory Close"; "T&D"; "Multiplier Amount"; "deferred compensation"; "Stock Purchase Agreement"; "Entergy"; "Beauregard"; "Sam Houston"; "Sharyland"; "American Electric Power"; and "Valley Electric". To the extent that a custodian's potentially relevant documents are not retrievable via a term search, we will conduct an additional, reasonable search for those documents. Please advise as to the methodology you plan to use to search for responsive e-mails and other electronic documents maintained by Dubea.

Blackberries and other PDA devices. We will endeavor to interview the current Pike employees who we have named as custodians, and inquire as to their use of blackberries and/or PDA devices. If any of those persons maintain such devices, we will investigate whether and how the devices are connected to Pike's network, and will make reasonable efforts to retrieve relevant materials, if any, therefrom.

180-day policy. We have sought clarification on Pike's regular business practices regarding the preservation of e-mails. Pike has confirmed that certain e-mails on Pike's active server are, in the regular course of business, automatically deleted every 180 days. That process, however, does not apply to e-mails sent or received by Pike's officers, Eric Pike, Jeff Collins, Audie Simmons and Mark Castaneda; nor does it apply to e-mails that are "archived" by individual employees. Further, that process does not encompass other types of electronic documents maintained by Pike.

Backup tapes. Pike has also clarified that, prior to mid-August of 2004, it maintained weekly back-ups of its active server which were essentially "snapshots", i.e., complete copies of the active server as it existed at that point in time. Pike anticipates that a single snapshot would take several days to restore. As Pike's practice is to preserve the e-mails sent and received by its officers, as well as any other types of electronic documents, we believe that most relevant electronic materials would be found without relying on snapshot restoration. Nevertheless, we will endeavor to restore snapshots taken of the server on or about the following two dates: (1) August 14, 2004; and (2) July 1, 2004. We note that Delaware's default standard for discovery of electronic documents, under which you have expressed your desire to proceed, does not require the restoration of archives or back-up tapes. As such, we believe that our plan to attempt the restoration of those two snapshots goes beyond what is contemplated by the default rules and is more than sufficient.

Reviewing the backup tapes. Pike intends to make a good faith effort to produce documents to you in a timely fashion. April 12, 2006 is not the "deadline" for Pike to complete its document production, but merely the date by which Pike must file its responses and objections to Dubea's document requests. Regardless, given the expedited discovery schedule in this case, Pike plans to exercise good faith efforts to gather all

3

responsive documents quickly, including documents found in the snapshots described above. Pike likewise expects reciprocity from Dubea, as well as from the Defendants in the related Texas action (the "Texas Defendants"), who have agreed to comply with Delaware's default standard for discovery of electronic documents. The Texas Defendants have yet to provide us with any of the information required by the default standard, save for the identity of their e-discovery liaison. Until Pike is satisfied that all relevant parties are making reasonable efforts to comply with their electronic discovery obligations, Pike will not produce any documents to you. Once Pike is so satisfied, Pike will produce responsive, non-privileged documents to you on a rolling basis.

<u>Person most familiar with Pike's electronic document retention policies.</u> As I have explained, there appears to be more than one individual at Pike who is "responsible" for Pike's electronic document retention polices. For purposes of this litigation, however, Jamie Davis will serve as the contact person at Pike regarding electronic document retention matters.

<u>Missing RSI server.</u> It is Pike's understanding that RSI's imaging and e-mail servers, which contained pre-integration materials, have been stolen. Pike believes that the servers were last seen on July 15, 2005. Pike further believes that, at that time, only individuals who are currently employed by T&D had access to the servers. Accordingly, Dubea and/or the Texas Defendants -- and not Pike -- would know what materials were contained on the servers when they were stolen. Pike requests that Dubea and/or the Texas Defendants provide Pike with that information, as well any information regarding the servers' current location.

I remain available to the extent necessary to discuss these matters further.

Very truly yours,

Sarah E. Paul

Joseph S. Naylor, Esq.
   Morris, James, Hitchens & Williams LLP
     222 Delaware Avenue, 10th Floor
      Wilmington, DE 19899-2306

BY FAX

Alyssa M. Schwartz, Esq.
   Richards, Layton & Finger, P.A.
     One Rodney Square
      920 North King Street
       Wilmington, DE 19899-0551

4

Teri L. Danish, Esq.
Rodriguez, Colvin, Chaney & Saenz, LLP
1201 East Van Buren
Brownsville, TX 78522-2155

BY FAX

# EXHIBIT H

# CRAVATH, SWAINE & MOORE LLP

**WORLDWIDE PLAZA**
**825 EIGHTH AVENUE**
**NEW YORK, NY 10019-7475**

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1674

April 21, 2006

## Pike v. Dubea

Dear Joe:

I write in response to your letter of April 15, 2006, and as a follow-up to our telephone conversation of April 19, 2006. As a preliminary matter, we provided you with a verification to Pike's interrogatory responses on Tuesday. Further, we have now had an opportunity to consider the substantive issues you raised in your April 15 letter. Subject to and without waiving any objections made in Pike's Responses and Objections to Dubea's First Set of Interrogatories and/or First Requests for Production of Documents, we respond to your letter as follows:

Interrogatory No. 4. We have already identified the confidential Pike information that, at present, Pike contends Dubea has disclosed in violation of his Employment Agreement. We have further stated that Pike's investigation into the information responsive to Interrogatory No. 4 is ongoing, and that Pike will supplement its response as discovery continues. At this early stage of the proceedings, Dubea does not require more specificity to "effectively defend himself against Pike's claims". Nevertheless, we will clarify that our phrase "multiplier amounts", as used in response to Interrogatory No. 4, does not refer to the Multiplier Amounts that, absent his violation of his Employment Agreement, Dubea would have been entitled to receive. Rather, the "multiplier amounts" to which we refer are the confidential multiplier figures used by Pike to price jobs.

Interrogatory No. 5. We have already identified the individuals who, at present, Pike believes have disclosed Pike's confidential information and/or trade secrets

to T&D. We have further stated that Pike's investigation into the information responsive to Interrogatory No. 5 is ongoing, and that Pike will supplement its response as discovery continues. Pike will not, however, provide Dubea with information regarding persons and incidents that have no relevance to any of the claims in this litigation. Pike's efforts to protect its confidential information can be sufficiently shown without engaging in the fishing expedition that you request.

Interrogatory Nos. 14 and 15. Pursuant to Federal Rule of Civil Procedure 33(d), we direct you to Pike's document production for the information you request and, in particular, to e-mails sent and received by Eric Pike in the months preceding Dubea's termination.

Interrogatory Nos. 17-19. Pursuant to Federal Rule of Civil Procedure 33(d), we direct you to Pike's document production for the information you request and, in particular, to the chart entitled "List of Pike Employees Who Quit Employment With Pike".

Interrogatory Nos. 20-21. Pursuant to Federal Rule of Civil Procedure 33(d), we direct you to Pike's document production for the information requested in Interrogatory No. 21, and, in particular, to the chart entitled "List of Pike Employees Who Quit Employment With Pike". Pike continues to object to Interrogatory No. 20.

Document Request No. 5. We have already stated that Pike will not produce every document concerning due diligence conducted on RSI, as such a production would be unduly burdensome and would contain documents not relevant to the claims or defenses of any party to this action. Pike has, however, conducted a reasonable search for documents related to the RSI acquisition that mention Mick Dubea, and has produced non-privileged, responsive documents to you.

Document Request No. 20. We have already conducted a reasonable search for documents responsive to this request and have produced non-privileged documents reflecting employment agreements, including non-compete agreements, between Pike and the former RSI employees who came to work for Pike. Pike will not produce employment agreements that have no relevance to any of the claims in this litigation. Once again, Pike's efforts to protect its confidential information can be sufficiently shown without engaging in the fishing expedition that you request.

Document Request No. 21. Pike continues to object to Document Request No. 21. Once again, Pike's efforts to protect its confidential information can be sufficiently shown without engaging in the fishing expedition that you request.

Document Request No. 22. Pike continues to object to Document Request No. 22. We fail to see how documents "reflecting judicial or other proceedings challenging employment agreements between Pike and former RSI employees" in any way relate to the fact that "Dubea[] has challenged the enforceability of his Employment Agreement". Dubea's Employment Agreement speaks for itself and is enforceable on its own terms.

3

Document Request Nos. 30-32. We have conducted a reasonable search for documents and have produced "documents relating to all customers" whose business Pike contends has been lost as a result of Dubea's unlawful acts, with the exception of documents relating to CLECO (Central Louisiana Electric Company). Pike has recently come to believe that Dubea has wrongfully solicited CLECO's business and, accordingly, is planning to timely supplement its production with the appropriate documents.

Document Request No. 37. Pike will produce any non-privileged, responsive documents, including phone records, received from third parties pursuant to subpoenas for such records in this litigation. Pike, of course, expects the same from Dubea and from the Texas Defendants. Pike's objection as to possession, custody and/or control was in reference to the fact that Pike is still awaiting the receipt of some of those documents; rest assured, however, that Pike will timely produce those documents to you upon receiving them itself. Pike's objection as to privilege was merely in reference to research conducted on the part of its private investigator, at the direction of legal counsel.

Finally, as I communicated to you on the telephone, we believe that Pike's document production is at least 90% complete, and that it has been at least 90% complete since April 12.

Very truly yours,

Sarah E. Paul

Joseph S. Naylor, Esq.
    Morris, James, Hitchens & Williams LLP
        222 Delaware Avenue, 10th Floor
            Wilmington, Delaware 19899-2306

BY FAX

Copies to:

Alyssa M. Schwartz, Esq.
    Richards, Layton & Finger, P.A.
        One Rodney Square
            920 North King Street
                Wilmington, Delaware 19899-0551

Teri L. Danish, Esq.
    Rodriguez, Colvin, Chaney & Saenz, L.L.P.
        1201 East Van Buren
            Brownsville, Texas 78522-2155

BY FAX

# EXHIBIT I

**REDACTED**

# EXHIBIT J

# REDACTED

# EXHIBIT K

**REDACTED**

# EXHIBIT L

# ROUGH DRAFT OF TRANSCRIPT OF TELECONFERENCE WITH THE COURT ON APRIL 28, 2006 DURING KIMMONS DEPOSITION

kimmons.txt

THE COURT:  Maybe I misunderstood

Mr. Lazarus.  I thought what Mr. Lazarus wanted was

people with third party -- not his employees, but third

parties with knowledge, not of the investigation but the

transaction or whatever.

MS. PAUL:  Yes, and to the extent that

Mr. Kimmons has that information we have no problem with

him providing it.  I think the issue is that some of

Mr. Lazarus's questions today have been broad and, you

know, in an abundance of caution, to protect work

product I have objected when I am not certain of what

he's getting at.  If Mr. Lazarus wants to ask questions

of that nature, we have no problem with it.

MR. LAZARUS:  Your Honor, I think the

transcript, when you get it, will clearly reflect the

nature of the questions that were asked and the nature

of the objections she had.  In light of Your Honor's

guidance, I think this may help us get more done this

afternoon.

THE COURT:  It seems to me that if this

witness has through his investigation identified persons

with knowledge I think that that is an appropriate

question that is not protected by attorney client

privilege or work product or anything else.  I will

not -- in terms of what he did to -- well, I guess I

UNEDITED, UNPROOFREAD, UNCORRECTED, UNCERTIFIED ROUGH DRAFT

114

want to make sure we cover that, too.  It seems to me

that how he -- well, maybe this is the question -- how

Page 106

kimmons.txt
he's gone about the investigation, is that still an
issue?  I'm losing my mind here.  Have we addressed that
and brought closure to that?

          MR. LAZARUS:  I think it is an issue.  I
thought I was entitled to know -- for example, we
understand that Pike has phone records of my client
because Pike pays for his cell phone.  They have refused
to produce the phone records of Mr. Dubea's cell phone
records that we asked for, and I would be very surprised
if this investigator was not given that factual data,
and I asked the question not what were you given but
have you reviewed phone records of my client, and she
would not let him answer that question.  I did not
ask -- I just asked have you reviewed phone records of
my client, and then the next question would be do you
have those phone records, and on any question like that
I've been rebuffed on both accounts that that
information is somehow privileged.

          MS. PAUL:  Judge, I'd like to clarify
that to the best of my understanding Pike does not have
such records, so I actually had no idea that that's what
Mr. Lazarus was getting at.  In terms of phone records
kept by Pike for Mick Dubea, I mean, to my understanding

UNEDITED, UNPROOFREAD, UNCORRECTED, UNCERTIFIED ROUGH DRAFT
                                                         115

they don't -- Pike doesn't have that.  I'm perfectly
willing to go back and ask Pike and check, but if that's
what Mr. Lazarus is getting at -- and I'm glad we're
having this conversation because I did not know that and
                    Page 107

kimmons.txt
had no way of knowing that.

THE COURT:  I think the broader
question -- I don't want to get into a discussion with
you-all.  I thought the broader question was in terms of
what this witness did to investigate the factual
matters, to some extent did he review telephone records.
I think that that -- well, I guess that's the question,
Mr. Lazarus believes that the witness should answer
those sorts of questions, what did you do to gather
these facts, how did you gather these facts, even if I'm
not allowing him -- Mr. Lazarus to get the answers yet
about what facts did you gather -- and I guess the
question is, Ms. Paul, are you objecting to that and if
so how is it that you're objecting or why is it that
you're objecting?

MS. PAUL:  Yes, Your Honor.  The reason
we would object to that, I mean, again what Mr. Kimmons
did in the course of his investigation, if he were to
answer those questions, you know, if he were to
enumerate the different things he did at the direction
of counsel, that would necessarily reveal his thought

UNEDITED, UNPROOFREAD, UNCORRECTED, UNCERTIFIED ROUGH DRAFT
116

processes, tactics and strategies of what he thought was
important to do and what counsel, you know, suggested
that he do.  So, you know, to the extent that there are
questions that may seem innocuous enough, what did you
do, did you review phone records, all of that has its
dangerous ground, has the possibility to reveal, you

# EXHIBIT M

# MORRIS, JAMES, HITCHENS & WILLIAMS LLP

222 Delaware Avenue, 10th Floor
Wilmington, Delaware 19801-1621
(302) 888-6800
Facsimile (302) 888-6989
www.morrisjames.com

Joseph S. Naylor
(302) 888-6914
jnaylor@morrisjames.com

Mailing Address
P.O. Box 2306
Wilmington, DE 19899-2306

April 15, 2006

VIA EMAIL

Sarah E. Paul, Esquire
Cravath, Swaine & Moore LLP
Worldwide Plaza, 825 Eighth Avenue
New York, NY  10019

RE:    *Pike Electric Corp. and Pike Electric, Inc. v. Dubea*
       D. Del., C.A. No.  05-879-SLR

Dear Sarah:

We write in response to Pike's discovery responses.  We have already indicated that the responses were not verified and expect that you will be providing a verification promptly.  In addition, we request that you reconsider your position regarding the discovery responses indicated below:

Interrogatory No. 4.  You have only identified generally the confidential information you contend Mick Dubea disclosed in violation of his Employment Agreement.  This is insufficient to permit Mr. Dubea to effectively defend against Pike's claims in this action.  Please identify with particularity by the close of business on Tuesday, April 18, 2006, all specific confidential information you contend Mr. Dubea disclosed in violation of his Employment Agreement.  For example, surely you do not contend that the existence of a Multiplier Amount to which Mr. Dubea is entitled is protected.  If the phrase "multiplier amounts" refers to something else, let us know.   Similarly, if you are unable to identify any specific information, please say so.

Interrogatory No. 5.  You have refused to identify any other instances in the last three years when Pike's confidential information was disclosed, in part on relevancy grounds.  Mr. Dubea is entitled to discovery regarding Pike's efforts to protect its alleged confidential information.  If Pike is unaware of any other disclosure of confidential information in the last three years, it should say so.  Conversely, if it is too burdensome to answer, you should identify the volume of instances of disclosure and explain the burden.  Again, please provide an appropriate response by April 18, 2006.

Sarah Paul, Esquire
April 15, 2006
Page 2

**MORRIS, JAMES, HITCHENS & WILLIAMS LLP**

Interrogatory Nos. 14 and 15.  A central element in Mr. Dubea's defense and counterclaim is that Pike terminated him in bad faith.  Because you state that there is only a "limited number" of discussions relating to Mr. Dubea's termination, we ask that by April 18, 2006, you let us know who, what, when, where and why as to each.

Interrogatory Nos. 17-19.  Pike has provided only a partial response to these interrogatories claiming that information concerning the departures of former RSI employees from Pike is not reasonably calculated to lead to the discovery of admissible evidence.  We disagree.  If, for example, substantial numbers of former RSI employees at all levels have left Pike, that information casts doubt on Pike's claim that any departure by a Pike employee was due to any act of Mick Dubea or for that matter T&D or its principals or employees. Accordingly, we request a complete response by the close of business on April 18, 2006.

Interrogatory Nos. 20 and 21.  Pike has failed to provide any information in response to these interrogatories.  Mr. Dubea is entitled to information tending to show that departures of employees from Pike had nothing to do with any act or conduct on his part.  Please supplement this response by the close of business on April 18, 2006.

Document Request No. 5.  Pike has agreed to produce only certain documents responsive to this request; that is, documents "sufficient to demonstrate the reasons why Pike decided to purchase RSI and/or the potential value anticipated from the acquisition."  Please confirm that Pike's production will also include all documents that mention Mick Dubea and whether those documents have already been produced.

Document Request No. 20.  Pike has refused to produce the employment agreements of employees other than the former RSI employees.  That is unacceptable.  The existence or not of those agreements throughout the company is clearly discoverable because it shows the steps Pike took to protect itself from competition and disclosure of what Pike contends is confidential information.  Please produce those documents by the close of business on April 18, 2006.

Document Request No. 21.  Pike has refused to provide any information regarding other instances where it contended that an employee violated a confidentiality or non-compete obligation.  This information is clearly discoverable because it may lead to admissible evidence concerning the nature and Pike's understanding of its confidentiality and non-compete agreements.  Please produce these documents by the close of business on April 18, 2006.

Document Request No. 22.  Pike has objected to producing documents reflecting judicial or other proceedings challenging employment agreements between Pike and former RSI employees on the ground they are irrelevant.  Because Mr. Dubea's has challenged the enforceability of his Employment Agreement, this objection lacks merit.  Accordingly, we

Sarah Paul, Esquire
April 15, 2006
Page 3

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

request that you provide all documents responsive to this request by the close of business on
April 18, 2006.

      Document Request Nos. 30-32. These requests were intended to capture the documents
reflecting the relationship between Pike and the customers whom Pike contends have been lost
due to tortious interference, breach of contract or misappropriation of trade secrets by Mr.
Dubea. Because we also ask for any documents relating, substantiating or contradicting any
claim or defense, we assume that you will produce documents relating to all customers whom
you contend an act of Mr. Dubea caused Pike to lose some or all of their business. Please
confirm that this assumption is correct and that you will produce all such documents by the close
of business on April 18, 2006.

      Document Request No. 37. Pike has objected to producing telephone or cell-phone
records of Mick Dubea, Chad Dubea, Corey Close, Sammy Christian and Alex Graham from
January 1, 2005, to the present on the ground that they are not within Pike's possession, custody
or control. Please confirm that you have no such records and never did. If so, there is nothing
further to pursue. If you do or did have such records, then we do not understand your objection
that the records themselves are somehow privileged, and you should withdraw the objection and
produce the relevant documents by the close of business on April 18, 2006.

                      Very truly yours,

                      /s/ Joseph S. Naylor

                      Joseph S. Naylor

JSN/gca

cc:    Alyssa M. Schwartz, Esquire (via email)
       Lewis Lazarus, Esquire (via email)
       Teri Danish, Esquire (via email)

1379302/1

# EXHIBIT N

# CRAVATH, SWAINE & MOORE LLP

THOMAS R. BROME
ROBERT D. JOFFE
ALLEN FINKELSON
RONALD S. ROLFE
PAUL C. SAUNDERS
DOUGLAS D. BROADWATER
ALAN C. STEPHENSON
MAX R. SHULMAN
STUART W. GOLD
JOHN E. BEERBOWER
EVAN R. CHESLER
PATRICIA GEOGHEGAN
D. COLLIER KIRKHAM
MICHAEL L. SCHLER
KRIS F. HEINZELMAN
B. ROBBINS KIESSLING
ROGER D. TURNER
PHILIP A. GELSTON
RORY O. MILLSON
NEIL P. WESTREICH
FRANCIS P. BARRON
RICHARD W. CLARY
WILLIAM P. ROGERS, JR.
JAMES D. COOPER
STEPHEN L. GORDON

DANIEL L. MOSLEY
GREGORY M. SHAW
PETER S. WILSON
JAMES C. VARDELL, III
ROBERT H. BARON
KEVIN J. GREHAN
STEPHEN S. MADSEN
C. ALLEN PARKER
MARC S. ROSENBERG
WILLIAM B. BRANNAN
SUSAN WEBSTER
TIMOTHY G. MASSAD
DAVID MERCADO
ROWAN D. WILSON
JOHN T. GAFFNEY
PETER T. BARBUR
SANDRA C. GOLDSTEIN
PAUL MICHALSKI
THOMAS G. RAFFERTY
MICHAEL S. GOLDMAN
RICHARD HALL
ELIZABETH L. GRAYER
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: (212) 474-1000
FACSIMILE: (212) 474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: 44-20-7453-1000
FACSIMILE: 44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER

(212) 474-1138

KATHERINE B. FORREST
KEITH R. HUMMEL
DANIEL SLIFKIN
JEFFREY A. SMITH
ROBERT I. TOWNSEND, III
WILLIAM J. WHELAN, III
SCOTT A. BARSHAY
PHILIP J. BOECKMAN
ROGER G. BROOKS
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
JULIE SPELLMAN SWEET
RONALD CAMI
MARK I. GREENE
SARKIS JEBEJIAN
JAMES C. WOOLERY
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS
ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS

DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
LIZABETHANN R. EISEN
DAVID S. FINKELSTEIN
DAVID GREENWALD
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
JOEL F. HEROLD
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL

SPECIAL COUNSEL
SAMUEL C. BUTLER
GEORGE J. GILLESPIE, III
THOMAS D. BARR

OF COUNSEL
ROBERT ROSENMAN
CHRISTINE BESHAR

April 12, 2006

<u>Pike Electric Corporation and Pike Electric, Inc. v. Mick Dubea:</u>
<u>Pike Production</u>

Dear Mr. Lazarus:

      Enclosed herewith is one DVD containing TIFF images of documents bearing production numbers EPIKE 00000001 – EPIKE 00056902, together with metadata and native files associated with these TIFFs.

      Pike will continue to produce responsive documents on a rolling basis. We are providing these documents with the expectation that they will be treated in accordance with the provisions of the confidentiality stipulation ultimately executed by the parties.

Very truly yours,

J. Wes Earnhardt

Lewis Lazarus, Esq.
   Morris, James, Hitchens & Williams LLP
     222 Delaware Avenue
      P.O. Box 2306
       Wilmington, DE 19899

AIRBORNE

# EXHIBIT O

| | |
|---|---|
| **From:** | "Lazarus, Lewis" |
| **To:** | 'Sarah Paul' |
| **Cc:** | 'tl.danish@rcclaw.com'; Naylor, Joseph S.; Godwin, Sheila M. |
| **Sent:** | 4/20/2006   4:29PM |
| **Subject:** | Pike v. Dubea |

 In light of your conversation with Joe last evening we are re-evaluating the schedule. We will get back to you.

Lewis H. Lazarus, Esq.
Morris, James, Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
P.O. Box 2306
Wilmington, DE  19899-2306
(For courier deliveries, the zip code is 19801)
llazarus@morrisjames.com
302 888 6970 Direct Dial
302 571 1750 Fax
www.morrisjames.com <http://www.morrisjames.com/>

This communication may be subject to the attorney-client privilege or the attorney work product privilege or may be otherwise confidential.  Any dissemination, copying or use of this communication by or to anyone other than the designated and intended recipient(s) is unauthorized.  If you are not the intended recipient, please delete or destroy this communication immediately.

To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT P

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **PIKE ELECTRIC CORPORATION & PIKE ELECTRIC, INC.,**<br><br>**Plaintiffs**<br><br>v.<br><br>**T & D SOLUTIONS, LTD., T& D SOLUTION MANAGERS, L.L.C., CORY CLOSE & CHAD DUBEA,**<br><br>**Defendants** | **Civil Action No. M-05-410**<br>**Jury Demanded** |

## DEFENDANT'S RESPONSE TO PLAINTIFFS' COMBINED FIRST SET OF REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

NOW INTO COURT, through undersigned counsel, comes T & D SOLUTIONS, LTD.,

T& D SOLUTION MANAGERS, L.L.C., CORY CLOSE & CHAD DUBEA,  made defendants

herein, and who, in response to *Plaintiffs' Combined First Set of Request for Production of*

*Documents and Interrogatories* follows respectfully answers as follows

## REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:

All documents and communications concerning the decision to form T&D, including all documents

discussing the risks, feasibility, funding requirements, employee requirements, or any other risks,

requirements or benefits associated with T&D' s formation.

## ANSWER TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 1:

*Please see attached:*

Page 1

## INTERROGATORIES

## INTERROGATORY NO. 1:

Describe all circumstances pertaining to the financing and formation of T&D, including but not limited to any financial backing and/or advice provided by Mick Dubea or other former Pike employees.

## ANSWER TO INTERROGATORY NO. 1:

*As far as advice and/or financial backing provided by Mick Dubea, Defendants would respond that Mick Dubea advised Chad Dubea that the formation of this new business would be a hard road and that Pike wouldn't just let this new business happen. Mick Dubea provided no direct financial backing to the formation of T & D Solutions, Ltd.; Chad Dubea did use funds that had been placed in a grantor-retained annuity trust for his benefit in the start-up of T & D Solutions, Ltd. and T & D Solution Managers, LLC (hereinafter referred to collectively as "T & D").*

*In September of 2004, Sammy Christian and Alex Graham approached Chad Dubea about the possibility of starting a new electrical transmission and distribution construction and maintenance company. These discussions happened on the occasion of Pike cutting bonuses to employees. For example, Alex Graham's pay was cut by approximately $100,000.00 per year. Thereafter, the discussions of starting anew company ended and did not resume until May or June of 2005, with the integration of Red Simpson, Inc.'s Western Division with Pike. Previously, employees in the old Red Simpson Western Division had heard horror stories of the integration of Red Simpson's operations in the East, including the taking of tools and equipment from crews, making it more difficult for crews to do their various jobs. When the integration of Red Simpson,*