## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION and )
PIKE ELECTRIC, INC., )
                         )
        Plaintiffs, )
                         ) Civil Action No. 05-879-SLR
    v. )
                         ) **REDACTED-**
MICK DUBEA, ) **PUBLIC VERSION**
                         )
        Defendant. )

## REDACTED-PUBLIC VERSION

### MICK DUBEA'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER REJECTING DEFENDANT'S CLAIM OF PRIVILEGE AND FOR DISCOVERY SANCTIONS

MORRIS, JAMES, HITCHENS & WILLIAMS LLP

Lewis H. Lazarus (#2374)
Matthew F. Lintner (#4371)
Joseph S. Naylor (#3886)
222 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899
(302) 888-6800
llazarus@morrisjames.com
mlintner@morrisjames.com
jnaylor@morrisjames.com

Attorneys for Mick Dubea

Dated: May 19, 2006

## NATURE AND STAGE OF PROCEEDINGS

On December 29, 2005, the Defendant, Mick Dubea ("Mr. Dubea") was served with a complaint by Pike Electric Corporation and Pike Electric, Inc. (collectively, "Pike") (D.I. 1).

The parties have exchanged written discovery and discovery is continuing. Mr. Dubea has produced more than 50,000 pages of responsive documents.

A bench trial is scheduled to begin on September 18, 2006. On April 27, 2006, Pike filed their Motion for Order Rejecting Mr. Dubea's Claims of Privilege and for Discovery Sanctions Due to Spoliation of Evidence (the "Motion") (D.I. 42). This is Mr. Dubea's Answering Brief in Opposition to the Motion.

# TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS ....................................................1

SUMMARY OF ARGUMENT ...........................................................................2

STATEMENT OF FACTS .................................................................................4

ARGUMENT ....................................................................................................8

I.    THERE HAS BEEN NO SPOLIATION OF EVIDENCE.......................8

    A.    Pike Cannot Meet Its Burden of Establishing Intentional Destruction of Relevant Documents ..........................................................................8

        1.    There Was No Intentional Disposal of the Disputed Documents ...........................................................................9

        2.    There Is No Evidence Whatsoever of Some Broad Campaign of Document Destruction.....................................................11

    B.    Pike Has Not Suffered Any Prejudice .........................................12

        1.    The Disputed Documents Have Been Recovered...........................12

        2.    Any Other "Prejudice" Is Speculative and Not Grounds for Sanctions ..................................................................12

    C.    The Sanctions Sought by Pike Are Not Sufficiently Tailored..................13

II.   THE   **REDACTED**   IS PRIVILEGED AND MR. DUBEA HAS NOT WAIVED THAT PRIVILEGE.......................................................17

    A.    The   **REDACTED**   Is Privileged................................................17

        1.    The   **REDACTED**   Constitutes a Confidential "Communication" With Counsel ......................................18

        2.    The **REDACTED** Was Made for the Purpose of Facilitating the Rendition of Professional Legal Services.............21

    B.    Privilege Was Not Waived...........................................................21

CONCLUSION..................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**                                                                    **Page**

*Bernbach v. Timex Corp.,*
    174 F.R.D. 9 (D. Conn.1997)................................................................20

*Brewer v. Quaker State Oil Refining Corp.,*
    72 F.3d 326 (3d Cir.1995)..............................................................9, 16

*Condrey v. SunTrust Bank of Georgia,*
    2003 WL 24205922 (W.D. La. June 20, 2003) .....................................13

*Fortune v. Bitner,*
    2006 WL 839346 (M.D. Pa.  March 29, 2006) ......................................9

*Gray v. Bicknell,*
    86 F.3d. 1472 (8th Cir. 1996) ...........................................................22

*Griffith v. Mellon Bank,*
    2006 WL 584240 (3d Cir. March 10, 2006) ..........................................8

*Hydraflow, Inc. v. Enidine, Inc.,*
    145 F.R.D. 626 (W.D.N.Y. 1993)........................................................22

*In re Grand Jury Matter,*
    Misc. 97-20-SLR, Memorandum Opinion to Order Denying Motion
    to Compel the Government to Return Certain Documents in its
    Possession (D. Del. June 27, 1997)......................................................19

*In re Ford Motor Co.,*
    110 F.3d 954 (3d Cir. 1997)..............................................................17

*In re Wechsler,*
    121 F. Supp. 2d 404 (D. Del. 2000)..........................................12, 13, 14

*International Business Machines Corp. v. Comdisco, Inc.,*
    1992 WL 149502 (Del. Super. Ct. June 22, 1992) ................................22

*Louis Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,*
    104 F.R.D. 103 (S.D.N.Y. 1985) .......................................................22

*McCafferty's, Inc. v. the Bank of Glen Burnie,*
    179 F.R.D. 163 (D. Md. 1998)..........................................................21

*Mendenhall v. Barber-Greene Co.,*
    531 F. Supp. 951 (N.D. Ill. 1982) ........................................................................21

*Monsanto Co. v. Aetna Cas. And Sur. Co.,*
    1991 WL 53822 (Del. Super. Ct. Apr. 8, 1991)...................................................22

*Nye v. CSX Transp., Inc.,*
    437 F.3d 556 (6th Cir. 2006) ...............................................................................12

*Paramount Pictures Corp. v. Davis,*
    234 F.R.D. 102 (E.D. Pa. 2005)...........................................................................13

*Republic of Philippines v. Westinghouse,*
    43 F.3d 65 (3d Cir. 1994)...............................................................................9, 13

*Schmid v. Milwaukee Elec. Tool Corp.,*
    13 F.3d 76 (3d Cir. 1994)........................................................................8, 13, 16

*State v. Hempele,*
    576 A.2d 793 (N.J. 1990)......................................................................................23

*State v. Morris,*
    680 A.2d 90 (Vt. 1996)..........................................................................................23

*Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.*
    91 F.R.D. 254 (N.D. Ill. 1981) ............................................................................21

*Tackett v. State Farm Fire and Cas. Ins. Co.,*
    653 A.2d 254 (Del. 1995) .....................................................................................18

*Thiele v. Oddy's Auto & Marine, Inc.,*
    906 F. Supp. 158 (W.D.N.Y. 1995).....................................................................12

*Turner v. Hudson Transit Lines, Inc.,*
    142 F.R.D. 68 (S.D.N.Y. 1991) ...........................................................................14

*U.S. v. DeFonte,*
    441 F.3d 92 (2d Cir. 2006)............................................................................19, 20

*York v. AK Steel Corp.,*
    2005 WL 3338696 (S.D. Ohio Dec. 8, 2005) .....................................................12

*Zirn v. VLI Corp.,*
    621 A.2d 773 (Del. 1993) .....................................................................................18

**Statutes And Other Authorities**

Fed. R. Evid. 501 ...........................................................................................17

Del. R. Evid. 502(b) ......................................................................................18

8 Tex. Code Ann. §§ 12.33, 36.02(e)............................................................17

Tex. Penal Code Ann. § 36.02 ......................................................................17

Tex. R. Evid. 503(b)(1).................................................................................18

Beaumont, Tex., Code of Ordinances §§ 28-20.6, 28-20.14 ...................6, 17, 24

Edward J. Imwinkelried, The New Wigmore: Evidentiary Privileges § 6.7.1 (2002).......20

## SUMMARY OF ARGUMENT

Prior to filing this action, Pike began closely monitoring the trash of Mr. Dubea, its former employee, combing through carefully for any sign that Mr. Dubea was assisting his son in his son's new business, which competes with Pike. Pike has extracted and monitored normal correspondence, kitchen garbage, and attorney-client privileged materials dealing with this litigation. Pike's diligent efforts have resulted in two pages of notes, through which Pike now hopes to prove that Mick Dubea is the true mastermind behind his son's new business.

The first item recovered from Mr. Dubea's trash, (Declaration of Rob L. Kimmons ("Kimmons Dec."), Ex. I, Bates stamped PIKE00016833.001,

**REDACTED**

The second, (Kimmons Dec., Ex. I, PIKE00016834,

**REDACTED**

Mr. Dubea fully understood that his son's potential new endeavor would present certain risks to him because of his own non-competition obligations to Pike. He was, after all, fully aware that his son was contemplating such a business, he had a close relationship to his son and, as he had for Chad's entire life, Mr. Dubea certainly intended

2

to stay in close contact with his own son, notwithstanding that his son might form a business that would compete against Pike. Further, Mr. Dubea had, more than a year earlier, established a trust for his son's benefit, and the potential use of funds in that trust by the son in this new business raised a host of issues. Accordingly, Mr. Dubea sought legal advice from counsel to assist him in navigating through these issues.

Pike asserts that the disposal of the ███████████████████ ███████████████ **REDACTED** ██████████████ ███████████████████████████████████████████████, warrants sanctions for spoliation of evidence. However, this argument suffers from several critical failures. First, Pike cannot establish the requisite intent to warrant a sanction. Second, the fact that the Disputed Documents were, in fact, recovered negates any conceivable prejudice to Pike. Pike's argument that the recovery of these two documents gives rise to an inference that there is a universe of discarded documents is fundamentally undermined by its own relentless monitoring of Mr. Dubea. Finally, the sanction Pike seeks is not sufficiently tailored to remedy the wrong Pike alleges.

Furthermore, **REDACTED** document is plainly subject to the attorney-client privilege. **REDACTED** was generated to obtain assistance of counsel and its contents were subsequently communicated for precisely that purpose. Mr. Dubea cannot recall disposing of that document into the trash (nor can he recall disposing of ███ █**REDACTED**███, but however the document ended up in a trash can outside of his home, Mr. Dubea certainly had no intent to effect a waiver of that privilege.

For the reasons set forth herein, the Motion should be denied in its entirety.

3

## STATEMENT OF FACTS

### Pike Acquires RSI and Terminates Mr. Dubea

In July 2004, Pike, a dominant player in the electric transmission and distribution system throughout the Southeast, sought to expand its business by acquiring all outstanding shares of the much smaller and privately-held Red Simpson, Inc. ("RSI"), a company also in the business of servicing the transmission and distribution construction and repair needs of electric utilities. At the time of the acquisition, Mr. Dubea was President for the Western Region of RSI and a four percent shareholder in the entity. In connection with the acquisition, Pike required that Mr. Dubea, and several other RSI executives, enter employment agreements containing certain non-compete and non-disclosure provisions. Mr. Dubea's agreement (the "Employment Agreement"), contained provisions preventing Mr. Dubea from disclosing confidential Pike information, and also engaging in competition against Pike, or assisting any competitor, for five years after leaving Pike.

After the acquisition, Mr. Dubea became the Vice President of Pike's newly-reorganized Western Region. In August of 2005, shortly after the integration of the Pike business and the former RSI business, and an initial public offering of Pike stock, Mr. Dubea was terminated without cause by Pike. Mr. Dubea now works in the timber industry.

### Mr. Dubea's Son Launches T&D

Prior to his own termination, Mr. Dubea was aware that his son, Chad Dubea, and some of his son's friends were dissatisfied with the changes implemented by Pike, and were contemplating leaving to start their own business. (Affidavit of Mick Dubea

4

("Dubea Aff.") ¶ 9 (B2-3)).  Chad did not have a non-compete agreement with Pike.  In early July, Mr. Dubea's son informed his father that he was investigating the possibility of starting a competing business.  Mr. Dubea does not specifically recall writing the notes contained in the ▌**REDACTED** ▄ document, but they almost certainly were generated in July in connection with a discussion with his son, or possibly Sammy Christian or Alex Graham, two other Pike employees who were considering leaving Pike to start their own business.  (Dubea Aff. ¶ 10 (B3).)  As indicated above, Mr. Dubea fully understood that his son's potential endeavor would present certain risks to him.  Mr. Dubea had previously established a trust for his son's benefit, and the potential use of funds in that trust by the son in this new business raised a host of issues.  (*Id.* ¶ 11 (B3).)  Accordingly, in late July or August Mr. Dubea sought legal advice from counsel to assist him in navigating through these issues.  (Dubea Aff. ¶¶ 11-12 (B3).)

In October 2005, Chad Dubea formed T&D, which is in the same business as Pike.

### Pike Begins Intensive Surveillance of Mr. Dubea

In that same month, October of 2005, Pike's counsel engaged Kimmons Security Service ("Kimmons"), a private investigation firm located in Texas, to search for information linking Mr. Dubea to his son's business.  (*See* Affidavit of Matthew F. Lintner, ("Lintner Aff."), Exh. A (Deposition of Rob L. Kimmons, at 19, 58-59, April 28, 2006) (B8; 9).)

Kimmons, without the knowledge of Mr. Dubea, first searched Mr. Dubea's trash on November 15, 2005.  (Lintner Aff., Exh. B (B14).)  Mr. Dubea's trash is picked up outside his house on Tuesdays.  (Dubea Aff. ¶ 7 (B2).)  Kimmons checked every Tuesday

(except January 3rd) from November 15th through January 17th, (Lintner Aff., Exh. B. (B14).), and bribed the city employee collecting the trash to hand over materials removed from Mr. Dubea's receptacle. (Kimmons Dep. at 83 (B11).)  It is a crime within the city limits of Beaumont to interfere with garbage set out properly for disposal, *even* after it has been removed.  Beaumont, Tex., Code of Ordinances §§ 28-20.6, 28-20.14.

A litigation hold letter was sent to Mr. Dubea by his litigation counsel for this matter on January 7, 2006. (Lintner Aff. ¶ 5 (B6).)  Kimmons retrieved the Disputed Documents on January 17, 2006.  (Lintner Aff., Ex. B (B14).)  Kimmons apparently has not searched Mr. Dubea's trash since that time.  (Kimmons Dep. at 87-88 (B12).)

Mr. Dubea has no recollection of throwing away the Disputed Documents, nor can he recall when those documents were discarded.  (Dubea Aff. ¶ 2 (B1).)  Because of the nature of the trash receptacles provided by the City of Beaumont, it is not necessary for Mr. Dubea for put trash out for collection on a weekly basis.  The receptacles hold approximately 10 full trash bags, and Mr. Dubea uses two of these large receptacles.  As a result, it is Mr. Dubea's practice not to bring a trash receptacle down to the curb for collection until it is full, and the second receptacle can accumulate trash for many weeks before it is eventually brought to the curb.  (Dubea  Aff. ¶ 7 (B2).)

On April 13, 2006, Pike produced copies of the documents Kimmons collected from Mr. Dubea's garbage in response to Mr. Dubea's document requests.  Upon review and consultation with Mr. Dubea, it was instantly clear that many of these documents were subject to the attorney-client privilege.  Mr. Dubea immediately notified Plaintiffs' counsel that the documents were privileged and requested that counsel return all originals

and duplicates of the privileged materials.  Pike refused to comply with respect to the

Disputed Documents and filed the Motion on April 27, 2006.

**ARGUMENT**

I.    **THERE HAS BEEN NO SPOLIATION OF EVIDENCE**

The doctrine of spoliation allows an inference that missing evidence would be unfavorable to the party that fails to produce it. The doctrine seeks to cure the informational void created when relevant evidence is intentionally destroyed and there is an inequitable disparity in the factual information possessed by both parties. The void is cured by presuming what the evidence would show, but, because of the necessity of speculation, the benefit of doubt regarding the content is awarded to the party who seeks the evidence.

To impose sanctions for spoliation of evidence, the District Court must examine: "(1) the degree of fault of the party who altered or destroyed the evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and serve as a deterrent." *Griffith v. Mellon Bank*, No. 04-3543, 2006 WL 584240, at *3 (3d Cir. March 10, 2006) (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). The doctrine of spoliation is inapplicable to the present situation for three reasons: (1) Pike cannot establish that Mr. Dubea had the requisite intent in discarding the Disputed Documents; (2) the fact that the Disputed Documents have been recovered by Kimmons negates any prejudice Pike may conceivably have suffered; and (3) the sanctions sought by Pike are overbroad and not adequately tailored to redress the wrong they allege.

A.    **Pike Cannot Meet Its Burden of Establishing Intentional Destruction of Relevant Documents**

A party seeking spoliation sanctions bears the burden of "establish[ing] that the evidence in question was under the adverse party's control and that the evidence was

destroyed *intentionally*, and not just lost or accidentally destroyed." *Fortune v. Bitner*,
2006 WL 839346, at *1 (M.D. Pa. March 29, 2006) (citing *Brewer v. Quaker State Oil
Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)) (emphasis added). Pike cannot meet
this burden.

        1.     There Was No Intentional Disposal of the Disputed Documents

      In considering a motion for sanctions for spoliation "a district court must ensure
that there is an *adequate factual predicate* for flexing its substantial muscle ... and must
also ensure that the sanction is tailored to address the harm identified." *Republic of
Philippines v. Westinghouse*, 43 F.3d 65, 74 (3d Cir. 1994) (emphasis added). Pike
cannot establish an adequate factual predicate for finding that Mr. Dubea intentionally
destroyed the Disputed Documents.

      The only evidence Pike can provide on the issue of Mr. Dubea's intent to destroy
relevant evidence is the fact that the Disputed Documents were retrieved from the trash.
Mr. Dubea has no recollection of throwing away the Disputed Documents and he does
not know when they might have been initially placed in the trash, but he knows for sure
that he never intended to throw away any document relevant to this case. (Dubea Aff. ¶¶
1-2 (B1).) Pike further represents that the Disputed Documents were retrieved from Mr.
Dubea's trash on January 17, 2006. Among the other documents apparently retrieved on
that date were documents created as early as November 2005.[1] Because of the nature of
the trash receptacles provided by the City of Beaumont, it is not necessary for Mr. Dubea

---

[1]    *See* Declaration of Rob L. Kimmons, Ex A; (PIKE 00016764 (Nov. 25, 2004);
PIKE 00016771-16774; PIKE 00016765-16768 ▮▮▮▮▮▮▮▮▮▮▮; PIKE 00016823-16824) **REDACTED**
**REDACTED** ▮▮▮▮▮▮▮▮▮▮▮; PIKE 00016825 ▮▮▮▮▮

to put trash out for collection on a weekly basis.  The receptacles hold approximately 10 full trash bags.  As a result, it is Mr. Dubea's practice not to bring a receptacle down to the curb for collection until it is full.  (Dubea Aff. ¶ 7 (B2).)  If one receptacle has enough trash in it, Mr. Dubea will bring it to the end of his driveway.  If he has started to deposit trash in the second receptacle, but it is less than half full, he will normally only bring the fuller receptacle to the curb.  Thus, the trash at the bottom of Mr. Dubea's second receptacle may have been initially deposited there many weeks before the material makes it to the curb.  (*See* Dubea Aff. ¶ 7 (B2).)  Indeed, if Mr. Dubea and his wife are out of town, as they were for a significant period in early January, (Dubea Aff. ¶ 8 (B2)), the period of time lapsed from initial disposal in a waste basket to collection at the curb may be even longer.[2]

Pike makes an issue of a "litigation hold letter" sent to Mr. Dubea by his attorneys in early January.  That letter was sent to Mr. Dubea on January 7, 2006.  (Lintner Aff. ¶ 5 (B6).)[3]  But the mechanics of how trash is actually congregated and collected at the Dubea household provides no reason to think that the actual disposal took place after Mr. Dubea had received the litigation hold letter.  The disposal on January 17th could easily have contained waste that began to accumulate many weeks earlier, even into December.

---

[2]    A lengthy delay from initial disposal to when the material finally reaches the curb would explain why Kimmons found maggots in Mr. Dubea's trash.  (Kimmons Dep. at 66 (B10).)

[3]    Pike itself did not send out a litigation hold letter for their own internal documents until March, five months after it understood litigation was likely, a failure which appears to have resulted in the loss of evidence.  (Lintner Aff. ¶ 6 (B6).)  This issue will be addressed at the May 22, 2006 conference with the Court.

2.    There Is No Evidence Whatsoever of Some Broad Campaign of
Document Destruction

Pike's insinuation that Mr. Dubea began a "campaign" of document destruction

proving him to be the mastermind behind T&D, either before or after any litigation hold

letter, is utterly unsupported.  Most centrally, it is undermined by the documents

themselves, which Mr. Dubea does not recall discarding, and which by no means

establish him as the operating force behind T&D.

Pike's allegations of some broad document destruction campaign is further

undermined by Pike's inexplicable delay in bringing this motion.  The Disputed

Documents were recovered from Mr. Dubea's trash in January.  Pike at that point had

two possible options.  First, it could have immediately brought the matter to the attention

of opposing counsel and to this Court to prevent any further destruction.  Alternatively, it

could have continued to monitor Mr. Dubea's trash, to collect the further evidence Pike

might have imagined would be coming (since, to Pike's thinking, the trash at his curb

was Mr. Dubea's *modus operandi* for disposal).  Oddly, Pike did neither.  It delayed in

bringing this motion until now, and, although Kimmons continued its investigation

efforts (Kimmons Dep. at 106 -107 (B13).), Pike apparently stopped recovering the trash.

(Kimmons Dep. at 87-88 (B12).)  Having taken no action to stop the alleged spoliation in

January, and having utterly failed to recover the evidence Pike would have the Court

believe was disposed of since then, Pike's request that this Court assume that there has in

fact been some broad program of document disposal must fail.

11

**B.    Pike Has Not Suffered Any Prejudice**

1.    The Disputed Documents Have Been Recovered

To establish prejudice as a result of spoliation of evidence, Pike must show that it

has not had an adequate opportunity to examine the evidence in question. *In re Wechsler*,

121 F. Supp. 2d 404, 416 (D. Del. 2000). Thus, a party can claim undue prejudice only

"when one side is completely deprived of the opportunity to inspect the evidence because

it was destroyed." *Id.* (citing *Thiele v. Oddy's Auto & Marine, Inc.*, 906 F. Supp. 158,

163 (W.D.N.Y. 1995)). In this case, Pike has had the opportunity to inspect the

"evidence," because it recovered the Disputed Documents from the trash. There is no

need to speculate about the contents of the Disputed Documents because they have not

been destroyed. There has been no destruction of evidence and therefore no prejudice.

2.    Any Other "Prejudice" Is Speculative and Not Grounds for
Sanctions

Pike goes on to speculate that, "Pike never will know what destroyed evidence it

was denied access to." (O. Br. at 14.) A spoliation sanction can aim to bridge a known

gap in information; it does *not* permit an inference that the disposal of two documents of

(one of which was privileged) means that there necessarily exists a universe of unknown

documents which weigh in favor of the movant. Thus, Pike simply does not get the

benefit of speculation that additional "evidence" exists that supports its claim. Rather, it

must prove at minimum that such additional evidence exists, was under Mr. Dubea's

control and that he intentionally destroyed such evidence. *See Nye v. CSX Transp., Inc.*,

437 F.3d 556, 568 (6th Cir. 2006) (affirming summary judgment in favor of defendant on

spoliation claim because claims of spoliation were unsubstantiated); *York v. AK Steel*

*Corp.*, 2005 WL 3338696, at *9 (S.D. Ohio Dec. 8, 2005) (granting summary judgment

12

to defendants on issue of spoliation where plaintiff failed to introduce evidence of the existence of a spoliated document); *Condrey v. SunTrust Bank of Georgia*, 2003 WL 24205922, at *6 (W.D. La. June 20, 2003) (granting motion for summary judgment where "[t]he fact that [plaintiff]or its counsel speculates that such documents may once have existed is simply not sufficient to raise an issue of fact as to the existence of such documents, or to prove that any such documents would have any relevance to the matters at issue in this law suit"); *see also Wechsler*, 121 F. Supp. 2d at 422-426, (requiring demonstration by extrinsic evidence the content of the evidence allegedly destroyed to determine in what respect and to what extent it would have been detrimental).  Pike cannot and does not purport to make any such showing, thus, sanctions are not warranted.

### C.    The Sanctions Sought by Pike Are Not Sufficiently Tailored

Even if Pike had made a showing that Mr. Dubea improperly and intentionally discarded relevant evidence, and even if this discarded evidence (as opposed to the Disputed Documents) were now unavailable to Pike and the Court, the draconian sanctions sought by Pike would by no means be warranted.  In considering a motion for sanctions for spoliation "a district court must . . . ensure that the sanction is tailored to address the harm identified." *Westinghouse*, 43 F.3d at 74.  "In choosing an appropriate sanction for the spoliation of evidence, courts should 'select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim.'" *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 111 (E.D. Pa. 2005) (quoting *Schmid*, 13 F.3d at 79).  Furthermore, "[b]efore an adverse inference may be drawn, there must be some showing that there is in fact a nexus between the proposed

13

inference and the information contained in the lost evidence." *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 76 (S.D.N.Y. 1991) *cited in Wechsler*, 121 F. Supp. 2d at 423.

Pike seeks several different sanctions in the Motion: it seeks a finding of fact that Mr. Dubea breached the Employment Agreement, a shifting of the burden in litigation to Mr. Dubea, the imposition of a spoliation inference and monetary sanctions. In this case, each form of relief sought by Pike is inappropriate because it is not sufficiently tailored to address the "harm" identified and because there is no nexus between the relief sought and the contents of the Disputed Documents.

The Disputed Documents reflect only the following.



Thus, Pike's request for a finding of fact that Mr. Dubea violated the Employment Agreement is improper, overbroad and without support.

The alternative or supplemental sanctions proposed by Pike are equally unsupported. Shifting the burden from Pike to Mr. Dubea is an extreme sanction, unwarranted in light of the nature of the Disputed Documents and the facts and circumstances surrounding their disposal. *See Wechsler*, 121 F. Supp. 2d at 427 ("From least to most severe, the court can (1) issue an instruction at trial which permits the fact-finder (here, the court) to draw an adverse inference from the destruction of the ATLAS,

14

(2) exclude any favorable report prepared by Wechsler's expert on the cause or origin of the fire, (3) shift the burden of proof to Wechsler which would require him to show that the fire did not result from his negligence or (4) dismiss his case or enter judgment against him which would effectively remove the cap on his liability.")

Here, Pike seeks to have this Court assume not only that Mr. Dubea was aware of the plans of T&D's principals, and that Mr. Dubea's son discussed his new business with his father, (points Mr. Dubea has already conceded in interrogatory responses in this action), Pike asks this Court to assume that Mr. Dubea was an *active participant* in his son's plans. As a central part of its case, Pike currently must prove that Mr. Dubea provided confidential information to his son or to T&D, and that Mr. Dubea in some manner interfered with Pike's customer relationships, in an effort to assist his son. Mr. Dubea may have been unclear on the full scope of his non-competition obligations in certain respects (Dubea Aff. at ¶ 11 (B3)), but he was certainly aware that he could not solicit customers on his son's behalf, and he did not do so. If Pike is going to attempt to prove an improper customer solicitation, Pike could present the testimony of those customers it alleges Mr. Dubea spoke with. But it is all but impossible for Mr. Dubea to do the converse: he cannot prove that he *did not* speak to *any* representative of the various Pike customers through the testimony of such customers, unless he calls literally dozens of witnesses, all of those people who are decision-makers for the relevant customers. That is the only way he could establish that improper solicitations *did not happen*.

Pike seeks to impose upon Mr. Dubea the impossible burden of proving a negative, and facing millions of dollars in damages for acts he did not undertake. That is

15

an extreme and unwarranted sanction for the inadvertent disposal of two documents that in no respect indicate that Mr. Dubea might have improperly solicited customers, or might have improperly provided any confidential information, to T&D.

Pike argues that "the public should be aware that destruction of evidence will not go unpunished regardless its impact. Moreover, Pike is entitled to a sanction that will level the playing field by denying Dubea the benefit of his unlawful conduct." (O. Br. at 16-17.) The concept of automatic sanctions for *any* destruction of evidence, no matter how innocent, is simply unsupported by the law of this circuit. Destruction of evidence may go unpunished if it is accidental. *Brewer*, 72 F.3d at 334 ("No unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for"). Furthermore, despite Pike's assertion to the contrary, the impact of the destruction is critical to whether sanctions are appropriate. The precedent in the Third Circuit mandates that the prejudice, or lack thereof, to the party seeking sanctions be taken into account when a court considers sanctions. *Schmid*, 13 F.3d at 79 (finding that a key consideration in whether to grant sanctions for spoliation is "the degree of prejudice suffered by the opposing party"). At worst, Mr. Dubea has negligently discarded documents that he should have understood to constitute "evidence." He does not recall when this happened, but it was very likely before any litigation hold letter provided instructions to him about the arcane and technical world of evidentiary issues, and indeed may well have been before he was served in this action. By contrast, Pike, by bribing the

16

trash collector, appears to have broken the law in its invasive efforts to monitor Mr.

Dubea.[4]

II.  ███████ REDACTED ███████ IS PRIVILEGED AND MR. DUBEA HAS NOT WAIVED THAT PRIVILEGE

### A.   The Question List Document Is Privileged

Mr. Dubea has properly asserted attorney-client and work product privilege with

respect to several of the documents obtained by Kimmons on behalf of Plaintiff.  The

Motion challenges the privileged status of only the | REDACTED  Pursuant to Rule 501

of the Federal Rules of Evidence, the body of law governing the substantive issues

presented by a claim or defense also governs privilege.  Fed. R. Evid. 501.  In this case,

Delaware state law applies to the breach of contract claims; Texas law will likely governs

the tort claims.  Thus, state law governs matters of privilege.  *In re Ford Motor Co.*, 110

F.3d 954, 965 (3d Cir. 1997) ("In this civil, diversity case in which state law governs,

Rule 501 provides that state law will govern the issue of privilege.").  The law of

Delaware and Texas governing attorney-client privilege are nearly identical.

Under Delaware law, the attorney-client privilege is defined in Rule 502 of the

Delaware Rules of Evidence.  Pursuant to that rule, a client has a privilege to refuse to

disclose and to prevent any other person from disclosing confidential communications

---

[4]      Mr. Kimmons was highly circumspect in his deposition about his
information-gathering techniques, but he did admit to paying money in return for the
trash bags.  (Kimmons Dep. at 86 (B12).)  Those bags are collected by city employees.
(Dubea Aff. ¶ 3 (B1).)  It is a crime within the city limits of Beaumont to interfere with
garbage set out properly for disposal, *even* after it has been removed.  Beaumont, Tex.,
Code of Ordinances § 28-20.6, 28-20.14.  Furthermore, under Texas state law, "[a]
person commits an offense if he intentionally and knowingly confers . . . (3) any benefit
as consideration for violation of a duty imposed by law on a public servant."  Tex. Penal
Code Ann. § 36.02.  Violation of this statute is a felony, punishable by imprisonment of a
minimum of two years.  *See* 8 Tex. Code Ann. §§ 12.33 and 36.02(e).

made for the purpose of facilitating the rendition of professional legal services to the client.  Del. R. Evid. 502(b).[5]  That rule "is consistent with previous Delaware jurisprudence in extending the [attorney-client] privilege to all communications, whether written or oral, made for the purpose of facilitating the rendition of professional legal services." *Tackett v. State Farm Fire and Cas. Ins. Co.*, 653 A.2d 254, 259 (Del. 1995) (quoting *Zirn v. VLI Corp.*, 621 A.2d 773, 781 (Del. 1993)).

    1.         ██ **REDACTED** ██ Constitutes a Confidential "Communication" With Counsel

In preparation for a discussion with counsel on the issues identified in the



██ Pike misstates the relevant inquiry.

---

     [5]     The law of Texas is virtually identical.  *Compare* Tex. R. Evid. 503(b)(1) ("A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:  (A) between the client or a representative of the client and the client's lawyer or a representative of the lawyer . . . .").

Pike relies upon a single sentence taken out of context in support of its position that █**REDACTED**█ is not subject to attorney-client privilege. Pike cites *In re Grand Jury Matter*, Misc. 97-20-SLR, Memorandum Opinion to Order Denying Motion to Compel the Government to Return Certain Documents in its Possession (D. Del. June 27, 1997) ("*Capano I*"). In that case, the document at issue was a timeline prepared by a criminal defendant at the direction of his attorney, but he stored the document in the office of a partner of the defendant. The document was not generated in order to obtain advice of counsel, and was never conveyed—in form *or* substance—to defendant's counsel until obtained by the federal prosecutor.

That case is readily distinguishable. ████████

██████                                          ██████

████   **REDACTED**   ██

██████                                          ██████

███████████ It is not necessary that a document contain legal advice to warrant the protection of the attorney-client privilege, nor that the physical manifestation of intended dialogue was actually conveyed to a party's attorneys. It is sufficient that they were generated in order to gain the assistance of counsel and communicated in substance, if not in form.

In *U.S. v. DeFonte*, 441 F.3d 92 (2d Cir. 2006), the Second Circuit considered a situation conceptually identical to the instant one. ████████

████████   **REDACTED**   ████████

████████ The district court found that no privilege attached to the notes because they were not "communicated to counsel." *Id.* at 96. The

Second Circuit reversed the lower court's decision, finding that "[a] rule that allows no privilege at all for such records would discourage clients from taking the reasonable step of preparing an outline to assist in a conversation with their attorney." *Id.*  According to the court, "[c]ertainly, an outline of what a client wishes to discuss with counsel--and which is subsequently discussed with one's counsel--would seem to fit squarely within our understanding of the scope of the privilege." *Id.*; *see also Bernbach v. Timex Corp.*, 174 F.R.D. 9, 10 (D. Conn.1997).

The application of the principles espoused in *Defonte* is clear: ████████

███████████ **REDACTED** ████████

███████ ██████. Such discussion subsequently occurred. (Dubea Aff. ¶ 12 (B3).) ████████████  **REDACTED**

████████████████ in no way negates the existence of privilege in that communication. *See* Edward J. Imwinkelried, *The New Wigmore: Evidentiary Privileges* § 6.7.1 (2002) ("[I]f the client created a letter with the intent of sending it to his or her attorney, it is immaterial that the letter does not reach the attorney.").

2.     **REDACTED** Was Made for the Purpose of Facilitating the Rendition of Professional Legal Services

The ████████ reflects a series of specific questions of a legal nature. ██

**REDACTED** ████████████ **REDACTED** ████

████████ (Dubea Aff. ¶ 12 (B3).)  Because the ████████ falls squarely within the definition of documents entitled to privilege, it is plain that the **REDACTED** is subject to the attorney-client privilege.

## B.     Privilege Was Not Waived

Finally, Pike contends that attorney-client and work product protections have been waived because the **REDACTED** was retrieved from the trash. Pike argues that "[c]ourts have held that when an otherwise privileged document is thrown into the trash without first being destroyed, the privilege is waived." (O. Br. at 10 (citing *Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.* 91 F.R.D. 254, 260-261 (N.D. Ill. 1981)).) In fact, "courts" is merely a single district court, sitting in the Northern District of Illinois, and that decision has been criticized for its strict approach to privilege. *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 955 n.8 (N.D. Ill. 1982) (criticizing the harsh result of the strict approach applied in *Sew n'Sweep*).

In *Sew 'n Sweep*, plaintiffs were operators of retail stores which sold sewing machines and other products manufactured and distributed by defendants. Plaintiff began to suspect that defendants were engaging in certain anticompetitive conduct. To validate their suspicions, plaintiffs developed the practice of searching the dumpster behind the offices where a defendant maintained its offices. The practice continued for over two years and yielded hundreds of relevant documents. Among the relevant documents obtained was a series of confidential letters from Swiss-Bernina to their corporate counsel. The court found the status of the privileged communication recovered from the garbage to be a "very close question." *Id.* at 258.

The *Sew n' Sweep* court applies a strict approach to evaluating privilege waivers, in which any form of disclosure results in an automatic waiver. *See McCafferty's*, 179 F.R.D. at 168-170 (declining to find a waiver when privileged material was thrown away); *see also Mendenhall*, 531 F. Supp. at 955 n.8. This harsh approach is not

21

representative of the middle-ground approach position with respect to waivers of

privilege adopted by Delaware and many other states (including Texas).[6]  In this

approach, the overall context of the release of the information is evaluated to make a

judgment about whether there has been a knowing waiver.  *See Monsanto Co. v. Aetna*

*Cas. and Sur. Co.*, 1991 WL 53822, at *1 (Del. Super. Ct. April 8, 1991) (stating that the

reasonableness of the precautions taken by the producing party is a factor to be

considered in determining whether there has been a knowing waiver of work product or

attorney client privilege) (citing *Louis Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104

F.R.D. 103, 105 (S.D.N.Y.1985)); *see also International Business Machines Corp. v.*

*Comdisco, Inc.*, 1992 WL 149502, at *1 (Del. Super. Ct. June 22, 1992).

      Of course, cases such as *Monsanto* evaluate the overall context of the release of

privileged information in the context where a party has inadvertently produced a

privileged document to an opponent, and subsequently seeks its return.  Pike's acquisition

of the Disputed Documents here was not a result of a production, Pike obtained the

Disputed Documents from the trash.  Yet the core inquiry remains the same:  can it be

said that Mr. Dubea in any sense has knowingly and intentionally waived the attorney-

client privilege because the Disputed Documents found their way in the trash?  Mr.

Dubea does not recall disposing of the documents, but he at no time took any action to

knowingly or intentionally destroy a document relevant to this case.  (Dubea Aff. ¶ 1

(B1).)  He also could have had no expectation that any of his household trash would have

---

      [6]      This middle ground approach is sometimes called the *Hydraflow* test, after
*Hydraflow, Inc. v. Enidine, Inc.*, 145 F.R.D. 626 (W.D.N.Y. 1993); s*ee Gray v. Bicknell*,
86 F.3d 1472, 1483-84 (8th Cir. 1996) (laying out the strict, lenient, and middle-ground,
or "*Hydraflow*" test).

22

been reviewed by the public at large.  (Dubea Aff. ¶ 6 (B2) (Mr. Dubea and his wife

typically place household trash in a sealed container).)[7]

Additionally, a court evaluating whether there has been an intentional waiver of

privilege should consider the promptness of the response in asserting privilege.  In this

case, Mr. Dubea acted promptly in asserting privilege for **REDACTED**.  Mr. Dubea

received a production of documents by Pike on April 13, 2006.  On April 16, 2006,

counsel for Mr. Dubea advised counsel for Pike that several of the documents on their

face implicated the attorney client or work product privileges.  (Lintner Aff. ¶ 4, Ex. C

(B15).)  As Pike had stamped the documents "Confidential," counsel for Mr. Dubea

requested Pike's consent in showing the documents to Mr. Dubea.  (*Id.*)  Five days later,

on April 21, 2006, counsel for Mr. Dubea made a written demand for their return based

on a claim of privilege.  (Lintner Aff. ¶ 6 (B16-17).)  Thus, Mr. Dubea has vigilantly

protected the privileges discussed herein.

Finally, a court analyzing waivers of privilege under the framework of a middle-

ground approach will consider the overall fairness of protecting the documents from

discovery and use.  This factor considers whether there are any special circumstances

which justify preserving the privilege.  It is the most relevant factor in light of the

unusual circumstances of this case.  In this case, the documents were taken by Pike in an

---

[7]      *See State v. Morris*, 680 A.2d 90, 94 (Vt. 1996) ("Given the intimate
details of people's lives that may be revealed by searching through their refuse, we
conclude that persons have a reasonable interest in keeping private the contents of their
sealed trash containers. . . . Further, that privacy interest is not lost merely because people
follow the customary practice of depositing their garbage in closed containers at curbside
for collection and disposal."); *State v. Hempele*, 576 A.2d 793, 804-806, 809 (N.J. 1990)
("The accessibility of garbage to outsiders, however, is not dispositive [of the expectation
of privacy], because a person can maintain a privacy interest in something that is not
completely invulnerable to prying eyes.").

endeavor that gave it access to extensive personal and private materials of Mr. Dubea, including materials reflecting his searches for an attorney in this litigation.  (Kimmons Dec., Ex. A.)  Pike's efforts have entitled it to question Mr. Dubea and his son about the **REDACTED**, and Mr. Dubea will have to (and will be able to) explain those notes. Pike should not additionally be entitled to invade the attorney-client privilege through its intrusive efforts.

This is all the more true because the Disputed Documents were obtained in violation of the law.  The City of Beaumont Code of Ordinances provides:

> No person, other than employees of the city charged with such duty, shall interfere with the contents of any refuse container set out for removal by the city or any private collection agency, unless authorized by the director of solid waste management or his designated agent. It shall be unlawful for any person to damage or destroy any refuse container placed at the curbline for collection.

Beaumont, Tex., Code of Ordinances § 28-20.14.

Fairness dictates that the **REDACTED** be returned to Mr. Dubea and that the privilege attaching thereto be protected to the fullest extent.

24

## CONCLUSION

WHEREFORE, for the reasons set forth herein, Mick Dubea respectfully requests that this Court deny Pike's Motion for Order Rejecting Defendant's Claims of Privilege and For Discovery Sanctions Due to Spoliation of Evidence (D.I. 42.) in full, and that the Court find that the **REDACTED** is subject to the protections of the attorney-client privilege and compel its return by Pike.

Dated:  May 19, 2006

*/s/ Lewis H. Lazarus*

By:_____

    Lewis H. Lazarus (#2374)
    Matthew F. Lintner (#4371)
    Joseph S. Naylor (#3886)
    MORRIS, JAMES, HITCHENS & WILLIAMS LLP
    222 Delaware Avenue, 10th Floor
    Wilmington, Delaware  19801
    (302) 888-6800
    llazarus@morrisjames.com
    mlintner@morrisjames.com
    jnaylor@morrisjames.com
    Attorneys for Mick Dubea

1393890/1