IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PIKE ELECTRIC CORPORATION &
PIKE ELECTRIC, INC.,

       Plaintiffs,

vs.

MICK DUBEA,

       Defendant.

Civil Action No. 05-879 (SLR)

**REDACTED - PUBLIC VERSION**

**REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR ORDER
REJECTING DEFENDANT'S CLAIMS OF PRIVILEGE AND FOR DISCOVERY
SANCTIONS DUE TO SPOLIATION OF EVIDENCE**

OF COUNSEL:
Michael A. Paskin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

May 18, 2006

William J. Wade (#704)
wade@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

Attorneys for Plaintiffs Pike Electric
Corporation and Pike Electric, Inc.

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| ARGUMENT | | 1 |
| I. | DUBEA SHOULD BE SANCTIONED FOR SPOLIATION OF EVIDENCE. | 1 |
| | A. Dubea Intentionally Withheld Key Evidence. | 1 |
| | B. Dubea Should Be Punished for Withholding, Attempting to Destroy, and Likely Destroying, Relevant Evidence. | 5 |
| | C. The Sanctions Requested By Pike Are Warranted. | 8 |
| II | THE DISCARDED DOCUMENTS ARE NOT PRIVILEGED. | 10 |
| CONCLUSION | | 13 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Curtis T. Bedwell and Sons, Inc. v. International Fidelity Inc. Co.* ................................. 7

*In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1984) ..................................... 12

*In re Grand Jury Matter*, Misc. No. 97-20-SLR, Memorandum
  Opinion to Order Denying Motion to Compel the Government
  to Return Certain Documents in Its Possession, June 27, 1997 (D. Del. 1997) .......... 10

*In re Horowitz*, 482 F.2d 72 (2d Cir. 1973) ................................................................ 12

*In re Wechsler*, 121 F. Supp. 2d 404 (D. Del. 2000) ................................................ 6, 9

*Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332 (D.N.J. 2004) ......... 1, 2, 6

*Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.*, 91 F.R.D. 254 (N.D. Ill.
  1981) ........................................................................................................................ 12

*Upjohn v. United States*, 449 U.S. 383 (1981) ............................................................ 11

*Westinghouse Elec. Corp. v. Republic of Phillippines*, 951 F.2d 1414 (3d. Cir
  1991) ................................................................................................................... 11, 12

**Statutes & Rules**

Beaumont, Tex., Code of Ordinances § 28-20 ............................................................... 5

Dubea Employment Agreement §5.07 (a) ..................................................................... 9

Plaintiffs Pike Electric Corporation and Pike Electric, Inc. (collectively, "Pike") hereby submit their Reply Brief in Further Support of Plaintiffs' Motion for Order Rejecting Defendant's Claims of Privilege and for Discovery Sanctions Due to Spoliation of Evidence against Defendant Mick Dubea ("Dubea").

## ARGUMENT

### I. DUBEA SHOULD BE SANCTIONED FOR SPOLIATION OF EVIDENCE.

In order for a court to sanction a party for spoliation of evidence, four factors must be satisfied: (1) the evidence in question had to have been within the spoliating party's control; (2) "it must appear that there has been actual suppression or withholding of the evidence"; (3) the evidence destroyed or withheld had to have been relevant to the claims or defenses of the parties to the action; and (4) it had to have been reasonably foreseeable that the evidence would be discoverable.[1] *E.g., Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004) (internal quotation marks omitted). That standard is plainly met here. Dubea *concedes*, as he must, that the evidence in question was within his control, was relevant to the claims in Pike's complaint, and that it was reasonably foreseeable that the evidence would be discoverable. Moreover, Dubea cannot credibly maintain that he did not "actual[ly] suppress[ ] or withhold[ ]" the evidence, as it is undisputed that he did not produce the evidence to Pike, but instead threw it in the garbage. *See id.* (internal quotation marks omitted).

#### A. Dubea Intentionally Withheld Key Evidence.

In arguing that "Pike cannot establish the requisite intent to warrant a sanction" (Dubea Br. at 3), Dubea misinterprets the requirement that there be "actual suppression or withholding of evidence" to mean that the suppression of evidence must be in bad faith. In the

---

[1] The question of what type of sanction should be applied is a separate question, and is addressed below.

Third Circuit, a showing of bad faith is not required in order to impose sanctions for spoliation of evidence. *See Mosaid*, 348 F. Supp. 2d at 337 ("[T]his Court did not find any case law in this circuit that requires a finding of bad faith before allowing a spoliation inference."). Rather, "[s]ome courts in the Third Circuit have construed 'actual suppression' to mean that the evidence must be *intentionally* or *knowingly* destroyed or withheld, as opposed to lost, accidentally destroyed or otherwise properly accounted for". *Id.* (emphasis in original). Other courts in the Third Circuit have not even required intentional or knowing destruction of the evidence, but instead have not analyzed the spoliator's intent at all. *Id.* (citing cases). Dubea's conduct was, at a minimum, intentional, and thus in satisfaction of even the stricter standard.

*First*, it is undisputed that relevant documents, written by Dubea, were found in the trash outside his home after the date he received instructions from his attorneys not to destroy relevant evidence. It is also undisputed that those documents were not produced to Pike or entered on Dubea's privilege log. Thus, it is clear that Dubea "intentionally or knowingly" withheld the evidence in question. While Dubea states that he has "no recollection of throwing away the Disputed Documents" (Dubea Br. at 9), it is clear that he must have done so, as the documents were created by him, were apparently never in anyone else's possession (or else he could not claim privilege with respect to some of those documents), and were found in his trash. Tellingly, Dubea does not deny throwing away the documents after receiving instructions not to do so, but merely states that he "does not recall" engaging in that conduct. As stated above, it is not necessary for this Court to find that Dubea acted in bad faith when discarding the documents (although it appears that he did so), but only that Dubea purposefully discarded the documents.

*Second*, Dubea cannot credibly claim that his attempted destruction of key evidence was accidental. To the contrary, a review of the discarded materials reveals that Dubea

engaged in a campaign of document destruction designed to prevent Pike from obtaining documents relevant to this case. Dubea received Pike's Complaint on December 22, 2005. (*See* FedEx Envelope from Richard Layton & Finger to Mick Dubea containing Complaint, which was signed for by Mick Dubea on December 22, 2005, and recovered from Dubea's trash on December 28, 2005, bates stamped (PIKE00016600) attached as Exhibit A to Paul Declaration ("rec - 12/22/05 at 4pm, MD").) On January 7, 2006, his attorneys instructed him to preserve all documents potentially related to this litigation. One and a half weeks after Dubea received that instruction, and three and a half weeks after Dubea learned that he had been sued, the following documents were recovered from Dubea's trash:

1. REDACTED (4/27/06 Kimmons Decl. Exh. A at PIKE 00016771-16774);

2. REDACTED (*Id.* at PIKE 00016831);

3. REDACTED (*Id.* at PIKE 00016832);

4. REDACTED (*Id.* at PIKE 00016833.001);

5. REDACTED (*Id.* at PIKE 00016834); and

6. REDACTED (*Id.* at Exs. B-G.)

In the face of those facts, Dubea's claim that he did not intend to throw out documents relevant to this case is incredible.

*Third*, Dubea's explanation of "the mechanics of how trash is actually congregated and collected at the Dubea household" (Dubea Br. at 10) fails to excuse Dubea's attempt to destroy key evidence. It is undisputed that the evidence in question *was not* in the garbage Dubea set out to be collected by the trash collector on January 10, 2006, but *was* in the garbage set out to be collected on January 17, 2006. Thus, Dubea necessarily placed those documents on the public street for permanent removal at some point during the interim week.

Dubea's suggestion that he may have placed the documents in the garbage stored at his home, but not yet collected, prior to that time is beside the point. The relevant inquiry is when did Dubea take steps to dispose of the documents permanently (by turning them over to the trash collector), not how or where did Dubea store the documents when they were still at his home in his possession and under his control. Indeed, if the documents had already been placed in trash bins at Dubea's home before he received the litigation hold letter from his attorneys, Dubea should have taken steps to retrieve those documents from the refuse containers before he placed them on the street for removal and permanent destruction. Instead, according to Dubea's own declaration, he took steps permanently to dispose of the documents during the week of January 10. The earliest date he could have discarded the documents was January 14 (after he returned from vacation (*see* Dubea Decl. ¶ 8)), but he likely discarded them on January 17 (the Tuesday the garbage was picked up by the trash collector (*see* Dubea Decl. ¶7)).

Regardless, Dubea admits that he anticipated litigation *at the time he wrote the documents*. (*See* Dubea Br. at 2-3 ("Mr. Dubea *fully understood* that his son's potential new endeavor would present certain risks to him because of his own non-competition obligations to Pike. . . . Mr. Dubea sought legal advice from counsel to assist him in navigating through these issues." (emphasis added)).) Accordingly, Dubea should have known to preserve the documents

-4-

at the time they were created, and his failure to do so after being sued is direct evidence of Dubea's intentional attempt to keep from Pike the information to which it is entitled.

### B. Dubea Should Be Punished for Withholding, Attempting to Destroy, and Likely Destroying, Relevant Evidence.

Faced with the undeniable conclusion that he was caught trying to destroy key evidence, Dubea attempts to critique Pike's investigatory efforts to avoid sanctions for his own misconduct. Dubea's arguments are misguided.

*First,* Dubea has no support for the application of the Beaumont ordinance to call into question the widely accepted investigatory techniques used by Kimmons. Kimmons's conduct did not run afoul of the plain language of the ordinance cited by Dubea, which forbids any person from "interfer[ing] with the contents of any refuse container *set out for removal*". Beaumont, Tex., Code of Ordinances § 28-20.14 (emphasis added) (attached as Paul Ex. B). Kimmons did not interfere with the contents of Dubea's trash when it was in the refuse container set out for removal, but instead only obtained the trash from the trash collector after it had been removed from the containers. (Kimmons Tr. at 85-86.) Dubea conveniently ignores that fact, and he cites no authority for the proposition that the ordinance applies to trash that has already been removed from the containers by the city trash collector. Indeed, Dubea's reading would not make sense because the section is designed to protect the city's containers, and not the citizens' trash. *See* Beaumont, Tex., Code of Ordinances § 28-20.14 (entitled "Interference with or damaging *containers*"). Moreover, the ordinance is enforced by the city's waste management department, not the courts. *See* Beaumont, Tex., Code of Ordinances § 28-20.2 ("The administration and enforcement of the provisions of this article, including provisions for refuse collection throughout the city, by both private contractors and the city, shall be primarily the duty of the solid waste management department with assistance from the public safety

department."). Finally, Dubea's claim that Kimmons violated the Texas bribery statute is also unfounded. There is no evidence that the trash collector violated "a duty imposed by law" when he gave Kimmons trash he collected from Dubea's refuse containers. In fact, Dubea has provided no explanation to support an argument that the law imposes any duty on a city trash collector at all. There is also no evidence that the trash collector is a "public servant" as that term is used in the statute. In sum, Dubea overreaches with his claim that Kimmons's investigation was illegal in any way.

*Second*, Dubea should not be allowed to avoid punishment merely because Pike, through its own substantial efforts and expense, managed to recover some of the documents he attempted to destroy. Tellingly, Dubea criticizes Pike's investigative efforts even though, without those efforts, key evidence would have been lost forever, and Pike would have had no way of knowing that the evidence had ever existed, let alone been destroyed. As Courts in the Third Circuit have explained, spoliation sanctions "serve a punitive function, by punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be". *Mosaid*, 348 F. Supp. 2d at 335. Those rationales are served by punishing Dubea for his misconduct.

As Dubea correctly points out, the least severe sanction that is generally imposed in these situations is the adoption of an adverse spoliation inference at trial. *See In re Wechsler*, 121 F. Supp. 2d 404, 427 (D. Del. 2000). Here, however, the adoption of that sanction would not punish Dubea at all, because Pike can demonstrate that the documents it recovered are adverse to Dubea even without the benefit of an adverse inference instruction. *See Mosaid*, 348 F. Supp. 2d at 338 n. 10 (noting that because "the goal of the spoliation inference is to place the prejudiced

-6-

party in the position that it would otherwise have been, its ability to deter spoliation is limited in scope. Consequently, it is this Court's belief that the reason the spoliation sanction is considered to be a lesser sanction is because it is primarily remedial in nature."). Accordingly, the sanctions imposed on Dubea should go beyond the imposition of an adverse inference, so that he receives some form of punishment for his attempted destruction of key evidence.

*Third*, Dubea misstates the law when he argues that, to obtain a discovery sanction, Pike must prove that "additional evidence exists, was under Mr. Dubea's control and that he intentionally destroyed such evidence". (Dubea Br. at 12.) In *Curtis T. Bedwell & Sons, Inc. v. International Fidelity Ins .Co.*, the plaintiffs argued that any sanction for their failure to timely produce notebooks was unwarranted because the discovery would have been cumulative, the notebooks were eventually produced, and it had later complied with all discovery requests. 843 F.2d 683, 693 (3d Cir. 1988). The Court disagreed and held that the additional cost to the defendants in obtaining the discovery despite the defendant's "stonewall[ling]" was sufficient to support severe sanctions--namely, the dismissal of plaintiffs' claims. *Id.* at 696-97. Similarly, Pike had to incur substantial costs to recover relevant evidence, to which it was entitled, due to conduct by Dubea more reprehensible than mere "stonewalling". Had Pike not incurred those costs, the evidence would have been lost forever without anyone ever knowing that it existed. Dubea should not escape punishment because Pike was able to salvage some of the documents before they were destroyed.

*Fourth*, as discussed above, it is clear that Dubea attempted to engage in a broad campaign of document destruction. In the face of that conduct, it is reasonable to assume that Dubea destroyed other documents in other locations that Pike was not able to monitor. In particular, Dubea may have destroyed relevant evidence from his other houses, his private jet, his

-7-

office, or from his computer. Pike, and the Court, will never know what documents Dubea was successful in destroying, and the Court should, at a minimum, require Dubea to prove that he did not destroy any additional relevant evidence.[2]

### C.    The Sanctions Requested By Pike Are Warranted.

Dubea claims that the sanctions requested by Pike are not warranted "because there is no nexus between the relief sought and the contents of the Disputed Documents". (Dubea Br. at 14.) Dubea is wrong.

Dubea's representation of what the Disputed Documents reflect is disingenuous. In particular, his description of what he calls the "Conversation Notes" strains credulity. Dubea claims "Ex. I, Bates stamped PIKE00016833.001 ... reflects notes taken by Mr. Dubea during a conversation with his son, Chad Dubea, or possibly two other friends of Chad's involved in the formation of Chad's business, T&D Solutions Ltd. ('T&D'), and reflects the information presented to Mr. Dubea about his son's plans for a new business". (Dubea Br. at 2.) As an initial matter, one must question why Dubea would take notes on an informal conversation with his son about his son's new business. One must also question how Dubea can state with certainty that the notes reflect a conversation with either his son or one of his son's friends when he is unable to pinpoint the parties to that conversation. (Dubea Br. at 2 (The Conversation Notes document "reflects notes taken by Mr. Dubea during a conversation with his son Chad Dubea, *or possibly* two other friends of Chad's" (emphasis added).).

More importantly, Dubea's description of the "Conversation Notes" is belied by the face of the document.

---

[2] Dubea makes much of the fact that Pike stopped searching Dubea's trash after January 17, 2006. Of course, the fact that Pike decided to stop spending substantial amounts of money to monitor Dubea's trash in no way relieves Dubea of his duty to maintain potentially relevant evidence.

-8-

(4/27/06 Kimmons Decl., Ex. I.)

(Dubea Br. at 2.)

**REDACTED**   (4/27/06 Kimmons Decl., Ex. I.)

(*Id.*)

In sum, the notes thrown away by Dubea reflect much more than a father's passive knowledge of his son's plans, but instead show that Dubea was an active participant in those plans, if not the ringleader. That behavior, in and of itself, establishes a breach of Dubea's Employment Agreement with Pike. (*See* Dubea Employment Agreement §5.07(a), attached as Paul Ex. E.) Accordingly, Pike's request for a finding of fact that Dubea breached the Employment Agreement, or for a shifting of the burden of proof on that issue, is warranted. *Cf. Wechsler*, 121 F. Supp. 2d at 423.

---

(7/8/05 Email from J.M. Stankey at AEP to M. Dubea (EDUBEA022037) attached as Paul Ex. C), (7/8/2005 Email from W. Airheart to M. Dubea (EDUBEA028496) attached as Paul Ex. D). AEP, Texas Utilities and Entergy are now three of T&D's largest customers.

-9-

RLF1-3015802-1

REDACTED         (Dubea Br. at 14.)

(*Id.*) ]

(4/27/06 Kimmon Decl. Ex. I at PIKE00016834), (*See* Paul Ex. E at §5.07(a)(ii)(e) (prohibiting Dubea from "assist[ing] any person or any entity in any way to do, or attempt to do, anything prohibited by [the non-compete provision]").) Accordingly, Pike is entitled to a finding of fact or a shifting of the burden of proof on that issue.

It is clear that Dubea attempted to destroy documents directly relevant to Pike's claims. As punishment for that misconduct, and to compensate Pike for the substantial prejudice it has suffered, the Court should grant discovery sanctions against Dubea for spoliation of evidence.

## II.   THE DISCARDED DOCUMENTS ARE NOT PRIVILEGED.

Dubea cannot assert the attorney-client privilege over the second page of handwritten notes found at Ex. I to the 4/27/2006 Kimmons declaration (PIKE00016834.).

*First*, since the notes were never turned over to Dubea's attorneys, "they are not 'communications' and, therefore, are not protected by the attorney-client privilege". *In re Grand Jury Matter*, Misc. No. 97-20-SLR, Memorandum Opinion to Order Denying Motion to Compel the Government to Return Certain Documents in Its Possession, at 10 (D. Del. June 27, 1997) ("*Capano I*") (attached as Ex. E to 4/27/2006 Paul Decl.). Dubea's attempt to distinguish

-10-

RLF1-3015802-1

*Capano I* fails. Dubea is wrong when he claims that the documents at issue in that case were "never conveyed--in form *or* substance--to defendant's counsel until obtained by the federal prosecutor". (Dubea Br. at 19 (emphasis in original.)) In *Capano I*, the defendant's attorney instructed him to write a timeline of events surrounding the date of a kidnapping, and also to write down anything he could recall about his relationship with the kidnapping victim. *Capano I* at 2. Thus, unlike Dubea's notes, which were prepared before he sought legal advice on the issue discussed in his notes (and perhaps before he was represented by counsel with respect to his efforts to compete with Pike), the notes in *Capano I* were prepared at the express instruction of counsel. *Id.* The defendant had to convey the substance of those notes (*i.e.*, what he was doing on the date of the kidnapping and his relationship to the victim) to his attorney so that his attorney could adequately represent him in the investigation--indeed, his attorney specified the categories of information that the notes should contain. Nevertheless, the Court correctly ruled that, even though the notes were prepared at counsel's direction, and contained information necessarily conveyed to counsel, *the notes themselves* were not privileged communications because *the notes themselves* were never turned over to counsel. *Id.* at 10; *see also Upjohn v. United States*, 449 U.S. 383, 395 (1981) ("[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").

*Second*, Dubea waived any privilege that may have attached to the notes, *and* to any communications with his attorney about the notes, when he disclosed the substance of those "communications" to Chad Dubea, Alex Graham and Sammy Christian. *See, e.g., Westinghouse Elec. Corp v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d. Cir 1991) ("it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege

-11-

RLF1-3015802-1

is waived"). Dubea claims he used the handwritten notes to seek legal advice about his own Employment Agreement, and about "the risks to his son and his son's friends" with respect to the formation of T&D. (Dubea Br. at 14.) Dubea cannot claim privilege over communications with his lawyer that he later disclosed to Chad, Alex or Sammy, including communications about the risks faced by him or those gentlemen with respect to T&D's formation. *Westinghouse*, 951 F.2d at 1424.[4]

*Finally*, Dubea waived any privilege that may have attached to the disputed document when he threw it in the garbage. *See Suburban Sew 'N Sweep, Inc. v. Swiss-Bernina, Inc.*, 91 F.R.D. 254, 260 (N.D. Ill. 1981). Dubea cites no authority to the contrary, and admits that the cases he does cite deal exclusively with inadvertent disclosures during discovery. (Dubea Br. at 22.) Those cases are readily distinguishable because Dubea did not inadvertently produce the document during litigation--he intentionally threw it in the trash on a public street. This Court, and other courts as well, have held that actions far less careless than those taken by Dubea have resulted in a waiver of attorney-client privilege, which requires the holder of the privilege to take reasonable steps to maintain the confidentiality of the communications. *See Capano I* at 13 (holding that the placement of work-product protected documents in a law partner's office waived the work-product privilege because the defendant "disregarded the possibility that an adversary might obtain them"); *In re Grand Jury Proceedings*, 727 F.2d 1352, 1356 (4th Cir. 1984) ("so strong is this requirement of confidentiality that it has been held that the privilege may be lost 'even if the disclosure is inadvertent' such as in some circumstances 'eavesdroppers' . . ." (citations omitted)); *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) ("It is

---

[4] It would strain credulity to suggest that Dubea would pay legal fees to determine whether third parties faced risks in starting a new business when he planned neither to be involved with the new business himself, nor to disclose the advice that he obtained to the third parties.

difficult to be persuaded that the documents were intended to remain confidential in the light of the fact that they were indiscriminately mingled with the other routine documents of the corporation and that no special effort to preserve them in segregated files with special protections was made. One measure of their continuing confidentiality is the degree of care exhibited in their keeping, and the risk of insufficient precautions must rest with the party claiming the privilege."). Thus, Dubea waived any privilege that may have once attached to the document when he carelessly threw it in the garbage on a public street.

## CONCLUSION

For the foregoing reasons, Pike respectfully requests that this Court enter an Order granting Pike's Motion as set forth in the Proposed Order attached to Pike's Opening Brief.

/s/ William J. Wade
William J. Wade (#704)
wade@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

Attorneys for Plaintiffs Pike Electric
Corporation and Pike Electric, Inc.

OF COUNSEL:
Michael A. Paskin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

May 18, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and have also served the document as noted:

**BY HAND DELIVERY**

Lewis H. Lazarus, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

_____
Alyssa M. Schwartz (#4351)

RLF1-2997741-1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 25, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and have also served the document as noted:

### BY HAND DELIVERY

Lewis H. Lazarus, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

Alyssa M. Schwartz (#4351)