# EXHIBIT D

United States District Court
Southern District of Texas
FILED

JUL 1 7 2006

Michael N. Milby, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| PIKE ELECTRIC CORPORATION & PIKE ELECTRIC, INC., | § § § § | CIVIL ACTION NO. M-05-410 |
| v. | § § § | |
| T&D SOLUTIONS, LTD., T&D SOLUTION MANAGERS, LLC, COREYCLOSE & CHAD DUBEA | § § § | JURY REQUESTED |

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT

### Summary of this Pleading

Individuals have a constitutional right to directly compete with their former employer and even to vie for the business of the same customers. In 2005, Cory Close and Chad Dubea left their at-will employment with Pike Electric and formed a competing company, T&D Solutions. Pike Electric never bargained with Close and Dubea for a term employment contract, non-compete or even a confidentiality agreement. Yet now Pike Electric seeks through litigation a de facto covenant not to compete restraining competition. All three of Pike Electric's counts should be dismissed against all four Defendants.

Count 1 alleges tortious interference with the non compete agreements of several former Pike Electric employees who now work for T&D. However, those non-competes are unenforceable as a matter of law and therefore cannot form the basis of a tortious interference cause of action.

Although none of the Defendants has a covenant not to compete with Pike Electric, Count 2 alleges that Defendants' competition for prospective customers in the electrical services industry constitutes tortious interference with prospective relations. As a matter of law, Defendants are privileged to compete in the open market for customers. And Pike Electric has no evidence of independently tortious or unlawful actions and thus cannot, as a matter of law, prevail on a tortious interference with prospective relations claim.

Count 3 alleges common law misappropriation of trade secrets. However, the undisputed facts, including the testimony of Pike Electric's management, demonstrate that Pike Electric's claims are without any factual support.

## I.

### Nature & Stage of the Proceeding & Background

This lawsuit is an attempt by Pike Electric to stop lawful competition and to limit customer choice in the market. Defendants Cory Close ("Close") and Chad Dubea ("Dubea") are former employees of Red Simpson, Inc. ("Red Simpson"). Red Simpson provided electric transmission and distribution services primarily to electrical utilities and cooperatives, which involves installing and maintaining power lines and storm restoration. In July 2004, Pike Electric Corporation and Pike Electric, Inc. (collectively "Pike Electric") acquired Red Simpson, Inc. By virtue of the sale of Red Simpson, Close and Dubea became employees of Pike Electric, which is also an electric transmission and distribution service provider. Dubea and Close were not owners of Red Simpson, and neither became an owner in Pike Electric. Pike Electric did not attempt to bargain with Dubea or Close to sign a term employment contract, confidentiality agreement or a non-compete agreement. Dubea and Close were merely at-will employees of Pike Electric.

As was their right under Texas common law, and unhindered by any contract, Cory Close and Chad Dubea left Pike Electric in 2005 to open their own business, T&D Solutions, LTD and T&D Solution Managers L.L.C. (collectively "T&D"). T&D, which is also an electric transmission and distribution service provider, naturally hired several employees who formerly worked with Close and Dubea for Pike Electric and Red Simpson and began competing for the obvious customers in this market.

Pike Electric responded by filing this lawsuit. Pike Electric asserts only three causes of action: (1) tortious interference with the non-competition agreements of certain former employees; (2) tortious interference with the prospective business relations between Pike Electric and its prospective customers; and (3) common law misappropriation of trade secrets. There is no claim that the individual defendants' actions breach any contract with Pike Electric.

Fact discovery is virtually complete. Defendants are filing this motion on the day of the dispositive motion deadline. The case is ripe for summary judgment.

## I.
### Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, along with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett* 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). The moving party bears the burden of showing the Court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. To prevail on its motion for summary judgment, the movant must show from the evidence of record that there is no "genuine issue as to any material fact" as to the claims at issue in the motion. FED. R. CIV. P. 56(c). An alleged factual dispute will not defeat the motion unless it is genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When a properly supported motion for summary judgment is before the Court, it cannot be defeated by mere allegations or denials within the pleadings. *Id.* at 248. Where a party, like Pike Electric here, bears the burden of proof at trial, it must, after an adequate opportunity for discovery and upon motion, make a showing sufficient to

establish the existence of each element essential to its case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of the non-moving party to establish such an essential element mandates that the Motion for Summary Judgment be granted because no genuine issue for trial can exist. *Id.*

Unsubstantiated assertions and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). As will be shown below, in accordance with this standard, Pike Electric has failed to bring forth evidence to sustain its claims in this suit.

## II.
## Argument & Authorities

Texas law applies to this dispute. Pike Electric has conceded that Texas law applies and has substantially briefed this issue in Plaintiffs' Memorandum of Law in Opposition to Defendants T&D Solutions, LTD's, T&D Solution Managers, LLC's and Chad Dubea's Motions to Dismiss and for a More Definite Statement (**Docket No. 34, ¶I.A.2.**). As Pike Electric concedes, Texas has the most significant relationship to the case because Pike Electric alleges more significant lost business opportunities in Texas and a majority of the conduct at issue occurred in Texas. *Id.*

Moreover, Texas' presumption against the enforceability of covenants not to compete is a matter of fundamental public policy. Therefore, a court must determine the enforceability of a covenant not to compete under Texas law if the employer is seeking to enforce the agreement in Texas, even if the parties have agreed to application of the law of a different state. *DeSantis v. Wackenhut*, 793 S.W.2d 670, 681 (Tex.1990); *Louisiana Transportation, Inc. v. Race*, 2002 U.S.Dist.LEXIS 19571 (N.D.Tex. 2002); *Autonation, Inc. v. Hatfield*, 186 S.W.3d 576 (Tex. App. – Houston [14[th] Dist.] 2005, no writ).

Pike Electric asserts only three causes of action: (1) tortious interference with the non-competition agreements of certain former employees; (2) tortious interference with the prospective business relations between Pike Electric and its prospective customers; and (3) common law misappropriation of trade secrets. All three causes of action against all Defendants should be dismissed.

## A.    Count I:  Tortious Interference With The Non-Competes

Count I is without merit and must be dismissed because the non-compete provisions with which Defendants allegedly interfered are unenforceable as a matter of law. A non-compete that is unenforceable cannot form the basis of a tortious interference claim. The non-competes between Pike Electric and Chuck Chaddrick, Tim Droddy, Clifton Droddy, Sammy Christian and Alex Graham are unenforceable because Pike Electric makes no promise that gives rise to an interest in restraining competition. Pike Electric's only promise was to pay certain monetary benefits upon termination of employment under certain circumstances. Under well-settled law, promises such as this, to pay money or its functional equivalent, do not give rise to an interest in restraining competition. Therefore the non-competes are unenforceable and Pike Electric's cause of action is without merit as a matter of law.

### (1)    The Cause of Action

In Count I, Pike Electric alleges that Defendants caused the breach of Pike, Inc.'s employment agreements with Chuck Chaddrick, Tim Droddy, Clifton Droddy, Sammy Christian and Alex Graham, "by soliciting those employees and then hiring them to work at T&D." (*See* **Docket No. 1**, Complaint ¶37). Chuck Chaddrick, Tim Droddy, Clifton Droddy, Sammy Christian and Alex Graham are former employees of Pike Electric who now work for T&D. In connection with their employment with Red Simpson, each

signed an employment agreement containing, among numerous other terms, non-compete provisions.[1]   Attached as Exhibit A is a true and correct copy of Sammy Christian's employment agreement, which is identical in all relevant respects to the other former Pike Electric employees' employment agreements.

Pike Electric does not appear to dispute that the provisions at issue in its tortious interference claim are in fact "covenants not to compete," and therefore subject to the requirements of the Texas Covenant Not to Compete Act, TEXAS BUSINESS & COMMERCE CODE §15.50.  The only act of interference Pike Electric pled in the Complaint is the Defendants' acts of "soliciting those employees and then hiring them to do work at T&D."  It is thus clear that the only provisions at issue are those preventing the former employees from working for a competitor.

However, even if Pike Electric alleges that Defendants induced the former Pike Electric employees to breach provisions prohibiting solicitation of customers or hiring of employees, those kinds of provisions are also "covenants not to compete" under Texas law and therefore must meet the requirements of Section 15.50 of the TEXAS BUSINESS & COMMERCE CODE. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 385, 388 (Tex.1991); *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W. 2d 830 (Tex. 1991); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593 (Tex.App.—Amarillo 1995, no writ); *Olander v. Compass Bank*, 172 F. Supp.2d 846 (S.D. Tex.2001), *Ruscitto v. Merrill Lynch*, 777 F.Supp. 1349 (N.D. Tex. 1991); *Brown Services, Inc. v. Brown*, 1999 Tex.App.LEXIS 6689 (Tex.App.—Houston [1st Dist] 1999, writ denied).

---

[1] None of the employees with whose non-competes Defendants are alleged to have interfered was ever an owner of Pike Electric. The non-competes at issue were signed in connection with their employment, not in connection with the sale of any business of them.

(1)    **An Unenforceable Non-Compete Cannot Support A Tortious Interference Claim**

If the underlying non-compete fails to meet the requirements of the Texas Covenant Not to Compete Act, the tortious interference claim must be dismissed. *Travel Masters, Inc. v. Star Tours, Inc.*, 827 S.W.2d 830, 833 (Tex.1991); *Kadco Contract Design Corp. v. Kelly Services*, 38 F.Supp.2d 489, 496 (S.D.Tex.1998). Where, as here, the non-compete is part of an employment agreement, the former employer bears the burden of proving that the non-compete meets the requirements of Texas law; invalidity of the non-compete is not an affirmative defense. TEX. BUS. & COM. CODE § 15.51(b).

(2)    **The Non-Competes Are Unenforceable**

The non-compete provisions in the employment agreements of Chuck Chaddrick, Tim Droddy, Clifton Droddy, Sammy Christian and Alex Graham are unenforceable as a matter of law for two independent reasons: First, Pike Electric made no promise that gives rise to an interest in restraining competition. Second, under the undisputed facts of this case, any non-compete would impose a greater restraint than is necessary to protect the goodwill or other business interests of Pike Electric.

a.    **Pike Electric did not make any promise that gives rise to an interest in restraining competition; thus, the non-compete is unenforceable because it is not "ancillary to" an otherwise enforceable agreement**

Section 15.05 of the TEXAS BUSINESS & COMMERCE CODE generally declares restraints of trade unlawful. Covenants not to compete are by definition restraints of trade. *Alex Sheshunoff Management Serv. v. Johnson*, 124 S.W.3d 678, 684 (Tex. App. – Austin 2003, pet. granted). The Covenants Not to Compete Act, enacted in 1989, carves out an exception and renders enforceable a covenant not to compete that that the

employer can prove meets the stringent requirements of the Act. *See* TEX. BUS. & COM. CODE ANN. §§15.50 – 15.52. The enforceability of a covenant not to compete is a question of law. *Alex Sheshunoff* at 684.

Under the Texas Covenant Not to Compete Act, a non-compete is enforceable only if it is:

> ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

The term "ancillary to or part of" has a distinct legal meaning. In recognition of the principle that raw restraints of trade are prohibited, the essence of this "ancillariness" requirement is that the otherwise enforceable agreement must give rise to an "interest worthy of protection" by the covenant not to compete. *Light v. Centel Cellular Co. of Texas*, 883 S.W.2d 642, 647 (Tex. 1994). This requirement involves a two-part inquiry. In order for the covenant not to compete to be ancillary to an otherwise enforceable agreement:

> (1) the consideration given by the employer in the otherwise enforceable agreement must give rise to the employer's interest in restraining the employee; and
>
> (2) the covenant must be designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement.

*Id.* Unless both elements of this test are satisfied, the covenant is invalid. *Id.*

Pike Electric made no promise giving rise to an interest in restraining competition. Notably, Pike Electric did not make any promise to provide employees with confidential information, trade secrets, or specialized training. The Texas Supreme Court noted in *Light v. Centel* that the kinds of agreements that meet the "ancillary to" test and

therefore support a covenant not to compete are enforceable promises by the employer to provide trade secrets or confidential and proprietary information. *Light* at 647 n. 14; *see also, Donahue v. Bowles, Troy, Donahue, Johnson, Inc.*, 949 S.W.2d 746, 751 (Tex.App. -- Dallas 1997, writ denied).

Pike Electric claims that its consideration is the deferred compensation plan outlined in Exhibit A. Pike Electric's consideration amounts to an agreement to defer until after employment the monetary compensation it owed to employees for their labor during their employment.

Courts have uniformly held that a promise of a monetary payment to an employee does not give rise to an interest in restraining competition. For example, in *Olander v. Compass Bank*, 172 F.Supp.2d 846, 854 (S.D.Tex.2001), the United States District Court for the Southern District of Texas held that a grant of stock options in a publicly traded company did not give rise to an interest in restraining competition. In *Strickland v. Medtronic, Inc.*, 97 S.W.3d 835, 839 (Tex. App. – Dallas 2003, pet. Dism'd w.o.j.), the Dallas Court of Appeals held that a promise to compensate an employee in the event of economic hardship resulting from the non-compete did not give rise to an interest worthy of protection by a non-compete.

In *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W. 3d 452, 462 (Tex. App. – Austin 2004, pet. filed), the Austin Court of Appeals held that a promise to keep an employee on the payroll to permit him to achieve a desired immigration status was not a promise that gives rise to an interest in restraining competition. In *Alex Sheshunoff Management Serv. v. Johnson*, 124 S.W.3d 678, 684 (Tex. App. – Austin 2003, pet. granted), the Austin Court of Appeals held that a promise to give an employee two

weeks' notice of termination did not give rise to an interest in restraining competition. And in *McAnelly v. Brady Med. Clinic, P.A.,* 2004 Tex. App. LEXIS 10028 (Tex. App. – Austin 2004, no pet.), the court held that an agreement by the employer to pay money for the employee's medical supplies was not a promise that gives rise to an interest in restraining competition.

Pike Electric simply cannot construct a straight-faced argument that its promises to delay an employee's wages until after termination support enforcement of a covenant not to compete. This promise bears no relationship whatsoever to competition or goodwill. For this reason alone, summary judgment on Count I is appropriate.

> **b.   Any non-compete would impose a greater restraint than is necessary to protect Pike Electric's goodwill or other business interests**

A non-compete is only enforceable to the extent that it does not "impose a greater restraint than is necessary to protect the goodwill or other business interest of the [employer]." TEXAS BUSINESS & COMMERCE CODE, §15.50. However, Pike Electric's own conduct serves as an admission that a non-compete is not necessary to protect that information or any other legitimate business interests.

Although Pike Electric made no promise to provide its employees with confidential information, Pike Electric apparently claims that the non-compete is necessary to enforce the employees' promises to return and/or not use any confidential information they might have learned during employment. Thus, Pike Electric appears to claim that the "interest worthy of protection" justifying the non-compete is confidential information. To enforce the non-compete, Pike Electric must demonstrate that the non-compete is necessary to protect that information. However, the uncontroverted evidence

shows that Pike Electric makes this confidential information available to numerous employees who Pike Electric does not require to sign non-compete agreements. This is a recognition by Pike Electric that a non-compete is not necessary to protect this information.

Pike Electric claims that the confidential information at issue in this case consists of its customer list and its job pricing information, including overhead costs, multiplier amounts and calculation techniques. (*See* Response to Interrogatory 1 in Pike's Responses and Objections to Defendants Cory Close's and Chad Dubea's Interrogatories, attached as Exhibit B, Response to Interrogatory 1 in Pike's Responses and Objections to Defendants T&D Solutions, LTD and T&D Solution Managers, LLC's Interrogatories, attached as Exhibit C). Yet Pike Electric shares this information with numerous employees who *do not* have non-compete agreements. For example, the employees at Pike Electric with the most knowledge of overhead costs, multiplier amounts and calculation techniques, including the chief financial officer and assistant controller, do not have non-competes. (*See Sealed Exhibit D*, **Eric Pike Depo. at 201:16 – 203:19**). In addition, Pike Electric shares its customer contact information with numerous employees not bound by a non-compete. (*Id.* **at 300:16 – 301:25; Exhibit 29 to Eric Pike Depo.**).

Perhaps most telling, Pike did nothing to limit the exposure of any current T&D employees to information it now claims is confidential despite its purported knowledge that those individuals were planning to form a competing business. Eric Pike testified that through an anonymous phone call on August 10, 2005, he was informed that Chad Dubea, Alex Graham and Sammy Christian were planning to form a competing electric

transmission and distribution business with Mick Dubea (**Pike Depo. 109:25 – 115:20**). Pike terminated Mick Dubea's employment as the result of this telephone conversation, but neither informed Chad Dubea, Graham or Christian about the phone call or its substance, nor took any steps to limit the information to which these individuals had access (**Pike Depo. 241:5 - 14; 242:19 – 243:10; 244:4 – 9**). Pike failed to take any action to limit access to this information, even though Appelbee testified that he believed Graham and Christian were never loyal to Pike (*See Sealed* **Exhibit E, Appelbee Depo., 261:15 – 17**).

Pike Electric's admitted practices demonstrate as a matter of law that a covenant not to compete is *not necessary* to protect its confidential information. Because the non-competes that are the subject of Pike Electric's tortious interference claim are unenforceable as a matter of law, Count I should be dismissed.

**B.    Tortious Interference With Prospective Customers**

In Count II, Pike Electric contends that Defendants tortiously interfered with Pike Electric's prospective relations with potential customers merely by competing for their business. As a matter of law, competing for potential customers is not unlawful, and there is no evidence satisfying any of the elements of a cause of action for tortious interference with prospective customers.

To prove tortious interference with prospective relations, a plaintiff must show: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third person; (2) the defendant intentionally interfered with the relationship; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference was the proximate cause of injury to the plaintiff; and (5) the plaintiff suffered actual damage or loss. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W. 3d 711, 726

(Tex. 2001); *Baty v. Protech Ins. Agency*, 63 S.W. 3d 841, 859-60 (Tex. App. – Houston [14th Dist.] 1993, writ granted w.r.m.). In this case, summary judgment is appropriate because 1) there is no evidence that any Defendant engaged in independently tortious or unlawful behavior in the act of competing against Pike Electric, and/or 2) as a matter of law Defendants have a legal privilege and justification to engage in competition with Pike Electric for potential customers.

### (1)    No Evidence of Independently Tortious or Unlawful Conduct

In *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W. 3d 711 (Tex. 2001), the Texas Supreme Court wrestled with the question of what kinds of competitive activity could be deemed unlawful under a theory of tortious interference with prospective relations. As the Supreme Court noted, "Whenever two competitors vie for the same business advantage, ...one's success over the other can almost always be said to harm the other." *Id.* at 715-16. But interference with the wishes of a competitor, even interference that causes harm, does not alone give rise to the tort of interference with prospective relations. The Texas Supreme Court held that to recover for tortious interference with prospective business relations, a plaintiff must prove that the defendant's conduct was independently tortious or wrongful. *Id.* at 726.

The court provided several examples of the kind of independently unlawful conduct required to find tortious interference with prospective relations. Intentionally making fraudulent statements about the plaintiff to a third party to prevent the third party from dealing with the plaintiff would give rise to a cause of action. *Id.* Threatening a person with physical harm if he does business with the plaintiff would give rise to a cause of action. *Id.* Using an unlawful boycott to convince a third party not to deal with the

plaintiff would give rise to a cause of action. *Id.* However, routine competition and even "conduct that is merely 'sharp' or unfair is not actionable and cannot be the basis for an action for tortious interference with prospective relations." *Id.*

Here, there is no evidence that Defendants engaged in independently tortious or unlawful conduct. Defendants have merely entered the marketplace to compete for business. For this reason alone, Count II should be dismissed.

**(2)    Defendants Have a Legal Justification or Privilege to Compete**

In defining the tort of tortious interference with prospective relations, the Texas Supreme Court in *Wal-Mart v. Sturges,* 52 S.W. 3d at 719, discussed the RESTATEMENT (SECOND) OF TORTS §768, which states:

Competition as Proper or Improper Interference

(1)    One who intentionally causes a third person not to enter into a prospective relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if:

    (a)    the relation concerns a matter involved in the competition between the actor and the other and

    (b)    the actor does not employ wrongful means and

    (c)    his action does not create or continue an unlawful restraint of trade and

    (d)    his purpose is at least in part to advance his interest in competing with the other.

(2)    The fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will.

An employee has a constitutional right to directly compete with a former employer and even to solicit the employer's clients after employment. *Abetter Trucking*

*Co. v. Arizpe*, 113 S.W.3d 503, 510 (Tex.App.—Houston [1st Dist. 2003 no writ); *Rugen*

*v. Interactive Business Systems*, 864 S.W.2d 548, 551 (Tex.App.—Dallas 1993, no writ).

Employees are also legally justified in making preparations for a future competing

business venture while they remain employed. *Abetter Trucking Co.* at 510. "An at-will

employee may properly plan to compete with his employer, and may take active steps to

do so while still employed." *Id.* In *Abetter Trucking Co. v. Arizpe*, the Court held that an

employee lawfully incorporated a company with the intent to later compete against his

employer, established the business entity and obtained permits and insurance for a

trucking business to be operated after termination of the employment relationship. *Id.* at

511.

There is no evidence in this case of any interference, but if there is, it is merely

the lawful act of competing for the business of prospective customers.

**C.    Misappropriation of Trade Secrets**

In Count III, Pike Electric alleges common law misappropriation of trade secrets[2].

The elements of misappropriation of trade secrets are: (1) existence of a trade secret; (2)

breach of a confidential relationship or improper discovery of a trade secret; (3) use of

the trade secret; and (4) damages. *Trilogy Software v. Callidus Software*, 143 S.W.3d

452, 463 (Tex.App.—Austin 2004, pet. filed).

Summary judgment is appropriate because the uncontroverted evidence, including

the recent deposition testimony of Pike Electric's own management, demonstrates that

there has been no misappropriation of any information that Texas law recognizes as a

---

[2]  Pike has not asserted any claim for breach of contract by any Defendant. Thus, Pike's Count III is limited
to a cause of action under the Texas common law of misappropriation of trade secrets.

trade secret. Pike Electric's own management has admitted under oath that it has no factual basis for its claims of misappropriation.

### (1) The Law of Misappropriation: Individuals May Use Their General Knowledge and Skill to Compete Against a Former Employer

A former employee may use the general knowledge, skill, and experience acquired during the employment relationship so long as the employee does not misappropriate information that Texas law deems to be a trade secret acquired during the course of employment. *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 777 (Tex.App.--Waco 1996, no writ); *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 600-01 (Tex.App.—Amarillo 1995, writ denied); *Numed, Inc. v. McNutt*, 724 S.W.2d 432, 435 (Tex.App.—Ft. Worth 1987, no writ). In fact, Texas law describes this as a constitutional right to directly compete with a former employer and even to solicit the employer's clients. *Abetter Trucking Co. v. Arizpe*,113 S.W.3d 503, 510 (Tex.App.— Houston [1st Dist., n.w.h.); *Rugen v. Interactive Business Systems*, 864 S.W.2d 548, 551 (Tex.App.—Dallas 1993, no writ).

Not all information learned during the employment relationship is a trade secret under Texas law. A trade secret must be truly "secret." *Zoecon Industries v. American Stockman Tag*, 713 F.2d 1174, 1179 (5th Cir. 1983). To qualify as a trade secret, the information cannot be generally known by others in the same business or readily ascertainable by independent investigation." *Id.*

To establish that information is confidential, the employer must prove that the employer took steps to protect the information. *T-N-T Motorsports v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex.App.—Houston [1st Dist.] 1998, no pet.); *American Precision Vibrator Co. v. National Air Vibrator Co.*, 764 S.W.2d 247, 276

(Tex.App.—Houston [1st Dist.] 1988, no writ); *Houston Solvents & Chemicals v. Montealegre*, 1999 Tex.App.LEXIS 2881 (Tex.App.—Houston [14th Dist.] 1999, no writ); *Bandit Messenger of Austin, Inc. v. Contreras*, 2000 Tex.App.LEXIS 7166 (Tex.App.—Austin 2000, no writ). "The owner of the secret must do something to protect himself. He will lose his secret by its disclosure unless it is done in some manner by which he creates a duty and places it on the other party not to further disclose or use it in violation of that duty." *American Precision* at 276.

Pike Electric must also prove that the information was actually used by the Defendants to support its misappropriation claim. *Propulsion Technologies, Inc. v. Attwood Corporation*, 369 F.3d 896, 905 (5th Cir. 2004). Unless there is evidence that the Defendants actually attempted to profit financially from the use of a trade secret, this Court cannot hold Defendants liable for misappropriation. *Id; see also IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 477 (Tex.App. – Austin 2004, pet. denied).

As noted above, Pike did nothing to limit access to alleged confidential information by employees without non-compete agreements. Even after Pike received information that Chad Dubea, Alex Graham and Sammy Christian may be starting a competing business, Pike did nothing to prevent them from accessing the information Pike now claims to be confidential. In fact, according to Pike, these individuals continued to have substantial discussion with customers about "confidential" pricing information. To the extent this information was ever "secret," Pike took no steps to protect the information and in fact continued to grant access to the information after events suggested that steps *should* be taken.

(2)    **Pike Electric Admits its Claim is Without Factual Support**

The testimony of Pike Electric's management also shows the misappropriation claim has no factual support.

Pike Electric was asked in an interrogatory to formally identify the trade secrets or confidential information at issue in this case. Pike Electric identified only two types of confidential information: (a) job pricing information (including overhead costs, multiplier amounts and calculation techniques); and (b) "lists of customers and suppliers," including their contact information. (*See* Response to Interrogatory 1 in Pike's Responses and Objections to Defendants Cory Close's and Chad Dubea's Interrogatories, attached as Exhibit B; Response to Interrogatory 1 in Pike's Responses and Objections to Defendants T&D Solutions, LTD. And T&D Solution Managers, LLC's Interrogatories, attached as Exhibit C). Pike's employees' deposition testimony clearly shows that nothing identified by Pike rises to the level of a trade secret as a matter of law.

(a)    **Job pricing information**

Ronald Appelbee is the vice president of the Pike Electric Western Region, which includes its Texas operations. (**Appelbee Deposition at 4:8 – 11**). Appelbee is not aware of any efforts by Pike Electric to ensure that employees, crews, foremen, or any level of management understands that pricing, cost, or profit & loss statements are to be kept confidential (*Id.* **at 103:22 – 104:2**).

However, even if this information was confidential, Pike Electric's management admits it has no factual basis for asserting that Defendants have misappropriated it. Pike Electric's C.E.O., Eric Pike, was asked to identify the pricing information Pike Electric

believed the Defendants used.  Pike identified only "information that they learned during a meeting with [customer] American Electrical Power to discuss multiplier pricing and how to go forward both on unit and hourly pricing to be profitable on AEP." (**Eric Pike Depo. at 269:20 – 270:2**).  However, the only Defendant to attend that meeting was Chad Dubea, and Eric Pike can point to no fact other than the meeting itself to show that any Defendant disclosed or used the information. (***Id.*** **at 270:3-13; 272:2 – 18**).  Instead, Appelbee testified that Pike would not let individuals who could potentially be Pike competitors participate in a customer meeting where confidential information was discussed.  (**Appelbee Depo. 355:8 – 13**)

Similarly, when asked whether the current T&D employees who formerly worked at Pike Electric knew the pricing terms of Pike Electric's contracts with its customers, Pike Electric's chief operating officer Jeff Collins testified that while "They could have had it," he does not know T&D's current pricing terms. (*See Sealed Exhibit F*, **Collins Depo. at 285:7 – 286:17**).  Thus, it would be impossible for Collins to know whether T&D was using Pike Electric's pricing terms.

Collins also testified that Defendant Chad Dubea and former Pike Electric and current T&D employee Alex Graham "had access to" information about the prices for customer American Electrical Power ("AEP") while they were still employed with Pike Electric. (**Collins Depo. at 286:18 – 287:14; 288:7 - 16**).  Collins does not know of any pricing information to which Cory Close or Sammy Christian had access. (**Collins Depo. at 287:16 – 288:25**).  Again, Pike Electric has no evidence that any of this information was ever disclosed or used.

With respect to customer TXU, Collins testified that former Pike Electric employee and current T&D employee Bob Strother attended meetings with TXU; but Collins admits he does not know whether Strother was exposed to specific pricing information. (**Collins Depo. at 291:4 – 294:1**). Collins also admits he has no evidence that Strother used any portions of his involvement in TXU meetings in his employment with T&D Solutions or gained a competitive advantage from having attended those meetings. (*Id.* at 294:2 – 295:7). In fact, Eric Pike does not even know if T&D is currently doing business for TXU, and Appelbee testified that Pike has not lost any TXU business to T&D. (**Pike Depo. at 264:2-4; Appelbee Depo. at 66: 7-9**).

Pike Electric also claims that certain current T&D employees attended a meeting at Pike Electric's Mt. Airy, North Carolina headquarters while they were employed with Pike Electric at which Pike Electric's bidding process was discussed. (**Collins Depo. at 295:14 – 296:5**). However, neither Chad Dubea nor Cory Close attended the meeting. (*Id.* at 297:20 – 298:1). Although current T&D employees Alex Graham and Sammy Christian did attend this meeting, Collins admits that he has no evidence that either Graham or Christian has ever used the information discussed at this meeting. (*Id.* at 298:8 – 12).[3]

Pike Electric cannot even say that information about its bidding process would give anyone a competitive advantage. Collins, who allegedly attended the meeting about the bidding process, is unable to describe how it might be different from the bidding

---

[3] As noted previously, Graham and Christian were given access to whatever information was disclosed in this meeting *after* Eric Pike had received the phone call informing him of the potential for a competing business by Graham and Christian.

process these employees had already been exposed to with Red Simpson other than to say

"we had a region vice president to sign off on all the bids." (*Id.* at 296:15 – 20).

      (b)     **Lists of Customers and Suppliers**

     Pike Electric admits that its list of customers is not confidential.  (**Eric Pike Depo. at 318:22 – 322:8; Exhibit 31 to Eric Pike Depo.**)  As C.E.O. Eric Pike testified, every start-up company in this industry knows to seek business from the utilities, cooperatives, or investor-owned utilities and that that's "not a secret." (*Id.* at 321:16 – 322:8).  Eric Pike further admits that nothing would prevent a competitor from calling those entities and simply asking for the contact person there.  (*Id.* at 302:1 – 6).

     Consistent with Pike's testimony, Mark Castaneda, Pike's chief financial officer, prepared a document in connection with Pike's appraisal of Red Simpson addressing whether the customer lists were valuable information.  In an electronic message to a valuation consultant, Castaneda admitted:

       1.     the customer list of Red Simpson was of "minimal value;"

       2.     the work required to determine potential customers for a start-up business (like T&D) would merely be the "research time involved;" and

       3.     Red Simpson was not purchased for its customer list.

(*See Sealed Exhibit G*, **Castaneda Depo, 95:10 – 96:1, Ex. 4**).  Castaneda's assessment echoes the assessment of Simmi Thibeaux, Red Simpson's former chief financial officer, who testified that the identity of customers in the transmission and distribution industry was not a secret.  (Exhibit H, Thibeaux Depo. 24:22 – 25; 25:14 – 26:5; 26:20 – 22).

Additionally, as a publicly-traded company, Pike's filings with the SEC identify its seven major customers, including American Electric Power (AEP), Entergy Corporation and TXU Corporation. (Pike Electric Corp. 2005 Registration Statement for Face-Amount Certificate Companies (Exhibit I, Form S-1), p. 1). Pike Electric's management repeatedly admitted in recent depositions that much of this information is either not confidential or that Pike Electric has no factual basis for asserting these claims.

The same holds true for Pike's suppliers. One of those suppliers, Mark Styslinger of Altec, testified that equipment suppliers for the industry were well-known. (Exhibit J, Styslinger Depo, 182:8 – 13). Styslinger also testified that he would provide information about equipment purchasing and financing to anyone who called (Styslinger Depo., 183:19 – 24).

### (c)    Employee Wages

In deposition testimony, Pike Electric suggested that employee wage information might be a trade secret. Although this claim is waived by virtue of Pike Electric's interrogatory responses, such a claim is also without merit.

As a matter of law, salary information about a person's co-workers is not confidential. Section 8(a)(1) of the National Labor Relations Act prohibits an employer from barring employee discussions of terms and conditions of their employment. *Mediaone of Greater Florida, Inc.*, 304 NLRB No. 39 (Sept. 19, 2003); *Pontiac Osteopathic Hospital*, 284 NLRB 442, 465 (1987); *Waco, Inc.*, 273 NLRB 746, 747-48 (1984). Pike Electric has not demonstrated that it took any steps to prevent these kinds of discussions, because if they did it would be a violation of federal law.

Nor does Pike Electric maintain this information as a trade secret. When Pike Electric's C.E.O., Eric Pike, was asked whether labor costs are generally known by competitors throughout the industry, he responded, "They're fairly common." (**Eric Pike Depo. at 190:25 – 191:2**).

There is no question that T&D had knowledge of Pike employees' salary and wage information, and Pike will likely point to a spreadsheet maintained on a computer given to Close by Pike when Close left Pike's employment. The spreadsheet shows the profit and loss information of employee Timothy Droddy from a time before the integration of Red Simpson's Western Region into Pike was completed. However, 1) the information contained in the spreadsheet is wage information that was given to Droddy and *all other Red Simpson employees* at his level, 2) the information could just have easily been provided by the employee himself, 3) the information contains only Red Simpson information, and not Pike information, and 4) neither Pike nor Red Simpson did *anything* to keep employees from sharing the wage information with others.

In fact, contrary to Eric Pike's Original Declaration, signed under oath, Pike permitted Close to take his Pike computer home with him and did nothing to determine whether any confidential information existed on the computer. (*See Sealed Exhibit K*, **Mullins Depo, 23:3 – 8; 26:11 – 15**). In fact, Close's supervisor at Pike Johnny Mullins acknowledged that the data on Close's computer "wasn't vital to [Pike's] operations." (**Mullins Depo, 23:3 – 8**). Collins confirmed that the computer contained "nothing from the Pike side." (**Collins Depo., 330::1 – 15, Ex. 11**). Thus, this "evidence" fails to rise to the level of protected trade secret information, much less competent summary judgment proof.

DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT                    PAGE 23

(d)    The Phantom Mick Dubea Connection

One of the themes of Pike Electric's case appears to be that Mick Dubea, father of Defendant Chad Dubea and former Pike Electric executive, played some role in the formation of T&D and funneled confidential information to Defendants. However, Pike Electric's upper management admits that its claim is based on pure speculation.

For example, Pike Electric's CEO, Eric Pike, admits that his belief that Mick Dubea is helping to run T&D's day-to-day operations is based on "an assumption." (**Eric Pike Depo. at 178:8 – 13**). Pike Electric's chief operating officer testified that he has no personal knowledge that Mick Dubea ever disclosed overhead costs, multiplier amounts, calculation techniques, contact information for customers or suppliers, salary, payroll or bonus information, or any confidential information of any kind to anyone at T&D (**Collins Depo. at 47:10 – 48:2; 56:9 – 25; 58:10-24; 59:14 – 60: 13**). Collins further admits that he has no personal knowledge that Mick Dubea committed any act in connection with the formation of T&D. (*Id.* at 73:23 – 74:5).

Pike Electric's C.E.O. likewise admits that he cannot identify any job pricing information disclosed by Mick Dubea to T&D. (**Pike Depo. at 158:19 – 160:25**). Eric Pike also admitted that he does not know of any overhead costs, multiplier amounts, calculations techniques, customer lists, or contact information for customers or suppliers, disclosed by Mick Dubea. (*Id.* at 160:1 – 161:16). In Eric Pike's words, there was "no known factual basis" for Pike's contention that Mick Dubea disclosed confidential information, just "an assumption that that information has been passed on." (*Id.* at 160:24 – 161:10). Although Pike Electric believes Mick Dubea spoke with some Pike Electric customers, Eric Pike has no idea what was discussed. (*Id.* at 169:14 – 18).

Eric Pike admitted there is no factual basis to support a contention that Mick Dubea disclosed Pike Electric's salary, payroll, or bonus information. (*Id.* at 170:7 – 10). In a virtual admission that summary judgment is appropriate, Eric Pike admitted that, as of his June 20, 2006 deposition, he was not aware of any facts that Mick Dubea disclosed to any person in violation of his employment agreement with Pike Electric. (*Id.* at 170:23 – 171:3).

## III.
## Conclusion

As is unfortunately too often the case, Pike Electric filed this lawsuit without a factual or legal basis in an attempt to squelch lawful competition. As Pike Electric likely predicted, the litigation itself has been a drain on the Defendants' time and money and thereby its ability to compete. But with discovery now complete, Defendants urge the Court to dismiss Pike Electric's unmeritorious lawsuit. As a matter of law, and based on the uncontroverted testimony of Pike Electric's own witnesses, Pike Electric's claims should be dismissed.

The tortious interference with the non-compete claims should be dismissed because the underlying non-competes are unenforceable. The non-competes are unenforceable because Pike Electric made no promise that gives rise to an interest in restraining competition and because Pike Electric's own actions demonstrate that a non-compete is not necessary to protect its legitimate interests.

Individuals have a constitutional right to leave their at-will employment and directly compete with their former employers, even for the same customers. That is all Dubea and Close did. As a matter of law, Pike Electric's claim for tortious interference with its prospective relations with those customers is without merit. Moreover, Pike

Electric has no evidence of independently tortious or unlawful actions and thus cannot, as a matter of law, prevail on a tortious interference with prospective relations claim.

Finally, the undisputed facts, including the testimony of Pike Electric's management, demonstrate that Pike Electric's claims of trade secret misappropriation are without any factual support. Many of the alleged trade secrets are not confidential and none of them have been misappropriated.

## IV.
### Prayer for Relief

For the reasons stated in this Motion, Defendants respectfully request that this Honorable Court:

1.    Grant this Motion on all grounds;

2.    Dismiss all of Pike Electric's claims against Defendants with prejudice;

3.    Assess court costs against Pike Electric; and

4.    Award Defendants all further relief to which they are entitled.

Respectfully submitted,

RODRIGUEZ, COLVIN, CHANEY & SAENZ, L.L.P.


By: _____
       Norton A. Colvin, Jr.
State Bar No. 04632100
Southern District Admissions No. 1941
       Teri L. Danish
State Bar No. 05375320
Southern District Admissions No. 12862
       RosaMaria Villagomez-Vela
State Bar No. 24008210
Southern District Admissions No. 22983
1201 East Van Buren
Post Office Box 2155
Brownsville, Texas 78522
(956) 542-7441
Fax (956) 541-2170
ATTORNEYS FOR DEFENDANTS

Of Counsel:

Eduardo Roberto Rodriguez
State Bar No. 00000080
Southern District Admissions No. 1944
Sarah A. Nicolas
State Bar No. 24013543
Southern District Admissions No. 32122
Derek N. Mueller
State Bar No. 24046494
Southern District Admissions No. 571300

Shauna Johnson Clark
State Bar No. 00790977
Southern District Admissions No. 18235
FULBRIGHT & JAWORSKI, L.L.P.
Fulbright Tower
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
(713) 651-5151
Fax (713) 651-5246

Thomas A. Nesbitt
State Bar No. 24007738
Southern District Admissions No. 29103
FULBRIGHT & JAWORSKI, L.L.P.
600 Congress Avenue, Suite 2400
Austin, Texas 78701
(512) 536-2472
Fax (512) 536-4598

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of July, 2006, a true and correct copy of the foregoing document was forwarded to counsel of record, as follows:

Michael A. Paskin
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019-7475
Attorneys for Plaintiffs

Sofia A. Ramon
Atlas & Hall, LLP
P. O. Box 3725
McAllen, Texas 78502

Veronica Gonzales
Kittleman, Thomas, Ramirez & Gonzales, LLP
4900-B North Tenth
McAllen, Texas 78504
Attorneys for Plaintiffs

Teri L. Danish