IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PIKE ELECTRIC CORPORATION & PIKE ELECTRIC, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> MICK DUBEA, <br><br> Defendant. | C.A. No. 05-879-SLR <br><br> **PUBLIC VERSION** |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION *IN LIMINE* NO. 3:
TO EXCLUDE EXTRINSIC EVIDENCE OFFERED BY MICK DUBEA TO VARY THE
UNAMBIGUOUS TERMS OF HIS EMPLOYMENT CONTRACT**

OF COUNSEL:
Michael A. Paskin
Timothy G. Cameron
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

William J. Wade (#704)
wade@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Plaintiffs Pike Electric
Corporation and Pike Electric, Inc.*

Dated: August 18, 2006

## Table of Contents

                                                                                                   Page

Table of Authorities ...................................................................................................... ii

Nature and Stage of the Proceedings and Summary of Argument ..................................... 1

Statement of Facts ............................................................................................................ 2

        A.        Pike Acquires Red Simpson Inc. ................................................................ 2

        B.        Dubea's Employment Agreement .............................................................. 2

        C.        The Amendment to Dubea's Employment Agreement ............................... 4

        D.        Dubea's Termination and Breach of His Employment Agreement .............. 5

Argument ......................................................................................................................... 6

I.        APPLICABLE LEGAL STANDARDS ............................................................... 6

II.       DUBEA IS BARRED FROM USING EXTRINSIC EVIDENCE TO ALTER
         THE UNAMBIGUOUS TERMS OF HIS EMPLOYMENT AGREEMENT ....... 7

        A.        The Terms of Dubea's Employment Agreement Are Unambiguous ........... 7

                1.        The provisions concerning payment of the Multiplier Amount are
                      not ambiguous ................................................................................ 7

                2.        The provisions concerning forfeiture of the Multiplier Amount are
                      not ambiguous ................................................................................ 8

                3.        The provisions concerning deferral of the Multiplier Amount are
                      not ambiguous ................................................................................ 8

                4.        Dubea's arguments to the contrary are misplaced ............................ 9

        B.        Dubea Should Be Precluded from Offering Extrinsic or Parol Evidence To
               Vary the the Employment Agreement's Unambiguous Terms ................... 10

Conclusion ..................................................................................................................... 13

## Table of Authorities

Page(s)

**Cases**

*Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671 (D. Del. 2005) .................... 6, 7, 10

*Cahill v. Reene Berk Assocs.*, 1998 WL 47302 (Del. Super. Ct. May 2, 1988) .................... 11

*Cleveland Trust Co. v. Wilmington Trust Co.*, 258 A.2d 58 (Del. 1969) .................... 12

*GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476 (D. Del. 2003) .................... 7, 10, 11

*Highlands Ins. Group, Inc. v. Halliburton Co.*, 2001 WL 287485 (Del. Ch. Mar. 21, 2001) .................... 7

*Kirkwood Motors, Inc. v. Conomon*, 2001 WL 112054 (Del. Super. Ct. Feb. 5, 2001) .................... 11, 12

*MBIA Ins. Corp. v. Royal Indem. Co.*, 426 F.3d 204 (3d Cir. 2005) .................... 6, 7, 9

*Trustees of Boston Univ. v. Ligand Pharms., Inc.*, 2003 WL 22501588 (D. Del. Nov. 3, 2003) .................... 7

Plaintiffs Pike Electric Corporation and Pike Electric Inc. (collectively "Pike") respectfully submit this brief in support of their motion *in limine* No. 3, to exclude extrinsic evidence offered by Mick Dubea ("Dubea") to vary the unambiguous terms of his employment contract.

### Nature and Stage of the Proceedings and Summary of Argument

On December 20, 2005, Pike sued Dubea in this action for breach of contract, tortious interference with contract, tortious interference with business relations and misappropriation of trade secrets. (Compl. (Earnhardt Decl. Ex. 15).) At trial, Pike will show that Dubea has forfeited certain future payments that he would have otherwise been eligible to receive over the next several years when he breached the terms of his non-competition agreement with Pike. To prove the facts necessary to demonstrate that forfeiture, Pike will rely on the clear and express terms of Dubea's employment agreement, and the undisputed facts related to Dubea's involvement in the formation and funding of T&D Solution Managers, LLC ("T&D"). Pike has learned, however, through the parties' exchange of intended trial exhibits and deposition designations, that Dubea plans to defend against Pike's claim of forfeiture by offering irrelevant evidence, outside the four corners of his contract, that purportedly relevant to how that contract should be interpreted. *First,* Dubea seeks to offer documents and testimony relating to the employment contracts of other employees, in an attempt to demonstrate that his own employment agreement does not mean what it says. *Second*, Dubea seeks to offer evidence related to negotiations concerning the accounting and tax treatment Pike sought to achieve from the amendment of his contract, in an effort to contradict the plain language of the document. Because the terms of Dubea's employment agreement are completely unambiguous, the Court should exclude this extrinsic and irrelevant evidence offered by Dubea.

## Statement of Facts

### A. Pike Acquires Red Simpson Inc.

On July 1, 2004, Pike acquired all the outstanding shares of the common stock of a privately-held company called RSI. (*See* Stock Purchase Agreement, DUBEA001201-1282 (Earnhardt Decl. Ex. 3).) At the time Pike acquired RSI, Dubea was RSI's President for its Western Region, which covered nearly two-thirds of the total RSI workforce and accounted for a majority of the company's earnings. (Dep. of Simmy Thibeaux at 149:1-3 (Earnhardt Decl. Ex. 19); Dep. of Russell Triedman at 41:8-23 (Earnhardt Decl. Ex. 21).) Consequently, Pike's purchase of RSI was expressly conditioned upon the execution of an employment agreement containing non-compete and non-disclosure provisions between Dubea and Pike (the "Employment Agreement").[1] (*See* Employment Agreement of July 1, 2004 between Pike Electric, Inc. & Mick J. Dubea, PIKE 00003568-3591, pmbl (Earnhardt Decl. Ex. 7).)

### B. Dubea's Employment Agreement

Under the Employment Agreement, Dubea was hired as Pike's Vice President for its Western Region and was given management responsibility for all of Pike's operations in Oklahoma and Texas. (*Id.* § 1.02.) Dubea received a base salary of $330,000 per year, along with the opportunity to purchase up to 21,479 Restricted Shares of Pike common stock. (*Id.* §§ 1.02, 2.01, 2.03.) In addition, Dubea was paid a "Base Amount" of approximately $5 million.

---

[1] Many of RSI's skilled employees, including Dubea, were already subject to employment contracts containing non-compete and non-disclosure provisions. (*See, e.g.*, Employment Contract, Nonqualified Deferred Compensation Agreement & Agreement Not to Compete of Dec. 31, 1997 between Red Simpson, Inc. & Alex H. Graham, PIKE 00000336-352 (Earnhardt Decl. Ex. 1).) For the vast majority of those employees, Pike simply retained the existing contracts and executed amendments to those contracts. (*See, e.g.*, Amendment Agreement of May 6, 2004 between Red Simpson, Inc. & Alex H. Graham, PIKE 00000357-68 (Earnhardt Decl. Ex. 4).) For Dubea, however, an entirely new agreement was drafted to reflect the unique structure under which he would be compensated, as well as his importance to RSI's and Pike's management, development and growth.

(*Id.* § 2.02(a); *see also* Mick Dubea Deferred Compensation Schedule, EPIKE00042225-42226 (Earnhardt Decl. Ex. 14).) Finally, Dubea was to receive a "Multiplier Amount" of over $6 million, which was scheduled to be paid out on the second, third and fourth anniversaries of the closing. (Employment Agreement § 2.02(b) (Earnhardt Decl. Ex. 7); *see also* Mick Dubea Deferred Compensation Schedule, EPIKE00042225-42226 (Earnhardt Decl. Ex. 14).)

In return for that valuable consideration, Dubea agreed to be bound by various restrictive covenants, including non-compete and non-disclosure covenants. (Employment Agreement § 5.02 (Earnhardt Decl. Ex. 7).) Section 5.03 of the Employment Agreement required Dubea to protect Pike's confidential information. (*Id.* § 5.03.) Section 5.07 required Dubea to refrain from competing with Pike and soliciting Pike's customers and employees for a specified period of time. (*Id.* § 5.07.)

The consequences for Dubea's violation of either Section 5.03 or Section 5.07 were expressly set forth in Section 5.10 of the Employment Agreement. Under Section 5.10, Dubea's breach of those restrictive covenants entitled Pike to specific performance, and enabled Pike to cease making any payments or providing any benefits to Dubea that would otherwise be owed to him under the contract, including future payments of the Multiplier Amount:

> "Section 5.10. <u>Specific Performance.</u> [Dubea] agrees that any breach by [Dubea] of any of the provisions of Section 5.03, 5.05, 5.06 and 5.07 shall cause irreparable harm to [Pike] that could not be adequately compensated by monetary damages and that, in the event of such a breach, [Dubea] shall waive the defense in any action for specific performance that a remedy at law would be adequate, and [Pike] shall be entitled to (a) specifically enforce such terms and provisions without the necessity of proving actual damages or posting any bond and (b) cease making any payments or providing any benefit (including by way of vesting of any Restricted Shares acquired pursuant to Section 2.03) otherwise required by this Agreement, in each case in addition to any other remedy to which [Pike] may be entitled at law or in equity." (*Id.* § 5.10.)

The rights and obligations of Pike and Dubea under the Employment Agreement, including Sections 5.03, 5.07 and 5.10, were to "survive and remain binding and enforceable,

-3-

notwithstanding any termination of [Dubea's] employment with [Pike] for any reason". (*Id.* § 6.08.)

### C. The Amendment to Dubea's Employment Agreement

In May 2005, Pike and Dubea amended the Employment Agreement "to prevent, in certain circumstances, the forfeiture of the Multiplier Amount payable to [Dubea] under the Employment Agreement". (*See* Amendment Agreement of May 5, 2005 between Pike Electric, Inc. & Mick J. Dubea, DUBEA001328-1330, pmbl (Earnhardt Decl. Ex. 9).) The amendment was directed solely to the last sentence of Section 2.02(b), the section of the contract that articulated and explained the Multiplier Amount. That sentence reads as follows:

> "Notwithstanding the foregoing, [Pike] shall not make any payment described in this Section 2.02(b), and [Dubea] shall not be entitled to receive any such payment, in the event that, prior to the payment of such amount, [Dubea] has terminated his employment for any reason, other than death, Disability (as defined below) or Good Reason (as defined below), or [Pike] has terminated [Dubea]'s employment for Cause (as defined below)." (Employment Agreement § 2.02(b) (Earnhardt Decl. Ex. 7).)

The amendment deleted that sentence in its entirety and substituted the following, in pertinent part, therefore:

> "Notwithstanding the foregoing, (i) in the event that, prior to the payment of such amount, [Pike] has terminated [Dubea]'s employment for Cause (other than any Cause described in clause (ii) or (vi) of Section 4.03(b)) or [Dubea] has violated his obligations under Section 5.03, 5.05 or 5.06, [Pike] shall not make, and [Dubea] shall forfeit all his entitlements to, payment of such amount and (ii) in the event that, prior to the payment of any such amount, [Dubea] has terminated his employment for any reason (other than death, Disability or Good reason) or [Pike] has terminated [Dubea]'s employment for any Cause described in clause (ii) or (vi) of Section 4.03(b) (other than as a result of a violation of Section 5.03, 5.05 or 5.06), [Pike] shall not make, and [Dubea] shall not be entitled to receive, payment of such amount until the fifteenth (15th) anniversary of the Closing . . . " (Amendment Agreement § 1.02 (Earnhardt Decl. Ex. 9).)

Thus, the amendment specified only two circumstances under which the Multiplier Amount, rather than being subject to outright forfeiture, would be deferred until the

RLF1-3049844-1

fifteenth anniversary of the closing: (1) if Dubea terminated his own employment; or (2) if Pike terminated Dubea's employment for "Cause". (*Id.*) Importantly, the amendment did not alter Section 5.10 of the Employment Agreement, which (as set forth above) provided that Dubea's breach of the agreement's restrictive covenants entitled Pike to specific performance, and enabled Pike to cease making any payments or providing any benefits to Dubea that would otherwise be owed to him under the contract. (*See* Employment Agreement § 5.10 (Earnhardt Decl. Ex. 7).) Both the Employment Agreement and amendment, moreover, contained an integration clause, which provided that the contract "contains the entire understanding of [Dubea], on the one hand, and [Pike] and its affiliates, on the other hand, with respect to the subject matter hereof". (*Id.* § 6.03; Amendment Agreement § 1.05 (Earnhardt Decl. Ex. 9).)

### D. Dubea's Termination and Breach of His Employment Agreement

On August 22, 2005, Pike notified Dubea that it was terminating his employment "without Cause". (*See* Letter from E. Pike to M. Dubea of Aug. 22, 2005, DUBEA000063-64 (Earnhardt Decl. Ex. 13).) Because Dubea was being terminated without cause, he remained eligible to receive the unpaid portions of his Multiplier Amount on schedule, *i.e.*, on the second, third and fourth anniversaries of the closing. (*See* Employment Agreement § 2.02(b) (Earnhardt Decl. Ex. 7) & Amendment Agreement § 1.02 (Earnhardt Decl. Ex. 9).) Pike, however, retained the right to withhold unpaid amounts of Dubea's Multiplier Amount, in the event that Dubea breached the restrictive covenants in the Employment Agreement. (*See* Employment Agreement § 5.10 (Earnhardt Decl. Ex. 7).)

On October 5, 2005, Chad Dubea, Dubea's son and a then-current Pike employee, formed T&D in Harlingen, Texas. (*See* Dep. of Chad Dubea at 8:17-22, 75:14-17 (Earnhardt Decl. Ex. 17).) T&D is currently a direct competitor of Pike. (*Id.* at 8:23-25.) On December 20, 2005, Pike, believing that Dubea had been instrumental in T&D's creation, sued Dubea in this

Court for, *inter alia*, breach of the restrictive covenants in his Employment Agreement. (Compl. (Earnhardt Decl. Ex. 15).) Because Pike believes that Dubea breached Section 5.07 of his Employment Agreement, Pike has exercised its right under Section 5.10 to withhold unpaid amounts of Dubea's Multiplier Amount.[2] (*See* Letter from M. Paskin to L. Lazarus of June 24, 2006 (Earnhardt Decl. Ex. 22).) Dubea, in spite of the plain language of Section 5.10, now contends that the parties did not intend for a breach of Section 5.07 to result in the forfeiture of those payments. (*See* Def.'s Proposed Am. Answer & Addt'l Defenses to Compl. & Am. Countercl. ¶ 140 (Earnhardt Decl. Ex. 26).)

**Argument**

**I.  APPLICABLE LEGAL STANDARDS**

The interpretation of Dubea's Employment Agreement is governed by Delaware law. (*See* Employment Agreement § 6.06(a) (Earnhardt Decl. Ex. 7) ("This Agreement shall be governed by and construed in accordance with the internal laws of the State of Delaware applicable to agreements made and to be performed entirely within such State, without regard to the conflicts of law principles of such State.").) Delaware follows the objective theory of contracts, under which objective acts are the best evidence of the parties' intent. *MBIA Ins. Corp.*, 426 F.3d at 210. Consistent with the objective theory, "[u]nambiguous written agreements should be enforced according to their terms, without using extrinsic evidence to interpret the intent of the parties, to vary the terms of a contract or to create an ambiguity". *Id.* (internal quotation omitted). In other words, "where the provisions of a contract are plain and unambiguous, evidence outside the four corners of the document as to what was actually intended is generally inadmissible." *Ace Capital v. Varadam Found.*, 392 F. Supp. 2d 671, 674

---

[2] While the evidence of Dubea's breach is overwhelming, Pike will not cite such evidence here and will instead prove its case at trial.

(D. Del. 2005) (internal quotation omitted); *see also GB Biosciences Corp. v. Ishihara Sangyo Kaisha, Ltd*, 270 F. Supp. 2d 476, 481 (D. Del. 2003). That is particularly so where, as here, the contract contains an integration clause. *See, e.g., Highlands Ins. Group, Inc. v. Halliburton Co.*, 2001 WL 287485, at *8 (Del. Ch. Mar. 21, 2001) ("Integration clauses normally bar the use of parol evidence to vary or contradict a contract.").

"A contract is not ambiguous merely because the parties disagree about its proper interpretation." *MBIA Ins. Corp.*, 426 F.3d at 210; *Ace Capital*, 392 F. Supp. 2d at 674. Moreover, a contract is not ambiguous where the court can determine its meaning "without any other guide than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends." *Trs. of Boston Univ. v. Ligand Pharms., Inc.*, 2003 WL 22501588, at *4 (D. Del. Nov. 3, 2003) (Robinson, C.J.) (citation and quotation omitted), *aff'd* 162 Fed. Appx. 194 (3d. Cir. 2006). Rather, "[a]mbiguity exists only when a contractual provision is reasonably or fairly susceptible of different interpretations or may have two or more different meanings". *Id.* (internal citation and quotation omitted). "Words are to be given their ordinary meaning and should not be tortured to impart ambiguity where none exists." *MBIA Ins. Corp.*, 426 F.3d at 210 (internal citation and quotation omitted).

## II. DUBEA IS BARRED FROM USING EXTRINSIC EVIDENCE TO ALTER THE UNAMBIGUOUS TERMS OF HIS EMPLOYMENT AGREEMENT.

### A. The Terms of Dubea's Employment Agreement Are Unambiguous.

The provisions of Dubea's Employment Agreement are unambiguous, clear and susceptible of only one interpretation. To wit:

### 1. The provisions concerning payment of the Multiplier Amount are not ambiguous.

Under Section 2.02(b) of the Employment Agreement, Pike agreed to pay Dubea, among other things, a Multiplier Amount of over $6 million. (Employment Agreement § 2.02(b)

(Earnhardt Decl. Ex. 7); *see also* Mick Dubea Deferred Compensation Schedule, EPIKE00042225-42226 (Earnhardt Decl. Ex. 14).) The Multiplier Amount was scheduled to be paid to Dubea on the second, third and fourth anniversaries of the closing of the sale of RSI to Pike, subject to certain restrictions that would result in its forfeiture. (Employment Agreement §§ 2.02(b), 5.10 (Earnhardt Decl. Ex. 7).)

### 2. The provisions concerning forfeiture of the Multiplier Amount are not ambiguous.

The Multiplier Amount was subject to forfeiture under certain expressly defined circumstances, including those set forth in Section 5.10 of the Employment Agreement. Under Section 5.10, Dubea's breach of his non-disclosure and/or non-competition covenants entitled Pike to "cease making any payments or providing any benefit . . . otherwise required by this Agreement", including future payments of the Multiplier Amount. (*Id.* § 5.10.)

### 3. The provisions concerning deferral of the Multiplier Amount are not ambiguous.

The amendment to the Employment Agreement, executed in May of 2005, narrowed, but did not eliminate, the circumstances under which Dubea's Multiplier Amount could be forfeited. Prior to the amendment, Dubea also forfeited his right to the Multiplier Amount if he terminated his own employment, or if Pike terminated his employment for "Cause". (*Id.* § 2.02(b).) Following the amendment, the occurrence of either of those events meant that payment would be deferred until the fifteenth anniversary of the Closing, rather than forfeited entirely. (Amendment Agreement § 1.02 (Earnhardt Decl. Ex. 9).)

The deferral provisions plainly do not apply where, as here, Dubea neither terminated his own employment, nor was he terminated by Pike for "Cause". Under those circumstances, Pike continued to retain the right to withhold the unpaid amounts of Dubea's Multiplier Amount pursuant to Section 5.10, should Dubea breach the restrictive covenants of his

Employment Agreement.[3] (*See* Employment Agreement § 5.10 (Earnhardt Decl. Ex. 7).) There is nothing unclear or uncertain about those terms.

### 4. Dubea's arguments to the contrary are misplaced.

Dubea's claim that the amendment to the Employment Agreement categorically "eliminated forfeiture [of the Multiplier Amount] as a consequence for violating Section 5.07" is belied by the contractual language, and is a veiled attempt to create ambiguity where none exists. (*See* Def.'s Proposed Am. Answer & Addt'l Defenses to Compl. & Am. Countercl. ¶ 140 (Earnhardt Decl. Ex. 26).) As explained above, the amendment to the Employment Agreement only eliminated forfeiture of the Multiplier Amount in the event that: (1) Dubea terminated his own employment, or (2) Pike terminated Dubea's employment "for Cause".[4] In other words, the amendment related solely to the consequences associated with Dubea's *termination*, not the consequences associated with Dubea's *competition*.[5]

---

[3] That, of course, is precisely what has occurred--Pike stood ready to pay Dubea the Multiplier Amount on schedule, until it discovered that Dubea had helped form and finance T&D.

[4] "Cause", for these purposes, could include a violation of Section 5.07, *i.e.*, the non-competition covenant. (*See* Employment Agreement § 4.03(b)(vi) (Earnhardt Decl. Ex. 7).) Dubea has apparently misapprehended that fact to mean that Dubea's violation of Section 5.07, under any circumstances, could no longer result in forfeiture of his Multiplier Amount. Nothing in the Employment Agreement or amendment suggests that this is the case. Instead, Dubea's interpretation is clearly erroneous, is belied by the document's plain language and fails to create an ambiguity in the text. *See MBIA Ins. Corp.*, 426 F.3d at 210 ("A contract is not ambiguous merely because the parties disagree about its proper interpretation.").

[5] Extrinsic evidence concerning the purpose of the amendment would only illustrate why termination, rather than competition, was its focus. The amendment was drafted to allow Pike to obtain accurate accounting treatment for the multiplier liability. (*See* Castaneda Dep. at 115:19-116:1 (Earnhardt Decl. Ex. 18).) To obtain that treatment, Pike determined that it had to eliminate Dubea's requirement of "future service" to Pike. (*See* Briggs Dep. at 28:23-29:8, 41:5-11 (Earnhardt Decl. Ex. 25).) Under well-accepted accounting principles, Dubea's requirement of "future service" to Pike cannot encompass his obligation to refrain from illegal competition. (*See id.* at 43:15-18 ("I have never encountered an instance where a non-compete would be considered a future service requirement in the context of employment and compensation.").) Accordingly, there was simply no need for Pike to alter the consequences of violating Section 5.07 to achieve the accounting treatment it desired.

### B. Dubea Should Be Precluded from Offering Extrinsic or Parol Evidence To Vary the the Employment Agreement's Unambiguous Terms.

Unhappy with the consequences associated with violating his non-competition agreement with Pike, Dubea seeks to offer extrinsic and/or parol evidence to vary the Employment Agreements' unambiguous terms. Delaware law prohibits him from doing so. *See Ace Capital*, 392 F. Supp. 2d at 674 ("where the provisions of a contract are plain and unambiguous, evidence outside the four corners of the document as to what was actually intended is generally inadmissible"); *see also GB Biosciences Corp.*, 270 F. Supp. 2d at 481.

*First*, Dubea seeks to introduce evidence related to the employment contracts of other former RSI employees in an attempt to create an ambiguity in his own Employment Agreement. While the amendments to those contracts explicitly state that a violation of an employee's non-competition agreement with Pike results in the deferral, and not forfeiture, of future bonus payments, the amendment to Dubea's Employment Agreement states nothing of the kind. (*Compare* Second Amendment Agreement of May 2005 between Red Simpson, Inc. and Alex Graham, PIKE 00017090-93, § 1.02 (Earnhardt Decl. Ex. 8) *with* Amendment Agreement § 1.02 (Earnhardt Decl. Ex. 9).) Dubea presumably plans to argue that his own contract should be interpreted according to the terms that govern other employees, instead of the terms of his own agreement.

Dubea's theory must be rejected. The terms of other employment agreements entered into with other employees are irrelevant to the interpretation of Dubea's own unambiguous employment agreement. The undisputed evidence makes plain that, in connection with the acquisition, Dubea was treated differently than the rank and file employees of RSI. He received different consideration as a result of the transaction, was given different responsibilities at Pike, and negotiated a different initial contract with very different terms. It stands to reason

that he received a different amendment. (*See* E. Pike Dep. at 102:8-12 (Earnhardt Decl. Ex. 20) ("[A]ll the employees signed a second amendment for their employment agreement. The amendment agreement that Dubea and Rick [Westbrook] signed was -- was slightly different to correlate to their employment agreements."); Castaneda Dep. at 277:2-16 (Earnhardt Decl. Ex. 18) ("I do recall there being two different versions [of the amendment] . . . . In my understanding, the differences were for the non-compete.").) The terms of that amendment are clear and demonstrate that the parties did not intend to treat Dubea as a rank and file employee. Dubea's effort to substitute the other amendments for his own flies in the face of that intent, and cannot be allowed. *See GB Biosciences Corp.*, 270 F. Supp. 2d at 481 ("The parties' intent is dispositive when a court construes a contract . . . [W]hen the language is unambiguous and has an unmistakable meaning, the writing itself is the sole source for gaining an understanding of that intent.").

*Second*, Dubea points to antecedent discussions and negotiations concerning: (a) the accounting effect Pike sought to achieve from the amendment; and (b) the potential tax implications of the amendment. Dubea apparently intends to argue that those discussions and negotiations show a different intent by the parties than that which was memorialized in the document. It is well-settled, however, that when a written contract is clear and unambiguous, evidence relating to earlier conversations or negotiations is inadmissible. *See, e.g., Kirkwood Motors, Inc. v. Conomon*, 2001 WL 112054, at *2 (Del. Super. Ct. Feb. 5, 2001) ("When parties to a contract reduce to writing part or all of the agreement, should a dispute arise, a party may not seek to introduce evidence of earlier negotiations in an effort to show that the terms of the agreement are other than as shown on the face of the writing."); *Cahill v. Reene Berk Assocs.*, 1998 WL 47302, at *2 (Del. Super. Ct. May 2, 1988) ("[I]f there is nothing in the circumstances

attending the contract's execution that renders its language doubtful, antecedent negotiations may not be considered in order to vary the contract's plain meaning."). Similarly, when a contract or agreement is clear on its face, the parties' prior course of dealings is inadmissible to demonstrate their intent. *See Cleveland Trust Co. v. Wilmington Trust Co.*, 258 A.2d 58, 65 (Del. 1969). As Dubea's employment contract is clear on its face (*see* part II(A), *supra*), Dubea's evidence of pre-amendment discussions regarding accounting and taxation must be excluded. *See id.*; *Kirkwood Motors, Inc.*, 2001 WL 112054, at 2.

    Given the scope of Dubea's deposition designations (which would likely amount to over 48 hours of testimony) and the number of his intended trial exhibits (505), Pike cannot possibly list every category of extrinsic evidence that Dubea might attempt to introduce at trial. Nevertheless, because the Employment Agreement can be interpreted by looking to the four corners of the document, it is plain that any extrinsic evidence offered to prove the "true meaning" of that document should be excluded.

## Conclusion

For the reasons stated above, Pike respectfully requests that this Court exclude all extrinsic evidence related to the interpretation of Dubea's employment contract.

*[signature]*

William J. Wade (#704)
wade@rlf.com
Alyssa M. Schwartz (#4351)
schwartz@rlf.com

OF COUNSEL:
Michael A. Paskin
Timothy G. Cameron
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
(302) 651-7700

*Attorneys for Plaintiffs Pike Electric Corporation and Pike Electric, Inc.*

Dated: August 18, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 18, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and have also served the document as noted:

### BY HAND DELIVERY

Lewis H. Lazarus, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

_____
Alyssa M. Schwartz (#4351)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 24, 2006, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, and have also served the document as noted:

### BY HAND DELIVERY

Lewis H. Lazarus, Esquire
Morris James Hitchens & Williams LLP
222 Delaware Avenue, 10th Floor
Wilmington, DE 19899

_____
Alyssa M. Schwartz (#4351)