# EXHIBIT 17

# Part 5 of 5

424(B)(4)142

## PIKE ELECTRIC CORPORATION AND SUBSIDIARIES
### NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS
#### (Unaudited)
#### (in thousands, except per share amounts)

**1.  Basis of Presentation**

The accompanying condensed consolidated financial statements are unaudited and have been prepared in accordance with the requirements of Article 10 of Regulation S-X included in the rules and regulations of the U.S. Securities and Exchange Commission ("SEC"). Certain information and footnote disclosures, normally included in annual financial statements prepared in accordance with accounting principles generally accepted in the United States, have been condensed or omitted pursuant to those rules and regulations. Pike Electric Corporation (the "Company") believes that the disclosures made are adequate to make the information presented not misleading. In the opinion of management, all adjustments, consisting only of normal recurring adjustments, necessary to fairly present the financial position, results of operations and cash flows with respect to the interim consolidated financial statements have been included. Operating results for the nine months ended March 31, 2004 and 2005 are not necessarily indicative of the results that may be expected for the full year. These unaudited condensed consolidated financial statements should be read in conjunction with the Company's audited consolidated financial statements and notes thereto for the fiscal years ended June 30, 2003 and 2004. Certain amounts in the accompanying statements have been reclassified for comparative purposes.

**2.   Significant Accounting Policies**

*Stock Based Compensation*

In December 2002, the Financial Accounting Standards Board ("FASB") issued Statement of Financial Accounting Standard ("SFAS") No. 148, *Accounting for Stock-Based Compensation — Transition and Disclosure.* SFAS No. 148 amends SFAS No. 123 to provide alternative methods of transition for a voluntary change to the fair value based method of accounting for stock-based employee compensation. In addition, SFAS No. 148 amends the disclosure provisions of SFAS No. 123 and Accounting Principles Board ("APB") Opinion No. 28, *Interim Financial Reporting,* to require more prominent disclosure in the summary of significant accounting policies about the method of accounting for the effects of an entity's accounting policy with respect to stock-based employee stock compensation and the effect of the method used on reported net loss results.

The Company has elected to continue to account for stock options granted to employees using the intrinsic value method as prescribed by APB Opinion No. 25, *Accounting for Stock Issued to Employees,* and thus recognizes no compensation expense for options granted with exercise prices equal to the fair market value of the Company's common stock on the date of grant. The pro forma information regarding pro forma net income as required by SFAS No. 123 has been determined as if the Company had accounted for its employee stock options under the fair value method of that Statement.

F-28

B 497

424(B)(4)143

**PIKE ELECTRIC CORPORATION AND SUBSIDIARIES**

**NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

For purposes of disclosures pursuant to SFAS No. 123, as amended by SFAS No. 148, the estimated fair value of the options is amortized to expense over the options' vesting period. The following table illustrates the effect on net income available to common stockholders if the Company had applied the fair value recognition provisions of SFAS No. 123:

|  | Nine Months Ended March 31, | |
| --- | --- | --- |
|  | 2004 | 2005 |
| Net income, as reported | $ 10,674 | $ 10,812 |
| Add: Stock-based employee compensation expense included in reported net income, net of related income tax effects | 315 | 2,985 |
| Less: Stock-based employee compensation expense determined under fair value based method of all awards, net of related income tax effects | (757) | (1,646) |
| Pro forma net income | $ 10,232 | $ 12,151 |
| Net income per share — diluted, as reported | $ 0.44 | $ 0.36 |
| Net income per share — diluted, pro forma | $ 0.42 | $ 0.40 |

*Valuation of Goodwill and Intangible Assets*

As a result of the Company's acquisition of Red Simpson, Inc. ("Red Simpson"), the Company acquired certain intangible assets including customer arrangements, customer relationships and non-compete agreements totaling $60,810, which are being amortized over their estimated useful lives ranging from 3 to 30 years, see Note 3. In accordance with SFAS 141, *Business Combinations*, the Company identifies and values, separate from goodwill, intangible assets, such as customer arrangements, customer relationships, and non-compete agreements, that arise from contractual or other legal rights or that are capable of being separated or divided from the acquired entity and sold, transferred, licensed, rented, or exchanged. The fair value of identified intangible assets is based upon an estimate of the future economic benefits expected to result from ownership, which represents the amount at which it could be bought or sold in a current transaction between willing parties, that is, other than in a forced or liquidation sale. For customers with whom we have an existing relationship prior to the date of the transaction, we utilize assumptions that a marketplace participant would consider to estimate the fair value of customer relationships that an acquired entity had with pre-existing customers of the Company in accordance with EITF 02-17, *Recognition of Customer Relationship Intangible Assets Acquired in a Business Combination*.

In accordance with SFAS No. 142, *Goodwill and Other Intangible Assets*, the Company tests goodwill and indefinite lived intangible assets for impairment at least annually, or more frequently if events or circumstances exist which indicate impairment may exist. Examples of such events or circumstances may include a significant change in business climate or a loss of significant customers, among others. The Company generally completes its annual analysis of the reporting unit on the first day of its fourth fiscal quarter. A two-step fair value-based test is applied to assess goodwill for impairment. The first step compares the fair value of a reporting unit to its carrying amount, including goodwill. If the carrying amount of the reporting unit exceeds its fair value, the second step is then performed. The second step compares the carrying amount of the reporting unit's goodwill to the fair value of the goodwill. If the fair value of the goodwill is less than the carrying amount, an impairment loss would be recorded in income from operations. Intangible assets with definite lives are amortized over their estimated useful lives and are also reviewed for impairment if events or changes in circumstances indicate that their carrying amount may not be realizable.

F-29

B 500

424(B)(4)144

PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

The Company makes certain estimates and assumptions in order to determine the fair value of net assets and liabilities, including, among other things, an assessment of market conditions, projected cash flows, cost of capital and growth rates, which could significantly impact the reported value of goodwill and other intangible assets. Estimating future cash flows requires significant judgment and the projections may vary from cash flows eventually realized. When necessary, the Company utilizes third-party specialists in the preparation of valuations. The valuations employ a combination of present value techniques to measure fair value, corroborated by comparisons to estimated market multiples. These valuations are based on a discount rate determined by management to be consistent with industry discount rates and the risks inherent in their current business model.

*Recent Accounting Pronouncements*

On December 16, 2004, the FASB issued SFAS No. 123 (revised 2004), *Share-Based Payment,* which is a revision of SFAS No. 123, *Accounting for Stock-Based Compensation.* SFAS No. 123(R) supersedes APB Opinion No. 25, *Accounting for Stock Issued to Employees,* and amends SFAS No. 95, *Statement of Cash Flows.* Generally, the approach in SFAS No. 123(R) is similar to the approach described in SFAS No. 123. However, SFAS No. 123(R) requires all share-based payments to employees, including grants of employee stock options, to be recognized in the income statement based on their fair values. Pro forma disclosure is no longer an alternative.

SFAS No. 123(R) must be adopted no later than July 1, 2005. Early adoption will be permitted in periods in which financial statements have not yet been issued. The Company expects to adopt SFAS No. 123(R) on July 1, 2005. SFAS No. 123(R) permits public companies to adopt its requirements using one of two methods:

(1) A "modified prospective" method in which compensation cost is recognized beginning with the effective date (a) based on the requirements of SFAS No. 123(R) for all share-based payments granted after the effective date and (b) based on the requirements of SFAS No. 123 for all awards granted to employees prior to the effective date of SFAS No. 123(R) that remain unvested on the effective date.

(2) A "modified retrospective" method which includes the requirements of the modified prospective method described above, but also permits entities to restate based on the amounts previously recognized under SFAS No. 123 for purposes of pro forma disclosures either (a) all prior periods presented or (b) prior interim periods of the year of adoption.

The Company plans to adopt SFAS No. 123(R) using the modified prospective method. As permitted by SFAS No. 123(R), the Company currently accounts for share-based payments to employees using intrinsic value method prescribed in APB Opinion 25 and, as such, generally recognizes no compensation cost for employee stock options. Accordingly, the adoption of SFAS No. 123 (R)'s fair value method will have a significant impact on our result of operations, although it will have no impact on the Company's overall financial position. The impact of adoption of SFAS No. 123(R) cannot be predicted at this time because it will depend on levels of share-based payments granted in the future. However, had the Company adopted SFAS No. 123(R) in prior periods, the impact of that standard would have approximated the impact of SFAS No. 123 as described in the disclosure of pro forma net income and earnings per share in Note 2 to our consolidated financial statements. SFAS No. 123(R) also requires the benefits of tax deductions in excess of recognized compensation cost to be reported as a financing cash flow, rather than as an operating cash flow as required under current literature. This requirement will reduce net operating cash flows and increase net financing cash flows in periods after adoption. While the company cannot estimate what those amounts will be in the future (because they depend on, among other things, when employees exercise stock options), no amount of operating cash flows have been recognized in prior periods for such excess tax deductions.

F-30

B 501

424(B)(4)145

PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

**3.   Acquisition**

On July 1, 2004, the Company acquired all of the outstanding stock of Red Simpson, Inc. ("Red Simpson"), an electric transmission and distribution services provider headquartered in Alexandria, Louisiana prior to the acquisition. Red Simpson's service territory was contiguous with the Company's. The acquisition diversified the Company's customer base by providing several new customers. The total cash purchase price was approximately $194,222 net of cash acquired of approximately $2,200. The acquisition was financed through the issuance of approximately $71,000 in new common equity to certain of our existing stockholders and approximately $123,222 of new indebtedness under the Company's secured bank credit agreement, which was refinanced in connection with the transaction, see Note 8. The acquisition was accounted for as a purchase in accordance with SFAS No. 141, *Business Combinations.*

In connection with the continuing integration, the Company is still in the process of determining the value of certain tangible assets and evaluating estimates of certain liabilities that could affect the allocation of the purchase price through an adjustment to the valuation of goodwill, and as a result, the purchase price is still preliminary. The preliminary purchase price has initially been allocated to the fair value of assets acquired and liabilities assumed as follows:

| | |
|---|---:|
| Accounts receivable | $   35,042 |
| Work completed not billed | 7,027 |
| Other current assets | 18,257 |
| Property, plant & equipment | 76,840 |
| Goodwill | 86,640 |
| Identified intangible assets | 60,810 |
| Other non-current assets | 1,385 |
| Accounts payable and accrued expenses | (12,933) |
| Insurance payable | (14,121) |
| Deferred compensation | (28,948) |
| Deferred income taxes | (35,777) |
| Total net assets acquired | $ 194,222 |

Identified intangible assets consisting of customer relationships, non-compete agreements and customer arrangements have been valued at approximately $43,200, $10,600 and $7,000, respectively and will be amortized over their estimated useful lives of 30, 3 and 9 years, respectively.

*Pro Forma Financial Information*

The following table provides pro forma unaudited consolidated statements of operations data for the period from July 1, 2003 to March 31, 2004 as if the acquisition of Red Simpson had occurred as of July 1, 2003:

| | Pro Forma For the Nine Months Ended March 31, 2004 |
|---|---:|
| Revenues | $   406,883 |
| Income from continuing operations | $   14,427 |
| Weighted average basic and diluted common shares outstanding | 35,643 |
| Basic and diluted net income from continuing operations per share | $   0.40 |

F-31

B 502

PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

The historical results of operations for the nine months ended March 31, 2004 have been adjusted to reflect the pro forma effects of the acquisition. The principal adjustments include (1) the effects on amortization expense (included in cost of operations and general and administrative expenses) resulting from establishing identified intangible assets and corresponding amortization; (2) the effect of depreciation expense as a result of a change in value of assets, useful lives and salvage values; (3) deferred compensation charges related to the acquisition; (4) additional interest expense related to additional debt used to finance the acquisition; and (5) the additional common shares issued to finance the acquisition. The above pro forma information is not necessarily indicative of the results of operations that would have occurred had the July 1, 2004 acquisition been made as of July 1, 2003, or of results that may occur in the future.

**4.   Recapitalization**

In December 2004, the Company underwent a recapitalization whereby it borrowed a new $150,000 term loan under its existing credit facility, $20,000 of which was used to redeem all of the outstanding shares of its Series A preferred stock in January 2005, $123,500 of which was used to repurchase 999,832 shares of its common stock and $4,200 of which was used to repurchase options to purchase 80,351 shares of common stock. The repurchased stock options were from members of management and the Company incurred compensation expense of approximately $4,200 during the nine month period ended March 31, 2005. In addition, a charge of approximately $14,000 was incurred in the nine month period ended March 31, 2005 related to the redemption of the Series A preferred stock, which is included in interest expense. The Company negotiated the redemption value of the Series A preferred stock with the Series A preferred stockholders in an arms'-length transaction. This transaction allowed the Company to simplify its capital structure and eliminate the effect on future earnings from annual adjustments to the redemption value of the preferred stock. The preferred stock agreement provided for increases in the redemption value based on the future performance of the Company plus a 7% accretion. The original valuation of the preferred stock was $17.5 million, as determined by the company. Based on that original valuation and the potential negative impact on the net income due to annual adjustments to the redemption value, the Company determined that the $20 million redemption value was fair and reasonable.

**5.   Stockholders' Equity**

*Earnings Per Share*

The following table sets forth a reconciliation of the numerators and denominators in computing earnings per common share in accordance with SFAS No. 128.

|  | Nine Months Ended March 31, | |
|---|---|---|
|  | 2004 | 2005 |
|  | (Unaudited) | |
| Net income | $ 10,674 | $ 10,812 |
| Weighted average number of common shares outstanding | 24,437 | 29,753 |
| Basic earnings per common share | $ 0.44 | $ 0.36 |
| Effect of potentially dilutive securities: | | |
| Common stock options | — | 443 |
| Weighted average number of common shares outstanding assuming dilution | 24,437 | 30,196 |
| Diluted earnings per common share | $ 0.44 | $ 0.36 |

F-32

B 503

## PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

### NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

Common stock options listed below for the nine months ended March 31, 2004 and 2005 were not included in the computation of diluted earnings per share. Common stock options issued under the Stock Option Plan B include contingencies which have not been satisfied at the end of the periods presented, and therefore are not exercisable and are not included in the fully diluted computation in accordance with SFAS No. 128. Common stock options under Plan A are not included in the computation for the nine months ended March 31, 2004 as the weighted average exercise price and fair value are equal such that the effect on the computation is neutral.

| | Nine Months Ended March 31, | |
|---|---|---|
| | 2004 | 2005 |
| | (Unaudited) | |
| Common stock option Plan B | 776 | 1,228 |
| Common stock option Plan A | 1,812 | — |
| | 2,588 | 1,228 |

### Stock Option Plans

The Company has two stock option plans and has had two separate grant dates under each of the two options plans. Options were granted in April 2002, in connection with a recapitalization transaction and in October 2004, in connection with the acquisition of Red Simpson, Inc. and the corresponding equity offering.

In October 2004, the Company increased the available shares to a total of 2,953 under the 2002 Stock Option Plan A and granted 1,052 options, leaving 89 shares available for grant at March 31, 2005. In October 2004, the Company increased the available shares to a total of 1,266 under the 2002 Stock Option Plan B and granted 451 options leaving 38 shares available for grant at March 31, 2005.

In December 2004, the Company redeemed 1,186 non-vested options from the 2002 Stock Option Plan A from the employees as part of the recapitalization transaction. As a result of this redemption, the Company recorded compensation expense of approximately $4,200 during the nine months ended March 31, 2005, computed as the difference between the option exercise price and the estimated fair value of the shares repurchased.

### Employee Stock Purchase Plan

In January 2005, the Company adopted an employee stock purchase plan (the "Plan"). The Plan enables eligible employees of the Company and its affiliates to subscribe to purchase shares of common stock. A maximum of 959 shares of common stock were authorized for issuance and sale or total purchases of $5,000 under the Plan, subject to adjustment. On January 31, 2005, the Company sold 599 shares of common stock for a total of $5,000, or $8.35 per share, to various employees and members of management. At March 31, 2005, no shares were available to be issued under the Plan.

### Fair Value of Equity Instruments

The fair value of the common stock underlying the options granted to employees in October 2004 was determined to be $6.51 per share. The value was the same as that at which certain shareholders of Red Simpson and the Company purchased shares of the common stock in connection with the Red Simpson acquisition, which value was determined based on arms'-length negotiations with a third party, see Note 3.

In January 2005, the Company sold common stock to various members of management and other employees through the Plan, as discussed above. The fair value was determined to be $8.35 per share

F-33

B 504

PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

based upon applying a market approach. The increase in value was primarily due to the increase in operating results from the significant storm revenue for the six months ended December 31, 2004 and significant debt prepayments using the cash generated by that storm work. In addition, the positive operating results from the recent acquisition of Red Simpson contributed to the increase in value. In May 2005, the Company received a third-party valuation as of January 2005, which confirmed a value substantially similar to the value at which the common stock was sold in January 2005.

6.  Property and Equipment

Property and equipment is comprised of the following:

|  | Estimated Useful Lives in Years | March 31, | |
|---|---|---|---|
|  |  | 2004 | 2005 |
| Land | — | $ 3,313 | $ 3,124 |
| Buildings | 15-39 | 25,296 | 25,918 |
| Vehicles | 5-12 | 196,507 | 284,742 |
| Machinery and equipment | 3-19 | 70,241 | 97,369 |
| Office equipment and furniture | 3-7 | 5,142 | 5,468 |
| Total |  | 300,499 | 416,621 |
| Less: accumulated depreciation |  | 109,383 | 134,204 |
| Property and equipment, net |  | $ 191,116 | $ 282,417 |

Expenses for maintenance and repairs of property and equipment amounted to $20,263 and $34,747 for the nine months ended March 31, 2004 and 2005, respectively.

7.  Goodwill and Intangible Assets

Goodwill and intangible assets are comprised of:

|  | Estimated useful life in years | March 31, | |
|---|---|---|---|
|  |  | 2004 | 2005 |
| Goodwill | — | $ 3,000 | $ 89,640 |
| Intangible assets: |  |  |  |
| Customer relationships | 30 | — | 43,220 |
| Customer arrangements | 9 | — | 6,990 |
| Non-compete agreements | 3 | — | 10,600 |
| Accumulated amortization |  | — | (4,261) |
| Intangible assets, net |  | $ — | $ 56,549 |

F-34

424(B)(4)149

PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

Estimated amortization expense for the five subsequent fiscal years ended following March 31, 2005 and thereafter:

| Year Ended June 30, | Amount |
|---|---|
| 2006 | $ 4,883 |
| 2007 | 3,617 |
| 2008 | 3,731 |
| 2009 | 3,699 |
| 2010 | 3,611 |

### 8. Debt

Debt consists of the following:

| | March 31, | |
|---|---|---|
| | 2004 | 2005 |
| Revolving credit facility | $ 13,000 | $ — |
| Long-term debt: | | |
| $170 million term loan | $ 137,000 | $ — |
| $300 million term loan | — | 260,000 |
| $150 million term loan | — | 148,000 |
| | 137,000 | 408,000 |
| Less: current portion | — | — |
| Long term debt | $ 137,000 | $ 408,000 |

On July 1, 2004, the Company obtained a new secured bank credit agreement ("Credit Agreement") in connection with the business acquisition discussed in Note 3. The Credit Agreement consists of: (i) a $300,000 term loan due July 1, 2012 bearing interest at a variable rate based on the Company's leverage ratio at either LIBOR plus a margin ranging from 2.00% to 2.25% or the Alternate Base Rate, defined as the greater of the Prime Rate or the Federal Funds Effective Rate plus 0.50%, plus a margin ranging from 1.00% to 1.25%, interest is payable monthly and principal payments are payable quarterly beginning on September 30, 2004; and (ii) a $70,000 revolving facility which matures July 1, 2010 and bears interest at a variable rate based on the Company's leverage ratio at either LIBOR plus a margin of ranging from 2.00% to 2.50% or the Alternate Base Rate, defined as the greater of the Prime Rate or the Federal Funds Effective Rate plus 0.50%, plus a margin ranging from 1.00% to 1.50%, interest on the outstanding balance is payable monthly. The proceeds of the term loan were used to pay the acquisition consideration discussed in Note 3, to retire approximately $137,000 of the outstanding amounts under the previous credit agreement, to pay loan issuance costs of approximately $10,200 and acquisition transaction fees and expenses of approximately $4,200 and to provide the Company with working capital for operations. In connection with the Credit Agreement, the Company wrote off the remaining unamortized portion of deferred loan costs related to the previous credit agreement totaling approximately $5,600, which has been recorded in the Company's statement of operations for the nine month period ending March 31, 2005.

On December 10, 2004, the Credit Agreement was amended to permit the 2004 recapitalization, see Note 4, obtain additional liquidity and increase the total facility to $520,000. In addition to the original $300,000 term loan and $70,000 revolving credit facility, the Company obtained a new $150,000 term loan. No substantive terms for the original $300,000 term loan and $70,000 revolving credit facility were modified pursuant to this amendment. The borrowing availability was $46,920 as of March 31, 2005 (after

F-35

B 506

## PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

### NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

giving effect to $23,080 of outstanding letters of credit). The Credit Agreement contains a number of affirmative and restrictive covenants including limitations on mergers, consolidations and dissolutions; sales of assets; investments and acquisitions; indebtedness and liens; dividends and other restricted payments; and the maintenance of certain financial ratios.

Aggregate maturities of long-term debt for the five years ended June 30 following March 31, 2005 and thereafter are as follows:

|  | Amount |
|---|---|
| 2005 | $ — |
| 2006 | 250 |
| 2007 | 1,500 |
| 2008 | 1,500 |
| 2009 | 1,500 |
| Thereafter | $ 403,250 |

In connection with the recapitalization in December 2004, the Company cancelled the interest rate swap agreements. These agreements did not meet the criteria to qualify for hedge accounting and were marked to market and are included in accrued expenses and other liabilities on the balance sheet at fair value in the amount of $426 at March 31, 2004. In January 2005, the Company entered into an interest rate swap agreement with a notional amount of $50,000 for a term of two years to hedge against interest rate fluctuations. Under the terms of the swap, the Company makes quarterly fixed rate payments to the counterparty at rates ranging from 2.59% to 3.76% and in return receives payments at the three-month LIBOR. The Company is exposed to credit loss in the event of nonperformance by the counterparty to the swap agreement; however, the Company does not anticipate nonperformance. In accordance with the provisions of SFAS No. 133, *Accounting for Derivatives and Hedging Activities,* this agreement did not meet the criteria to qualify for hedge accounting and are marked to market and are included in other assets on the balance sheet at fair value in the amount of $101 at March 31, 2005. The Company recognized a gain on the change in fair value of these derivatives of $1,096 and $203, which is included in interest expense in the income statement, for the nine months ended March 31, 2004 and 2005, respectively.

In addition, in January 2005, the Company entered into an interest rate cap agreement with a notional amount of $45,000. Under the interest rate cap agreement, the Company receives quarterly payments based upon the excess of the three-month LIBOR over the cap rate of 5.0%.

### 9.   Income taxes

The effective tax rates for the nine months ended March 31, 2004 and 2005 was 40.7% and 61.7%, respectively. Income tax expense for the nine months ended March 31, 2005 significantly increased from the statutory federal and state tax rates primarily due to the $14,190 of interest expense incurred as a result of the redemption of the mandatorily redeemable preferred stock, which is nondeductible.

### 10.   Deferred Compensation Plan

In connection with the acquisition of Red Simpson discussed in Note 3, the Company entered into certain transactions involving employee compensation expenses that have impacted and, in some cases, will continue to impact the results of operations.

Prior to the acquisition of Red Simpson, certain Red Simpson supervisors and managers were entitled to payments of deferred compensation. In connection with the acquisition of Red Simpson, the Company

F-36

B 507

## PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

### NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

agreed to pay $26,000 in deferred compensation as part of the purchase price over two fiscal years. In addition, the Company agreed to pay $29,100 in deferred compensation over four years if the employees continued their employment.

For the nine months ended March 31, 2005, the Company incurred approximately $4,800 of expense for deferred compensation.

In May 2005, the deferred compensation plan was amended to eliminate the future service requirement and fully vest the benefits under the plan. The amendment provides that if an employee continues to be employed, dies, becomes disabled, retires, or is terminated for other than "cause" as defined in the amendment, the amounts under the deferred compensation plan shall be paid out in accordance with the original four-year payment term. Generally under the amendment, if an employee voluntarily terminates or is terminated for cause, then any remaining unpaid amounts under the deferred compensation plan are paid out on the fifteenth anniversary of the initial payment date plus interest. The interest rate is to be determined by the Company based upon a risk-free interest rate plus a margin reflecting an appropriate risk premium in accordance with FASB Con 7, *Using Cash Flow Information and Present Values in Accounting Measurements*. Generally under the amendment, if an employee is terminated for "specified cause", as defined in the amendment, then all unpaid amounts under the deferred compensation plan are forfeited. As a result of the amendment the Company will incur a one-time compensation expense charge of approximately $18,000 in May 2005.

The following table sets forth the approximate amounts of deferred compensation remaining to be paid in each of the four years ended June 30:

| | | |
|---|---|---:|
| 2006 | $ | 15,000 |
| 2007 | | 9,000 |
| 2008 | | 4,500 |
| 2009 | | 9,000 |
| Total | $ | 37,500 |

In connection with the acquisition of Red Simpson, the Company also agreed to permit two members of Red Simpson's management to convert an aggregate of approximately $3,300 of unvested deferred compensation into shares of restricted common stock valued at approximately $2,000. In connection with this transaction, the Company recognized compensation expense of approximately $1,300 in the nine month period ending March 31, 2005 equal to the excess of the accelerated deferred compensation amount over the fair value of the stock acquired by those persons.

### 11.   Concentrations of Credit Risk

The Company had accounts receivable from two customers of $8,777 and $10,429 at March 31, 2004 and 2005, respectively. The Company had revenues from two customers, which comprised 26% and 26% of total revenues for the nine months ended March 31, 2004 and 2005, respectively.

F-37

B 508

## PIKE ELECTRIC CORPORATION AND SUBSIDIARIES

### NOTES TO CONDENSED CONSOLIDATED FINANCIAL STATEMENTS — (continued)

### 12.  Revenue Categories

The following table sets forth our revenues by category of service for the periods indicated:

| | For the Nine Months Ended March 31, | | | |
| | 2004 | | 2005 | |
|---|---|---|---|---|
| Powerline services | $  226,896 | 86.3% | $  377,255 | 72.0% |
| Storm restoration services | 36,162 | 13.7 | 146,992 | 28.0 |
| Total | $  263,058 | 100.0% | $  524,247 | 100.0% |

### 13.  Commitments and Contingencies

The Company is from time to time party to various lawsuits, claims and other legal proceedings that arise in the ordinary course of business. These actions typically seek, among other things, compensation for alleged personal injury, breach of contract, property damage, punitive damages, civil penalties or other losses, or injunctive or declaratory relief. With respect to all such lawsuits, claims and proceedings, the Company accrues reserves when it is probable that a liability has been incurred and the amount of loss can be reasonably estimated. The Company does not believe that any of these proceedings, separately or in the aggregate, would be expected to have a material adverse effect on the Company's results of operations or financial position.

### 14.  Subsequent Events

On July 1, 2005, the Company's Board of Directors approved the reincorporation and merger of Pike Holdings, Inc., a North Carolina corporation, with and into a newly created wholly owned subsidiary, Pike Electric Corporation, which was formed in Delaware for the sole purpose of effecting the reincorporation. Each share of Pike Holdings, Inc. common stock was converted to 14.76 shares of Pike Electric Corporation common stock with a par value of $0.001 per share. Pike Electric Corporation has 100,000 authorized shares. All common stock and per share amounts for all periods presented in the accompanying financial statements have been restated to reflect the effect of this conversion as a result of the reincorporation.

In June 2004, the Company agreed to terminate the management advisory services agreement with Goldberg Lindsay & Co. LLC, an affiliate of Lindsay Goldberg & Bessemer, for aggregate consideration of $4.0 million, which is expected to be paid at the closing of the initial public offering of the Company.

F-38

B 509

## REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Board of Directors and Stockholders of
Red Simpson, Inc.

We have audited the accompanying consolidated balance sheets of Red Simpson, Inc. (a Louisiana corporation) and Subsidiaries as of December 31, 2003 and 2002, and the related consolidated statements of income, stockholders' equity, and cash flows for each of the three years in the period ended December 31, 2003. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on the financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the consolidated financial position of Red Simpson, Inc. and Subsidiaries as of December 31, 2003 and 2002 and the consolidated results of their operations and their cash flows for each of the three years in the period ended December 31, 2003, in conformity with accounting principles generally accepted in the United States of America.

As discussed in Note A to the consolidated financial statements, the Company adopted Statement of Financial Accounting Standards No. 142, "Goodwill and Other Intangible Assets," on January 1, 2002.

/s/ Grant Thornton LLP

Houston, Texas
August 5, 2004

F-39

**B 510**

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED BALANCE SHEETS**
**(in thousands, except share amounts)**

| | December 31, | |
|---|---|---|
| | 2002 | 2003 |
| **ASSETS** | | |
| Current assets: | | |
| Cash and cash equivalents | $ 150 | $ 8,094 |
| Accounts receivable, net | 34,123 | 32,430 |
| Work completed not billed | 5,698 | 5,640 |
| Inventory | 1,432 | 1,612 |
| Prepaid expenses | 4,626 | 3,099 |
| Total current assets | 46,029 | 50,875 |
| Property and equipment, net | 70,672 | 61,697 |
| Other assets: | | |
| Goodwill | 4,786 | 5,547 |
| Intangible assets, net | — | 5,557 |
| Other | 306 | 1,315 |
| Total other assets | 5,092 | 12,419 |
| Total Assets | $ 121,793 | $ 124,991 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| Current liabilities: | | |
| Accounts payable | $ 4,621 | $ 6,225 |
| Accrued liabilities | 2,176 | 1,417 |
| Accrued payroll and related liabilities | 5,340 | 6,057 |
| Notes payable, deferred compensation | 410 | 749 |
| Current portion of long-term debt | 709 | 84 |
| Insurance and claim accruals | 1,465 | 5,256 |
| Total current liabilities | 14,721 | 19,788 |
| Long-term liabilities: | | |
| Insurance and claim accruals | 8,719 | 7,254 |
| Deferred compensation | 19,250 | 21,158 |
| Notes payable, deferred compensation | 1,509 | 1,704 |
| Long-term debt, less current portion | 6,439 | 120 |
| Amounts due to previous owners | 3,117 | 2,967 |
| Other | 565 | 503 |
| Total long-term liabilities | 39,599 | 33,706 |
| Stockholders' equity: | | |
| Common stock, no par value; 2,000,000 shares authorized; 1,090,439 shares issued; 929,442 shares outstanding | 584 | 584 |
| Retained earnings | 67,282 | 71,306 |
| Treasury stock 160,997 shares, at cost | (393) | (393) |
| Total stockholders' equity | 67,473 | 71,497 |
| Total Liabilities and Stockholders' Equity | $ 121,793 | $ 124,991 |

The accompanying notes are an integral part of these consolidated financial statements.

F-40

424(B)(4)155

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED STATEMENTS OF INCOME**
**(in thousands)**

| | December 31, | | |
|---|---|---|---|
| | **2001** | **2002** | **2003** |
| Revenues | $ 198,146 | $ 212,630 | $ 191,375 |
| Cost of operations | 175,035 | 184,640 | 166,255 |
| Gross profit | 23,111 | 27,990 | 25,120 |
| General and administrative expenses | 11,712 | 12,311 | 12,668 |
| Income from operations | 11,399 | 15,679 | 12,452 |
| Other income (expense): | | | |
| Other income | — | — | 249 |
| Interest income | — | — | 41 |
| Interest expense | (1,686) | (1,084) | (325) |
| Total other income (expense) | (1,686) | (1,084) | (35) |
| Income before income taxes | 9,713 | 14,595 | 12,417 |
| Income tax expense | 212 | 485 | 406 |
| Net income | $ 9,501 | $ 14,110 | $ 12,011 |

The accompanying notes are an integral part of these consolidated financial statements.

F-41

B 512

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY**
**Years ended December 31, 2003**
**(in thousands, except share amounts)**

| | Common Stock | | Retained Earnings | Treasury Stock | | Total |
|---|---|---|---|---|---|---|
| | Shares | Amount | | Shares | Amount | |
| Balance at January 1, 2001 | 1,090,439 | $ 584 | $ 58,296 | 160,997 | $ (393) | $ 58,487 |
| Net income | | | 9,501 | | | 9,501 |
| Distributions to stockholders | | | (6,697) | | | (6,697) |
| Balance at December 31, 2001 | 1,090,439 | 584 | 61,100 | 160,997 | (393) | 61,291 |
| Net income | | | 14,110 | | | 14,110 |
| Distributions to stockholders | | | (7,928) | | | (7,928) |
| Balance at December 31, 2002 | 1,090,439 | 584 | 67,282 | 160,997 | (393) | 67,473 |
| Net income | | | 12,011 | | | 12,011 |
| Distributions to stockholders | | | (7,987) | | | (7,987) |
| Balance at December 31, 2003 | 1,090,439 | $ 584 | $ 71,306 | 160,997 | $ (393) | $ 71,497 |

The accompanying notes are an integral part of these consolidated financial statements.

F-42

B 513

### RED SIMPSON, INC. AND SUBSIDIARIES

### CONSOLIDATED STATEMENTS OF CASH FLOWS
#### (in thousands)

| | December 31. | | |
|---|---|---|---|
| | 2001 | 2002 | 2003 |
| Cash flows from operating activities: | | | |
| Net income | $ 9,501 | $ 14,110 | $ 12,011 |
| Adjustments to reconcile net income to net cash provided by operating activities: | | | |
| Depreciation and amortization | 21,212 | 22,052 | 21,589 |
| Deferred compensation expense | 4,062 | 5,368 | 2,896 |
| Gain on sale of property, plant and equipment | 12 | 47 | (18) |
| Other | (19) | (80) | 283 |
| Changes in assets and liabilities; net of acquisition | | | |
| Accounts receivable and work completed not billed | 1,055 | 4,187 | 3,678 |
| Inventory and other assets | (2,319) | 42 | 337 |
| Accounts payable and accrued expenses | (443) | (4,691) | 628 |
| Self-insurance claims | 8,645 | (635) | 2,327 |
| | 41,706 | 40,400 | 43,731 |
| Cash flows from investing activities: | | | |
| Purchase of property and equipment | (44,534) | (8,710) | (9,883) |
| Proceeds from sale of property and equipment | 3,722 | 773 | 63 |
| Net cash paid on acquisition of Gillette Electric Construction, Inc. | — | — | (9,342) |
| | (40,812) | (7,937) | (19,162) |
| Cash flows from financing activities: | | | |
| Proceeds from long-term debt | 29,664 | 76,195 | 65,532 |
| Payments on long-term debt | (23,521) | (101,276) | (73,540) |
| Payments on amounts due previous owners | (168) | (191) | (150) |
| Payments on deferred compensation notes payable | — | — | (360) |
| Distributions to stockholders | (6,697) | (7,928) | (7,987) |
| | (722) | (33,200) | (16,505) |
| Net increase (decrease) in cash and cash equivalents | 172 | (737) | 7,943 |
| Cash and cash equivalents at beginning of the year | 715 | 887 | 150 |
| Cash and cash equivalents at end of the year | $ 887 | $ 150 | $ 8,094 |

The accompanying notes are an integral part of these consolidated financial statements.

F-43

424(B)(4)158

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**For the years ended December 31, 2001, 2002 and 2003**
**(in thousands except share amounts)**

**Note A —Significant Accounting Policies**

A summary of the significant accounting policies consistently applied in the preparation of the accompanying consolidated financial statements follows.

*Business Activity*

Red Simpson, Inc., a Louisiana corporation, is in the electric distribution and transmission services industry and works primarily in the southern United States of America. Major types of projects include electrical distribution and transmission services and substation installation. The length of customer arrangements varies, and projects under those arrangements typically last less than one year.

*Principles of Consolidation*

The consolidated financial statements include Red Simpson, Inc. and its wholly owned subsidiaries (collectively "Red Simpson" or the "Company"). All significant intercompany transactions and accounts have been eliminated in the consolidation.

*Use of Estimates*

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the amounts reported in the financial statements and accompanying notes. Actual results could differ from those estimates and such differences may be material to the financial statements.

*Revenue Recognition*

Revenues from services provided to customers are reported as earned and are recognized when services are performed. The majority of Red Simpson's customer arrangements are unit based. Revenue on unit-based customer arrangements is recognized as the unit is completed. Revenue on hourly based services is determined based on actual labor and equipment time completed and materials used. Revenue on fixed price customer arrangements is recognized under the percentage-of-completion method based primarily on the ratio of costs incurred to date to total estimated costs under the arrangement. At the time a loss on a customer arrangement becomes known, the entire amount of the estimated ultimate loss is accrued. "Work completed not billed" primarily relates to revenues for completed but unbilled units under unit-based arrangements, as well as unbilled revenues recognized under the percentage-of-completion method for fixed price arrangements.

*Retainage*

Many of the customer arrangements under which the Company performs work contain retainage provisions. Retainage refers to that portion of revenue earned by the Company but held for payment by the customer pending satisfactory completion of the project. Unless reserved, the Company assumes that all amounts retained by customers under such provisions are fully collectible. Retainage is generally collected within one year of the completion of a job.

*Cash and Cash Equivalents*

The Company considers all highly liquid investments with maturities of three months or less to be cash equivalents. The Company regularly has significant amounts of cash balances in excess of the Federal Deposit Insurance Corporation maximum of $100. The Company has not experienced any losses in such accounts and believes it is not exposed to any significant credit risk on cash and cash equivalents.

F-44

B 515

## RED SIMPSON, INC. AND SUBSIDIARIES

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)

### Inventories

Inventories consist primarily of materials and supplies used in the Company's business and are carried at the lower of cost (first-in, first out) or market (net realizable value). No obsolescence reserve has been recorded in the period presented.

### Property and Equipment

Property and equipment are stated at cost and depreciated on a straight-line basis over their estimated useful lives, as follows:

|  | Life in Years |
| --- | --- |
| Buildings | 27.5 |
| Office improvements | 10-31.5 |
| Vehicles, equipment and furniture | 3-7 |

Maintenance and repairs are expensed as incurred and major improvements are capitalized. When assets are sold or retired, the cost and related accumulated depreciation are removed from the accounts and the resulting gain or loss is included in income.

The Company reviews its long-lived assets for impairment when events or changes in business conditions indicate the carrying value of the asset may not be recoverable, as required by SFAS No. 144, *Accounting for the Impairment or Disposal of Long-Lived Assets.* Impairment on assets classified as "held and used" exists when the sum of the undiscounted estimated cash flows expected is less than the carrying value. If such measurement indicates a possible impairment, the estimated fair value of the asset is compared to the net book value to measure the impairment charge, if any. When the criteria for "held for sale" has been met, the assets are recorded at the lower of carrying value or fair value, less selling costs.

### Intangible Assets

Intangible assets consist of covenants not to compete and acquired customer relationships that are amortized on a straight-line basis over their estimated useful lives of up to 4 years.

### Goodwill

In June 2001, the Financial Accounting Standards Board ("FASB") issued SFAS No. 142, *Goodwill and Other Intangible Assets,* which supersedes APB Opinion No. 17, *Intangible Assets.* SFAS No. 142 establishes new standards for goodwill acquired in a business combination, eliminates amortization of goodwill, and instead sets forth methods to periodically evaluate goodwill for impairment. The Company adopted SFAS No. 142 on January 1, 2002. In accordance with SFAS No. 142, the Company ceased amortization of goodwill and conducts on at least an annual basis a review of its single reporting unit to determine whether its carrying value exceeds its fair market value. Should this be the case, a detailed analysis of the reporting unit's assets and liabilities is performed to determine whether the goodwill is impaired. Impairment losses are required to be reflected in operating income or loss in the consolidated statements of income. The information presented below reflects adjustments to information reported in 2001 as if SFAS No. 142 had been applied in those years. The adjustments include the effects of not amortizing goodwill.

|  | 2001 | 2002 | 2003 |
| --- | --- | --- | --- |
| Reported net income | $ 9,501 | $ 14,110 | $ 12,011 |
| Add: Goodwill amortization | 237 | — | — |
| Adjusted net income | $ 9,738 | $ 14,110 | $ 12,011 |

F-45

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

*Insurance and Claim Accruals*

The Company retains the risk, up to certain limits, for automobile and general liability, workers' compensation, and employee group health claims. A liability for unpaid claims and the associated claim expenses, including incurred but not reported losses, is actuarially determined and reflected in the consolidated financial statements as an accrued liability. The determination of such claims and expenses and the appropriateness of the related liability is periodically reviewed and updated. Because the Company retains these risks, up to certain limits, a change in experience or actuarial assumptions could materially affect results of operations in a particular period.

*Income Taxes*

Beginning January 1, 1997, the Company elected to be taxed as a Subchapter S corporation. At that date, payment of income taxes became the responsibility of the stockholders. The Company may incur income taxes within the first ten years as it relates to any "built-in gain." If the Company disposes of assets that were owned on the date of election to be taxed as a Subchapter S corporation and there is a gain, the Company would pay income taxes on the difference in the tax basis and the fair value (built-in gain) at the date of election to be taxed as a Subchapter S corporation. The Company has accrued a deferred tax liability of approximately $170 to accrue for expected built-in gains taxes.

*Recently Issued Accounting Pronouncements*

In May 2003, the FASB issued SFAS No. 150, *Accounting for Certain Financial Instruments with Characteristics of both Liabilities and Equity*. This statement requires certain financial instruments that could previously be accounted for by issuers as equity to be classified as liabilities or, in some cases, assets. SFAS No. 150 is effective for financial instruments entered into or modified after May 31, 2003 and otherwise is effective at the beginning of the first fiscal period beginning after June 15, 2003. The adoption of SFAS No. 150 did not have a material effect on the Company's financial condition or results of operations.

In January 2003, the FASB issued Interpretation No. 46 (FIN 46), *Consolidation of Variable Interest Entities*. FIN 46 addresses when a company should consolidate in its financial statements the assets, liabilities and activities of a variable interest entity (VIE). It defines VIEs as entities that either do not have any equity investors with a controlling financial interest, or have equity investors that do not provide sufficient financial resources for the entity to support its activities without additional subordinated financial support. FIN 46 also requires disclosures about VIEs that a company is not required to consolidate, but in which it has a significant variable interest. The consolidation requirements of FIN 46 applied immediately to variable interest entities created after January 31, 2003. The Company has not obtained an interest in a VIE subsequent to that date. A modification to FIN 46 (FIN 46(R)) was released in December 2003. FIN 46(R) delayed the effective date for VIEs created before February 1, 2003, with the exception of special-purpose entities, until the first fiscal year or interim period ending after March 15, 2004. FIN 46(R) delayed the effective date for special-purpose entities until the first fiscal year or interim period after December 15, 2003. The Company is not the primary beneficiary of any SPEs or non-SPEs at December 31, 2003.

**Note B — Acquisition of Gillette Electric Construction, Inc.**

On June 8, 2003, the Company acquired 100% of the outstanding common stock of Gillette Electric Construction, Inc. for a purchase price of approximately $9,300 paid in cash. The acquisition has been accounted for as a purchase and, accordingly, the acquired assets and liabilities have been recorded at their fair values at the date of acquisition. The operating results arising from the acquisition are included in the consolidated statement of earnings from the acquisition date.

F-46

B 517

424(B)(4)161

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

The following table summarizes the estimated fair values of certain assets acquired and liabilities assumed at the date of acquisition (June 8, 2003):

| | |
|---|---:|
| Current assets | $ 2,244 |
| Property and equipment | 1,950 |
| Goodwill | 761 |
| Intangible assets | 6,383 |
| Total assets acquired | 11,338 |
| Current liabilities | (933) |
| Long-term debt | (1,063) |
| | $ 9,342 |

The intangible assets valued at $6,383 have a weighted average useful life of approximately 4 years. The intangible assets consist of customer relationships of $6,290 and a covenant not to compete of $93.

The purchase price was allocated based on the fair value of the assets acquired and liabilities assumed and the excess of cost over fair value of the net assets acquired of $761 which is recorded as goodwill and will be subject to an annual test of impairment as required by SFAS No. 142, *Goodwill and Other Intangible Assets*.

**Note C — Accounts Receivable**

Accounts receivable consists of the following:

| | December 31, | |
|---|---:|---:|
| | 2002 | 2003 |
| Billing | $ 31,681 | $ 29,261 |
| Retainage receivable | 2,064 | 1,870 |
| Other receivables | 403 | 1,616 |
| Total | 34,148 | 32,747 |
| Less allowance for bad debts | (25) | (317) |
| Accounts receivable, net | $ 34,123 | $ 32,430 |

The Company expects to collect all balances, including retainage, within the next twelve months.

**Note D — Work Completed not Billed**

Work completed not billed consists of the following:

| | December 31, | |
|---|---:|---:|
| | 2002 | 2003 |
| Costs incurred on work in progress | $ 7,929 | $ 9,368 |
| Estimated earnings to date | 762 | 1,321 |
| Total costs and estimated earnings | 8,691 | 10,689 |
| Less billings to date | (2,993) | (5,049) |
| Work completed not billed | $ 5,698 | $ 5,640 |

F-47

B 518

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

As stated in Note A, the Company performs services under unit-based and non-unit based customer arrangements. The amounts presented above aggregate the effects of these types of arrangements.

**Note E — Property and Equipment**

The accompanying consolidated balance sheet includes the following property and equipment:

|  | December 31, | |
|---|---|---|
|  | 2002 | 2003 |
| Land | $ 612 | $ 612 |
| Buildings | 179 | 198 |
| Machinery and Equipment | 170,886 | 175,620 |
| Total | 171,677 | 176,430 |
| Less accumulated depreciation | (101,005) | (114,733) |
| Property and equipment, net | $ 70,672 | $ 61,697 |

Maintenance and repairs of property and equipment amounted to $9,043, $10,649 and $11,302 for the years ended December 31, 2001, 2002 and 2003, respectively. Depreciation expense amounted to $20,738, $21,816 and $20,762 for the years ended December 31, 2001, 2002 and 2003, respectively.

**Note F — Goodwill and Intangible Assets**

Changes in the carrying amount of the Company's goodwill and intangible assets were as follows:

|  | Goodwill | Intangible Assets | Accumulated Amortization |
|---|---|---|---|
| Balance at January 1, 2001 | $ 5,023 | $ 50 | $ (50) |
| Amortization | (237) | — | — |
| Balance at December 31, 2001 | 4,786 | 50 | (50) |
| Balance at December 31, 2002 | 4,786 | 50 | (50) |
| Acquisition of Gillette Electric | 761 | 6,383 | — |
| Amortization | — | — | (826) |
| Balance at December 31, 2003 | $ 5,547 | $ 6,433 | $ (876) |

The following table summarizes the carrying amounts and amortization of intangible assets:

|  | December 31, | | | |
|---|---|---|---|---|
|  | 2002 | | 2003 | |
|  | Gross Carrying Amount | Accumulated Amortization | Gross Carrying Amount | Accumulated Amortization |
| Amortized intangible assets: |  |  |  |  |
| Covenants not to compete | $ 50 | $ 50 | $ 143 | $ 61 |
| Customer relationships | — | — | 6,290 | 815 |
|  | $ 50 | $ 50 | $ 6,433 | $ 876 |

F-48

## RED SIMPSON, INC. AND SUBSIDIARIES

## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)

Aggregate amortization expense:

For the years ended December 31

| | |
|---|---|
| 2001 | $ 237 |
| 2002 | — |
| 2003 | 826 |

Estimated amortization expense for the years ended December 31:

| | |
|---|---|
| 2004 | $ 1,416 |
| 2005 | $ 1,416 |
| 2006 | $ 1,416 |
| 2007 | $ 1,300 |
| 2008 | $ 8 |

### Note G — Long-Term Debt

Long-term debt consisted of the following:

| | December 31, | |
|---|---|---|
| | 2002 | 2003 |
| Open lines of credit for $37,000 and $60,000 with Red River Bank with a monthly interest rate calculated as a three-month LIBOR rate plus 1%, due November 12, 2004 and December 2005 | $ 6,375 | $ — |
| $72 note payable to Max Green for the land and office building. Interest is payable annually at a rate of 7% | 72 | 64 |
| $5,900 installment note payable to Red River Bank with a 7.5% interest rate, maturing May 2003 | 701 | — |
| Various term loans with Ford Motor Credit financing the purchase of vehicles at 0% interest | — | 140 |
| | 7,148 | 204 |
| Less current maturities | (709) | (84) |
| | $ 6,439 | $ 120 |

During the year ended December 31, 2003, the Company repaid all outstanding indebtedness under all lines of credit with Red River Bank. As of December 31, 2003, there were approximately $20,100 of standby letters of credit issued by Red River Bank on behalf of the Company.

Under the terms of the credit agreements with Red River Bank, the Company is not required to comply with any financial covenants. Red Simpson has pledged collateral securing these lines of credit with a blanket security interest in substantially all equipment, vehicles, rolling stock, machinery, inventory, furniture and fixtures.

The President of the Company is a member of the Board of Directors of Red River Bank.

F-49

B 520

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

Aggregate maturities of long-term debt for the five years following December 31, 2003 and thereafter are as follows:

|  | Amount |
|---|---|
| 2004 | $    84 |
| 2005 | 69 |
| 2006 | 11 |
| 2007 | 8 |
| 2008 | 8 |
| Thereafter | 24 |
|  | $   204 |

**Note H — Income Taxes**

As discussed in Note A, the Company has elected to be taxed as a Subchapter S corporation. In certain states, taxes must be paid at the corporate level. For the years ended December 31, 2001, 2002 and 2003, state tax expense was approximately $212, $485 and $406, respectively.

The Company has made a number of acquisitions during the past several years. In these acquisitions, the Company acquired all of the outstanding stock of the acquired companies and they became a subsidiary of the Company. These acquired companies were C corporations and have been inactive since the acquisitions. The Company is of the opinion there was a de facto liquidation of these corporations. If the Internal Revenue Service were to disagree with the Company's position, income tax could be assessed on the corporations. Any tax due would ultimately be the responsibility of the stockholders of Red Simpson, Inc.

Had the Company been subject to Federal income taxes, it would have recorded approximately $2,200, $4,400, and $5,200 in income tax expense for the years ended December 31, 2001, 2002 and 2003, respectively.

**Note I — Employee Benefit Plans**

The Company sponsors a 401(k) defined contribution plan that provides retirement benefits to all employees that elect to participate. Under the plan, participating employees may defer up to 15% of their base pre-tax compensation. Contributions by the Company are discretionary. During the years ended December 31, 2001, 2002 and 2003, the Company contributed approximately $618, $689, and $635, respectively, related to this plan.

F-50

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

Effective January 1, 1997, the Company adopted a non-qualified deferred compensation plan for select employees. The plan is not funded and the balance is payable over four to five years after employment termination and is reflected in the deferred compensation balance. The net accruals were as follows:

| | | |
|---|---:|---:|
| Balance at January 1, 2001 | $ | 12,963 |
| Conversion to notes payable deferred compensation | | (2,075) |
| Expense | | 4,062 |
| Balance at December 31, 2001 | | 14,950 |
| Conversion to notes payable deferred compensation | | (1,068) |
| Expense | | 5,368 |
| Balance at December 31, 2002 | | 19,250 |
| Conversion to notes payable deferred compensation | | (988) |
| Expense | | 2,896 |
| Balance at December 31, 2003 | $ | 21,158 |

## Note J — Related Party Transactions

The Company leases its corporate headquarters from Simpson-Noles, LLC, of which the Company owned a 50% interest. The future minimum lease commitments under this arrangement include monthly rental payments in the amount of $12 for the duration of the agreement, which has an indefinite life. Rent expense for the years ended December 31, 2001, 2002 and 2003 was approximately $145 each year.

## Note K — Major Customers and Concentration of Credit Risk

Financial instruments, which potentially subject the Company to concentrations of credit risk, consist primarily of accounts receivable. The Company has not incurred significant bad debts in the past, and expects that the allowance for doubtful accounts is reasonable based on historic experience and current composition of its accounts receivable. During the year ended December 31, 2001, the Company had sales to three customers that exceeded 10% of total revenues at 18.6%, 13.2% and 10.2%. During the year ended December 31, 2002, the Company had sales to two customers that exceeded 10% of total revenues at 13.2% and 13.5%. For the year ended December 31, 2003, the Company had sales to three customers that exceeded 10% of total revenues at 14.9%, 14% and 11.7%. The Company performs periodic credit evaluations of its customers' financial condition, but generally does not require collateral. Credit losses have generally been within management's estimates.

## Note L — Commitments and Contingencies

### Litigation

The Company is involved in various claims and legal proceedings. These cases are, in the opinion of management, ordinary, routine matters incidental to the normal business conducted by the Company. Management believes that the ultimate disposition of such proceedings will not have a materially adverse effect on the Company's consolidated financial statements.

### Guarantees

The Company guarantees two term loans of Simpson-Noles LLC, a related party joint venture in which the Company owns a 50% interest. Should Simpson-Noles LLC be unable to perform under the terms of the loan, the Company could be held responsible for the ultimate repayment of the loans. At

F-51

B 522

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

December 31, 2003, the outstanding loans were approximately $1,800. The Company has not experienced material adverse results from such guarantee and foresees no further material adverse impact on the financial position, results of operations or cash flows of the Company. As a result, the Company has not recorded a liability on the balance sheet associated with this risk.

The Company has many customer arrangements that require the Company to indemnify the other party against loss from claims. Also, the Company is required to indemnify its bonding agent in the event of non-performance. The Company has not experienced material losses under these arrangements and foresees no future material adverse impact on financial position, results of operations or cash flows.

**Note M — Subsequent Events**

Effective July 1, 2004, the Company entered into a stock purchase agreement with Pike Electric, Inc. In relation to the stock purchase agreement, the Company sold its interests in the Simpson-Noles, LLC and RSA Aviation, LLC to former stockholders.

F-52

B 523

424(B)(4)167

## REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM

To the Board of Directors and Stockholders of
Red Simpson, Inc.

We have audited the accompanying consolidated balance sheets of Red Simpson, Inc. (a Louisiana corporation) and Subsidiaries as of June 30, 2004 and 2003, and the related consolidated statements of income, stockholders' equity, and cash flows for each of the six-month periods then ended. These financial statements are the responsibility of the Company's management. Our responsibility is to express an opinion on these financial statements based on our audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement. The Company is not required to have, nor were we engaged to perform an audit of its internal control over financial reporting. Our audits included consideration of internal control over financial reporting as a basis for designing audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the Company's internal control over financial reporting. Accordingly, we express no such opinion. An audit also includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, as well as evaluating the overall financial statement presentation. We believe that our audits provide a reasonable basis for our opinion.

In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Red Simpson, Inc. and Subsidiaries as of June 30, 2004 and 2003, and the results of their operations and their cash flows for each of the six-month periods then ended in conformity with accounting principles generally accepted in the United States of America.

/s/ Grant Thornton LLP

Houston, Texas
December 22, 2004

**B 524**

424(B)(4)168

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED BALANCE SHEETS**
**(in thousands, except share amounts)**

| | June 30, | |
|---|---:|---:|
| | 2003 | 2004 |
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| Cash and cash equivalents | $ 2,016 | $ 2,173 |
| Accounts receivable | 30,479 | 35,042 |
| Work completed not billed | 7,443 | 7,027 |
| Inventory | 1,399 | 1,499 |
| Prepaid expenses | 3,040 | 1,650 |
| Total current assets | 44,377 | 47,391 |
| PROPERTY AND EQUIPMENT, NET | 65,821 | 55,996 |
| **OTHER ASSETS** | | |
| Goodwill | 5,547 | 5,547 |
| Intangible assets, net | 6,265 | 4,840 |
| Other | 960 | 1,383 |
| Total other assets | 12,772 | 11,770 |
| | $ 122,970 | $ 115,157 |
| **LIABILITIES AND STOCKHOLDERS' EQUITY** | | |
| **CURRENT LIABILITIES** | | |
| Accounts payable | $ 5,358 | $ 6,093 |
| Accrued liabilities | 2,451 | 1,885 |
| Accrued payroll and related liabilities | 6,112 | 4,954 |
| Current portion of notes payable, deferred compensation | 447 | — |
| Insurance and claim accruals | 3,579 | 4,480 |
| Current portion of long-term debt | 7,161 | — |
| Total current liabilities | 25,108 | 17,412 |
| **LONG-TERM LIABILITIES** | | |
| Insurance and claim accruals | 6,644 | 8,682 |
| Notes payable, deferred compensation, net of current portion | 1,586 | — |
| Deferred compensation | 20,537 | 23,074 |
| Long-term debt, net of current portion | 164 | — |
| Amounts due to previous owners | 3,060 | 2,915 |
| Other | 346 | — |
| Total long-term liabilities | 32,337 | 34,671 |
| | 57,445 | 52,083 |
| **STOCKHOLDERS' EQUITY** | | |
| Common stock, no par value; 2,000,000 shares authorized; 1,090,439 shares issued; | | |
| 929,442 shares outstanding | 584 | 584 |
| Retained earnings | 65,334 | 62,883 |
| Treasury stock 160,997 shares, at cost | (393) | (393) |
| Total stockholders' equity | 65,525 | 63,074 |
| | $ 122,970 | $ 115,157 |

F-54

B 525

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED STATEMENTS OF INCOME**
**(in thousands)**

| | Six Months Ended June 30, | |
|---|---|---|
| | 2003 | 2004 |
| Revenues | $ 91,121 | $ 95,543 |
| Cost of Operations | 80,147 | 85,390 |
| Gross profit | 10,974 | 10,153 |
| General and administrative expenses | 4,928 | 6,323 |
| Transaction expenses | — | 5,573 |
| Income from operations | 6,046 | (1,743) |
| Other expenses: | | |
| Interest expense | 142 | 38 |
| Other | 118 | — |
| Total other expenses | 260 | 38 |
| Income (loss) before income taxes | 5,786 | (1,781) |
| Income tax expense | 271 | 182 |
| Net income (loss) | $ 5,515 | $ (1,963) |

The accompanying notes are an integral part of these financial statements.

F-55

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY**
**(in thousands, except share amounts)**

| | Six Months Ended June 30, 2003 | | | | | |
| | Common Stock | | | Treasury Stock | | |
| | Shares | Amount | Retained Earnings | Shares | Amount | Total |
|---|---|---|---|---|---|---|
| Balance at January 1, 2003 | 1,090,439 | $ 584 | $ 67,283 | 160,997 | $ (393) | $ 67,474 |
| Net income | — | — | 5,515 | — | — | 5,515 |
| Distributions to stockholders | — | — | (7,464) | — | — | (7,464) |
| Balance at June 30, 2003 | 1,090,439 | $ 584 | $ 65,334 | 160,997 | $ (393) | $ 65,525 |

F-56

B 527

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY — (continued)**
**(in thousands, except share amounts)**

| | Six Months Ended June 30, 2004 | | | | | |
| | Common Stock | | | Treasury Stock | | |
| | Shares | Amount | Retained Earnings | Shares | Amount | Total |
|---|---|---|---|---|---|---|
| Balance at January 1, 2004 | 1,090,439 | $ 584 | $ 71,307 | 160,997 | $ (393) | $ 71,498 |
| Net loss | — | — | (1,963) | — | — | (1,963) |
| Distributions to stockholders | — | — | (6,461) | — | — | (6,461) |
| Balance at June 30, 2004 | 1,090,439 | $ 584 | $ 62,883 | 160,997 | $ (393) | $ 63,074 |

The accompanying notes are an integral part of these financial statements.

F-57

B 528

**RED SIMPSON, INC. AND SUBSIDIARIES**

**CONSOLIDATED STATEMENT OF CASH FLOWS**
**(in thousands)**

| | Six Months Ended June 30, | |
|---|---|---|
| | 2003 | 2004 |
| Cash flows from operating activities | | |
| Net income (loss) | $ 5,515 | $ (1,963) |
| Adjustments to reconcile net loss to net cash provided by operating activities | | |
| Depreciation and amortization | 10,621 | 10,158 |
| Deferred compensation expense | 1,501 | 2,006 |
| Gain on sale of property and equipment | (99) | (840) |
| Other | 136 | 4 |
| Changes in assets and liabilities | | |
| Accounts receivable and work completed not billed | 4,007 | (3,998) |
| Inventory and other assets | 965 | 1,489 |
| Accounts payable, accrued expenses and other | 604 | 1,423 |
| Insurance and claim accruals | 40 | (2,041) |
| Net cash provided by operating activities | 23,290 | 6,238 |
| Cash flows from investing activities | | |
| Purchase of property and equipment | (9,343) | (5,655) |
| Proceeds from sale of property and equipment | 63 | 2,755 |
| Net cash paid on acquisition of Gillette Electric Construction, Inc. | (3,666) | — |
| Net cash used in investing activities | (12,946) | (2,900) |
| Cash flows from financing activities | | |
| Payments on long-term debt | (46,956) | (204) |
| Proceeds from long-term debt | 46,070 | — |
| Payments on notes payable — deferred compensation | (70) | (2,594) |
| Payments on amounts due to previous owners | (58) | — |
| Distributions to stockholders | (7,464) | (6,461) |
| Net cash used by financing activities | (8,478) | (9,259) |
| Net (decrease) increase in cash and cash equivalents | 1,866 | (5,921) |
| Cash and cash equivalents at beginning of year | 150 | 8,094 |
| Cash and cash equivalents at end of year | $ 2,016 | $ 2,173 |
| Supplemental disclosures | | |
| Cash paid for | | |
| Interest | $ 164 | $ 33 |
| Income taxes | 271 | 182 |
| Issuance of notes for deferred compensation liability | 214 | 90 |

The accompanying notes are an integral part of these financial statements.

F-58

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**For the six months ended June 30, 2003 and 2004**
**(in thousands, except share amounts)**

**Note A — Summary of Significant Accounting Policies**

A summary of the significant accounting policies consistently applied in the preparation of the accompanying consolidated financial statements follows.

*Business Activity*

Red Simpson, Inc., a Louisiana corporation, is in the electric distribution and transmission services industry and works primarily in the southern United States of America. Major types of projects include electrical distribution and transmission services and substation installation. The length of customer arrangements varies, and projects under those arrangements typically last less than one year.

*Principles of Consolidation*

The consolidated financial statements include Red Simpson, Inc. and its wholly owned subsidiaries (collectively "Red Simpson" or the "Company"). All significant intercompany transactions and accounts have been eliminated in the consolidation.

In June 2004, the Company transferred its 50% ownership interest in Simpson-Notes, LLC to John Simpson, President of Red Simpson (see Note B). Prior to the disposal, the Company accounted for this interest under the equity method of accounting.

In June 2004, the Company sold its 100% ownership interest in RSA Aviation, LLC to a stockholder for $750 (see Note B). Effective July 1, 2004, Red Simpson entered into a stock purchase agreement with Pike Electric, Inc. (see Note B).

*Use of Estimates*

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the amounts reported in the financial statements and accompanying notes. Actual results could differ from those estimates and such differences may be material to the financial statements.

*Revenue Recognition*

Revenues from services provided to customers are reported as earned and are recognized when services are performed. The majority of Red Simpson's customer arrangements are unit based. Revenue on unit-based customer arrangements is recognized as the unit is completed. Revenue on hourly based services is determined based on actual labor and equipment time completed and materials used. Revenue on fixed price customer arrangements is recognized under the percentage-of-completion method based primarily on the ratio of costs incurred to date to total estimated costs under the arrangement. At the time a loss on a customer arrangement becomes known, the entire amount of the estimated ultimate loss is accrued. "Work completed not billed" primarily relates to revenues for completed but unbilled units under unit-based arrangements, as well as unbilled revenues recognized under the percentage-of-completion method for fixed price arrangements.

*Retainage*

Many of the customer arrangements under which the Company performs work contain retainage provisions. Retainage refers to that portion of revenue earned by the Company but held for payment by the customer pending satisfactory completion of the project. Unless reserved, the Company assumes that

F-59

**B 530**

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

all amounts retained by customers under such provisions are fully collectible. Retainage is generally collected within one year of the completion of a job.

### *Cash and Cash Equivalents*

The Company considers all highly liquid investments with maturities of three months or less to be cash equivalents. The Company regularly has significant amounts of cash balances in excess of the Federal Deposit Insurance Corporation maximum of $100. The Company has not experienced any losses in such accounts and believes it is not exposed to any significant credit risk on cash and cash equivalents.

### *Inventories*

Inventories consist primarily of materials and supplies used in the Company's business and are carried at the lower of cost (first-in, first out) or market (net realizable value). No obsolescence reserve has been recorded in the period presented.

### *Property and Equipment*

Property and equipment are stated at cost and depreciated on a straight-line basis over their estimated useful lives, as follows:

|                                  | Life in Years |
| -------------------------------- | ------------- |
| Buildings                        | 27.5          |
| Office improvements              | 10-31.5       |
| Vehicles, equipment and furniture | 3-7          |

Maintenance and repairs are expensed as incurred and major improvements are capitalized. When assets are sold or retired, the cost and related accumulated depreciation are removed from the accounts and the resulting gain or loss is included in income.

The Company reviews its long-lived assets for impairment when events or changes in business conditions indicate the carrying value of the asset may not be recoverable, as required by Statement of Financial Accounting Standards ("SFAS") No. 144, *Accounting for the Impairment or Disposal of Long-Lived Assets*. Impairment on assets classified as "held and used" exists when the sum of the undiscounted estimated cash flows expected is less than the carrying value. If such measurement indicates a possible impairment, the estimated fair value of the asset is compared to the net book value to measure the impairment charge, if any. When the criteria for "held for sale" has been met, the assets are recorded at the lower of carrying value or fair value, less selling costs.

### *Intangible Assets*

Intangible assets consist of covenants not to compete and acquired customer relationships that are amortized on a straight-line basis over their estimated useful lives of up to 4 years.

### *Goodwill*

In June 2001, the Financial Accounting Standards Board ("FASB") issued SFAS No. 142, *Goodwill and Other Intangible Assets*, which supersedes APB Opinion No. 17, *Intangible Assets*. SFAS No. 142 establishes new standards for goodwill acquired in a business combination, eliminates amortization of goodwill, and instead sets forth methods to periodically evaluate goodwill for impairment. The Company adopted SFAS No. 142 on January 1, 2002. In accordance with SFAS No. 142, the Company ceased amortization of goodwill and conducts on at least an annual basis a review of its single reporting unit to determine whether its carrying value exceeds its fair market value. Should this be the case, a detailed

RED SIMPSON, INC. AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)

analysis of the reporting unit's assets and liabilities is performed to determine whether the goodwill is impaired. Impairment losses are required to be reflected in operating income or loss in the consolidated statements of income.

### Insurance and Claim Accruals

The Company retains the risk, up to certain limits, for automobile and general liability, workers' compensation, and employee group health claims. A liability for unpaid claims and the associated claim expenses, including incurred but not reported losses, is actuarially determined and reflected in the consolidated financial statements as an accrued liability. The determination of such claims and expenses and the appropriateness of the related liability is periodically reviewed and updated. Because the Company retains these risks, up to certain limits, a change in experience or actuarial assumptions could materially affect results of operations in a particular period.

### Income Taxes

Beginning January 1, 1997, the Company elected to be taxed as a Subchapter S corporation. At that date, payment of income taxes became the responsibility of the shareholders. The Company may incur income taxes within the first ten years as it relates to any "built-in gain." If the Company disposes of assets that were owned on the date of election to be taxed as a Subchapter S corporation and there is a gain, the Company would pay income taxes on the difference in the tax basis and the fair value (built-in gain) at the date of election to be taxed as a Subchapter S corporation. The Company has accrued a deferred tax liability of approximately $170 to accrue for expected built-in gains taxes.

### Recently Issued Accounting Pronouncements

In May 2003, the FASB issued SFAS No. 150, *Accounting for Certain Financial Instruments with Characteristics of both Liabilities and Equity.* This statement requires certain financial instruments that could previously be accounted for by issuers as equity to be classified as liabilities or, in some cases, assets. SFAS No. 150 is effective for financial instruments entered into or modified after May 31, 2003 and otherwise is effective at the beginning of the first fiscal period beginning after June 15, 2003. The adoption of SFAS No. 150 did not have a material effect on the Company's financial condition or results of operations.

In January 2003, the FASB issued Interpretation No. 46 (FIN 46), *Consolidation of Variable Interest Entities.* FIN 46 addresses when a company should consolidate in its financial statements the assets, liabilities and activities of a variable interest entity (VIE). It defines VIEs as entities that either do not have any equity investors with a controlling financial interest, or have equity investors that do not provide sufficient financial resources for the entity to support its activities without additional subordinated financial support. FIN 46 also requires disclosures about VIEs that a company is not required to consolidate, but in which it has a significant variable interest. The consolidation requirements of FIN 46 applied immediately to variable interest entities created after January 31, 2003. The Company has not obtained an interest in a VIE subsequent to that date. A modification to FIN 46 (FIN 46(R)) was released in December 2003. FIN 46(R) delayed the effective date for VIEs created before February 1, 2003, with the exception of special-purpose entities, until the first fiscal year or interim period ending after March 15, 2004. FIN 46(R) delayed the effective date for special-purpose entities until the first fiscal year or interim period after December 15, 2003. The Company is not the primary beneficiary of any SPEs or non-SPEs at June 30, 2004.

F-61

B 532

**RED SIMPSON, INC. AND SUBSIDIARIES**

**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)**

**Note B — Sale of Red Simpson, Inc. to Pike Electric, Inc.**

Effective July 1, 2004, the Company entered into a stock purchase agreement with Pike Electric, Inc. Proceeds from the sale were used to pay off the notes payable with Red River Bank, Max Green and Ford Motor Credit. In relation to the stock purchase agreement, the Company sold its interests in Simpson-Noles, LLC and RSA Aviation, LLC to former stockholders.

**Note C — Accounts Receivable**

Accounts receivable consists of the following:

|  | June 30, | |
|---|---|---|
|  | 2003 | 2004 |
| Billing | $ 27,896 | $ 33,303 |
| Retainage receivable | 1,535 | 1,739 |
| Other | 1,209 | — |
|  | 30,640 | 35,042 |
|  | (161) | — |
| Accounts receivable | $ 30,479 | $ 35,042 |

The Company expects to collect all balances, including retainage, within the next twelve months.

**Note D — Work Completed Not Billed**

Work completed not billed consists of the following:

|  | June 30, | |
|---|---|---|
|  | 2003 | 2004 |
| Costs incurred on work in progress | $ 5,784 | $ 10,163 |
| Estimated to date earnings | 1,659 | 1,862 |
| Total costs and estimated earnings | 7,443 | 12,025 |
| Less: billings to date | — | (4,998) |
| Work completed not billed | $ 7,443 | $ 7,027 |

As stated in Note A, the Company performs services under unit-based and non-unit based customer arrangements. The amounts presented above aggregate the effects of these types of arrangements.

F-62

B 533

### RED SIMPSON, INC. AND SUBSIDIARIES

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)

**Note E — Property and Equipment**

The accompanying consolidated balance sheet includes the following property and equipment:

| | June 30, 2003 | June 30, 2004 |
|---|---|---|
| Land | $ 612 | $ 198 |
| Buildings | 198 | 238 |
| Machinery and equipment | 171,545 | 176,098 |
| Total | 172,355 | 176,534 |
| Less accumulated depreciation | 106,534 | 120,538 |
| Property and equipment, net | $ 65,821 | $ 55,996 |

Maintenance and repairs of property and equipment amounted to $5,531 and $5,741 for the six months ended June 30, 2003 and 2004, respectively. Depreciation expense amounted to $10,503 and $9,440 for the six months ended June 30, 2003 and 2004, respectively.

**Note F — Goodwill and Intangible Assets**

Changes in the carrying amount of the Company's goodwill and intangible assets were as follows:

| | Six Months Ended June 30, 2003 | | |
|---|---|---|---|
| | Goodwill | Intangible Assets | Accumulated Amortization |
| Balance at January 1, 2003 | $ 4,786 | $ 50 | $ (50) |
| Acquisition of Gillette Electric Construction, Inc. | 761 | 6,383 | |
| Amortization | | | (118) |
| Balance at June 30, 2003 | $ 5,547 | $ 6,433 | $ (168) |

| | Six Months Ended June 30, 2004 | | |
|---|---|---|---|
| | Goodwill | Intangible Assets | Accumulated Amortization |
| Balance at January 1, 2004 | $ 5,547 | $ 6,433 | $ (876) |
| Amortization | — | — | (717) |
| Balance at June 30, 2004 | $ 5,547 | $ 6,433 | $ (1,593) |

The following table summarizes the carrying amounts and amortization of intangible assets:

| | June 30, 2003 | | June 30, 2004 | |
|---|---|---|---|---|
| | Gross Carrying Amount | Accumulated Amortization | Gross Carrying Amount | Accumulated Amortization |
| Amortized intangible assets: | | | | |
| Covenants not to compete | $ 143 | $ 52 | $ 143 | $ 70 |
| Customer relationships | 6,290 | 116 | 6,290 | 1,523 |
| | $ 6,433 | $ 168 | $ 6,433 | $ 1,593 |

Aggregate amortization expense for the six months ended June 30, 2003 and 2004 was $118 and $717, respectively.

F-63

## RED SIMPSON, INC. AND SUBSIDIARIES

### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)

Estimated amortization expense for the years ended December 31:

| | |
|---|---:|
| 2005 | $ 1,416 |
| 2006 | 1,416 |
| 2007 | 1,300 |
| 2008 | 8 |
| 2009 | — |

### Note G — Long-Term Debt

Long-term debt consists of the following:

| | June 30, | |
|---|---:|---:|
| | 2003 | 2004 |
| Line of credit of $60,000 with Red River Bank, paid in full during 2004 | $ 7,039 | $ — |
| $72 note payable to Max Green for the land and Marshall office building, paid in full during 2004 | 64 | — |
| Various term loans with Ford Motor Credit, paid in full during 2004 | 222 | — |
| | 7,325 | — |
| Less: current maturities | 7,161 | — |
| | $ 164 | $ — |

### Note H — Income Taxes

As discussed in Note A, the Company has elected to be taxed as a Subchapter S corporation. In certain states, taxes must be paid at the corporate level. For the six months ended June 30, 2003 and 2004, state tax expense was approximately $271 and $182, respectively.

The Company has made a number of acquisitions during the past several years. In these acquisitions, the Company acquired all of the outstanding stock of the acquired companies and they became a subsidiary of the Company. These acquired companies were C corporations and have been inactive since the acquisitions.

Had the Company been subject to Federal income taxes, it would have recorded approximately $2,000 and $1,700 in income tax benefit for the six months ended June 30, 2003 and 2004, respectively.

### Note I — Employee Benefit Plans

The Company sponsors a 401(k) defined contribution plan that provides retirement benefits to all employees that elect to participate. Under the plan, participating employees may defer up to 15% of their base pre-tax compensation. Contributions by the Company are discretionary. During the six months ended June 30, 2003 and 2004, the Company contributed approximately $339 and $309, respectively related to this plan.

Effective January 1, 1997, the Company adopted a non-qualified deferred compensation plan for select employees. The plan is not funded and the balance is payable over four to five years after employment

F-64

**RED SIMPSON, INC. AND SUBSIDIARIES**

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS — (continued)

termination and is reflected in the deferred compensation balance. The net accruals for the six months ended June 30, 2003 and 2004 were as follows:

| | | |
|---|---|---:|
| Balance at January 1, 2003 | $ | 19,250 |
| Conversion to notes payable deferred compensation | | (214) |
| Expense | | 1,501 |
| Balance at June 30, 2003 | $ | 20,537 |
| Balance at January 1, 2004 | $ | 21,158 |
| Conversion to notes payable deferred compensation | | (90) |
| Expense | | 2,006 |
| Balance at June 30, 2004 | $ | 23,074 |

### Note J —Related Party Transactions

The Company leases its corporate headquarters from the Simpson-Noles, LLC, of which the Company owned a 50% interest until June 30, 2004. The future minimum lease commitments under this arrangement include monthly rental payments in the amount of $12 for the duration of the agreement, which has an indefinite life. Rent expense for the six months ended June 30, 2003 and 2004 was approximately $73 and $72, respectively.

### Note K — Major Customers and Concentration of Credit Risk

Almost all of the Company's revenues are generated from work performed with utility companies and municipalities throughout the southern United States of America. While the individual jobs may be short-term in nature, relationships with these entities may be longstanding. The Company had four customers that made up 47% and 56% of total revenues during the six months ended June 30, 2003 and 2004, respectively.

Financial instruments which subject the Company to concentrations of credit risk consist almost entirely of trade accounts receivable. The Company has not incurred significant bad debts in the past, and expects that the lack of any allowance for doubtful accounts is reasonable based on historic experience and current composition of its account receivable.

### Note L — Commitments and Contingencies

#### *Litigation*

The Company is involved in various claims and legal proceedings. These cases are, in the opinion of management, ordinary, routine matters incidental to the normal business conducted by the Company. Management believes that the ultimate disposition of such proceedings will not have a materially adverse effect on the Company's consolidated financial statements.

#### *Guarantees*

The Company has many customer arrangements that require the Company to indemnify the other party against loss from claims. Also, the Company is required to indemnify its bonding agent in the event of non-performance. The Company has not experienced material losses under these arrangements and foresees no future material adverse impact on financial position, results of operations or cash flows.

F-65

424(B)(4)180



**B 537**

B 538

## 13,500,000 Shares

# Pike Electric Corporation

## Common Stock



**PROSPECTUS**
July 26, 2005

**Citigroup**

Robert W. Baird & Co.

**JPMorgan**

Friedman Billings Ramsey

No dealer, salesperson or other person is authorized to give any information or to represent anything not contained in this prospectus. You must not rely on any unauthorized information or representations. This prospectus is an offer to sell only the shares offered hereby, but only under circumstances and in jurisdictions where it is lawful to do so. The information in this prospectus may only be accurate on the date of this document.

We have not undertaken any efforts to qualify this offering for offers to individual investors in any jurisdiction outside the United States. Therefore, individual investors located outside the United States should not expect to be eligible to participate in this offering.

Through and including August 20, 2005 (the 25th day after the date of this prospectus) all dealers effecting transactions in these securities, whether or not participating in this offering, may be required to deliver a prospectus. This is in addition to a dealer's obligation to deliver a prospectus when acting as an underwriter and with respect to an unsold allotment or subscription.